IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

IN RE: RENOVACARE, INC.
SECURITIES LITIGATION

Case No. 21-cv-13766-JKS-ESK

[Motion Date: January 16, 2024]

---

## REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS RENOVACARE, INC., HARMEL RAYAT, JATINDER BHOGAL AND 1420527 ALBERTA LTD.'S <u>MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>

### COZEN O'CONNOR

Joseph Dever
Tamar Wise (*pro hac vice*)
Connor Rowinski (*pro hac vice*)
3 WTC, 175 Greenwich St. – 55th Floor
New York, New York 10007
(212) 509-9400
jdever@cozen.com
twise@cozen.com
crowinski@cozen.com

*Attorneys for Defendants RenovaCare, Inc., Harmel Rayat, Jatinder Bhogal and 1420527 Alberta Ltd.*

Dated:  January 10, 2024
New York, New York

# TABLE OF CONTENTS

Page

REPLY ARGUMENT ..................................................................................................1

I.  Plaintiffs' Claims Are Time-Barred by the Two-Year Statute of Limitations. ...............................................................................................................1

   A.  Plaintiffs Cannot Avoid the SAC's Unambiguous Allegations That the Concealed Stock Promotion Campaign Was "Discovered" in January 2018. ..........................................................................................................2

   B.  Plaintiffs' Argument That the February 2018 Storm Warnings Were Somehow Muted by RenovaCare's Reassurances and Denials is Without Merit. .......................................................................................2

     1.  The SAC Pleads There Were Subsequent Storm Warnings in February 2018 After the Reassurances and Denials in the January 8, 2018 Press Release....................................................................................5

     2.  RenovaCare Did Not Specifically and Expressly Deny the February 2018 Storm Warnings. .................................................................7

II.  Plaintiffs Did Not Properly Plead a Section 9(a)(2) Market Manipulation Claim Against Bhogal.........................................................................................10

III. Plaintiffs Did Not Properly Plead a False Statement Claim For All 13 RenovaCare Public Reports. ...............................................................................11

   A.  Plaintiffs Concede That Defendants Had No Duty to Disclose the Paid Stock Promotion Campaign in 12 of the 13 Public Reports. .........................11

   B.  Plaintiffs Fail to Plead That Rayat and Bhogal Were Each "Makers" of the Alleged False Statements in January 8, 2018 Press Release....................12

   C.  Plaintiffs Concede that Rayat and Bhogal Were Not the "Makers" of the Alleged False Statements in All 13 RenovaCare Public Reports. ...........13

IV. Plaintiffs Did Not Properly Plead a Scheme to Defraud Claim. .......................14

CONCLUSION.............................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*DeBenedictis v. Merrill Lynch & Co., Inc.*,
  492 F.3d 209 (3d Cir. 2007) ...............................................................................4

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011)..............................................................................4, 12, 13

*In re MBIA Inc.*,
  No. 05 Civ. 3514, 2007 WL 473708 (S.D.N.Y. Feb. 14, 2007).........................5

*In re NAHC, Inc. Sec. Litig.*,
  306 F.3d 1314, 1327 (3d Cir. 2002) .............................................................4, 15

*Merck & Co. v. Reynolds*,
  559 U.S. 633 (2010)...........................................................................................1

*Monroe County Employees' Ret. System v. YPF Sociedad Anonima*,
  15 F. Supp. 3d 336 (S.D.N.Y. 2014) ..................................................................9

*Pension Tr. Fund for Operating Engineers v. Mortg. Asset
  Securitization Transactions, Inc.*,
  730 F.3d 263 (3d Cir. 2013) .......................................................................4, 5, 6

*SEC v. Rio Tinto PLC*,
  41 F.4th 47 (2d Cir. 2022) ................................................................................14

*Summers v. PHH Mortg. Corp.*,
  No. CV2206726GCTJB, 2023 WL 5434336 (D.N.J. Aug. 23,
  2023) ................................................................................................................11

*Winer Fam. Tr. v. Queen*,
  503 F.3d 319 (3d Cir. 2007) .............................................................................12

