**DUANE MORRIS LLP**
Michael J. Rinaldi (No. 000362006)
Ryan F. Monahan (admitted *pro hac vice*)
Bryan N. Shapiro (admitted *pro hac vice*)
30 South 17th Street
Philadelphia, Pennsylvania 19103
(215) 979-1000 (telephone)
(215) 979-1020 (facsimile)
MJRinaldi@duanemorris.com
RFMonahan@duanemorris.com
BShapiro@duanemorris.com

*Attorneys for Defendant*
*Capitol Information Group, Inc.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| | : |
| IN RE RENOVACARE, INC. | : Civil Action No. 21-cv-13766 |
| SECURITIES LITIGATION | : **Motion Date**: January 16, 2024 |
| | : **Oral Argument Requested** |
| | : |

## DEFENDANT CAPITOL INFORMATION GROUP, INC.'S
## REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

# **TABLE OF CONTENTS**

I.  Ms. Deidan Has Failed to Adequately Plead That CIG Is the Successor-in-Liability to StreetAuthority, LLC..........................................2

    A.  The APA Is Integral to the Second Amended Complaint...................4

    B.  The APA Is Indisputably Authentic................................................6

    C.  No Discovery is Needed to Resolve Plaintiff's Successor Liability Claim ....................................................................................9

    D.  Ms. Deidan Should Not Be Given a Fourth Bite at the Apple...........12

II.  Ms. Deidan's Claims Are Time-Barred................................................13

III. Ms. Deidan Is Not Entitled to the Fraud-On-the-Market or the *Affiliated Ute* Presumptions.................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A&E Harbor Transp., Inc. v. Tri-Coastal Design Grp., Inc.*
No. 20-18509, 2021 WL 663747 (D.N.J. Feb. 19, 2021)............................. 3, 5

*Allegheny Energy, Inc. v. DQE, Inc.*
171 F.3d 153 (3d Cir. 1999).................................................................. 11

*Atl. Neurosurgical Specialists, PA ex rel. Patient DC v.*
*Anthem Blue Cross & Blue Shield*
No. 20-10415, 2021 WL 4148149 (D.N.J. Sept. 10, 2021).............................. 9

*B&S Int'l Trading Inc. v. Meer Enters. LLC*
No. 2:18-cv-11546, 2020 WL 5088257 (D.N.J. Aug. 28, 2020)....................... 6

*Barcelo v. Teva Pharmaceuticals*
No. H-20-00017, 2020 WL 1666116 (S.D. Tex. Apr. 2, 2020) ..................... 13

*Brauser Real Estate, LLC v. Meecorp Capital Markets, LLC*
No. 06-cv-1816, 2008 WL 324402 (D.N.J. Feb. 4, 2008)........................ 10-11

*Buck v. Endo Pharm., Inc.*
No. 19-837, 2019 WL 1900475 (E.D. Pa. Apr. 29, 2019)............................. 12

*Burnett v. Halyard Health, Inc.*
No. 3:16-cv-119, 2016 WL 11746743 (N.D.N.Y. Oct. 12, 2016)........... 3, 6, 12

*Catalent, Inc. v. Danby*
No. 3:20-cv-12368, 2020 WL 13856504 (D.N.J. Nov. 2, 2020).................... 11

*Collins v. Mary Kay, Inc.*
874 F.3d 176 (3d Cir. 2017)................................................................. 10

*Crear v. Portfolio Servicing, Inc.*
760 F. App'x 291 (5th Cir. Jan. 22, 2019)................................................. 8

*Desai v. Deutsche Bank Sec. Ltd.*
573 F.3d 931 (9th Cir. 2009)................................................................ 15

*E-Quest Mgmt., L.L.C. v. Shaw*
433 S.W.3d 18 (Tex. App.–Houston [1st Dist.] 2013) .....................................9

*Giles v. Phelan, Hallinan & Schmieg, LLP*
901 F. Supp. 2d 509 (D.N.J. 2012) .........................................................5

*Hofman v. Time Warner Cable Inc.*
Civ. No. 12-978, 2013 WL 2460121 (D.N.J. June 6, 2013).........................4-5

*Hull v. Global Digital Solutions, Inc.*
No. 16-5153, 2017 WL 6493148 (D.N.J. Dec. 19, 2017) ....................... 14-15

*In re Burlington Coat Factory Securities Litigation*
114 F.3d 1410 (3d Cir. 1997).............................................................4-5

