## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE: RENOVACARE, INC. SECURITIES LITIGATION | Case No. 2:21-cv-13766 (JKS)(ESK) |

## REPLY IN SUPPORT OF THE MOTION TO DISMISS
## BY DEFENDANTS JEETENDERJIT SINGH SIDHU, TREADSTONE FINANCIAL
## GROUP LLC, AND BLACKBRIAR ASSET MANAGEMENT LTD.

Craig Carpenito
Andrew Michaelson (*pro hac vice*)
Mateo de la Torre (*pro hac vice*)
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Telephone: (212) 556 2142
Facsimile: (212) 556 2222
ccarpenito@kslaw.com
amichaelson@kslaw.com
mdelatorre@kslaw.com

Alexander B. McLamb (*pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, DC 20006
Telephone: (202) 737-0500
amclamb@kslaw.com

*Attorneys for Defendants Jeetenderjit Singh
Sidhu, Treadstone Financial Group LLC,
and Blackbriar Asset Management Ltd.*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ........................................................................................................................... 2

I.      PLAINTIFFS' CLAIMS ARE UNTIMELY (COUNTS I, II, III, AND V) ....................... 2

      A.     The Statute of Limitations Bars Plaintiffs' Claims Against the Sidhu Defendants ........................................................................................................ 2

      B.     The Statute of Repose Bars Claims Against the Sidhu Defendants Premised on Conduct Preceding December 15, 2017 ................................................................. 3

II.    PLAINTIFFS FAIL TO ALLEGE THAT SIDHU'S ALLEGED MANIPULATION AFFECTED THE PRICE OF PLAINTIFFS' TRADES (COUNT I) ................................ 4

III.   PLAINTIFFS HAVE WITHDRAWN THEIR CLAIM THAT SIDHU "MADE" ANY MATERIAL MISTATEMENT OR OMISSION IN VIOLATION OF SECTION 10(b) OR RULE 10b-5(b) (COUNT II) ...................................................................................... 5

IV.   PLAINTIFFS' SCHEME LIABILITY CLAIM FAILS (COUNT III) ............................. 5

      A.     Plaintiffs Fail to Allege That Sidhu Engaged In Deceptive Conduct .................... 5

      B.     Plaintiffs Fail to Allege that Sidhu's Alleged Conduct Caused Plaintiffs to Suffer Any Losses ............................................................................................................ 8

V.     PLAINTIFFS' SECTION 20(b) CLAIM AGAINST SIDHU FAILS (COUNT V) .......... 9

      A.     Plaintiffs Have No Private Right of Action Under Section 20(b) ......................... 9

      B.     Plaintiffs Fail to State a Section 20(b) Claim Against Sidhu ............................... 10

VI.   PLAINTIFFS FAIL TO STATE A CLAIM AGAINST TREADSTONE AND BLACKBRIAR (COUNTS II AND III) ........................................................................... 11

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cohen v. Citibank, N.A.*,
  954 F. Supp. 621 (S.D.N.Y. 1996)..................................................................................9

*GFL Advantage Fund, Ltd. v. Colkitt*,
  272 F.3d 189 (3d Cir. 2001)..............................................................................6, 7, 8, 11

*Love v. Morton*,
  944 F. Supp. 379 (D.N.J. 1996), *aff'd*, 112 F.3d 131 (3d Cir. 1997).......................10

*McCullough v. Advest, Inc.*,
  No. CV 17-407, 2017 WL 3675787 (W.D. Pa. Aug. 25, 2017) ...................................3

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
  543 F.3d 150 (3d Cir. 2008)............................................................................................3

*Merck & Co. v. Reynolds*,
  559 U.S. 633 (2010).........................................................................................................3

*MTB Inv. Partners, LP v. Siemens Hearing Instruments, Inc.*,
  No. 12CV00340SDWMCA, 2013 WL 12149253 (D.N.J. Feb. 19, 2013)...............4

*S.E.C. v. J.W. Barclay & Co.*,
  442 F.3d 834 (3d Cir. 2006)..........................................................................................10

*S.E.C. v. Masri*,
  523 F. Supp. 2d 361 (S.D.N.Y. 2007)..........................................................................11

*S.E.C. v. Stringer*,
  No. CIV. 02-1341, 2003 WL 23538011 (D. Or. Sept. 3, 2003) ...............................10