**Statutes**

7 U.S.C. § 9(a)(2)........................................................................................9, 10, 11

Defendants RenovaCare, Inc. ("RenovaCare" or "Company"), Harmel Rayat ("Rayat"), Jatinder Bhogal ("Bhogal") and 1420527 Alberta Ltd. ("Alberta Ltd.") (together, "Defendants") respectfully submit this Reply Brief in Further Support of their Motion to Dismiss Plaintiffs' Second Amended Complaint. [ECF 135.] For the reasons discussed below, Plaintiffs' arguments in opposition to Defendants' Motion to Dismiss are without merit and the Second Amended Complaint ("SAC") should be dismissed with prejudice.[1]

## **REPLY ARGUMENT**

**I.    Plaintiffs' Claims Are Time-Barred by the Two-Year Statute of Limitations.**

It is clear on the face of the SAC that the two-year statute of limitations for Plaintiffs' securities fraud claims was triggered by the numerous storm warnings in January and February 2018 that alerted Plaintiffs to "discovering" the facts underlying their claims. *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010) (the two-year statute of limitations for a securities fraud claim begins to run when the plaintiff "discovers or a reasonably diligent plaintiff would have discovered the 'facts constituting the violation,' including scienter—irrespective of whether the actual plaintiff undertook a reasonably diligent investigation.")  Because Plaintiffs

---

[1] Defendants further adopt, as if fully set forth herein, any additional reply arguments in further support of dismissal asserted in their co-defendants' reply papers to the extent relevant and applicable to Defendants, including but not limited to arguments that Plaintiffs failed to allege the required reliance element of their claims.

waited more than three years to file their case after discovery of the January and February 2018 storm warnings, their claims are time-barred and should be dismissed. For the reasons discussed below, Plaintiffs' argument that the Court should excuse their three-year delay in filing their case is without merit.

> **A.   Plaintiffs Cannot Avoid the SAC's Unambiguous Allegations That the Concealed Stock Promotion Campaign Was "Discovered" in January 2018.**

In their Opposition Brief, Plaintiffs argue that they did not discover the facts underlying their securities fraud claim until May 2021 when the SEC filed its enforcement case against RenovaCare and Rayat. This argument is completely at odds with what Plaintiffs *actually* pled in their SAC – that the concealed stock promotion scheme was "discovered" in January 2018. In Plaintiffs' own words: "When the concealed stock promotion campaign was finally ***discovered*** in ***January 2018***, the ***discovery*** triggered …." (SAC at ¶ 5 (emphasis added).)

This clear allegation is fatal to Plaintiffs' claims and the SAC should be dismissed as untimely under the two-year statute of limitations.

> **B.   Plaintiffs' Argument That the February 2018 Storm Warnings Were Somehow Muted by RenovaCare's Reassurances and Denials is Without Merit.**

The SAC sets forth, in great detail, the February 2018 storm warnings alerting Plaintiffs to the alleged paid stock promotion campaign and the Company and Rayat's alleged involvement. These storm warnings include: (i) the February 12,

2018 investigative reports accusing the Company of paying for the StreetAuthority promotional campaign through a third-party investor relations firm and being involved in a pump-and-dump scheme,[2] and stating that Rayat, the Company's controlling shareholder, was a foreign stock promotor who had previously been charged by the SEC for unlawful stock promotion; (ii) OTC Markets' public downgrade of RenovaCare's stock on February 23, 2018 to "Caveat Emptor" status on OTC Markets' website, where it placed a "skull and crossbones" symbol on the Company's online trading profile, and (iii) the significant 30% drop in RenovaCare's stock price immediately following OTC Markets' downgrade to Caveat Emptor status (collectively, the "**February 2018 Storm Warnings**"). (*See* ECF 135-1, Defs.' MTD Br. at 14-16 for the allegations quoted from the SAC detailing the information and accusations that were revealed to investors by the February 2018 Storm Warnings.)

These storm warnings could not have been clearer—Plaintiffs were on notice of the claims they now allege in their SAC.

---

[2] Specifically, the SAC alleges: "The StreetSweeper Article also highlighted that StreetAuthority, in its disclosure in RenovaCare's promotional campaign, was paid by RenovaCare for the promotion through a third-party investor relations company, Damaak Group LLC. This payment include[d] $50,000 per month for 'investment predictions' reports." (SAC ¶ 253.) The SAC further alleges: "On February 12, 2018, Media Company 1 issued another negative article suggesting that RenovaCare was involved in a pump-and-dump scheme." (*Id.* ¶ 280.)