*Instructional Sys., Inc. v. Computer Curriculum Corp.*
614 A.2d 124 (N.J. 1992) .................................................................. 10

*Janus Capital Group, Inc. v. First Derivative Traders*
564 U.S. 135 (2011) ...................................................................1, 10-11

*Kikuchi v. Silver Bourbon, Inc.*
No. 20-CV-2764, 2021 WL 2210915 (E.D. La. June 1, 2021) ........................9

*Marton v. Carosella & Russo Enterprises, Inc.*
No. 15-3791, 2015 WL 9287036 (E.D. Pa. Sept. 23, 2015)...........................5

*MSKP Oak Grove, LLC v. Venuto*
875 F. Supp. 2d 426 (D.N.J. 2012) .......................................................7

*Munezon v. Peters Advisors, LLC*
553 F. Supp. 3d 187 (D.N.J. Aug. 11, 2021) .............................................3

*Oshiver v. Levin, Fishbein, Sedran & Berman*
38 F.3d 1380 (3d Cir. 1994)............................................................... 14

*Rabin v. NASDAQ OMX PHLX LLC*
712 F. App'x 188 (3d Cir. 2017) ..........................................................15

*Red Hawk Fire & Security, LLC v. Siemens Industry Inc.*
449 F. Supp. 3d 449 (D.N.J. 2020) .......................................................5-6

iv

*Schinnerer v. Wellstar Health, Inc.*
    No. 1:22-cv-383-TWT, 2022 WL 11964527 (N.D. Ga. Oct. 20, 2022)................................................................................8

*Stegall v. Casillas*
    No. 2:16-CV-381, 2016 WL 6397668 (S.D. Tex. Oct. 28, 2016).....................9

**STATUTES**

15 U.S.C. § 78u–4(b)(2)...............................................................................12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9 ........................................................................................12

Fed. R. Civ. P. 11........................................................................................7

Fed. R. Civ. P. 12........................................................................................6

Fed. R. Civ. P. 56........................................................................................6

Fed. R. Evid. 901 ......................................................................................8

## <u>REPLY</u>

It is undisputed that CIG[1] did not make any of the alleged misrepresentations or omissions at issue in this case.  Thus, successor liability is the only possible theory on which Named Plaintiff Diane Deidan could pursue claims against CIG. But CIG is not the successor-in-liability to StreetAuthority, LLC. CIG purchased some assets from StreetAuthority, LLC pursuant to the APA. According to the plain terms of the APA, CIG did not assume liabilities from StreetAuthority, LLC related to this action. Ms. Deidan *never* addresses the substance of that argument. Rather, she asks the Court to ignore the APA—and, indeed, her own lack of any allegations that CIG had any involvement in the alleged securities fraud—to keep CIG in this case, if only to defer its inevitable dismissal.  But such a result would be contrary to controlling law and would unnecessarily subject CIG to significant litigation expense for completely unnecessary discovery and further motion practice.

*First*, Ms. Deidan argues that the APA should not be considered because it is not integral to the complaint. Her claim against CIG, however, *depends* on the existence of the APA. Her coy efforts to not "explicitly refer" to the APA are unavailing, and such a ploy is routinely rejected by courts in this jurisdiction.

---

[1] Capitalized terms not otherwise defined have the same meaning as they did in the Memorandum of Law in Support of CIG's Motion to Dismiss (ECF 136).

*Second*, she challenges the method by which the APA was submitted to the Court. Putting aside the fact that an attorney declaration is an acceptable method to submit a document on a motion to dismiss and that the document is indisputably authentic, for the avoidance of doubt, CIG attaches to this reply the declaration of Phillip A. Ash, who signed the APA on behalf of CIG and who attests that he has personal knowledge of its contents and that the agreement provided to the Court is, in fact, the APA.

*Third*, Ms. Deidan asks the Court for discovery related to the exceptions to the general rule that a successor is not liable for a predecessor's prior conduct. But exceptions to that rule do not exist under Texas law, which governs the APA. And, even if they did, Ms. Deidan *has never pled those exceptions.* She should not be afforded another opportunity to plead exceptions when she has had multiple opportunities to do so already, and has even failed in her response to provide facts that she would plead if afforded yet another opportunity.

Ms. Deidan has not and cannot plead successor liability against CIG. For the reasons set forth in CIG's opening brief and in this reply, her claims against CIG should be dismissed with prejudice.