*S.E.C. v. Wyly*,
  56 F. Supp. 3d 394 (S.D.N.Y. 2014)............................................................................11

*S.E.C. v. Zodihikov*,
  No. CV 16-845, 2020 WL 634184 (D.N.J. Feb. 10, 2020).........................................9

*Superintendent of Insurance. v. Bankers Life & Casualty Co.*,
  404 U.S. 6 (1971)..............................................................................................................9

*Takata v. Riot Blockchain, Inc.*,
  No. CV 18-02293 (FLW), 2020 WL 2079375 (D.N.J. Apr. 30, 2020) ..........6, 7, 8, 9

*In re Teva Sec. Litig.*,
    512 F. Supp. 3d 321 (D. Conn. 2021)................................................................................3

*Union Cent. Life Ins. Co. v. Credit Suisse Sec. (USA), LLC*,
    2014 WL 7179989 (S.D.N.Y. Dec. 10, 2014) ...........................................................9

**Statutes**

15 U.S.C. § 78i.........................................................................................................................1, 4

15 U.S.C. § 78j(b) ............................................................................................. *passim*

15 U.S.C. § 78t(b) .............................................................................................1, 9, 10

**Other Authorities**

Federal Rule of Civil Procedure 9(b)..............................................................................6

## PRELIMINARY STATEMENT

In response to the Sidhu Defendants' Motion, and in recognition that Sidhu is alleged to have been a *secondary* actor in a scheme allegedly orchestrated and executed by others, Plaintiffs have now withdrawn their claim that Sidhu made false and misleading statements or omissions in violation of Section 10(b) and Rule 10b-5(b).  Plaintiffs' Opposition further confirms that the Court should dismiss Plaintiffs' remaining claims against the Sidhu Defendants.

*First*, Plaintiffs fail to credibly rebut that their claims are untimely under the statute of limitations because numerous storm warnings and disclosures placed Plaintiffs on inquiry notice more than two years before Plaintiffs brought their claims against the Sidhu Defendants.

*Second*, Plaintiff's Opposition confirms that their Section 9 claim fails because Plaintiffs do not allege that Sidhu's alleged manipulative trading affected the price at which Plaintiffs purchased or sold Renovacare securities.

*Third*, Plaintiffs' Opposition fails to identify any "manipulative or deceptive act" by Sidhu that could serve as a predicate for Plaintiffs' scheme liability claim under Section 10(b) and Rule 10b-5(a) and (c), nor do Plaintiffs allege that any of *Sidhu's* alleged conduct caused Plaintiffs' losses.

*Fourth*, Plaintiffs fail to identify any case law supporting a private right of action under Section 20(b), and in any event, Plaintiff's Section 20(b) claim fails because Plaintiffs do not to allege that Sidhu had "control" over any primary violator.

*Fifth*, and finally, Plaintiffs now concede that they do not allege substantive wrongdoing by Treadstone or Blackbriar, and Plaintiffs identify no basis for their unpled claim for disgorgement.

Accordingly, the Court should dismiss Plaintiffs' claims as to the Sidhu Defendants with prejudice.

## ARGUMENT

## I.    PLAINTIFFS' CLAIMS ARE UNTIMELY (COUNTS I, II, III, AND V)

### A.    The Statute of Limitations Bars Plaintiffs' Claims Against the Sidhu Defendants

As set forth in the Sidhu Defendants' Opening Brief, Plaintiffs failed to bring their claims against the Sidhu Defendants until December 15, 2022, more than two years after Plaintiffs were on inquiry notice of their claims.  Indeed, Plaintiffs were on inquiry notice of their claims no later than April 2019 based on the following:

> (1) RenovaCare's January 8, 2018 disclosure of OTC Markets' inquiry regarding "StreetAuthority's promotional campaign," SAC ¶ 226, in which RenovaCare disclosed "the existence of and payment to . . . investor relations companies," *id.* at ¶ 169;
>
> (2) StreetSweeper's February 12, 2018 article scrutinizing "RenovaCare's questionable response to OTC market's letter," which reported that RenovaCare paid StreetAuthority through a third-party investor relations firm and that Rayat was a foreign stock promoter who had previously been charged by the SEC, *id.* at ¶¶ 248-254;
>
> (3) OTC Market's February 23, 2018 decision to downgrade RenovaCare's stock and mark it with "a 'Caveat Emptor' skull and crossbones label," *id.* at ¶ 286; and
>
> (4) finally, and conclusively, RenovaCare's April 2019 disclosure that its "disclosure controls and procedures were not effective," *id.* ¶ 298.