Yet in the face of these undisputed public notices, Plaintiffs now try to argue that the February 2018 Storm Warnings did not trigger the two-year statute of limitations because RenovaCare issued reassuring denials that allayed investors' concerns. But it is Plaintiffs' burden to explain why they did not discover their securities fraud claim or conduct further investigation after the storm warnings came to light. *See DeBenedictis v. Merrill Lynch & Co., Inc.*, 492 F.3d 209, 216 (3d Cir. 2007) ("If the existence of storm warnings [is] adequately established the burden shifts to the plaintiffs to show that they exercised reasonable due diligence and yet were unable to discover their injuries." (cleaned up) (citing *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1327 (3d Cir. 2002)). As discussed below, Plaintiffs fail to satisfy their burden and the SAC should be dismissed as untimely.

While Plaintiffs are correct that the Third Circuit "ha[s] recognized that reassurances can dissipate apparent storm warnings if an investor of ordinary intelligence would reasonably rely on them to allay the investor's concerns," *Pension Tr. Fund for Operating Engineers v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 277 (3d Cir. 2013) (internal quotations and citations omitted), there are two important limitations to this argument that Plaintiffs fail to engage and which ultimately prove fatal. *First*, **subsequent** storm warnings undermine the reasonableness of an investor relying on earlier reassurances or denials. *See id.* at 277-78. *Second*, to have any legal import, the reassurances must

4

take the form of **specific** and **express** denials of the alleged misconduct revealed by the storm warnings. *See id.* at 277; *see also In re MBIA Inc.*, No. 05 Civ. 3514, 2007 WL 473708, at *8 (S.D.N.Y. Feb. 14, 2007) (noting that optimistic press release did not specifically address the concerns raised in a published report, which had put the public on notice of the probability of deception, and would not have allayed the concerns of a reasonable investor).

Plaintiffs' argument fails to overcome both of these limitations.

> **1.    The SAC Pleads There Were Subsequent Storm Warnings in February 2018 After the Reassurances and Denials in the January 8, 2018 Press Release.**

Plaintiffs' Opposition Brief points to reassurances and denials the Company allegedly made in a January 8, 2018 press release it issued in response to OTC Markets' inquiry letter. Plaintiffs characterize RenovaCare's January 8, 2018 press release statements as "full-throated denials," "aggressively misleading," and "unabashed lies" about the paid stock promotion campaign and the Company and Rayat's alleged involvement. (ECF 147, Pls.' Opp. Br. at 20-21.)[3] Plaintiffs argue that they acted reasonably in waiting more than three years to file their case because

---

[3] Defendants strongly disagree with Plaintiffs' self-serving characterization of the January 8, 2018 press release statements. The January 8, 2018 press release provided specific answers to a list of specific questions RenovaCare received from OTC Markets, and it disclosed that RenovaCare, through its investor relations agencies, paid $90,005 for out-of-pocket costs incurred by the investor relations agencies relating to the dissemination of the StreetAuthority publications. (SAC ¶ 226.)

these reassurances and denials in the January 8, 2018 press release allayed their concerns about the paid stock promotion campaign and the Company and Rayat's alleged involvement.

Even assuming these statements in the January 8, 2018 press release to be sufficient reassurances, Plaintiffs' argument ignores that the February 2018 Storm Warnings were revealed after the January 8, 2018 press release. Not only did the February 2018 Storm Warnings come to light weeks after the January 8, 2018 press release, but they provided investors with more information and more specific accusations about the Company and the specific concerns that form the basis of the claims in the SAC. For example, as the SAC itself acknowledges, the February 2018 Storm Warnings included accusations that RenovaCare paid the StreetAuthority for the stock promotion campaign and was involved in a pump-and-dump scheme. (SAC ¶¶ 253, 280.) Therefore, it was simply not reasonable for Plaintiffs to continue to take comfort in the Company's January 8, 2018 press release statements when in the weeks that followed, they were alerted to new and more severe storm warnings—with specific factual accusations—about the paid stock promotion campaign and the Company and Rayat's alleged involvement.

As a matter of logic and law, the February 2018 Storm Warnings undermined any reassurances that investors may have taken (reasonably or not) from the earlier January 8, 2018 press release statements. *See Pension Tr. Fund.*, 730 F.3d at 277.