## I.    Ms. Deidan Has Failed to Adequately Plead That CIG Is the Successor-in-Liability to StreetAuthority, LLC

Based on a single allegation in the Second Amended Complaint—that, in early 2019 (i.e. after the alleged securities fraud was committed), "StreetAuthority,

2

LLC was acquired by Investing Daily, a division of Capitol Information Group, Inc." (Second Am. Compl. ¶ 42)—Ms. Deidan asserts a variety of securities fraud claims against CIG.

But Ms. Deidan *never actually pleads* that CIG is a successor-in-liability to StreetAuthority, LLC.  Nor does she even attempt to fill in the gaps in her allegations in her response to CIG's motion to dismiss. (*See* Resp. at 2–14 (not referencing CIG in the facts of her brief).) Ms. Deidan expects the Court to overlook the deficiencies in her allegations and to simply allow her to take wide-ranging discovery in the hope of finding a successor liability theory that has never been alleged.  Ms. Deidan's failure to plead the facts of successor liability is a standalone basis to dismiss the Second Amended Complaint as to CIG. [2]

But the Court should dismiss Ms. Deidan's claims against CIG for another reason: She could not allege successor liability against CIG even if she tried. The plain terms of the APA foreclose any argument of successor liability.  (CIG's Mot. at 11–20.) Ms. Deidan does not dispute the substance of CIG's arguments. Instead,

---

[2] *See, e.g., A&E Harbor Transp., Inc. v. Tri-Coastal Design Grp., Inc.*, No. 20-18509, 2021 WL 663747, at *2 (D.N.J. Feb. 19, 2021) (granting motion to dismiss for failure to plead "sufficient facts to make plausible . . . successor liability"), *dismissed with prejudice* at 2021 WL 1840039 (D.N.J. May 7, 2021); *Munezon v. Peters Advisors, LLC*, 553 F. Supp. 3d 187, 209 (D.N.J. Aug. 11, 2021) (dismissing complaint when specific allegations regarding "*de facto* merger" exception were missing from the complaint because "[w]ithout them . . . [plaintiff] fails to plead successor liability"); *Burnett v. Halyard Health, Inc.*, No. 3:16-cv-119, 2016 WL 11746743, at *3 (N.D.N.Y. Oct. 12, 2016) (granting motion to dismiss when plaintiff failed to allege "any facts to support that claim, such as continuity of ownership, management, personnel, or location of operations").

she makes three procedural arguments: (i) the APA is not integral to the Second Amended Complaint; (ii) the APA is not properly authenticated; and (iii) dismissal is premature because she is entitled to discovery. All of these arguments are unavailing and are an effort to delay consideration of an issue squarely before the Court.

### A.     The APA Is Integral to the Second Amended Complaint

The APA is integral to Ms. Deidan's claims against CIG because it is a document "to which [] plaintiff refers in the complaint or on which [her] claims in the complaint were based." *Hofman v. Time Warner Cable Inc.*, Civ. No. 12-978, 2013 WL 2460121, at \*4 (D.N.J. June 6, 2013). Here, Plaintiff alleges that CIG "acquired" assets from StreetAuthority, LLC and cites to a press release that states "Capitol Information Group . . . ***acquired the assets*** of Street Authority[, LLC]. . ." (*Id.* ¶ 42, n.8). Moreover, Ms. Deidan's claims against CIG are based on the existence of the APA. If there were no APA between CIG and Street Authority, LLC, there would be no purported basis to name CIG as a defendant in this action.

Ms. Deidan argues that she does not "explicitly reference[]" the APA. (Resp. at 45.) But there is no requirement that the document be "explicitly reference[d]." In fact, the Court of Appeals *rejected* this very argument in *In re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410 (3d Cir. 1997). There, the Court of Appeals concluded that "what is critical is whether the claims in the complaint are

4

'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited. [Plaintiff] cannot prevent a court from looking at the texts of the documents on which its claim is based by failing to attach or explicitly cite them." *Id.* at 1426; *see also Hofman*, 2013 WL 2460121, at *7 (rejecting same argument). Her claims against CIG must be based on the fact that it purchased assets from StreetAuthority, LLC pursuant to the terms of the APA. Any question or uncertainty as to Ms. Deidan's claims is due to a deficiency in her own pleadings, and is a standalone basis to dismiss the Second Amended Complaint. *See A&E Harbor Transp., Inc.*, 2021 WL 663747, at *2.