In their Opposition, Plaintiffs argue that RenovaCare's April 2019 disclosure was insufficient to establish inquiry notice because it "did not mention the undisclosed promotional campaign or provide any evidence supporting scienter."  Opp. Br. 23.  But this argument entirely disregards the earlier disclosures referenced above and that Plaintiffs' themselves allege that "the concealed stock promotion campaign *was finally discovered in January 2018*."  SAC at ¶ 5 (emphasis added).

As Plaintiffs necessarily admit, to be on inquiry notice, a plaintiff need only have "sufficient information of possible wrongdoing," which is "*not necessarily the point at which the plaintiff would already have discovered facts showing scienter* or other 'facts constituting the violation.'" Opp. Br. 16 (emphasis added) (quoting *Merck & Co. v. Reynolds*, 559 U.S. 633, 633 (2010)). Taken together, the 2018 storm warnings and RenovaCare's April 2019 controls disclosure provided Plaintiffs with "sufficient information of possible wrongdoing to place them on inquiry notice." *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, 543 F.3d 150, 164 (3d Cir. 2008). Accordingly, Plaintiffs' claims are untimely under the two-year statute of limitations and should be dismissed in their entirety with prejudice.[1]

### B.   The Statute of Repose Bars Claims Against the Sidhu Defendants Premised on Conduct Preceding December 15, 2017

The five-year statute of repose further bars any claims against the Sidhu Defendants premised on conduct preceding December 15, 2017. Opening Br. 9-10. In their Opposition, Plaintiffs rely on *McCullough v. Advest, Inc.*, 2017 WL 3675787, at *3 (W.D. Pa. Aug. 25, 2017) and other non-binding cases to argue that the statute of repose "begins to run on the date of the last alleged misrepresentation." Opp. Br. 25. But at least one other court has expressly rejected *McCullough*'s statement that a "majority of courts" hold that the statute of repose begins to run on the date of the last alleged misrepresentation, instead observing that "the weight of authority," including the "more recent" case law, "holds that the statute of repose … begins to run from the date of each alleged misrepresentation or omission that could constitute a violation of Section 10(b) of the Exchange Act." *In re Teva Sec. Litig.*, 512 F. Supp. 3d 321, 334 n. 17 (D. Conn. 2021) (collecting cases). Because Plaintiffs' claims are barred by the statute of limitations and

---

[1] Sidhu Defendants also incorporate by reference and hereby adopt the statute of limitations arguments raised by the RenovaCare Defendants and Defendant Capitol Information Group, Inc.

fail for the additional reasons set forth below, the Court need not decide this unresolved question of law.  Should the Court reach the issue, however, it should hold that Plaintiffs' claims against the Sidhu Defendants are barred by the statute of repose to the extent that they are premised on conduct prior to December 15, 2017.

## II.   PLAINTIFFS FAIL TO ALLEGE THAT SIDHU'S ALLEGED MANIPULATION AFFECTED THE PRICE OF PLAINTIFFS' TRADES (COUNT I)

"[T]he law in this Circuit is clear that section 9(a) liability must be predicated on a purchase or sale at a price affected by the offending conduct[.]" *MTB Inv. Partners, LP v. Siemens Hearing Instruments, Inc.*, No. 12CV00340SDWMCA, 2013 WL 12149253, at *7 (D.N.J. Feb. 19, 2013) (citation omitted); *see also* Opening Br. 19-20.   Plaintiffs' Opposition provides no meaningful response to Defendants' argument that the Complaint fails to satisfy this requirement.  *See* Opp. Br. 28-29.  While Plaintiffs' Opposition asserts that "RenovaCare stock saw an uptick in volume and price that correlated ***with StreetAuthority's promotional campaign***," Opp. Br. at 28 (emphasis added), the Second Amended Complaint draws no similar link between RenovaCare's stock price and ***Sidhu's trading***, as required to state a claim.

Moreover, while Plaintiffs allege (in conclusory fashion) that Sidhu purchased RenovaCare securities "with no economic justification other than to manipulate the share price," Opp. Br. at 29, the Second Amended Complaint fails to allege whether or how Sidhu's purchases affected the price of RenovaCare securities, let alone allege that Plaintiffs themselves purchased or sold securities at an affected price.  Accordingly, the Court should dismiss Plaintiffs' claim under Section 9 of the Exchange Act.