6

### 2.   RenovaCare Did Not Specifically and Expressly Deny the February 2018 Storm Warnings.

Plaintiffs' challenge to the statute of limitations defense is unavailing also because the Company did not issue specific and express reassurances and denials of the February 2018 Storm Warnings. In particular, Defendants did not issue any specific and express reassurances and denials of the February 12, 2018 investigative reports accusing RenovaCare of being involved in a pump-and-dump scheme and paying the StreetAuthority for the promotions campaign through a third-party investor relations firm.

Plaintiffs attempt to excuse their inaction upon discovering the February 2018 Storm Warning by pointing to RenovaCare's February 12, 2018 and March 5, 2018 press releases (which they quote in their SAC). (Pls.' Opp. Br. at 10-11.) But these press releases did not specifically and expressly deny the paid stock promotion campaign or the Company and Rayat's alleged involvement.[4]

The February 12 and March 5, 2018 press releases were shareholder alerts issued by RenovaCare informing investors that the Company believed there was an orchestrated "short and distort" campaign taking place that was intended to drive

---

[4] RenovaCare's February 15 and February 21, 2018 press releases discussed news about the Company's ongoing business, an FDA meeting and a patent victory. (Pls.' Opp. Br. at 11 (quoting SAC ¶¶ 275-76).) Neither of these press releases can reasonably be considered specific and express reassurances and denials of the paid stock promotion campaign and the Company and Rayat's alleged involvement.

down the Company's stock price and that RenovaCare was planning to report this short-and-distort trading activity to the securities regulators. While these press releases were issued in the wake of the StreetSweeper's investigative reporting and suspicious trading that was taking place in the month of February, neither the February 12 nor the March 5, 2018 press release included statements **specifically** and **expressly** denying a paid stock promotion campaign and the Company and Rayat's alleged involvement. In fact, the press releases did not address the paid stock promotion campaign at all. Nor did the March 5, 2018 press release even address—let alone seek to reassure investors about—the February 23, 2018 OTC Markets' downgrade of RenovaCare's stock to Caveat Emptor status and the questions OTC Markets raised about the circumstances of the stock promotion campaign that resulted in the downgrade.

Plaintiffs' own allegations in the SAC quoting the February 12 and March 5, 2018 press releases acknowledge that neither press release specifically and expressly denied the paid stock promotion campaign and the Company and Rayat's alleged involvement. (*See* SAC ¶¶ 255-56 for the quoted statements from the February 12, 2018 press release, and SAC ¶¶ 257-60 for the quoted statements from the March 5, 2018 press release.) In fact, Plaintiffs' pleading repeatedly points out that RenovaCare did *not* specifically respond to the StreetSweeper's accusations of wrongful conduct, including the paid stock promotion campaign. As Plaintiffs

8

themselves concede in their own pleading: "RenovaCare's [February 12, 2018] response was inadequate because it failed to use this opportunity to clarify *or specifically address the article's contents*," (SAC ¶ 255 (emphasis added)), and RenovaCare's March 5, 2018 response "*fail[ed] once again to address the content of the StreetSweeper Article*" and "*omit[ed] any sort of explanation, meaningful response, or clarification related to StreetAuthority's promotion*." (*Id.* ¶¶ 257, 261 (emphasis added).)

Given Plaintiffs' own allegations in the SAC about the failure of RenovaCare's February 12 and March 5, 2018 press releases to address the paid stock promotion campaign and the Company and Rayat's alleged involvement, no reasonable investor would have relied upon the February 12 and March 5, 2018 press releases to "dissipate" or "allay" the concerns revealed by the February 18 Storm Warnings. These press releases therefore did not excuse Plaintiffs' inaction in waiting more than three years to file their case after first discovering the February 2018 Storm Warnings. *See Monroe County Employees' Ret. System v. YPF Sociedad Anonima*, 15 F. Supp. 3d 336, 352-53 (S.D.N.Y. 2014) (rejecting plaintiffs' argument that general "optimistic public announcements [ ] neutralized the risks reported by the media" and finding that "[n]one of these 'reassurances' delayed the running of the statute of limitations").