Ms. Deidan cites to three cases to argue that the APA is not integral to her Second Amended Complaint, none of which relates to an asset purchase agreement or successor liability. (Resp. at 45.) In *Marton v. Carosella & Russo Enterprises, Inc.*, No. 15-3791, 2015 WL 9287036 (E.D. Pa. Sept. 23, 2015), the defendant attached a plethora of company records to *rebut* a claim that defendant violated the Family Medical Leave Act. In that instance, the Court had no trouble concluding that the complaint did not "rel[y] in any way upon the documents submitted by [d]efendant." *Id.* at *2. In *Giles v. Phelan, Hallinan & Schmieg, LLP*, 901 F. Supp. 2d 509 (D.N.J. 2012), the mortgage contracts attached to the motion to dismiss had nothing to do with the "abusive litigation practices and excessive fees" alleged in the complaint. *Id.* at 520. Finally, *Red Hawk Fire & Security, LLC v. Siemens*

*Industry Inc.,* 449 F. Supp. 3d 449 (D.N.J. 2020), actually *supports* CIG's position. There, the court determined that a letter referred to in the complaint and distributor agreements were integral to the complaint and therefore could be considered at the motion to dismiss stage. *Id.* at 461. The court declined to consider one letter attached to the motion to dismiss, which the complaint "neither relie[d] on nor refer[red] to." *Id.*

Here, by contrast, Ms. Deidan's claims against CIG *depend* on the fact that it purchased assets from StreetAuthority, LLC pursuant to the terms of the APA. Indeed, that is the only allegation against CIG in the entire Second Amended Complaint. *See Burnett*, 2016 WL 11746743 at *3 (referencing merger agreement in granting motion to dismiss on successor-liability claim); *B&S Int'l Trading Inc. v. Meer Enters. LLC*, No. 2:18-cv-11546, 2020 WL 5088257, at *4 (D.N.J. Aug. 28, 2020) (finding an asset purchase agreement integral to complaint in successor-liability claim). The APA is therefore integral to the Second Amended Complaint and should be considered by the Court.

## B.    The APA Is Indisputably Authentic

Ms. Deidan's challenge to the procedure by which CIG submitted the APA through attorney declaration is misguided. Federal Rule of Civil Procedure 12 (unlike Rule 56) has no requirement that a document be submitted with an affidavit, attorney or otherwise. *Compare* Fed. R. Civ. P. 12 (no requirement for an

6

affidavit or declaration) *with* Fed. R. Civ. P. 56(c)(4) ("[A]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). Thus, a court can consider an asset purchase agreement or similar agreement at the motion to dismiss stage when it is deemed integral to the complaint and is attached to a motion to dismiss *without any sort of declaration. See, e.g., MSKP Oak Grove, LLC v. Venuto*, 875 F. Supp. 2d 426, 432, n.2 (D.N.J. 2012) (considering an asset purchase agreement attached as an exhibit to defendant's brief in support of motion to dismiss without supporting affidavit). Thus, Ms. Deidan's challenge to how the APA was submitted—without actually challenging its authenticity—is not a hurdle to the Court's consideration of the APA at the motion to dismiss stage.

Even so, the authenticity of the APA could not be seriously disputed. The authenticity of the APA was supported by *two attorney signatures*—Mr. Monahan's declaration attaching the APA, and Mr. Rinaldi's signature on the motion—representing to the court that the "factual contentions have evidentiary support." Fed. R. Civ. P. 11(b)(3). Moreover, as Ms. Deidan concedes (Resp. at 45), attorney declarations are permissible when the attorney *has personal knowledge* of the authenticity of the document. Here, Duane Morris LLP served as deal counsel to CIG as purchaser (*see* APA § 11(f) (listing Duane Morris for all

7

notices to be sent to CIG)) and thus has personal knowledge of the authenticity of the APA. *See Crear v. Portfolio Servicing, Inc.*, 760 F. App'x 291, 295 (5th Cir. Jan. 22, 2019) (permitting attorney declaration to establish authenticity of letters when "[a]lthough he did not mail the letters himself, he averred he had personal knowledge of the facts stated in his declaration based on his experience working at the law firm during the time the letters were sent . . . and his review of the firm's business records"). For the avoidance of doubt, attached hereto as "Exhibit A" is a supplemental declaration of Mr. Monahan further attesting to his knowledge of the APA through Duane Morris's properly maintained business records.