4

**III.    PLAINTIFFS HAVE WITHDRAWN THEIR CLAIM THAT SIDHU "MADE" ANY MATERIAL MISTATEMENT OR OMISSION IN VIOLATION OF SECTION 10(b) OR RULE 10b-5(b) (COUNT II)**

Faced with the unavoidable fact that Sidhu did not "make" any material misstatement or omission under Section 10(b) or Rule 10b-5(b), Opening Br. 10-14, Plaintiffs "no longer advance a claim against Sidhu under Count II for false and misleading statements." Opp. Br. 30 n. 11. Accordingly, the Court should dismiss Count II with prejudice as to the Sidhu Defendants.

**IV.    PLAINTIFFS' SCHEME LIABILITY CLAIM FAILS (COUNT III)**

**A.    Plaintiffs Fail to Allege That Sidhu Engaged In Deceptive Conduct**

As set forth in the Sidhu Defendants' Opening Brief, Plaintiffs' scheme liability claim fails as to Sidhu because Plaintiffs do not allege that Sidhu engaged in a "deceptive or manipulative act"—a threshold requirement for liability under Rule 10b-5(a) and (c). Opening Br. 13-19. In response, Plaintiffs make no attempt to explain how any of Sidhu's alleged conduct satisfies this requirement. Instead, the Opposition merely regurgitates the Complaint's allegations regarding Sidhu's ***non-deceptive*** conduct and labels that conduct "deceptive."

*First*, Plaintiffs point to a host of allegations that Sidhu engaged in routine, permissible securities-market activities, such as participating in private sales of Renovacare securities, "spearhead[ing] the opening and use of brokerage accounts and registration of RenovaCare shares," "provid[ing] advice and maintain[ing] Bhogal's and Rayat's accounts," "monitoring the accounts and transferring shares among entities and accounts," "assist[ing] RenovaCare in issuing a new Form S-1," and "transferring shares to offshore accounts." Opp. Br. 42. Plaintiffs provide no explanation as to how this alleged conduct is "deceptive"—because it is not.

*Second*, Plaintiffs assert that Sidhu "provided StreetAuthority with extensive information on RenovaCare and the SkinGun and worked directly with StreetAuthority to create promotional materials." Opp. Br. 43 (citing Compl. ¶¶ 131, 136). But the Second Amended Complaint

5

includes ***no factual allegation*** supporting these assertions as to Sidhu. Tellingly, the Second

Amended Complaint includes numerous factual allegations regarding Rayat's involvement with

StreetAuthority (Compl. ¶¶ 132-145), but it contains no such factual allegations with respect to

Sidhu. [2] Plaintiffs' conclusory allegations regarding Sidhu's supposed involvement with

StreetAuthority thus lacks the particularity required by Federal Rule of Civil Procedure 9(b) and

cannot serve as a basis for Sidhu's liability. *See Takata v. Riot Blockchain, Inc.*, No. CV 18-

02293 (FLW), 2020 WL 2079375, at *14 (D.N.J. Apr. 30, 2020) ("[A]t a minimum, Rule 9(b)

requires a plaintiff to allege the … 'who, what, when, where and how' of the events at issue.").

*Finally*, as explained in Sidhu Defendants' Opening Brief, Sidhu's genuine, open-market,

arms-length purchases and sales of RenovaCare securities cannot serve as a basis for Section

10(b) liability because such transactions did not "inject[] 'inaccurate information' into the market

or create a false impression of market activity." *See* Opening Br. 16-19 (quoting *GFL Advantage*

*Fund, Ltd. v. Colkitt*, 272 F.3d 189, 204-205 (3d Cir. 2001)). As Plaintiffs recognize, in *Colkitt*,

the Third Circuit emphasized "the need [for plaintiffs] to demonstrate that some action was taken

to artificially depress or inflate prices, whether by purposely making false statements or by

employing illegitimate, deceptive trading techniques." Opp. at 43 (quoting *Colkitt*, 272 F.3d at

207). Plaintiffs now concede that Sidhu did not make any actionable false statements, and

---

[2] The Second Amended Complaint includes the conclusory allegation that "Defendants RenovaCare, Rayat, Bhogal, Sidhu, and Fleming worked closely with StreetAuthority representatives to create promotional materials to be used in the Predictions Campaign." SAC ¶ 131 (citing *SEC v. Rayat*, No. 1:21-cv-04777 (S.D.N.Y.), ECF No. 118, ¶ 89 ("SEC Compl.")). But as is apparent from the Second Amended Complaint's own citation, Plaintiffs have simply copied verbatim an allegation in the SEC's Complaint relating to ***Rayat's*** alleged conduct and added Sidhu's name to the allegation, without adding any new ***factual allegations*** to support this assertion as to Sidhu. *Compare* SAC ¶ 131 *with* SEC Compl. ¶ 89 ("Rayat worked closely with StreetAuthority representatives to create promotional materials to be used in the Predictions Campaign.").