9

**II.     Plaintiffs Did Not Properly Plead a Section 9(a)(2) Market Manipulation Claim Against Bhogal.**

In support of their Section 9(a)(2) market manipulation claim against Bhogal, Plaintiffs point to Bhogal's *sales* of his RenovaCare stock.  (Pls.' Opp. Br. at 27.) Bhogal's stock *sales*, however, are irrelevant to the specific market manipulation claim Plaintiffs allege.  Plaintiffs' claim is based on the allegation that Bhogal's motive for selling his stock was to profit from the alleged pump-and-dump scheme. (*Id.* at 7 ("Defendants quickly took advantage of their stock pump.  [SAC] ¶ 194. . . Bhogal and Sidhu sold more than 100,000 shares at historically high prices.  [SAC] ¶¶ 196-97.").)   And the SAC fails to plausibly allege that Bhogal harbored the required "manipulative intent" when *selling* his RenovaCare shares that is necessary to support the Section 9(a)(2) market manipulation claim.

Plaintiffs fare no better by pointing to their allegations of Bhogal's other trading activity, *i.e.*, that Bhogal entered two unexecuted *buy* orders "that were intended to manipulate the market and maintain the Company's artificially inflated share price."  (SAC ¶ 18.)  The SAC further alleges:

> Bhogal also engaged in manipulative trading during this period.  On February 20 and 21, 2018, Bhogal placed several buy orders for RenovaCare stock to further support Renovacare's share price and trading volume.  Although these orders were never executed, they created a false impression of demand for the stock at the order prices.  At the time, RenovaCare stock reached a new all-time high of over $10.50 per share, and Bhogal held millions of shares of RenovaCare stock at low or no cost basis.  These buy orders were intended to manipulated the market for the purpose of inducing its purchase or sale by others.

10

(*Id.* ¶ 283.)

These allegations about unexecuted buy orders and Bhogal's alleged intent for doing so are conclusory and lack sufficient supporting factual details. The SAC fails to allege at what price Bhogal entered the orders and for what amount of stock to buy. The SAC also fails to allege facts supporting the conclusory allegation about Bhogal's intent in entering the two unexecuted buy orders. Therefore, the SAC fails to allege a plausible Section 9(a)(2) claim against Defendant Bhogal and Count I should be dismissed as to him.

### III. Plaintiffs Did Not Properly Plead a False Statement Claim For All 13 RenovaCare Public Reports.

#### A. Plaintiffs Concede That Defendants Had No Duty to Disclose the Paid Stock Promotion Campaign in 12 of the 13 Public Reports.

In response to Defendants' argument that they had no duty to disclose the paid stock promotion campaign, Plaintiffs focus their opposition argument only on RenovaCare's alleged disclosure duty for the January 8, 2018 press release. (Pls.' Opp. Br. at 32-37.) Plaintiffs entirely ignore, and do not address, any of the remaining *twelve* RenovaCare public reports they cited in the SAC. (*See* SAC ¶¶ 321-53). Specifically, Plaintiffs offer no argument whatsoever that there was a similar disclosure duty for any of the remaining twelve RenovaCare public reports they allege in the SAC were materially false and misleading because they omitted discussion of the paid stock promotion campaign. By failing to address this

11

argument, Plaintiffs waived any opposition to Defendants' argument that they had no duty, affirmative or otherwise, to disclose the paid stock promotion campaign and the Company and Rayat's alleged involvement in these twelve RenovaCare public reports. *See Summers v. PHH Mortg. Corp.*, No. CV2206726GCTJB, 2023 WL 5434336, at \*4 (D.N.J. Aug. 23, 2023) (holding a failure to raise arguments in opposition to a motion to dismiss results in waiver). Therefore, at a minimum, Plaintiffs' false statement claim in Count II of the SAC against RenovaCare, Rayat and Bhogal should be dismissed to the extent the claim is based on these twelve RenovaCare public reports.

**B. Plaintiffs Fail to Plead That Rayat and Bhogal Were Each "Makers" of the Alleged False Statements in January 8, 2018 Press Release.**

Plaintiffs argue that Rayat and Bhogal were the "makers" of the alleged false statements contained in the January 8, 2018 press release because they had "ultimate authority" over that press release. (Pls.' Opp. Br. at 30-32.) In doing so, Plaintiffs impermissibly lump together the factual allegations relevant to Bhogal and Rayat collectively without addressing them individually as required by the PSLRA pleading standards. *See Winer Fam. Tr. v. Queen*, 503 F.3d 319, 335-36 (3d Cir. 2007) ("The PSLRA requires plaintiffs to specify the role of each defendant, demonstrating each defendant's involvement in misstatements and omissions."). As Defendants pointed out in their Opening Brief, when the factual allegations about

12

Rayat and Bhogal's alleged participation in the drafting of the January 8, 2018 press release are considered separately, they fall short of pleading a "maker" claim against each individual defendant under *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011).