The APA is also indisputably authentic based on its "appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances." Fed. R. Evid. 901(b). CIG submitted the entire closing binder, with handwritten signatures by representatives of CIG and StreetAuthority, LLC, and all its schedules and exhibits, which also contain signed board resolutions and certificates from *both* the states of Delaware and Texas. *See Schinnerer v. Wellstar Health, Inc.*, No. 1:22-cv-383-TWT, 2022 WL 11964527, at *5 (N.D. Ga. Oct. 20, 2022) (relying upon Rule 901(b) to reject challenge to authenticity of contract when contract was "undoubtedly central to" claim and contract bore defendant's logo and "identifies itself as the 'Eligible Team Member Performance Pay Plan'").

8

Also for the avoidance of doubt and in response to Ms. Deidan raising the specter of inauthenticity, CIG submits as "Exhibit B" the declaration of Mr. Ash, who signed the APA on behalf of CIG. Even if Ms. Deidan had actually contested the authenticity of the APA, courts routinely rely upon similar affidavits to establish the authenticity of an agreement on a motion to dismiss.[3] Ms. Deidan's argument about the way in which the APA was submitted is baseless anyway, but CIG nonetheless submits Mr. Monahan's supplemental declaration and Mr. Ash's declaration to put the matter to bed.

### C. No Discovery is Needed to Resolve Plaintiff's Successor Liability Claim

Ms. Deidan suggests (Resp. at 46–47) that she is entitled to discovery regarding the exceptions to the general rule that "absent an express assumption of liability, an entity that acquires another's assets is not a successor and cannot be held liable for a liability that is not expressly assumed." *Stegall v. Casillas*, No. 2:16-CV-381, 2016 WL 6397668, at *4 (S.D. Tex. Oct. 28, 2016) (citing *E-Quest Mgmt., L.L.C. v. Shaw*, 433 S.W.3d 18, 23–24 (Tex. App.–Houston [1st Dist.] 2013, *reh'g overruled*)). But no exceptions exist under Texas law, which governs

---

[3] *See, e.g., Atl. Neurosurgical Specialists, PA ex rel. Patient DC v. Anthem Blue Cross & Blue Shield*, No. 20-10415, 2021 WL 4148149, at *2, n.4 (D.N.J. Sept. 10, 2021) (Cecchi, J.) (rejecting authentication argument at motion to dismiss stage and relying upon declaration from "senior legal specialist" employed by defendants "who provided a sworn statement of her personal knowledge that this document represents the Plan's governing policies"); *Kikuchi v. Silver Bourbon, Inc.*, No. 20-CV-2764, 2021 WL 2210915, at *3 (E.D. La. June 1, 2021) (authenticating employee contract for motion to dismiss based on affidavit of records custodian).

the APA. (*see* APA § 11(i); *see* CIG's Mot. at 12–13 (discussing Texas law).) That should be the end of the inquiry, and the Court should grant CIG's motion to dismiss on this basis alone.

Plaintiff makes two arguments in a footnote in an attempt to muddy the waters. (Resp. at 46 n.17.) Putting aside the fact that Plaintiff herself argues that arguments made in footnotes should be considered waived (Resp. at 37), even if considered, both arguments fail.

*First*, Plaintiff argues that, because the Court cannot authenticate the APA, it should ignore its choice-of-law provision. For the reasons set forth above (*supra* Section I.B.), the APA is indisputably authentic.

*Second*, Plaintiff argues that a factual record needs to be established to answer whether Texas or New Jersey law applies. But Plaintiff fails to provide any "facts" the Court would need to ascertain to resolve a straightforward contract question. Here, "New Jersey choice-of-law rules provide that '[o]rdinarily, when parties to a contract have agreed to be governed by the laws of a particular state, New Jersey courts will uphold the contractual choice.'" *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 183–84 (3d Cir. 2017) (quoting *Instructional Sys., Inc. v. Computer Curriculum Corp.*, 614 A.2d 124, 133 (N.J. 1992)). For this reason, "courts in [the Third Circuit] have repeatedly honored choice-of-law provisions that explicitly state a particular governing law without regard to conflicts of law." *Brauser Real*

10

*Estate, LLC v. Meecorp Capital Markets, LLC*, No. 06-cv-1816, 2008 WL 324402, at *3 (D.N.J. Feb. 4, 2008) (citing *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 159 (3d Cir. 1999)).