Plaintiffs have similarly failed to allege that Sidhu employed any "illegitimate, deceptive trading techniques," such as wash trades or matched orders. *See* Original Br. at 17-19. To the contrary, Plaintiffs allege that Sidhu engaged *real* transactions, with *real* counterparties, pursuant to which Sidhu assumed *real* market risk. *See* SAC ¶¶ 279-82; *see also* Opening Br. 16-18. When Sidhu bought stock, he stood to suffer an economic loss to the extent the stock price declined. These are precisely the type of legitimate transactions that the Third Circuit held "cannot be regarded as evidence of market manipulation." *Colkitt*, 272 F.3d at 207.

Plaintiffs cite to *Takata v. Riot Blockchain, Inc.* for the proposition that an "action that is 'not necessarily deceptive'" may be considered deceptive "when viewed in the context of Plaintiff's allegations"; for example, that the conduct was "part of a scheme to pump-and-dump [company] stock." Opp. at 42 (quoting *Takata*, 2020 WL2079375, at *15 (D.N.J. Apr. 30, 2020)). *Takata*, however, does **not** support the sweeping proposition that **non-deceptive** conduct can constitute a "deceptive or manipulative act" for purposes of Section 10(b) liability simply because a civil plaintiff alleges that such conduct occurred "as part of" a broader alleged scheme.

In *Takata*, the court found that the plaintiff had **failed** to allege "specific acts of deception or manipulation" supporting scheme liability with respect to all but one defendant. *Takata*, 2020 WL2079375, at *16. The court reached this conclusion notwithstanding the plaintiff's allegations that defendants had "participated in a 'pump-and-dump' scheme" to "inflate the price and trading volume of [the company's] stock through manipulative trading, promotional activity, and false and misleading disclosures." *Id.* at *1, *16. Moreover, the *Takata* plaintiff's allegations with respect to the one defendant for whom a deceptive act was sufficiently pled bear no resemblance to Plaintiffs' allegations against Sidhu. Specifically, the *Takata* complaint alleged that the defendant had failed to "'promptly' disclose his material decrease in stock

7

holdings" in violation of SEC Rule 13d-2. *Id.*  The Court held that plaintiff had "plausibly allege[d] a violation of [the defendant's] obligations under the applicable regulations," and that such disclosure violation "was deceptive when viewed in the wider context of Plaintiff's allegations that [the defendant] did so in order to conceal his sales form the public." *Id.*  Here, Plaintiffs do not allege that Sidhu violated any SEC Rule or engaged in any other conduct that "injected 'inaccurate information' into the market." *Colkitt*, 272 F.3d at 205.  Sidhu is thus akin to the defendants in *Takata* with respect to whom the plaintiff failed to allege a manipulative or deceptive act. *Takata*, 2020 WL2079375, at *16.

> **B.      Plaintiffs Fail to Allege that Sidhu's Alleged Conduct Caused Plaintiffs to Suffer Any Losses**

Plaintiffs' scheme liability claim fails for the additional reason that Plaintiffs do not allege that any of Sidhu's conduct caused Plaintiffs' losses.  As set forth in the Sidhu Defendants' Opening Brief, the Second Amended Complaint is replete with allegations that Plaintiffs' losses were caused by the allegedly false and misleading statements and omissions made by other Defendants.  *See* Opening Br. 21.  But the Second Amended Complaint contains no allegations that ***Sidhu's*** conduct caused Plaintiffs any losses.  *Id.*

In response, Plaintiffs point to the Second Amended Complaint's generalized and conclusory allegations that "Defendants' scheme artificially inflated RenovaCare's market price" and that "Plaintiffs suffered damages as a direct and proximate result of Defendants' scheme." Opp. Br. 43 (citing SAC ¶¶ 396, 399-401).  But these boilerplate allegations fail to plead a causal link between ***Sidhu's*** alleged conduct and Plaintiff's alleged damages.  The court's ruling in *Takata* is again instructive.  2020 WL 2079375, at *17.  There, the court dismissed the plaintiff's scheme liability claim against a defendant because the plaintiff had "not adequately alleged loss causation with respect to the one deceptive act that [defendant] is alleged to have committed."