> **C.    Plaintiffs Concede that Rayat and Bhogal Were Not the "Makers" of the Alleged False Statements in All 13 RenovaCare Public Reports.**

Furthermore, Plaintiffs' Opposition Brief only addresses Defendants' *Janus* "maker" argument for RenovaCare's January 8, 2018 press release and not for any of the remaining *twelve* RenovaCare public reports.  (Pls.' Opp. Br. at 30-32.) Plaintiffs have thereby conceded Defendants' *Janus*-based argument regarding the insufficiency of the allegations that Bhogal was the maker of any alleged false statements contained in these remaining twelve RenovaCare public reports cited in the SAC.  Indeed, Plaintiffs have no choice but to do so, as there are simply *no allegations that Bhogal had any involvement at all in drafting these reports*.  (*See* SAC ¶¶ 321-53.)  Therefore, at a minimum, Plaintiffs' false statement claims in Count II of the SAC against Bhogal should be dismissed as to these twelve RenovaCare public reports.

Likewise, Plaintiffs have waived any challenge to Defendants' *Janus*-based argument that the SAC contains insufficient facts alleging that Rayat was the maker of any false statements in the **eight** public reports cited in the SAC that were issued

13

***before Rayat became an officer (in March 2018) and director (in June 2018) which Rayat did not sign.*** (*See* SAC ¶¶ 321-53.) Therefore, at a minimum, Plaintiffs' false statement claim in Count II of the SAC against Rayat should be dismissed as to these eight RenovaCare public reports.

## IV.    Plaintiffs Did Not Properly Pled a Scheme to Defraud Claim.

In their Opposition Brief, Plaintiffs clarify that the fraudulent scheme underlying their scheme to defraud claim in Count III is a pump-and-dump scheme and not a scheme to conceal the paid stock promotion campaign in the thirteen RenovaCare public reports Plaintiffs cited in the SAC. But even when recast as a pump-and-dump scheme, Plaintiffs still fail to point to inherently deceptive conduct attributable to each RenovaCare, Rayat and Bhogal that is independent of the false statements they allegedly made in the RenovaCare public reports. *SEC v. Rio Tinto PLC*, 41 F.4th 47, 53 (2d Cir. 2022).

The SAC fails to do so. The publications that allegedly caused RenovaCare's stock price to rise as part of the pump-and-dump scheme were StreetAuthority's publications, not RenovaCare's public reports. Indeed, the SAC does not allege that the false statements (by omission) allegedly contained in RenovaCare's thirteen public reports caused the stock price to rise as part of the pump-and-dump scheme. Nor does the SAC allege that the RenovaCare and Rayat sold or dumped their shares,

14

only that Bhogal sold shares.  This claim is therefore deficient even when recast as a pump-and-dump scheme.

## **CONCLUSION**

For the reasons discussed above, and as set forth more fully in the Defendants' Memorandum of Law in Support of Their Motion to Dismiss, the Court should dismiss Plaintiffs' SAC with prejudice.[5]

Dated:  January 10, 2024
        New York, New York

Respectfully submitted,

**COZEN O'CONNOR**

*/s/ Joseph Dever*
Joseph Dever
Tamar Wise (*pro hac vice*)
Connor Rowinski (*pro hac vice*)
3 WTC, 175 Greenwich St. – 55th Floor
New York, New York 10007
(212) 509-9400
jdever@cozen.com
twise@cozen.com
crowinski@cozen.com

*Attorneys for Defendants RenovaCare, Inc., Harmel Rayat, Jatinder Bhogal and 1420527 Alberta Ltd.*

---

[5] The SAC should be dismissed with prejudice.  Plaintiffs should not be afforded the opportunity to try to plead around the two-year statute of limitations defense that appears on the face of the SAC, and they cannot offer any explanation why affording them yet a fourth opportunity to plead their case will correct the other pleading deficiencies Defendants have pointed out in the SAC.  Allowing Plaintiffs to file a third amended complaint would be futile.  *See In re NAHC*, 306 F.3d at 1332 (3d Cir. 2002) (affirming dismissal with prejudice where amendment "would be futile").

15