Here, Section 11(i) of the APA provides "[t]his Agreement *shall* be governed by the laws of the State of Texas, *without regard to principles of conflicts of laws*." (Emphasis added.) That is the *exact* type of provision courts in this district enforce at the motion to dismiss stage, without conducting a choice-of-law analysis. *See id.; Catalent, Inc. v. Danby*, No. 3:20-cv-12368, 2020 WL 13856504, at *5 (D.N.J. Nov. 2, 2020) (finding based on nearly identical contract provision "the parties' clear and unambiguous intention to apply Delaware law to the Agreements" and that "based on the contract language alone, Delaware law should govern").

But, even if New Jersey law were to apply, Ms. Deidan has failed to plead any of the exceptions to the general rule of successor liability that a party is not liable, except for those liabilities expressly assumed. Ms. Deidan is not entitled to discovery on claims or allegations that she hasn't even pled. [4] Nor could she plead

---

[4] Ms. Deidan additionally argues that CIG waived the argument that it was not the "maker of the statement" by raising it in a footnote (Resp. at 37). Putting aside that the argument wasn't waived, CIG argues on page 21 of its brief—*in the text and not a footnote*—that "Ms. Deidan failed to allege[] that CIG made any statement," and then refers the Court back to the prior footnote in which the Supreme Court's decision in *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135 (2011), is discussed. Put simply, other than that CIG purchased certain assets, Ms. Deidan *has failed to make any allegations against CIG, including that it was the "maker" of any of the alleged fraudulent statements*. Thus, Ms. Deidan has failed to meet her

11

them even if afforded the opportunity. The mere purchase of assets from another entity does not meet any of the exceptions.[5]

### D.    Ms. Deidan Should Not Be Given a Fourth Bite at the Apple.

Despite not being a named party in the SEC complaint (from which Ms. Deidan cuts and pastes the bulk of her allegations), CIG has been dragged along in this case. After multiple amended complaints, Ms. Deidan has still only asserted one allegation against CIG, and has failed to update or to amend that allegation. *See* 15 U.S.C. § 78u–4(b)(2); Fed. R. Civ. P. 9(b). Moreover, Plaintiff never argues in her response that, if afforded an opportunity to re-plead, she would be able to assert additional or different allegations against CIG to support a successor liability claim. That, alone, is a basis to dismiss with prejudice the Second Amended Complaint as to CIG. *See, e.g.*, *Burnett*, 2016 WL 11746473, at *2 (dismissing

---

pleading burden under the Private Securities Litigation Reform Act, 15 U.S.C. § 78u–4(b)(2), and Federal Rule of Civil Procedure 9(b), both of which require Ms. Deidan to plead facts as to each defendant with "particularity." That Ms. Deidan has not—and cannot—plead as required by the PSLRA and the Rules is not surprising. CIG only purchased the assets *after* the alleged securities fraud happened, and Ms. Deidan has not even attempted to plead facts that CIG is subject to successor liability. CIG's moving papers are replete with this argument, and Ms. Deidan's failure to even address her pleading failure—by making a series of absurd (and wrong) procedural arguments—only serves to highlight that she has no answer for CIG's arguments.

[5] Even if Ms. Deidan were to somehow allege that StreetAuthority, LLC became a subsidiary of or a part of CIG in some way (it did not), that allegation would fail as a matter of law. *See, e.g. Buck v. Endo Pharm., Inc.*, No. 19-837, 2019 WL 1900475, at *4 (E.D. Pa. Apr. 29, 2019) ("We cannot hold Endo liable merely because it purchased American Medical and now holds American Medical as a wholly-owned subsidiary. The parent-subsidiary relationship is insufficient to hold Endo liable for the acts of its subsidiary.").

successor liability claim with prejudice when "allegations of merger are wholly conclusory" and rebutted by plain terms of operative agreement).

*Barcelo v. Teva Pharmaceuticals*, No. H-20-00017, 2020 WL 1666116 (S.D. Tex. Apr. 2, 2020), is instructive. There, the court applied Texas law and dismissed plaintiff's successor liability claim based on the plain terms of the operative agreement. *Id.* at *3. Although the plaintiff asserted facts in support of a fraudulent transfer exception in her motion to dismiss response, the court dismissed with prejudice because, based on the agreement, "[plaintiff] has not shown a sufficient basis in her response for the court to conclude that amendment would be anything but futile . . . . [h]er complaint does not plead, or even mention, successor liability or fraudulent transfer." *Id.* at *5. Ms. Deidan's position is even worse than the plaintiff in *Barcelo*—she has never pled successor liability, or any applicable exception, *and* has not even claimed that she *could* plead such allegations if afforded the opportunity. Her claims should therefore be dismissed with prejudice.