8

*Id.* The *Takata* court reached that conclusion despite the fact that the operative complaint included similar boilerplate allegations that "Defendants engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Riot's common stock." *See* Complaint, *Takata v. Riot Blockchain, Inc.*, No. CV 18-02293 (FLW), ECF No. 73, ¶¶ 396-397. The Court should reach the same conclusion here.

## V.      PLAINTIFFS' SECTION 20(b) CLAIM AGAINST SIDHU FAILS (COUNT V)

### A.      Plaintiffs Have No Private Right of Action Under Section 20(b)

The Opposition fails to establish that Plaintiffs may bring a private right of action under Section 20(b). Indeed, ***none*** of the cases on which Plaintiffs rely support the notion that Section 20(b) creates a private right of action.

*First*, Plaintiffs claim that the Sidhu Defendants' Opening Brief "cites just such a case—from this very District, no less," pointing to *S.E.C. v. Zodihikov*, 2020 WL 634184 (D.N.J. Feb. 10, 2020) (cited at Opening Br. 24). But as its caption makes clear, ***Zodihikov* was an action brought by the SEC, *not* a private plaintiff**. Plaintiffs further cite to *Union Cent. Life Ins. Co. v. Credit Suisse Sec. (USA), LLC*, 2014 WL 7179989, at *6 (S.D.N.Y. Dec. 10, 2014) and *Cohen v. Citibank, N.A.*, 954 F. Supp. 621, 629-30 (S.D.N.Y. 1996), but both of those cases ***dismissed*** claims under Section 20(b) for failure to state a claim.

*Second*, Plaintiffs rely on *Superintendent of Insurance. v. Bankers Life & Casualty Co.*, 404 U.S. 6, 13 n.9 (1971) to argue that because both Section 10(b) and Section 20(b) use the language "shall be unlawful," Section 20(b) also creates a private right of action. *See* Opp. Br. 52. But *Superintendent of Insurance* did not analyze whether the "shall be unlawful" language in Section 10(b) weighs for or against a private right of action—it merely recognized that "[i]t is now established that a private right of action is implied under §10(b)." 404 U.S. at 13 n.9.

9

*Third*, Plaintiffs attempt to distinguish *S.E.C. v. Stringer*, 2003 WL 23538011, at \*6 (D. Or. Sept. 3, 2003) and *S.E.C. v. J.W. Barclay & Co.*, 442 F.3d 834, 843 (3d Cir. 2006), on the basis that they pre-date when "Congress amended Section 20(a) in 2010 to clarify that it does permit an SEC enforcement action." Opp. Br. 52 (citing 111 P.L. 203, 929P(c)). Congress' decision to amend Section 20(a) to clarify that the SEC may enforce that provision, however, says nothing about whether a private plaintiff may enforce Section 20(b). To the contrary, Congress' continued silence on whether a private right of action is available under Section 20(b)—despite multiple cases holding that it does not—suggests just the opposite, *i.e.*, that Congress has acquiesced to those courts' interpretations. *See, e.g.*, *Love v. Morton*, 944 F. Supp. 379, 387 (D.N.J. 1996) ("'[I]f Congress remains silent after a judicial or administrative interpretation of a statute by failing to overturn it, Congress probably acquiesces in the interpretation'") (internal citation omitted), *aff'd*, 112 F.3d 131 (3d Cir. 1997).

### B.    Plaintiffs Fail to State a Section 20(b) Claim Against Sidhu

Even if Section 20(b) did create a private right of action (which it does not), Plaintiffs Section 20(b) claim against Sidhu fails because Plaintiffs have not—and cannot—plead that Sidhu had control over any primary violator. *See* Opening Br. 24-25. In their Opposition, Plaintiffs' assert that Sidhu "controlled" RenovaCare because he "caused RenovaCare to register his shares for resale" and "assisted RenovaCare in issuing a new Form S-1 to register millions of shares for resale." Opp. at 51. But the Second Amended Complaint does ***not*** allege that Sidhu "caused" RenovaCare to register his shares—it alleges only that "Bhogal and Sidhu ***asked*** RenovaCare to register their shares." SAC ¶¶ 84-85 (emphasis added). Plaintiffs' allegations that Sidhu "asked" RenovaCare to register his shares and "assisted RenovaCare in issuing a new Form S-1" come nowhere close to pleading that Sidhu had "control" over RenovaCare, let alone control ***with respect to RenovaCare's alleged primary violations***. *See* Opening Br. 24-25.