## II.    Ms. Deidan's Claims Are Time-Barred

Ms. Deidan argues that she became aware of her claims in May 2021, when the SEC filed its complaint. But, by her own admission, the stock campaign was "*discovered* in January 2018" (Second Am. Compl. ¶ 5 (emphasis added)) and the damage "had already been done to RenovaCare investors" because the "stock price

13

had not recovered since the OTC Markets downgrade in February 2018 due to the

undisclosed stock promotion scheme" (*id.* ¶ 25).

Ms. Deidan ignores her own allegations, and instead suggests that these were

merely "storm warnings" that did not put her on inquiry notice of any alleged

fraud. (Resp. at 20.) But this *post hoc* characterization is not supported by her own

Second Amended Complaint, which clearly alleges that the stock promotion

campaign was "discovered" in January 2018 and resulted in a *downgrade* of

RenovaCare's stock. Because "the complaint facially shows noncompliance with

the limitations period and the affirmative defense clearly appears on the face of the

pleading," dismissal is warranted. *Oshiver v. Levin, Fishbein, Sedran & Berman*,

38 F.3d 1380, 1384 n.1 (3d Cir. 1994).

## III.    Ms. Deidan Is Not Entitled to the Fraud-On-the-Market or the *Affiliated Ute* Presumptions

Ms. Deidan reasserts her conclusory allegations that "RenovaCare was

followed by securities analysts," and that it "regularly communicated with public

investors" as entitling her to the fraud-on-the-market presumption. (Resp. at 49.)

But these are the type of general allegations rejected by the district court in *Hull v.

Global Digital Solutions, Inc.*, No. 16-5153, 2017 WL 6493148, at *17 (D.N.J.

Dec. 19, 2017). There, the court found insufficient the general claim that the "stock

was traded on the OTC market with moderate to heavy volume" and required

specific allegations including the "weekly trading volume," "reported number of

14

market-makers," and "coverage of a company's stock by '*significant* number of securities analysts.'" *Id.* (emphasis added).  Plaintiff has made none of these specific allegations and, thus, is not entitled to the presumption.

Nor has plaintiff made a showing that she is entitled to the *Affiliated Ute* presumption. (Resp. at 50.) Plaintiff ignores controlling law that the mere failure to disclose the fact of the fraud does not entitle her to the *Affiliated Ute* presumption. As the Third Circuit has recognized, "if nondisclosure of manipulation itself justified a presumption under *Affiliated Ute*, then 'every manipulative conduct case would become an omissions case.'" *Rabin v. NASDAQ OMX PHLX LLC,* 712 F. App'x 188, 193–94 (3d Cir. 2017) (quoting *Desai v. Deutsche Bank Sec. Ltd.*, 573 F.3d 931, 941 (9th Cir. 2009)).

In other words, as to both the fraud-on-the-market presumption and the *Affiliated Ute* presumption—and like so much of Ms. Deidan's complaint against CIG—she has failed to plead sufficient facts. *See id.* at 195–96 (requiring plaintiff to allege facts in support of presumption of reliance).

## CONCLUSION

For all the foregoing reasons, CIG respectfully requests that its motion to dismiss be granted and that all claims asserted against CIG be dismissed with prejudice.

15

**DUANE MORRIS LLP**

Dated:  January 10, 2024

/s/ *Michael J. Rinaldi*
Michael J. Rinaldi (No. 000362006)
Ryan F. Monahan (admitted *pro hac vice*)
Bryan N. Shapiro (admitted *pro hac vice*)
30 South 17th Street
Philadelphia, Pennsylvania 19103
(215) 979-1000 (telephone)
(215) 979-1020 (facsimile)
MJRinaldi@duanemorris.com
RFMonahan@duanemorris.com
BShapiro@duanemorris.com

16

# CERTIFICATE OF SERVICE

I, Michael J. Rinaldi, hereby certify that a true and correct copy of Defendant Capitol Information Group, Inc.'s Reply in Support of its Motion to Dismiss was served on counsel to all parties that have appeared in this action through the Court's electronic filing system.

Dated:  January 10, 2024.

s/ *Michael J. Rinaldi*
Michael J. Rinaldi

17