10

Plaintiffs also assert that Sidhu exercised control over StreetAuthority by "work[ing] closely with StreetAuthority representatives to create promotional materials." Opp. at 51. As set forth above, the Second Amended Complaint contains no factual allegations supporting this conclusory assertion. *See supra* p. 6. In any event, Plaintiffs' conclusory claim that Sidhu "worked closely with StreetAuthority" is plainly insufficient to establish that Sidhu exercised control over StreetAuthority. *See* Opening Br. at 24-25.[3]

## VI.  PLAINTIFFS FAIL TO STATE A CLAIM AGAINST TREADSTONE AND BLACKBRIAR (COUNTS II AND III)

Plaintiffs admit that that they "do not allege substantive wrongdoing by Treadstone and Blackbriar." Opp. Br. 53. Plaintiffs thus fail to allege that Treadstone or Blackbriar violated Section 10(b) or Rule 10b-5, and the Court should dismiss Plaintiffs' claims as to Treadstone and Blackbriar with prejudice.

Recognizing this deficiency, Plaintiffs' Opposition falls back on an unpled claim for "disgorgement of ill-gotten funds." Opp. Br. 53. But the only cases Plaintiffs cite in support of this unpled claim are cases ***brought by the SEC***. *See* Opp. Br. 52 and cases cited therein. Such cases are inapposite because "[u]nlike private plaintiffs, who must demonstrate that the defendants' misstatements or omissions were a proximate cause of their injury at the liability stage, the SEC has no such burden." *S.E.C. v. Wyly*, 56 F. Supp. 3d 394, 403 (S.D.N.Y. 2014).

---

[3] As noted in Plaintiffs' Opposition, Opp. Br. 1 n. 1, the Sidhu Defendants have entered into a consent judgment to resolve the SEC's claims against them without admitting or denying the SEC's allegations. *See* Judgment, *S.E.C. v. Rayat, et al.*, No. 1:21-cv-4777, ECF No. 249 (S.D.N.Y. Oct. 17, 2023). The SEC's claims against Sidhu differ materially from those of Plaintiff in numerous respects, including that (a) the SEC's claims were not subject to the statute of limitations defense available here; (b) unlike private plaintiffs, the SEC has authority to pursue (allegedly) peripheral actors such as Sidhu for "aiding and abetting" securities law violations; (c) unlike Plaintiffs, the SEC need not prove reliance; and (d) Plaintiffs' scheme liability claims under Rule 10b-5(a) and (c) are precluded by the Third Circuit's decision in *GFL Advantage Fund, Ltd. v. Colkitt*, 272 F.3d 189, 204-205 (3d Cir. 2001). *See S.E.C. v. Masri*, 523 F. Supp. 2d 361, 367 (S.D.N.Y. 2007) (distinguishing *Colkitt* from Second Circuit precedent).

Plaintiffs fail to identify a single case in which a court has sustained a private claim for "disgorgement of ill-gotten funds" against a defendant who is not alleged to have violated the securities laws. Accordingly, the Court should dismiss Plaintiffs' unpled disgorgement claim.

Dated: January 10, 2024

<u>/s/ Craig Carpenito</u>
Craig Carpenito
Andrew Michaelson (*pro hac vice*)
Mateo de la Torre (*pro hac vice*)
KING & SPALDING LLP
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Telephone: (212) 556 2142
Facsimile: (212) 556 2222
ccarpenito@kslaw.com
amichaelson@kslaw.com
mdelatorre@kslaw.com

Alexander B. McLamb (*pro hac vice*)
KING & SPALDING LLP
1700 Pennsylvania Avenue, NW
Suite 900
Washington, DC 20006
Telephone: (202) 737-0500
amclamb@kslaw.com

*Attorneys for Defendants Jeetenderjit Singh Sidhu, Treadstone Financial Group LLC, and Blackbriar Asset Management Ltd.*

12