# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE RENOVACARE, INC. SECURITIES LITIGATION | Case No. 2:21-cv-13766-BRM-ESK |

## DECLARATION OF REED KATHREIN IN SUPPORT OF LEAD PLAINTIFF'S UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (II) CERTIFICATION OF THE SETTLEMENT CLASS; AND (III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS

I, Reed Kathrein, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.      I am an attorney admitted to practice *pro hac vice* in this Court and a Partner at Hagens Berman Sobol Shapiro LLP, counsel for Lead Plaintiff Diana Deidan ("Lead Plaintiff"). I make this Declaration in Support of the Unopposed Motion of Lead Plaintiff and Named Plaintiff Marc Jay Gannon (collectively, "Plaintiffs") for: (I) Preliminary Approval of the Class Action Settlement; (II) Certification of the Settlement Class; and (III) Approval of Notice to the Settlement Class.  I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.      Attached hereto as **Exhibit 1** is a true and accurate copy of the Stipulation of Settlement, dated September 23, 2024 (the "Stipulation").

3.      Attached as **Exhibit A to the Stipulation** is a true and accurate copy of the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice.

4.      Attached as **Exhibit A-1 to the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice** is a true and accurate copy of the Notice of Pendency and Proposed Settlement of Class Action that will be made available on the settlement website.

5.      Attached as **Exhibit A-2 to the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice** is a true and accurate copy of the Proof of Claim and Release Form.

6.      Attached as **Exhibit A-3 to the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice** is a true and accurate copy of the Summary Notice.

7.      Attached as **Exhibit A-4 to the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice** is a true and accurate copy of the Postcard Notice.

8.      Attached as **Exhibit B to the Stipulation** is a true and accurate copy of the [Proposed] Order and Final Judgment.

9.      Attached hereto as **Exhibit 2** is a true and accurate copy of the firm résumé of Hagens Berman Sobol Shapiro LLP.


Executed this 23rd day of September, 2024.


                                        */s/ Reed R. Kathrein*
                                        Reed R. Kathrein

# EXHIBIT 1

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE RENOVACARE, INC. SECURITIES LITIGATION | Case No. 2:21-cv-13766-BRM-ESK |

**STIPULATION AND AGREEMENT OF SETTLEMENT**

This Stipulation and Agreement of Settlement, dated as of September 23, 2024 ("Stipulation"), is entered into by and among: (a) Lead Plaintiff Diana Deidan and Named Plaintiff Marc Jay Gannon ("Plaintiffs"), on behalf of themselves and the Settlement Class (as defined below); and (b) Defendants RenovaCare, Inc. ("RenovaCare"), Harmel Rayat, Jatinder Bhogal, 1420527 Alberta Ltd., and Jeetenderjit Singh Sidhu (collectively, "Defendants") (together with Plaintiffs, the "Parties"). This Stipulation embodies the terms and conditions of the settlement of the above-captioned action (the "Action").[1]  Subject to the approval of the Court and the terms and conditions expressly provided herein, this Stipulation is intended to fully, finally, and forever compromise, settle, release, resolve, and dismiss with prejudice the Action and all claims asserted therein against Defendants.

WHEREAS:

A.    On July 16, 2021 and July 21, 2021, two class action complaints were filed in the United States District Court for the District of New Jersey (the "Court"), styled *Boller v. Renovacare, Inc.*, No. 21-cv-13766 and *Solakian v. Renovacare, Inc.*, No. 21-cv-13930.

---

[1] All terms with initial capitalization not otherwise defined herein shall have the meanings ascribed to them in ¶ 1 herein.

B.      By Order dated November 23, 2021, the cases were consolidated and the Court appointed Diana Deidan as Lead Plaintiff for the consolidated action, Hagens Berman Sobol Shapiro LLP as Lead Counsel, and Lite DePalma Greenberg & Afanador, LLC as Liaison Counsel. ECF No. 34.

C.      On February 11, 2022, Lead Plaintiff filed an Amended Complaint under the consolidated caption *In re Renovacare, Inc. Securities Litigation*, Master File No. 2:21-cv-13766-BRM-ESK. ECF No. 37.

D.      By Order dated November 14, 2022, the Court permitted Lead Plaintiff to file a Second Amended Complaint by December 15, 2022 and entered deadlines for Defendants to move, answer, or otherwise respond to the Second Amended Complaint and for Lead Plaintiff to file any opposition briefs.

E.      On December 15, 2022, Lead Plaintiff filed a Second Amended Complaint (the "Complaint"). ECF No. 91. The Complaint asserted claims against Bhogal and Sidhu under Section 9(f) of the Securities Exchange Act of 1934 (the "Exchange Act") (Count I); against Defendants under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder (Count II); against Defendants under Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) promulgated thereunder (Count III); against Rayat for violation of Section 20(a) of the Exchange Act (Count IV); and against Rayat, Bhogal, and Sidhu for violations of Section 20(b) of the Exchange Act (Count V). The Complaint alleged, *inter alia*, that Defendants orchestrated a long-term, concealed fraudulent stock promotion scheme designed to inflate RenovaCare's stock price and trading volume, so that Rayat, Sidhu, and Bhogal could sell their shares at an inflated price. The alleged scheme involved accumulating and distributing millions of shares at below-market prices, coordinating the resale of restricted shares as free trading shares, and promoting the stock

through a paid campaign that falsely claiming significant benefits and potential FDA approval for

a RenovaCare device.

F.       On July 11, 2023, Plaintiffs filed a Notice of Voluntary Dismissal of Claims against

Thomas Bold and Treadstone Ltd., which the Court entered on July 12, 2023.

G.       On October 10, 2023, RenovaCare, Rayat, Bhogal, and 1420527 Alberta Ltd. filed

a motion to dismiss the Complaint and Sidhu filed a separate motion to dismiss the Complaint.

ECF Nos. 135, 137. On December 11, 2023, Plaintiffs filed an omnibus opposition to Defendants'

motions to dismiss. ECF No. 147. On January 10, 2024, Defendants filed their reply papers. ECF

Nos. 149, 151.

H.       On June 3, 2024, the Court granted in part and denied in part Defendants' motion

to dismiss the Complaint. ECF No. 155. The Court sustained claims against Bhogal and Sidhu

under Section 9(f) of the Exchange Act (Count I), claims against RenovaCare and Rayat for

violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder (Count

II), claims against Defendants for violation of Section 10(b) of the Exchange Act and Rule 10b-

5(a) and (c) promulgated thereunder (Count III), and the claim against Rayat for violation of

Section 20(a) of the Exchange Act (Count IV).

I.       On August 5, 2024, the parties participated in a full-day mediation session before

Jed Melnick, Esq. In advance of that session, the Parties exchanged and provided to Mr. Melnick

detailed mediation statements and exhibits, which addressed the issues of liability and damages.

That session resulted in an agreement in principle to settle the Action for $2,000,000 for the benefit

of the Settlement Class, subject to certain terms and conditions and the execution of a customary

stipulation and agreement of settlement and related papers.

J.      This Stipulation (together with the exhibits hereto) reflects the final and binding agreement between the Parties.

K.      Based upon their investigation and prosecution and mediation of this Action, Plaintiffs and Plaintiffs' Counsel have concluded that the terms and conditions of this Stipulation are fair, reasonable, and adequate, and in the best interests of Plaintiffs and the Settlement Class. Plaintiffs agreed to settle and release the claims raised in this Action pursuant to the terms and provisions of this Stipulation after considering, among other things: (a) the substantial financial benefit that Plaintiffs and the Settlement Class will receive under the proposed Settlement; and (b) the significant risks and costs of continued litigation and trial.

L.      This Stipulation constitutes a compromise of matters that are in dispute between the Parties. Defendants are entering into this Stipulation solely to eliminate the uncertainty, burden and expense of further protracted litigation. Each of the Defendants denies any wrongdoing, and this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any of the Defendants with respect to any claim or allegation of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that Defendants have, or could have, asserted. Defendants expressly deny that Plaintiffs have asserted any valid claims as to any of them, and expressly deny any and all allegations of fault, liability, wrongdoing or damages whatsoever. Similarly, this Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any Plaintiff of any infirmity in any of the claims asserted in the Action, or an admission or concession that any of Defendants' defenses to liability had any merit. Each of the Parties recognizes and acknowledges, however, that the Action has been initiated, filed and prosecuted by Plaintiffs in good faith and defended by

4

Defendants in good faith, that the Action is being voluntarily settled with the advice of counsel, and that the terms of the Settlement are fair, adequate, and reasonable.

NOW THEREFORE, it is hereby STIPULATED AND AGREED, by and among Plaintiffs (individually and on behalf of the Settlement Class) and Defendants, by and through their respective undersigned attorneys and subject to the approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, that, in consideration of the benefits flowing to the Parties from the Settlement, all Released Plaintiffs' Claims as against the Defendants' Releasees and all Released Defendants' Claims as against the Plaintiffs' Releasees shall be settled and released, upon and subject to the terms and conditions set forth below.

## DEFINITIONS

1.      As used in this Stipulation and any exhibits attached hereto and made a part hereof, the following capitalized terms shall have the following meanings:

a.      "Action" means the consolidated securities class action styled *In re Renovacare, Inc. Securities Litigation*, Master File No. 2:21-cv-13766-BRM-ESK, and includes all actions consolidated therein.

b.      "Authorized Claimant" means a Settlement Class Member who submits a Proof of Claim form to the Claims Administrator that is approved by the Court for payment from the Net Settlement Fund.

c.      "Claim" means a Proof of Claim form submitted to the Claims Administrator.

d.      "Claim Form" or "Proof of Claim" means the form, substantially in the form attached hereto as Exhibit 2 to Exhibit A, that a Claimant or Settlement Class Member must

complete and submit should that Claimant or Settlement Class Member seek to share in a distribution of the Net Settlement Fund.

   e.  "Claimant" means a person or entity who or which submits a Claim Form to the Claims Administrator seeking to be eligible to share in the proceeds of the Settlement Fund.

   f.  "Claims Administrator" means the firm retained by Plaintiffs and Lead Counsel, subject to approval of the Court, to provide all notices approved by the Court to potential Settlement Class Members and to administer the Settlement.

   g.  "Class Distribution Order" means an order entered by the Court authorizing and directing that the Net Settlement Fund be distributed, in whole or in part, to Authorized Claimants.

   h.  "Complaint" means the Second Amended Complaint filed in the Action on December 15, 2022. ECF No. 91.

   i.  "Court" means the United States District Court for the District of New Jersey.

   j.  "Defendants" means RenovaCare, Harmel Rayat, Jatinder Bhogal, 1420527 Alberta Ltd., and Jeetenderjit Singh Sidhu.

   k.  "Defendants' Counsel" means Cozen O'Connor and King & Spalding LLP.

   l.  "Defendants' Releasees" means all Defendants and any Persons or entities affiliated or connected with any of them, including all of their respective current and former officers, directors, employees, consultants, accountants, attorneys, affiliated persons and entities, sponsors, parents, subsidiaries, beneficiaries, heirs, successors, predecessors, assigns, agents, auditors, immediate family members, general partners, limited partners, principals, shareholders, joint venturers, members, managers, managing directors, supervisors, contractors, experts,

financial advisors, professional advisors, investment bankers, representatives, insurers, reinsurers, trustees, trustors, attorneys, legal representatives, professionals, executors, and administrators, and any controlling person thereof, all in their capacities as such.

        m.      "Effective Date" with respect to the Settlement means the first date by which all of the events and conditions specified in ¶ 32 of this Stipulation have been met and have occurred or have been waived.

        n.      "Escrow Account" means an account maintained at Huntington National Bank wherein the Settlement Amount shall be deposited and held in escrow under the control of Plaintiffs' Counsel.

        o.      "Escrow Agent" means Strategic Claims Services, Inc.

        p.      "Escrow Agreement" means the agreement between Plaintiffs' Counsel and the Escrow Agent setting forth the terms under which the Escrow Agent shall maintain the Escrow Account.

        q.      "Excluded Claims" means (i) any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court; and (ii) any claims relating to enforcement of the Settlement.

        r.      "Final," with respect to the Judgment, or any other court order, means: (i) if no appeal is filed, the expiration date of the time provided for filing or noticing any appeal under the Federal Rules of Appellate Procedure, *i.e.*, thirty (30) days after entry of the judgment or order; or (ii) if there is an appeal from the judgment or order, (a) the date of final dismissal of all such appeals, or the final dismissal of any proceeding on certiorari or otherwise, or (b) the date the judgment or order is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of

review, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant. However, any appeal or proceeding seeking subsequent judicial review pertaining solely to an order issued with respect to (i) attorneys' fees, costs, expenses, or award to Lead Plaintiff or (ii) the plan of allocation of Settlement proceeds (as submitted or subsequently modified), shall not in any way delay or preclude a judgment from becoming Final.

s.    "Immediate Family" means children, stepchildren, parents, stepparents, spouses, siblings, mothers-in-law, fathers-in-law, sons-in-law, daughters-in-law, brothers-in-law, and sisters-in-law. As used in this paragraph, "spouse" shall mean a husband, a wife, or a partner in a state-recognized domestic relationship or civil union.

t.    "Judgment" means the final judgment, substantially in the form attached hereto as Exhibit B, to be entered by the Court approving the Settlement.

u.    "Lead Counsel" means Hagens Berman Sobol Shapiro LLP.

v.    "Liaison Counsel" means Lite DePalma Greenberg & Afanador, LLC.

w.    "Litigation Expenses" means costs and expenses incurred in connection with commencing, prosecuting, and settling the Action for which Plaintiffs' Counsel intends to apply to the Court for reimbursement from the Settlement Fund.

x.    "Net Settlement Fund" means the Settlement Fund less: (i) any Taxes; (ii) any Notice and Administration Costs, (iii) any Litigation Expenses awarded by the Court, (iv) any attorneys' fees awarded by the Court, and (v) any award to Lead Plaintiff approved by the Court.

y.    "Notice" means the Notice of Pendency and Proposed Settlement of Class Action, substantially in the form attached hereto as Exhibit 1 to Exhibit A, which shall be made

available online at a website maintained by the Claims Administrator or mailed to Settlement Class Members upon request.

z.    "Notice and Administration Costs" means the costs, fees and expenses that are incurred by the Claims Administrator and/or Plaintiffs' Counsel in connection with: (i) providing notices to the Settlement Class; and (ii) administering the Settlement, including but not limited to the Claims process, as well as the costs, fees, and expenses incurred in connection with the Escrow Account.

aa.    "Parties" means Defendants and Plaintiffs (individually and on behalf of the Settlement Class).

bb.    "Person" means any individual, corporation (including all divisions and subsidiaries), general or limited partnership, association, joint stock company, joint venture, limited liability company, professional corporation, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any other business or legal entity.

cc.    "Plaintiffs" means Lead Plaintiff Diana Deidan and Named Plaintiff Marc Jay Gannon.

dd.    "Plaintiffs' Counsel" means Lead Counsel and all other legal counsel who, at the direction and under the supervision of Lead Counsel, performed services on behalf of the Settlement Class in the Action, including Liaison Counsel and Pomerantz LLP, Counsel for Named Plaintiff Marc Jay Gannon.

ee.    "Plaintiffs' Releasees" means (i) Plaintiffs, Plaintiffs' Counsel, and all other Settlement Class Members, and (ii) Plaintiffs' and the Settlement Class Members' Immediate Family members, and their respective general partners, limited partners, principals, shareholders,

joint venturers, members, officers, directors, managers, managing directors, supervisors, employees, contractors, consultants, experts, auditors, accountants, financial advisors, professional advisors, investment bankers, representatives, insurers, trustees, trustors, agents, attorneys, legal representatives, professionals, predecessors, successors, assigns, heirs, executors, administrators, affiliated persons and entities, sponsors, parents, subsidiaries, beneficiaries, and any controlling person thereof, all in their capacities as such.

ff.      "Plan of Allocation" means the proposed plan of allocation of the Net Settlement Fund set forth in the Notice.

gg.      "Preliminary Approval Order" means the order, substantially in the form attached hereto as Exhibit A, to be entered by the Court preliminarily approving the Settlement and directing that notice of the Settlement be provided to the Settlement Class.

hh.      "PSLRA" means the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 and 15 U.S.C. § 77z-1, as amended.

ii.      "Postcard Notice" means the abridged form of notice substantially in the form attached hereto as Exhibit A-4 advising recipients of the Settlement Hearing, directing recipients to the Settlement website, and instructing them how to receive the Notice and other important documents, which may be disseminated to Settlement Class Members in lieu of mailing if Lead Counsel determines that to be more efficient and in the interests of Settlement Class Members.

jj.      "Released Claims" means all Released Defendants' Claims and all Released Plaintiffs' Claims.

kk.      "Released Defendants' Claims" means upon final judicial approval of the Settlement, Plaintiffs and Plaintiffs' Releasees shall receive a full, unconditional release from

Defendants and all members of the Settlement Class for any and all claims, liabilities, demands, damages, losses, or causes of action, based upon, related to, or arising out of any claims, allegations, representations, omissions, or other matters that are or could have been the subject of the Action, relating to the purchase, acquisition, sale, disposition or holding of RenovaCare securities during the Settlement Class Period.

   ll. "Released Plaintiffs' Claims" means upon final judicial approval of the Settlement, Defendants and Defendants' Releasees shall receive a full, unconditional release from Plaintiffs and all members of the Settlement Class for any and all claims, liabilities, demands, damages, losses, or causes of action, based upon, related to, or arising out of any claims, allegations, representations, omissions, or other matters that are or could have been the subject of the Action, relating to the purchase, acquisition, sale, disposition or holding of RenovaCare securities during the Settlement Class Period. For avoidance of doubt, "Released Plaintiffs' Claims" do not include claims asserted derivatively on behalf of the Company in *In re Renovacare Derivative Litigation*, Case No. 2:21-cv-20569-BRM-ESK.

   mm. "Releasee(s)" means each and any of the Defendants' Releasees and each and any of the Plaintiffs' Releasees.

   nn. "Releases" means the releases set forth in ¶¶ 5-6 of this Stipulation.

   oo. "RenovaCare" means RenovaCare, Inc.

   pp. "RenovaCare Securities" means RenovaCare common stock.

   qq. "Settlement" means the settlement between Plaintiffs and Defendants on the terms and conditions set forth in this Stipulation.

   rr. "Settlement Amount" means $2,000,000 in cash.

ss.     "Settlement Class" means all Persons and entities that purchased or otherwise acquired RenovaCare Securities between August 14, 2017 and May 28, 2021, inclusive (the "Settlement Class Period"), and were damaged thereby. Excluded from the Settlement Class are Defendants, the officers and directors of RenovaCare, at all relevant times, members of their Immediate Families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded are any persons or entities who properly exclude themselves by filing a valid and timely request for exclusion in accordance with the requirements set by the Court.

tt.     "Settlement Class Member" means each person and entity who or which is a member of the Settlement Class.

uu.     "Settlement Class Period" means the period between August 14, 2017 and May 28, 2021, inclusive.

vv.     "Settlement Fund" means the Settlement Amount plus any and all interest earned thereon.

ww.     "Settlement Hearing" means the hearing set by the Court under Rule 23(e)(2) of the Federal Rules of Civil Procedure to consider final approval of the Settlement.

xx.     "Summary Notice" means the Summary Notice, substantially in the form attached hereto as Exhibit 3 to Exhibit A, to be published as set forth in the Preliminary Approval Order.

yy.     "Taxes" means: (i) all federal, state and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the Settlement Fund; (ii) the expenses and costs incurred by Plaintiffs' Counsel in connection with determining the amount of, and paying, any taxes owed by the Settlement Fund (including, without limitation, expenses of tax

12

attorneys and accountants); and (iii) all taxes imposed on payments by the Settlement Fund, including withholding taxes.

## CLASS CERTIFICATION

2.      Solely for the purposes of and in connection with this Settlement, Defendants stipulate and agree to: (a) certification of the Action as a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class, (b) certification of Plaintiffs as Class Representatives for the Settlement Class, and (c) appointment of Lead Counsel as Class Counsel for the Settlement Class pursuant to Rule 23(g) of the Federal Rules of Civil Procedure

## PRELIMINARY APPROVAL OF SETTLEMENT

3.      Promptly upon execution of this Stipulation, Plaintiffs will move for preliminary approval of the Settlement, certification of the Settlement Class for settlement purposes only, and the scheduling of a hearing for consideration of final approval of the Settlement, which motion shall be unopposed by Defendants. Concurrently with the motion for preliminary approval, Plaintiffs shall apply to the Court for, and Defendants shall agree to, entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit A.

## RELEASE OF CLAIMS

4.      The obligations incurred pursuant to this Stipulation are in consideration of: (i) the full and final disposition of the Action as against Defendants, and (ii) the Releases provided for herein.

5.      Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, Plaintiffs and each of the Settlement Class Members, on behalf of themselves, and on behalf of any other Person or entity legally entitled to bring Released Plaintiffs'

Claims on behalf of the respective Settlement Class Member in such capacity only, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Plaintiffs' Claim against the Defendants and the other Defendants' Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiffs' Claims against any of the Defendants' Releasees. This release shall not apply to any Excluded Claim.

6.      Pursuant to the Judgment, without further action by anyone, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and on behalf of any other person or entity legally entitled to bring Released Defendants' Claims on behalf of Defendants in such capacity only, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Defendants' Claim against Plaintiffs and the other Plaintiffs' Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiffs' Releasees. This release shall not apply to any person or entity who or which submits a request for exclusion from the Settlement Class that is accepted by the Court.

7.      Notwithstanding ¶¶ 5-6 above, nothing in the Judgment shall bar: (i) any action by any of the Parties to enforce or effectuate the terms of this Stipulation or the Judgment; or (ii) claims asserted derivatively on behalf of the Company in *In re Renovacare Derivative Litigation*, Case No. 2:21-cv-20569-BRM-ESK (D.N.J.).

## THE SETTLEMENT CONSIDERATION

8.      In consideration of the settlement of the Released Plaintiffs' Claims against Defendants and the other Defendants' Releasees, the Defendants agree to cause the payment of

14

two million U.S. Dollars ($2,000,000) to be paid into the Escrow Account in four deposits: (a) the first deposit, in the amount of $150,000, shall be made within seven (7) days of the Court granting preliminary approval of the settlement; (b) the second deposit, in the amount of $350,000, shall be made the later of i) October 23, 2024, or ii) thirty (30) days after the Court grants preliminary approval of the Settlement; (c) the third deposit, in the amount of $500,000, shall be made within sixty (60) days of the Court granting preliminary approval of the Settlement; and (d) the fourth deposit, in the amount of $1,000,000, shall be made no later than forty-five (45) days prior to the final approval hearing.

## USE OF SETTLEMENT FUND

9.      The Settlement Fund shall be used to pay: (a) any Taxes; (b) any Notice and Administration Costs (except for payment for the CAFA notice as discussed in ¶ 57); (c) any attorneys' fees and Litigation Expenses awarded by the Court; and (d) any reimbursement of Lead Plaintiff's costs and expenses awarded by the Court. The balance remaining in the Settlement Fund, the Net Settlement Fund, shall be distributed to Authorized Claimants as provided in ¶¶ 18-29 below.

10.      Except as provided herein or pursuant to orders of the Court, the Net Settlement Fund shall remain in the Escrow Account prior to the Effective Date. All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation and/or further order of the Court. The Escrow Agent shall invest any funds in the Escrow Account exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including U.S. Treasury bills, a U.S. Treasury Fund, or a bank account that is either: (a) fully

15

insured by the Federal Deposit Insurance Corporation, or (b) secured by instruments backed by the full faith and credit of the United States Government. The Escrow Agent shall reinvest the proceeds of these instruments or accounts as they mature in similar instruments or accounts at their then-current market rates.

11.     The Parties agree that the Settlement Fund is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation § 1.468B-1 and that Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be solely responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Settlement Fund. Lead Counsel shall also be responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund. The Defendants' Releasees shall not have any liability or responsibility for any such Taxes. Upon written request, Defendants will provide to Lead Counsel the statement described in Treasury Regulation § 1.468B-3(e). Lead Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the Qualified Settlement Fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

12.     All Taxes shall be paid out of the Settlement Fund, and shall be timely paid by the Escrow Agent pursuant to the disbursement instructions to be set forth in the Escrow Agreement, and without further order of the Court. Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events

16

shall reflect that all Taxes on the income earned by the Settlement Fund shall be paid out of the Settlement Fund as provided herein. The Defendants' Releasees shall have no responsibility or liability for the acts or omissions of Lead Counsel or its agents with respect to the payment of Taxes, as described herein.

13.    The Settlement is not a claims-made settlement. Upon the occurrence of the Effective Date, no Defendant, Defendants' Releasee, or any other person or entity who or which paid any portion of the Settlement Amount shall have any right to the return of the Settlement Fund or any portion thereof for any reason whatsoever, including without limitation, the number of Claim Forms submitted, the collective amount of Recognized Claims of Authorized Claimants, the percentage of recovery of losses, or the amounts to be paid to Authorized Claimants from the Net Settlement Fund.

14.    Notwithstanding the fact that the Effective Date of the Settlement has not yet occurred, Lead Counsel may pay from the Settlement Fund, without further approval from Defendants or further order of the Court, all Notice and Administration Costs actually incurred and paid or payable not to exceed $150,000 before the Effective Date. Such costs and expenses shall include, without limitation, the actual costs of printing and mailing the Postcard Notice, publishing the Summary Notice, posting downloadable copies of the Notice on the settlement website, reimbursements to nominee owners for forwarding the Postcard Notice to their beneficial owners, the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice, administering the Settlement (including processing the submitted Claims), and the fees, if any, of the Escrow Agent. In the event that the Settlement is terminated pursuant to the terms of this Stipulation, all Notice and Administration Costs paid or incurred, including any related fees, shall not be returned or repaid to Defendants, any of the other

Defendants' Releasees, or any other person or entity who or which paid any portion of the Settlement Amount.

## ATTORNEYS' FEES, LITIGATION EXPENSES, AND LEAD PLAINTIFF AWARD

15.    Lead Counsel will apply to the Court for a collective award of attorneys' fees to Plaintiffs' Counsel to be paid solely from (and out of) the Settlement Fund. Lead Counsel also will apply to the Court for payment of Litigation Expenses, which may include a request for reimbursement of time and expenses of Lead Plaintiff in connection with the prosecution of this Litigation, to be paid from (and out of) the Settlement Fund. Lead Counsel's application for attorneys' fees and Litigation Expenses is not the subject of any agreement between Defendants and Plaintiffs other than what is set forth in this Stipulation.

16.    Any attorneys' fees and Litigation Expenses that are awarded by the Court shall be paid to Lead Counsel upon final approval of the Settlement by the Court, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, subject to Plaintiffs' Counsel's obligation to make full refunds or repayments to the Escrow Account plus interest earned thereon if the award is lowered or the Settlement is disapproved by a final order not subject to further review. An award of attorneys' fees or Litigation Expenses is not a necessary term of this Stipulation and is not a condition of the Settlement embodied herein. Neither Plaintiffs nor Lead Counsel may cancel or terminate the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees or Litigation Expenses.

17.    Defendants' Releasees shall have no responsibility for or liability whatsoever with respect to the allocation or award of attorneys' fees or Litigation Expenses. The attorneys' fees and Litigation Expenses that are awarded to Plaintiffs' Counsel shall be payable solely from the Settlement Fund in the Escrow Account.

## NOTICE AND SETTLEMENT ADMINISTRATION

18.     As part of the Preliminary Approval Order, Plaintiffs shall seek appointment of a

Claims Administrator. The Claims Administrator shall administer the Settlement, including but

not limited to the process of receiving, reviewing and approving or denying Claims, under Lead

Counsel's supervision and subject to the jurisdiction of the Court. None of the Defendants, nor any

other Defendants' Releasees, shall have any involvement in or any responsibility, authority or

liability whatsoever for the selection of the Claims Administrator, the Plan of Allocation, the

administration of the Settlement, the Claims process, or disbursement of the Net Settlement Fund,

and shall have no liability whatsoever to any person or entity, including, but not limited to,

Plaintiffs, any other Settlement Class Members or Lead Counsel in connection with the foregoing.

Defendants' Counsel shall cooperate in the administration of the Settlement to the extent

reasonably necessary to effectuate its terms. To assist in dissemination of notice, RenovaCare will

cooperate in obtaining from RenovaCare's transfer agent records containing the identity of

Settlement Class Members, including any names, addresses, and email addresses (to the extent

email addresses are available) of Settlement Class Members and nominees or custodians that exists

in such transfer records ("Settlement Class Information"). Nothing herein shall require

RenovaCare to make efforts to identify Settlement Class Members other than record holders.

RenovaCare shall provide, or cause to be provided, to Lead Counsel or the Claims Administrator,

at no cost to Plaintiffs, no later than ten (10) days after the Court enters the Preliminary Approval

Order, transfer records containing the Settlement Class Information in electronic searchable form,

such as Excel. The Parties acknowledge that any information provided to Lead Counsel by

RenovaCare pursuant to this Paragraph shall be treated as confidential and will be used by Lead

Counsel solely to deliver the Postcard Notice and/or implement the Settlement, including the Plan of Allocation.

19.    In accordance with the terms of the Preliminary Approval Order to be entered by the Court, Lead Counsel shall cause the Claims Administrator to mail the Postcard Notice by first-class mail and (to the extent possible) email the direct link to the Notice and Claim Form to those members of the Settlement Class as may be identified through reasonable effort. Lead Counsel shall also cause the Claims Administrator to: (a) post downloadable copies of the Notice and Claim Form online at www.strategicclaims.net/renovacare, and (b) have the Summary Notice published in accordance with the terms of the Preliminary Approval Order to be entered by the Court.

20.    The Claims Administrator shall receive Claims and determine first, whether the Claim is a valid Claim, in whole or part, and second, each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's Recognized Claim compared to the total Recognized Claims of all Authorized Claimants (as set forth in the Plan of Allocation set forth in the Notice attached hereto as Exhibit 1 to Exhibit A, or in such other plan of allocation as the Court approves).

21.    The Plan of Allocation proposed in the Notice is not a necessary term of the Settlement or of this Stipulation and it is not a condition of the Settlement or of this Stipulation that any particular plan of allocation be approved by the Court. Plaintiffs and Lead Counsel may not cancel or terminate the Settlement (or this Stipulation) based on this Court's or any appellate court's ruling with respect to the Plan of Allocation or any other plan of allocation in this Action. Defendants and the other Defendants' Releasees shall not object in any way to the Plan of Allocation or any other plan of allocation in this Action. No Defendant, nor any other Defendants'

Releasees, shall have any involvement with or liability, obligation or responsibility whatsoever for the application of the Court-approved plan of allocation.

22.     Any Settlement Class Member who does not submit a valid Claim Form will not be entitled to receive any distribution from the Net Settlement Fund, but will otherwise be bound by all of the terms of this Stipulation and Settlement, including the terms of the Judgment to be entered in the Action and the releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim, or other proceeding of any kind against the Defendants' Releasees with respect to the Released Plaintiffs' Claims in the event that the Effective Date occurs with respect to the Settlement.

23.     Lead Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval. No Defendant, or any other Defendants' Releasees, shall be permitted to review, contest or object to any Claim Form, or any decision of the Claims Administrator or Lead Counsel with respect to accepting or rejecting any Claim for payment by a Settlement Class Member. Lead Counsel shall have the right, but not the obligation, to waive what it deems to be formal or technical defects in any Claim Forms submitted in the interests of achieving substantial justice.

24.     For purposes of determining the extent, if any, to which a Settlement Class Member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

a.     Each Settlement Class Member shall be required to submit a Claim Form, substantially in the form attached hereto as Exhibit 2 to Exhibit A, supported by such documents as are designated therein, including proof of the Claimant's loss, or such other documents or proof as the Claims Administrator or Lead Counsel, in their discretion, may deem acceptable;

21

b.        All Claim Forms must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice. Any Settlement Class Member who fails to submit a Claim Form by such date shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (unless by Order of the Court such Settlement Class Member's Claim Form is accepted), but shall in all other respects be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action, claim or other proceeding of any kind against any Defendants' Releasees with respect to any Released Plaintiffs' Claim. Provided that it is mailed by the claim submission deadline, a Claim Form shall be deemed to be submitted when postmarked, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon. In all other cases, the Claim Form shall be deemed to have been submitted on the date when actually received by the Claims Administrator;

c.        Each Claim Form shall be submitted to and reviewed by the Claims Administrator, who shall determine in accordance with this Stipulation and the plan of allocation the extent, if any, to which each Claim shall be allowed, subject to review by the Court pursuant to subparagraph (e) below as necessary;

d.        Claim Forms that do not meet the submission requirements may be rejected. Prior to rejecting a Claim in whole or in part, the Claims Administrator shall communicate with the Claimant in writing, to give the Claimant the chance to remedy any curable deficiencies in the Claim Form submitted. The Claims Administrator shall notify, in a timely fashion and in writing, all Claimants whose Claim the Claims Administrator proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the Claimant whose Claim is to be

rejected has the right to a review by the Court if the Claimant so desires and complies with the requirements of subparagraph (e) below; and

       e.     If any Claimant whose Claim has been rejected in whole or in part desires to contest such rejection, the Claimant must, within fourteen (14) days after the date of mailing of the notice required in subparagraph (d) above, serve upon the Claims Administrator a notice and statement of reasons indicating the Claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court. If a dispute concerning a Claim cannot be otherwise resolved, Lead Counsel shall thereafter present the request for review to the Court.

25.     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, and the Claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided, however, that such investigation and discovery shall be limited to that Claimant's status as a Settlement Class Member and the validity and amount of the Claimant's Claim. No discovery shall be allowed on the merits of this Action or of the Settlement in connection with the processing of Claim Forms.

26.     Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for a Class Distribution Order: (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; and (b) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.

27.     Payment pursuant to the Class Distribution Order shall be final and conclusive against all Settlement Class Members. All Settlement Class Members whose Claims are not approved by the Court for payment shall be barred from participating in distributions from the Net

Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment to be entered in this Action and the Releases provided for herein and therein, and will be permanently barred and enjoined from bringing any action against any and all Defendants' Releasees with respect to any and all of the Released Plaintiffs' Claims.

28.     If any funds remain in the Net Settlement Fund by reason of uncashed checks or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Settlement Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distribution checks, any balance remaining in the Net Settlement Fund six (6) months after the initial distribution of such funds shall be re-distributed, if economically feasible, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund for such redistribution, to Settlement Class Members who have cashed their checks and who would receive at least $10.00 from such re-distribution. These redistributions shall be repeated, if economically feasible, until the balance remaining in the Net Settlement Fund is *de minimis* and such remaining balance will then be distributed to a non-sectarian, not-for-profit organization identified by Lead Counsel and approved by the Court.

29.     Plaintiffs and Defendants, and their respective counsel, Plaintiffs' damages expert, the Claims Administrator and/or any other agent designated by Lead Counsel, the Releasees and/or their respective counsel, shall have no liability whatsoever for the investment or distribution of the Settlement Fund or the Net Settlement Fund made substantially in accordance with this Stipulation and the Settlement contained herein, the Plan of Allocation, or orders of the Court, or the determination, administration, calculation, or payment of any claim by the Claims Administrator,

the payment or withholding of taxes (including interest and penalties) owed by the Settlement Fund, or any losses incurred in connection therewith.

30.     All proceedings with respect to the administration, processing and determination of Claims and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of Claims, shall be subject to the jurisdiction of the Court. All Settlement Class Members and Parties to this Settlement expressly waive trial by jury (to the extent any such right may exist) and any right of appeal or review with respect to such determinations.

## **TERMS OF THE JUDGMENT**

31.     If the Settlement contemplated by this Stipulation is approved by the Court, Lead Counsel and Defendants' Counsel shall request that the Court enter a Judgment, substantially in the form attached hereto as Exhibit B.

## **CONDITIONS OF SETTLEMENT AND EFFECT OF DISAPPROVAL, CANCELLATION, OR TERMINATION**

32.     The Effective Date of the Settlement shall be deemed to occur on the occurrence or waiver of all of the following events:

a.     the Court has entered the Preliminary Approval Order, substantially in the form set forth in Exhibit A attached hereto, as required by ¶ 3 above;

b.     the Settlement Amount has been deposited into the Escrow Account in accordance with the provisions of ¶ 8 above;

c.     Defendants have not exercised their option to terminate the Settlement pursuant to the provisions of this Stipulation (including the Supplemental Agreement described in ¶ 35 below);

d.      Plaintiffs have not exercised their option to terminate the Settlement pursuant to the provisions of this Stipulation; and

e.      the Court has approved the Settlement as described herein, following notice to the Settlement Class and a hearing, as prescribed by Rule 23 of the Federal Rules of Civil Procedure, and entered the Judgment and the Judgment has become Final.

33.     Upon the occurrence of all of the events referenced in ¶ 32 above, any and all remaining interest or right of Defendants in or to the Settlement Fund, if any, shall be absolutely and forever extinguished and the Releases herein shall be effective.

34.     If (i) Defendants exercise their right to terminate the Settlement as provided in this Stipulation; (ii) Plaintiffs exercise their right to terminate the Settlement as provided in this Stipulation; (iii) the Court disapproves the Settlement; or (iv) the Effective Date as to the Settlement otherwise fails to occur, then:

a.      The Settlement and the relevant portions of this Stipulation shall be canceled and terminated.

b.      Plaintiffs and Defendants shall revert to their respective positions in the Action as of August 9, 2024.

c.      The terms and provisions of this Stipulation, with the exception of this ¶ 34 and ¶¶ 14, 16, 36 and 55, shall have no further force and effect with respect to the Parties and shall not be used in the Action or in any other proceeding for any purpose, and any Judgment, or order entered by the Court in accordance with the terms of this Stipulation shall be treated as vacated, *nunc pro tunc*.

d.      Within seven (7) business days after joint written notification of termination is sent by Defendants' Counsel and Lead Counsel to the Escrow Agent, the Settlement Fund

26

(including accrued interest thereon and any funds received by Lead Counsel consistent with ¶ 16 above), less any Notice and Administration Costs actually incurred, paid or payable and less any Taxes paid, due or owing, shall be refunded by the Escrow Agent to Defendants' Counsel (or such other persons or entities as Defendants' Counsel may direct).

35.     Defendants, provided they unanimously agree, shall have the unilateral right to terminate the Settlement in the event that Settlement Class Members timely and validly requesting exclusion from the Settlement Class meet the conditions set forth in Defendants' confidential supplemental agreement with Plaintiffs (the "Supplemental Agreement"), in accordance with the terms of that agreement (the "Supplemental Termination Option"). The Supplemental Agreement, which is being executed concurrently herewith, is confidential and shall not be filed with the Court and its terms shall not be disclosed in any other manner (other than the statements herein and in the Notice, to the extent necessary, or as otherwise provided in the Supplemental Agreement) or to any person other than the named Parties and their representatives unless and until the Court otherwise directs or a dispute arises between Plaintiffs and Defendants concerning its interpretation or application, in which event the Parties shall submit the Supplemental Agreement to the Court *in camera* and request that the Court afford it confidential treatment.

## NO ADMISSION OF WRONGDOING

36.     Neither this Stipulation (whether or not consummated), including the exhibits hereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of this Stipulation, nor any proceedings taken pursuant to or in connection with this Stipulation, and/or approval of the Settlement (including any arguments proffered in connection therewith):

a.      shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees or in any way referred to for any other reason against any of the Defendants' Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation;

b.      shall be offered against any of the Plaintiffs' Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiffs' Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Stipulation; or

c.      shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given hereunder represents the amount which could be or would have been recovered after trial; *provided, however*, that if this Stipulation is approved by the Court, the Parties and the Releasees and their respective counsel may refer to it to effectuate the protections from liability granted hereunder or otherwise to enforce the terms of the Settlement.

## <u>MISCELLANEOUS PROVISIONS</u>

28

37.     All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein. Notwithstanding the foregoing, in the event that there exists a conflict or inconsistency between the terms of this Stipulation and the terms of any exhibit attached hereto, the terms of the Stipulation shall prevail.

38.     Defendants warrant that, as to the payments made or to be made on their behalf, at the time of entering into this Stipulation and at the time of such payment, to their knowledge any persons or entities making or contributing to the payment of the Settlement Amount were not insolvent, nor will the payment required to be made by or on behalf of Defendants render any such persons or entities insolvent, within the meaning of and/or for the purposes of the United States Bankruptcy Code, including §§ 101 and 547 thereof.

39.     The Parties intend this Stipulation and the Settlement to be a final and complete resolution of all disputes asserted or which could be asserted by Plaintiffs and any other Settlement Class Members against the Defendants' Releasees with respect to the Released Plaintiffs' Claims. Accordingly, Plaintiffs and their counsel and Defendants and their counsel agree not to assert in any forum that this Action was brought by Plaintiffs or defended by Defendants in bad faith or without a reasonable basis. No Party shall assert any claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the institution, prosecution, defense, or settlement of this Action. The Parties agree that the amounts paid and the other terms of the Settlement were negotiated at arm's-length and in good faith by the Parties, including through a mediation process supervised and conducted by Jed Melnick, Esq., and reflect the Settlement that was reached voluntarily after extensive negotiations and consultation with experienced legal counsel, who were fully competent to assess the strengths and weaknesses of their respective clients' claims or defenses.

29

40.     Defendants retain their right to deny that the claims asserted in the Action were meritorious and Plaintiffs retain their right to assert that their claims in the Action were meritorious. However, in any statement made on a website, social media, to the public, or to any media representative (whether or not for attribution), Defendants and their counsel will not assert that the Action was commenced or prosecuted in bad faith, nor will they deny that the Action was commenced and prosecuted in good faith and is being settled voluntarily after consultation with competent legal counsel. Similarly, in any statement made on a website, social media, to the public, or to any media representative (whether or not for attribution), Plaintiffs and their counsel will not assert that the Action was defended in bad faith, nor will they deny that Defendants defended the Action in good faith and that the Action is being settled voluntarily after consultation with competent legal counsel. In all events, Plaintiffs and their counsel and Defendants and their counsel shall not make any accusations of wrongdoing or sanctionable or actionable conduct by either Party concerning the commencement, prosecution, defense, and resolution of the Action, and shall not otherwise suggest that the Settlement constitutes an admission of any claim or defense alleged.

41.     The terms of the Settlement, as reflected in this Stipulation, may not be modified or amended, nor may any of its provisions be waived except by a writing signed on behalf of both Plaintiffs and Defendants (or their successors-in-interest).

42.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

43.     The administration and consummation of the Settlement as embodied in this Stipulation shall be under the authority of the Court, and the Court shall retain jurisdiction for the purpose of entering orders providing for awards of attorneys' fees and Litigation Expenses to

Plaintiffs' Counsel and enforcing the terms of this Stipulation, including the Plan of Allocation (or

such other plan of allocation as may be approved by the Court), and the distribution of the Net

Settlement Fund to Settlement Class Members.

44.    The waiver by one Party of any breach of this Stipulation by any other Party shall

not be deemed a waiver of any other prior or subsequent breach of this Stipulation.

45.    This Stipulation and its exhibits and the Supplemental Agreement constitute the

entire agreement among Plaintiffs and Defendants concerning the Settlement and this Stipulation

and its exhibits. All Parties acknowledge that no other agreements, representations, warranties, or

inducements have been made by any Party hereto concerning this Stipulation, its exhibits or the

Supplemental Agreement other than those contained and memorialized in such documents.

46.    This Stipulation may be executed in one or more counterparts, including by a .pdf

or .tif image of the signature via email. All executed counterparts and each of them shall be deemed

to be one and the same instrument.

47.    This Stipulation shall be binding upon and inure to the benefit of the successors and

assigns of the Parties, including any and all Releasees and any corporation, partnership, or other

entity into or with which any Party hereto may merge, consolidate or reorganize.

48.    The construction, interpretation, operation, effect and validity of this Stipulation,

the Supplemental Agreement and all documents necessary to effectuate it shall be governed by the

internal laws of the State of New Jersey without regard to conflicts of laws, except to the extent

that federal law requires that federal law govern.

49.    Any action arising under or to enforce this Stipulation or any portion thereof, shall

be commenced and maintained only in this Court, the United States District Court for the District

of New Jersey.

50.    This Stipulation shall not be construed more strictly against one Party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the Parties, it being recognized that it is the result of arm's-length negotiations between the Parties and all Parties have contributed substantially and materially to the preparation of this Stipulation.

51.    All counsel and any other person executing this Stipulation and any of the exhibits hereto, or any related Settlement documents, warrant and represent that they have the full authority to do so and that they have the authority to take appropriate action required or permitted to be taken pursuant to the Stipulation to effectuate its terms.

52.    Lead Counsel and Defendants' Counsel agree to cooperate fully with one another in seeking Court approval of the Preliminary Approval Order and the Settlement, as embodied in this Stipulation, and to use best efforts to promptly agree upon and execute all such other documentation as may be reasonably required to obtain final approval by the Court of the Settlement.

53.    If any Party is required to give notice to another Party under this Stipulation, such notice shall be in writing and shall be deemed to have been duly given upon receipt of hand delivery or email transmission, with confirmation of receipt. Notice shall be provided as follows:

If to Plaintiffs or Plaintiffs' Counsel:    HAGENS BERMAN SOBOL SHAPIRO LLP
Attn: Reed Kathrein
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
(510) 725-3000
reed@hbsslaw.com

POMERANTZ LLP
Attn: Jeremy A. Lieberman
     Murielle J. Steven Walsh
600 Third Avenue, 20th Floor
New York, New York 10016
(212) 661-1100

jalieberman@pomlaw.com
mjsteven@pomlaw.com

If to Defendants or Defendants' Counsel:    COZEN O'CONNOR
Attn: Joseph P. Dever
3 WTC, 175 Greenwich Street, 55th Floor
New York, NY 10007
(212) 453-3916
Jdever@cozen.com

KING & SPALDING LLP
Attn: Craig Carpenito
1185 Avenue of the Americas
34th Floor
New York, NY 10036
(212) 556-2142
ccarpenito@kslaw.com

54.    Except as otherwise provided herein, each Party shall bear its own costs.

55.    Whether or not the Stipulation is approved by the Court and whether or not the Stipulation is consummated, or the Effective Date occurs, the Parties and their counsel shall use their best efforts to keep all negotiations, discussions, acts performed, agreements, drafts, documents signed and proceedings in connection with the Stipulation confidential except as required by applicable law.

56.    All agreements made and orders entered during the course of this Action relating to the confidentiality of information shall survive this Settlement.

57.    Defendants shall be responsible for timely service of any notices that might be required pursuant to the Class Action Fairness Act of 1995, 28 U.S.C. § 1715 ("CAFA"). Defendants shall notify Lead Counsel as to the completion of any CAFA notice. Defendants shall bear all cost and expenses associated with providing CAFA notice.

58.    No opinion or advice concerning the tax consequences of the proposed Settlement to individual Settlement Class Members is being given or will be given by the Parties or their

counsel, nor is any representation or warranty in this regard made by virtue of this Stipulation. Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Stipulation to be executed, by their duly authorized attorneys, as of September 23, 2024.

**SIGNED:**

HAGENS BERMAN SOBOL SHAPIRO LLP

*/s/ Reed R. Kathrein*
Reed R. Kathrein (*pro hac vice*)
Lucas E. Gilmore (*pro hac vice*)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

HAGENS BERMAN SOBOL SHAPIRO LLP
Steve W. Berman (*pro hac vice*)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

***Lead Counsel for Lead Plaintiff Diana Deidan***

POMERANTZ LLP

*/s/ Murielle J. Steven Walsh*
Thomas H. Przybylowski
Jeremy A. Lieberman (*pro hac vice*)
J. Alexander Hood II (*pro hac vice*)
Murielle J. Steven Walsh (*pro hac vice*)

Emily C. Finestone (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
tprzybylowski@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com
mjsteven@pomlaw.com
efinestone@pomlaw.com

**Counsel for Named Plaintiff Marc Jay Gannon**

COZEN O'CONNOR


*/s/ Joseph P. Dever*
Joseph P. Dever
Tamar S. Wise (*pro hac vice*)
3 WTC, 175 Greenwich Street, 55th Floor
New York, NY 10007
Telephone: (212) 453-3916
Facsimile: (917) 521-5875
Jdever@cozen.com
Twise@cozen.com

**Counsel for Defendants RenovaCare, Inc., Harmel Rayat, Jatinder Bhogal and 1420527 Alberta Ltd.**

KING & SPALDING LLP


*/s/ Craig Carpenito*
Craig Carpenito
Andrew Michaelson (*pro hac vice*)
1185 Avenue of the Americas
34th Floor
New York, NY 10036
Telephone: (212) 556 2142
Facsimile: (212) 556 2222
ccarpenito@kslaw.com
amichaelson@kslaw.com

35

Alexander McLamb (*pro hac vice*)
1700 Pennsylvania Avenue, NW
Suite 900
Washington, D.C. 20006
Telephone: (202) 737-0500
amclamb@kslaw.com

***Attorneys for Defendant Jeetenderjit Singh Sidhu***

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

IN RE RENOVACARE, INC. SECURITIES
LITIGATION

Case No. 2:21-cv-13766-BRM-ESK

---

## [PROPOSED] ORDER PRELIMINARILY APPROVING
## SETTLEMENT AND PROVIDING FOR NOTICE

WHEREAS, a consolidated class action is pending in this Court styled *In re RenovaCare, Inc. Securities Litigation*, No. 2:21-cv-13766-BRM-ESK (the "Action");

WHEREAS, (a) Lead Plaintiff Diana Deidan and Named Plaintiff Marc Jay Gannon ("Plaintiffs"), on behalf of themselves and the Settlement Class, and (b) Defendants RenovaCare, Inc. ("RenovaCare"), Harmel Rayat, Jatinder Bhogal, 1420527 Alberta Ltd., and Jeetenderjit Singh Sidhu (collectively, "Defendants") (together with Plaintiffs, the "Parties") have determined to settle all claims asserted against Defendants in this Action with prejudice on the terms and conditions set forth in the Stipulation and Agreement of Settlement dated September 23, 2024 (the "Stipulation"), subject to approval of this Court ("Settlement");

WHEREAS, Plaintiffs have made an application, pursuant to Rule 23 of the Federal Rules of Civil Procedure, for an order preliminarily approving the Settlement in accordance with the Stipulation, certifying the Settlement Class for purposes of the Settlement only, and allowing notice to Settlement Class Members as more fully described herein;

WHEREAS, the Court has read and considered: (a) Plaintiffs' motion for preliminary approval of the Settlement, and the papers filed and arguments made in connection therewith; and

(b) the Stipulation and the exhibits attached thereto; and (c) finding that substantial and sufficient grounds exist for entering this Order; and the Parties having consented to this Order.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1. Unless otherwise defined herein, all capitalized words contained herein shall have the same meanings as they have in the Stipulation;

2. **Class Certification for Settlement Purposes** – Pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, the Court certifies, solely for purposes of effectuating the proposed Settlement, a Settlement Class consisting of all Persons and entities that purchased or otherwise acquired RenovaCare Securities between August 14, 2017 and May 28, 2021, inclusive (the "Settlement Class Period"), and were damaged thereby. Excluded from the Settlement Class are Defendants, the officers and directors of RenovaCare, at all relevant times, members of their Immediate Families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded are any persons or entities who properly exclude themselves by filing a valid and timely request for exclusion in accordance with the requirements set by the Court.

3. **Class Findings** – Solely for purposes of the proposed Settlement of this Action, the Court finds that each element required for certification of the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure has been met: (a) the members of the Settlement Class are so numerous that their joinder in the Action would be impracticable; (b) there are questions of law and fact common to the Settlement Class which predominate over any individual questions; (c) the claims of Plaintiffs in the Action are typical of the claims of the Settlement Class; (d) Plaintiffs, Lead Counsel, and Liaison Counsel have and will fairly and adequately represent

and protect the interests of the Settlement Class; and (e) a class action is superior to other available methods for the fair and efficient adjudication of the Action.

4.      The Court hereby finds and concludes that pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, Lead Plaintiff Diana Deidan and Named Plaintiff Marc Jay Gannon are adequate class representatives and certifies them as Class Representatives for the Settlement Class. The Court also appoints Lead Counsel as Class Counsel for the Settlement Class, and Liaison Counsel, Lite DePalma Greenberg & Afanador, LLC, as Liaison Counsel pursuant to Rule 23(g) of the Federal Rules of Civil Procedure.

5.      **Preliminary Approval of the Settlement** – The Court hereby preliminarily approves the Settlement, as embodied in the Stipulation, as being fair, reasonable and adequate to the Settlement Class, subject to further consideration at the Settlement Hearing to be conducted as described below.

6.      **Settlement Hearing** – The Court will hold a settlement hearing (the "Settlement Hearing") on _____, 2025 at __:__ _.m. at the United States District Court for the District of New Jersey, Honorable Brian Martinotti, U.S.D.J., Frank Lautenberg Post Office & U.S. Courthouse, 2 Federal Square, Courtroom PO 01, Newark, New Jersey 07102, or via Zoom or some other video platform, for the following purposes: (a) to determine whether the proposed Settlement on the terms and conditions provided for in the Stipulation is fair, reasonable and adequate to the Settlement Class, and should be approved by the Court; (b) to determine whether the proposed Order and Final Judgment substantially in the form attached as Exhibit B to the Stipulation should be entered dismissing the Action with prejudice against Defendants; (c) to determine whether the proposed Plan of Allocation for the proceeds of the Settlement is fair and reasonable and should be approved; (d) to determine whether the motion by Lead Counsel for an

3

award of attorneys' fees, reimbursement of Litigation Expenses, including interest earned thereon, and award to Lead Plaintiff should be approved; and (e) to consider any other matters that may properly be brought before the Court in connection with the Settlement.

7.      The Court reserves the right to adjourn the Settlement Hearing without further notice to the Settlement Class and may approve the proposed Settlement with such modifications as the Parties may agree to, if appropriate, without further notice to the Settlement Class.

8.      **<u>Retention of Claims Administrator and Manner of Giving Notice</u>** – Lead Counsel is hereby authorized to retain Strategic Claims Services, Inc. (the "Claims Administrator") to supervise and administer the notice procedure in connection with the proposed Settlement as well as the processing of Claims as more fully set forth below. Notice of the Settlement and the Settlement Hearing shall be given by Lead Counsel as follows:

a.      No later than ten (10) days after the date of this Order, RenovaCare shall provide and/or cause its transfer agent to provide to Lead Counsel or the Claims Administrator, at no cost to Plaintiffs, transfer records containing the Settlement Class Information in electronic searchable form, such as Excel. This information will be kept confidential and not used for any purpose other than to provide the notice contemplated by this Order.

b.      Within twenty (20) days of receipt of the Settlement Class Information (the "Notice Date"), the Claims Administrator shall cause a copy of the Postcard Notice, substantially in the form attached hereto as Exhibit 4, to be mailed by first-class mail and, to the extent that the Settlement Class Information includes valid email addresses, the link to the electronic Notice and the Claim Form, substantially in the forms attached hereto as Exhibits 1 and 2, to be emailed to potential Settlement Class Members who may be identified through reasonable effort;

     c.     Contemporaneously with the mailing of the Postcard Notice, the Claims Administrator shall cause copies of the Notice and the Claim Form, substantially in the forms attached hereto as Exhibits 1 and 2, to be posted on a website to be developed for the Settlement, from which copies of can be downloaded;

     d.     No later than ten (10) days after the Notice Date, the Claims Administrator shall cause the Summary Notice, substantially in the form attached hereto as Exhibit 3, to be published on a national business newswire in the United States; and

     e.     No later than seven (7) days prior to the Final Approval Hearing, Lead Counsel shall serve on Defendants' counsel and file with the Court proof, by affidavit or declaration, or such mailing and publication.

     9.     **Approval of Form and Content of Notice** – The Court (a) approves, as to form and content, the Notice, the Claim Form, the Summary Notice, and the Postcard Notice attached hereto as Exhibits 1, 2, 3, and 4, respectively, and (b) finds that the mailing and distribution of the Postcard Notice, the posting of the Notice and Claim Form online, and the publication of the Summary Notice in the manner and form set forth in paragraph 8 of this Order (i) is the best notice practicable under the circumstances; (ii) constitutes notice that is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the Action, of the effect of the proposed Settlement (including the Releases to be provided thereunder), of Lead Counsel's motion for an award of attorneys' fees, reimbursement of Litigation Expenses, including interest earned thereon, and award to Lead Plaintiff, of their right to object to the Settlement, the Plan of Allocation and/or Lead Counsel's motion for attorneys' fees, reimbursement of Litigation Expenses, including interest earned thereon, and award to Lead Plaintiff, of their right to exclude themselves from the Settlement Class, and of their right to appear at the Settlement Hearing; (iii)

constitutes due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (iv) satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78u-4, 77z–1, as amended, and all other applicable law and rules. The date and time of the Settlement Hearing shall be included in the Postcard Notice, Notice, and Summary Notice before they are mailed, emailed, posted online, and published.

10.    **<u>Nominee Procedures</u>** – Brokers and other nominees who purchased or otherwise acquired RenovaCare Securities during the Settlement Class Period for the benefit of another person or entity shall, within seven (7) days of receipt of the Claims Administrator's letter either: (a) request from the Claims Administrator sufficient copies of the Postcard Notice to forward to all such beneficial owners and within seven (7) days of receipt of those Postcard Notices mail them to all such beneficial owners; (b) request from the Claims Administrator the direct link to the Notice and Claim Form on the Settlement website and, within seven (7) days of receipt of the link, forward it to all such beneficial owners for whom valid email addresses are available; or (c) send a list of the names, mailing addresses and email addresses (to the extent available) of all such beneficial owners to the Claims Administrator, who shall promptly mail the Postcard Notice or email the direct link to the Long Notice and Claim Form to such beneficial owners. Brokers and other nominees shall also provide email addresses for all such beneficial owners to the Claims Administrator, to the extent they are available. Brokers and other nominees that choose to follow procedure (a) or (b) shall also send a statement to the Claims Administrator confirming that the mailing or emailing was made as directed. Brokers and other nominees are not authorized to print the Postcard Notice themselves for mailing. Postcard Notices may only be printed by the Claims

Administrator. The Claims Administrator shall, if requested, reimburse nominees or custodians out of the Settlement Fund solely for their reasonable out-of-pocket expenses actually incurred in providing notice to beneficial owners, up to a maximum of $0.03 per name, address, and email address provided to the Claims Administrator; $0.03 plus postage at the current pre-sort rate used by the Claims Administrator for each Postcard Notice actually mailed; or $0.03 per notice sent by email, and subject to further order of this Court with respect to any dispute concerning such reimbursement.

11.     **<u>Participation in the Settlement</u>** – Settlement Class Members who wish to participate in the Settlement and to be eligible to receive a distribution from the Net Settlement Fund must complete and submit a Claim Form in accordance with the instructions contained therein. Unless the Court orders otherwise, all Claim Forms must be postmarked or received no later than ninety (90) days after the Notice Date. Notwithstanding the foregoing, Lead Counsel may, at its discretion, accept for processing late Claims provided such acceptance does not delay the distribution of the Net Settlement Fund to the Settlement Class. By submitting a Claim, a person or entity shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her or its Claim and the subject matter of the Settlement.

12.     Any Settlement Class Member who does not timely submit a Claim Form shall be: (a) deemed to have waived his, her or its right to share in the Net Settlement Fund; (b) forever barred from participating in any distributions therefrom; (c) bound by the provisions of the Stipulation and the Settlement and all proceedings, determinations, orders and judgments in the Action relating thereto, including, without limitation, the Releases provided for therein, whether favorable or unfavorable to the Settlement Class; and (d) barred from commencing, maintaining

or prosecuting any of the Released Plaintiffs' Claims against each and all of the Defendants'

Releasees, as more fully described in the Stipulation and Notice.

13.     **<u>Exclusion From the Settlement Class</u>** – Any member of the Settlement Class may,

upon request, be excluded or "opt out" from the Settlement Class, provided that they request

exclusion in writing within the time and in the manner set forth in the Notice, which shall provide

that: (a) any such request for exclusion from the Settlement Class must be mailed or delivered to

the Claims Administrator at the address designated in the Notice, such that it is received no later

than twenty-one (21) days prior to the Final Approval Hearing; and (b) each request for exclusion

must (i) state the name, address, and telephone number of the person or entity requesting exclusion,

and in the case of entities, the name and telephone number of the appropriate contact person;

(ii) state that such person or entity "requests exclusion from the Settlement Class in *In re*

*RenovaCare, Inc. Securities Litigation*, No. 2:21-cv-13766-BRM-ESK"; (iii) state the number of

shares of RenovaCare common stock that the person or entity requesting exclusion purchased,

acquired, and/or sold during the Settlement Class Period, as well as the dates and prices of each

such purchase, acquisition, or sale; and (iv) be signed by the person or entity requesting exclusion

or an authorized representative accompanied by proof of authorization.  The request for exclusion

shall not be effective unless it provides all the required information and is received within the time

stated above or is otherwise accepted by the Court.

14.     Any person or entity who or which timely and validly requests exclusion in

compliance with the terms stated in this Order and is excluded from the Settlement Class shall not

be a Settlement Class Member, shall not be bound by the terms of the Settlement or any orders or

judgments in the Action and shall not receive any payment out of the Net Settlement Fund.

15.     Any Settlement Class Member who or which does not timely and validly request exclusion from the Settlement Class in the manner stated in this Order: (a) shall be deemed to have waived his, her or its right to be excluded from the Settlement Class; (b) shall be forever barred from requesting exclusion from the Settlement Class in this or any other proceeding; (c) shall be bound by the provisions of the Stipulation and Settlement and all proceedings, determinations, orders and judgments in the Action, including, but not limited to the Releases provided for therein, whether favorable or unfavorable to the Settlement Class; and (d) will be barred from commencing, maintaining or prosecuting any of the Released Plaintiffs' Claims against any of the Defendants' Releasees, as more fully described in the Stipulation and Notice.

16.     **<u>Appearance and Objections at Settlement Hearing</u>** – Any Settlement Class Member who does not request exclusion from the Settlement Class may enter an appearance in the Action, at his, her, or its own expense, individually or through his, her, or its counsel, by filing with the Clerk of Court for the United States District Court of the District of New Jersey and delivering a notice of appearance to both Lead Counsel and Defendants' Counsel, at the addresses set forth in paragraph 17 below, such that it is received no later than twenty-one (21) days prior to the Final Approval Hearing, or as the Court may otherwise direct. Any Settlement Class Member who does not enter an appearance will be represented by Lead Counsel.

17.     Any Settlement Class Member who does not request exclusion from the Settlement Class may file a written objection to the proposed Settlement, the proposed Plan of Allocation, and/or Lead Counsel's motion for an award of attorneys' fees, reimbursement of Litigation Expenses, including interest earned thereon, and award to Lead Plaintiff, and appear and show cause, if he, she, or it has any cause, why the proposed Settlement, the proposed Plan of Allocation and/or Lead Counsel's motion for attorneys' fees, reimbursement of Litigation Expenses, and

award to Lead Plaintiff should not be approved; provided, however, that no Settlement Class Member shall be heard or entitled to contest the approval of the terms and conditions of the proposed Settlement, the proposed Plan of Allocation and/or the motion for attorneys' fees, reimbursement of Litigation Expenses, and award to Lead Plaintiff unless that person or entity has filed a written objection with the Court and served copies of such objection on Plaintiffs' Counsel and Defendants' Counsel at the addresses set forth below such that they are received no later than twenty-one (21) days prior to the Final Approval Hearing.

| **Lead Counsel** | **Defendants' Counsel** |
|---|---|
| **HAGENS BERMAN SOBOL SHAPIRO LLP** | **COZEN O'CONNOR** |
| Reed R. Kathrein | Joseph P. Dever |
| 715 Hearst Avenue, Suite 202 | 3 WTC, 175 Greenwich Street, |
| Berkeley, CA 94710 | 55th Floor |
| | New York, NY 10007 |
| | |
| | **KING & SPALDING LLP** |
| | Craig Carpenito |
| | 1185 Avenue of the Americas |
| | 34th Floor |
| | New York, NY 10036 |

18.     Any objections, filings and other submissions by the objecting Settlement Class Member: (a) must state the name, address, and telephone number of the person or entity objecting and must be signed by the objector; (b) must contain a statement of the Settlement Class Member's objection(s), and the specific reasons for each objection, including any legal and evidentiary support the Settlement Class Member wishes to bring to the Court's attention; and (c) must include documents sufficient to prove membership in the Settlement Class, including the number of shares of RenovaCare common stock that the objecting Settlement Class Member purchased, acquired, and/or sold during the Settlement Class Period, as well as the dates and prices of each such purchase, acquisition, and sale. Objectors who enter an appearance and desire to present evidence

at the Settlement Hearing in support of their objection must include in their written objection or notice of appearance the identity of any witnesses they may call to testify and any exhibits they intend to introduce into evidence at the Final Approval Hearing.

19.    Any Settlement Class Member who or which does not make his, her, or its objection in the manner provided herein shall be deemed to have waived his, her, or its right to object to any aspect of the proposed Settlement, the proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees, reimbursement of Litigation Expenses, including interest earned thereon, and award to Lead Plaintiff and shall be forever barred and foreclosed from objecting to the fairness, reasonableness or adequacy of the Settlement, the Plan of Allocation or the requested attorneys' fees, Litigation Expenses, and award to Lead Plaintiff, or from otherwise being heard concerning the Settlement, the Plan of Allocation or the requested attorneys' fees, Litigation Expenses, and award to Lead Plaintiff in this or any other proceeding.

20.    **Stay and Temporary Injunction** – Until otherwise ordered by the Court, the Court stays all proceedings in the Action other than proceedings necessary to carry out or enforce the terms and conditions of the Stipulation. Pending final determination of whether the Settlement should be approved, the Court bars and enjoins Plaintiffs, and all other members of the Settlement Class, from commencing or prosecuting any and all of the Released Plaintiffs' Claims against each and all of the Defendants' Releasees.

21.    **Settlement Administration Fees and Expenses** – All reasonable costs incurred in identifying Settlement Class Members and notifying them of the Settlement as well as in administering the Settlement shall be paid as set forth in the Stipulation without further order of the Court.

11

22.    **Settlement Fund** – The contents of the Settlement Fund held by Strategic Claims Services, Inc. (which the Court approves as the Escrow Agent), shall be deemed and considered to be in *custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court, until such time as they shall be distributed pursuant to the Stipulation and/or further order(s) of the Court.

23.    **Taxes** – Lead Counsel is authorized and directed to prepare any tax returns and any other tax reporting form for or in respect to the Settlement Fund, to pay from the Settlement Fund any Taxes owed with respect to the Settlement Fund, and to otherwise perform all obligations with respect to Taxes and any reporting or filings in respect thereof without further order of the Court in a manner consistent with the provisions of the Stipulation.

24.    **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation, the Settlement is not approved, or the Effective Date of the Settlement otherwise fails to occur, this Order shall be vacated, rendered null and void and be of no further force and effect, except as otherwise provided by the Stipulation, and this Order shall be without prejudice to the rights of Plaintiffs, the other Settlement Class Members and Defendants, and the Parties shall revert to their respective positions in the Action as of August 9, 2024, as provided in the Stipulation.

25.    **Use of this Order** – Neither this Order, the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Stipulation, nor any proceedings pursuant to or in connection with the Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith): (a) shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or

12

deemed to be evidence of any presumption, concession, or admission by any of the Defendants'
Releasees with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that
was or could have been asserted or the deficiency of any defense that has been or could have been
asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other
wrongdoing of any kind of any of the Defendants' Releasees or in any way referred to for any
other reason as against any of the Defendants' Releasees, in any civil, criminal or administrative
action or proceeding, other than such proceedings as may be necessary to effectuate the provisions
of the Stipulation; (b) shall be offered against any of the Plaintiffs' Releasees, as evidence of, or
construed as, or deemed to be evidence of any presumption, concession or admission by any of the
Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants'
Releasees had meritorious defenses, or that damages recoverable under the Complaint would not
have exceeded the Settlement Amount or with respect to any liability, negligence, fault or
wrongdoing of any kind, or in any way referred to for any other reason as against any of the
Plaintiffs' Releasees, in any civil, criminal or administrative action or proceeding, other than such
proceedings as may be necessary to effectuate the provisions of the Stipulation; or (c) shall be
construed against any of the Releasees as an admission, concession, or presumption that the
consideration to be given under the Settlement represents the amount which could be or would
have been recovered after trial; *provided, however*, that if the Stipulation is approved by the Court,
the Parties and the Releasees and their respective counsel may refer to it to effectuate the
protections from liability granted thereunder or otherwise to enforce the terms of the Settlement.

26.    **Supporting Papers** – Lead Counsel shall file and serve the opening papers in
support of the proposed Settlement, the Plan of Allocation, and Lead Counsel's motion for an
award of attorneys' fees, reimbursement of Litigation Expenses, and award to Lead Plaintiff no

later than thirty-five (35) days prior to the Settlement Hearing; and reply papers, if any, shall be

filed and served no later than seven (7) days prior to the Settlement Hearing.

27.     The Court retains jurisdiction to consider all further applications arising out of or

connected with the proposed Settlement.


SO ORDERED this _____ day of _____, 2024.


_____
THE HONORABLE BRIAN MARTINOTTI
UNITED STATES DISTRICT JUDGE

# EXHIBIT A-1

**Exhibit A-1**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE RENOVACARE, INC. SECURITIES LITIGATION | Case No. 2:21-cv-13766-BRM-ESK |

### NOTICE OF PENDENCY AND PROPOSED SETTLEMENT OF CLASS ACTION

_**A Federal Court authorized this Notice. This is not a solicitation from a lawyer.**_

**NOTICE OF PENDENCY OF CLASS ACTION:** Please be advised that your rights may be affected by the above-captioned securities class action (the "Action") pending in the United States District Court for the District of New Jersey (the "Court"), if, during the period between August 14, 2017 and May 28, 2021, inclusive (the "Settlement Class Period"), you purchased or otherwise acquired RenovaCare, Inc. ("RenovaCare" or the "Company") securities, and were damaged thereby.[1]

**NOTICE OF SETTLEMENT**: Please also be advised that the Court-appointed Lead Plaintiff Diana Deidan, and Named Plaintiff Marc Jay Gannon (collectively, "Plaintiffs"), on behalf of themselves and the Settlement Class (as defined in ¶ 21 below), have reached a proposed settlement of the Action for $2,000,000 in cash that, if approved, will resolve all claims in the Action (the "Settlement").

**PLEASE READ THIS NOTICE CAREFULLY. This Notice explains important rights you may have, including the possible receipt of cash from the Settlement. If you are a member of the Settlement Class, your legal rights will be affected whether or not you act. If you have any questions about this Notice, the proposed Settlement, or your eligibility to participate in the Settlement, please DO NOT contact RenovaCare, any other Defendants in the Action, or their counsel. All questions should be directed to Lead Counsel or the Claims Administrator (_see_ ¶ 79 below).**

1.      **Description of the Action and the Settlement Class:** This Notice relates to a proposed Settlement of claims in a pending securities class action brought by investors alleging, among other things, that defendants RenovaCare, Harmel Rayat ("Rayat"), Jatinder Bhogal ("Bhogal"), 1420527 Alberta Ltd. ("Alberta Ltd."), and Jeetenderjit Singh Sidhu ("Sidhu") (collectively,

---

[1] All capitalized terms used in this Notice that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated September 23, 2024 (the "Stipulation"), which is available at www.strategicclaims.net/renovacare.

"Defendants"), violated the federal securities laws. A more detailed description of the Action is set forth in paragraphs 11-20 below. The proposed Settlement, if approved by the Court, will settle claims of the Settlement Class, as defined in paragraph 21 below.

2.       **Statement of the Settlement Class's Recovery:** Subject to Court approval, Plaintiffs, on behalf of themselves and the Settlement Class, have agreed to settle the Action in exchange for a settlement payment of $2,000,000 in cash (the "Settlement Amount") to be deposited into an escrow account. The Net Settlement Fund (*i.e.*, the Settlement Amount plus any and all interest earned thereon (the "Settlement Fund") less (a) any Taxes, (b) any Notice and Administration Costs, (c) any Litigation Expenses awarded by the Court, (d) any attorneys' fees awarded by the Court, and (e) any award to Lead Plaintiff approved by the Court) will be distributed in accordance with a plan of allocation that is approved by the Court, which will determine how the Net Settlement Fund shall be allocated among members of the Settlement Class. The proposed plan of allocation (the "Plan of Allocation") is set forth in paragraphs 42-63 below.

3.       **Estimate of Average Amount of Recovery Per Share:** Based on Plaintiffs' consulting damages expert's estimates of the number of RenovaCare Securities purchased during the Settlement Class Period that may have been affected by the conduct at issue in the Action and assuming that all Settlement Class Members elect to participate in the Settlement, the estimated average recovery (before the deduction of any Court-approved fees, expenses and costs as described herein) is $0.31 per affected share of RenovaCare Securities. Settlement Class Members should note, however, that the foregoing average recovery per share is only an estimate. Some Settlement Class Members may recover more or less than this estimated amount depending on, among other factors, when and at what prices they purchased/acquired or sold their RenovaCare Securities, and the total number of valid Claim Forms submitted. Distributions to Settlement Class Members will be made based on the Plan of Allocation set forth herein or such other plan of allocation as may be ordered by the Court.

4.       **Average Amount of Damages Per Share**: The Parties do not agree on the average amount of damages per share that would be recoverable if Plaintiffs were to prevail in the Action. Among other things, Defendants do not agree with the assertion that they violated the federal securities laws or that any damages were suffered by any members of the Settlement Class as a result of their alleged conduct.

5.       **Attorneys' Fees and Expenses Sought**: Plaintiffs' Counsel have not received any payment of attorneys' fees for their representation of the Settlement Class and have advanced the funds to pay expenses necessarily incurred to prosecute this Action. Court-appointed Lead Counsel, Hagens Berman Sobol Shapiro LLP will apply to the Court for an award of attorneys' fees for all Plaintiffs' Counsel in an amount not to exceed 33 1/3% of the Settlement Fund plus interest. In addition, Lead Counsel will apply for reimbursement of Litigation Expenses paid or incurred in connection with the institution, prosecution and resolution of the claims against the Defendants, in an amount not to exceed $200,000 plus interest. Lead Counsel will also submit an application for an award to Lead Plaintiff related to her representation of the Settlement Class in an aggregate amount not to exceed $3,000. Any fees, awards, or expenses awarded by the Court will be paid from the Settlement Fund. Settlement Class Members are not personally liable for any

2

such fees or expenses. Estimates of the average cost per affected share, if the Court approves Lead Counsel's fee and expense application, is $0.14 per affected share of RenovaCare Securities.

6.       **Identification of Lead Counsel:** Plaintiffs and the Settlement Class are represented by Hagens Berman Sobol Shapiro LLP, 715 Hearst Avenue, Suite 202, Berkeley, CA 94710, (510) 725-3000.

7.       **Reasons for the Settlement:** Plaintiffs' principal reason for entering into the Settlement is the substantial immediate cash benefit for the Settlement Class without the risk or the delays inherent in further litigation. Moreover, the substantial cash benefit provided under the Settlement must be considered against the significant risk that a smaller recovery – or indeed no recovery at all – might be achieved after contested motions, a trial of the Action and the likely appeals that would follow a trial. This process could be expected to last several years. Defendants, who deny all allegations of wrongdoing or liability whatsoever, are entering into the Settlement solely to eliminate the uncertainty, burden and expense of further protracted litigation.

| YOUR LEGAL RIGHTS AND OPTIONS IN THE SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM ONLINE AT WWW.STRATEGICCLAIMS.NET/RENOVACARE OR POSTMARKED NO LATER THAN _____, 2024.** | This is the only way to be eligible to receive a payment from the Settlement Fund. If you are a Settlement Class Member, you will be bound by the Settlement as approved by the Court and you will give up any Released Plaintiffs' Claims (defined in ¶ 27 below) that you have against Defendants and the other Defendants' Releasees (defined in ¶ 28 below), so it is in your interest to submit a Claim Form. |
| **EXCLUDE YOURSELF FROM THE SETTLEMENT CLASS BY SUBMITTING A WRITTEN REQUEST FOR EXCLUSION SO THAT IT IS _RECEIVED_ NO LATER THAN _____, 2024.** | If you exclude yourself from the Settlement Class, you will not be eligible to receive any payment from the Settlement Fund. This is the only option that allows you to be part of any other lawsuit against any of the Defendants or the other Defendants' Releasees concerning the Released Plaintiffs' Claims. |
| **SUBMIT A WRITTEN OBJECTION SO THAT IT IS _RECEIVED_ NO LATER THAN _____, 2024.** | If you do not like the proposed Settlement, the proposed Plan of Allocation, or the request for attorneys' fees, reimbursement of Litigation Expenses, or service award to Lead Plaintiff, you may write to the Court and explain why |

3

| | you do not like them. You cannot object to the Settlement, the Plan of Allocation or the fee and expense request unless you are a Settlement Class Member and do not exclude yourself from the Settlement Class. |
|---|---|
| **GO TO A HEARING ON _____, 2024 AT __:__ __.M., AND FILE A NOTICE OF INTENTION TO APPEAR SO THAT IT IS *RECEIVED* NO LATER THAN _____, 2024.** | Filing an objection and notice of intention to appear by _____, 2024 allows you to speak in Court, at the discretion of the Court, about your objection. |
| **DO NOTHING.** | If you are a member of the Settlement Class and you do nothing, you will not be eligible to receive a payment from the Settlement Fund. You will, however, remain a member of the Settlement Class, which means that you give up your right to sue about the claims that are resolved by the Settlement and you will be bound by any judgments or orders entered by the Court in the Action. |

## WHAT THIS NOTICE CONTAINS

Why Did I Get Notice Of The Settlement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5

What Is This Case About? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 5

How Do I Know If I Am Affected By The Settlement? Who Is Included
    In The Settlement Class? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 7

What Might Happen If There Were No Settlement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 7

How Are Settlement Class Members Affected By The Action And
    The Settlement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 8

How Do I Participate In The Settlement? What Do I Need To Do? . . . . . . . . . . . . . . . . Page 9

How Much Will My Payment Be? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 10

What Payment Are The Attorneys For The Settlement Class Seeking?
    How Will The Lawyers Be Paid? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 16

What If I Do Not Want To Be A Member Of The Settlement Class?
    How Do I Exclude Myself? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 16

When And Where Will The Court Decide Whether To Approve The Settlement?
    Do I Have To Come To The Hearing? May I Speak At The Hearing If I
    Don't Like The Settlement? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 17

What If I Bought Shares On Someone Else's Behalf? . . . . . . . . . . . . . . . . . . . . . . . . . . . Page 19

Can I See The Court File? Whom Should I Contact If I Have Questions? . . . . . . . . . . . . Page 19

4

## WHY DID I GET NOTICE OF THE SETTLEMENT?

8.      The Court directed that a Postcard Notice be mailed to you because you or someone in your family or an investment account for which you serve as a custodian may have purchased or otherwise acquired RenovaCare Securities during the Settlement Class Period. The Court also directed that this Notice be posted online at www.strategicclaims.net/renovacare. The Court directed the Postcard Notice to be disseminated because, as a potential Settlement Class Member, you have a right to know about your options before the Court rules on the proposed Settlement.

9.      The purpose of this Notice is to inform you of the existence of this class action, how you might be affected, and how to exclude yourself from the Settlement Class if you wish to do so. It also informs you of the terms of the proposed Settlement, and of a hearing to be held by the Court to consider the fairness, reasonableness, and adequacy of the Settlement, the proposed Plan of Allocation and the motion by Lead Counsel for an award of attorneys' fees, reimbursement of Litigation Expenses, and award to Lead Plaintiff (the "Settlement Hearing"). See paragraphs 69-77 below for details about the Settlement Hearing, including the date and location of the hearing.

10.      The issuance of this Notice is not an expression of any opinion by the Court concerning the merits of any claim in the Action, and the Court still has to decide whether to approve the Settlement. If the Court approves the Settlement and a plan of allocation, then payments to Authorized Claimants will be made after any appeals are resolved and after the completion of all claims processing. Please be patient, as this process can take some time to complete.

## WHAT IS THIS CASE ABOUT?

11.      Two class action complaints were filed in the United States District Court for the District of New Jersey, which by Order dated November 23, 2021, were consolidated as *In re RenovaCare, Inc. Securities Litigation*, No. 2:21-cv-13766-BRM-ESK. In that same Order, Diana Deidan was appointed as Lead Plaintiff and Hagens Berman Sobol Shapiro LLP was appointed and approved to serve as Lead Counsel.

12.      On February 11, 2022, Plaintiffs filed an Amended Complaint.  Before Defendants responded to the Complaint, the parties filed a Stipulation and Consent Order whereby Lead Plaintiff sought leave to file a Second Amended Complaint in light of new allegations set forth in an Amended Complaint filed by the Securities and Exchange Commission on August 30, 2022, in the action styled *S.E.C. v. Rayat*, Case No. 1:21-cv-04777-LJL (S.D.N.Y.).  The Court "So Ordered" the Stipulation on November 14, 2022.

13.      On December 15, 2022, Lead Plaintiff filed a Second Amended Complaint asserting claims against Defendants, Thomas Bold, Sharon Fleming, Lou Betancourt, Treadstone Financial Group, Ltd. ("Treadstone Ltd."), Treadstone Financial Group LLC ("Treadstone LLC"), Capitol Information Group, Inc. d/b/a StreetAuthority.com (formerly Street Authority, LLC) ("CIG"), and Blackbriar Asset Management Ltd. ("Blackbriar") for violations of Section 9(f) of the Securities Exchange Act of 1934 (the "Exchange Act"), Section 10(b) of the Exchange Act and Rule 10b-5

promulgated thereunder, Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) promulgated thereunder, Section 20(a) of the Exchange Act, and Section 20(b) of the Exchange Act.  The Complaint alleged, *inter alia*, that Defendants orchestrated a long-term, concealed fraudulent stock promotion scheme designed to inflate RenovaCare's stock price and trading volume, so that Defendants could sell their shares at an inflated price. The alleged scheme involved accumulating and distributing millions of shares at below-market prices, coordinating the resale of restricted shares as free trading shares, and promoting the stock through a paid campaign that falsely claiming significant benefits and potential FDA approval for a RenovaCare device.

14.    On July 11, 2023, Plaintiffs filed a Notice of Voluntary Dismissal of Claims against Thomas Bold and Treadstone Ltd., which the Court entered on July 12, 2023.

15.    On October 10, 2023, CIG filed a motion to dismiss; RenovaCare, Rayat, Bhogal, and Alberta Ltd. collectively filed a motion to dismiss; and Sidhu, Treadstone LLC, and Blackbriar collectively filed a motion to dismiss.  Sharon Fleming and Lou Betancourt defaulted.

16.    On June 30, 2023, the Court granted in part and denied in part the motions to dismiss. The Court dismissed all claims against CIG, Treadstone LLC, and Blackbriar. The Court sustained claims against Bhogal and Sidhu under Section 9(f) of the Exchange Act (Count I), claims against RenovaCare and Rayat for violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder (Count II), claims against Defendants for violation of Section 10(b) of the Exchange Act and Rule 10b-5(a) and (c) promulgated thereunder (Count III), and the claim against Rayat  for violation of Section 20(a) of the Exchange Act (Count IV).

17.    On August 5, 2024, Plaintiffs' Counsel and Defendants' Counsel participated in a full-day virtual mediation session before Jed Melnick, Esq. In advance of that session, the Parties exchanged, and provided to Mr. Melnick, detailed mediation statements and exhibits, which addressed the issues of liability and damages. The session, and a subsequent mediator's recommendation, resulted in an agreement in principle to settle the Action for $2,000,000 for the benefit of the Settlement Class.

18.    Based on the investigation and mediation of the case and Plaintiffs' direct oversight of the prosecution of this matter and with the advice of their counsel, each of the Plaintiffs has agreed to settle and release the claims raised in the Action pursuant to the terms and provisions of the Stipulation, after considering, among other things, (a) the substantial financial benefit that Plaintiffs and the other members of the Settlement Class will receive under the proposed Settlement; and (b) the significant risks and costs of continued litigation and trial.

19.    Defendants are entering into the Stipulation solely to eliminate the uncertainty, burden and expense of further protracted litigation. Each of the Defendants denies any wrongdoing, and the Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any of the Defendants, or any other of the Defendants' Releasees (defined in ¶ 28 below), with respect to any claim or allegation of any fault or liability or wrongdoing or damage whatsoever, or any infirmity in the defenses that the Defendants have, or could have, asserted. Similarly, the Stipulation shall in no event be construed or deemed to be evidence of or an admission or concession on the part of any Plaintiff of any infirmity in any of the claims asserted

in the Action, or an admission or concession that any of the Defendants' defenses to liability had any merit.

20.    On _____, 2024, the Court preliminarily approved the Settlement, authorized a Postcard Notice to be mailed and, to the extent possible, emailed to potential Settlement Class Members and this Notice be posted online, and scheduled the Settlement Hearing to consider whether to grant final approval to the Settlement.

### HOW DO I KNOW IF I AM AFFECTED BY THE SETTLEMENT?
### WHO IS INCLUDED IN THE SETTLEMENT CLASS?

21.    If you are a member of the Settlement Class, you are subject to the Settlement, unless you timely request to be excluded. The Settlement Class consists of:

> All Persons and entities that purchased or otherwise acquired RenovaCare Securities between August 14, 2017 and May 28, 2021, inclusive (the "Settlement Class Period"), and were damaged thereby.

Excluded from the Settlement Class are Defendants, the officers and directors of RenovaCare, at all relevant times, members of their Immediate Families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded are any persons or entities who properly exclude themselves by filing a valid and timely request for exclusion in accordance with the requirements set by the Court. *See* "What If I Do Not Want To Be A Member Of The Settlement Class? How Do I Exclude Myself?," on page 16 below.

**PLEASE NOTE: RECEIPT OF THIS NOTICE DOES NOT MEAN THAT YOU ARE A SETTLEMENT CLASS MEMBER OR THAT YOU WILL BE ENTITLED TO A PAYMENT. IF YOU WISH TO BE ELIGIBLE FOR A PAYMENT, YOU MUST SUBMIT THE CLAIM FORM THAT IS BEING DISTRIBUTED WITH THIS NOTICE AND THE REQUIRED SUPPORTING DOCUMENTATION ONLINE AT WWW.STRATEGICCLAIMS.NET/RENOVACARE OR POSTMARKED NO LATER THAN _____, 2024.**

### WHAT MIGHT HAPPEN IF THERE WERE NO SETTLEMENT?

22.    If there were no Settlement, the expense and length of continued proceedings necessary to pursue Plaintiffs' claims against the remaining Defendants through trial and appeals would be substantial. Additionally, if Plaintiffs failed to establish any essential legal or factual element of their claims against Defendants, neither Plaintiffs nor the other members of the Settlement Class would recover anything from Defendants. For example, Defendants assert that their statements were not actionable under the federal securities laws. If the litigation continued, Plaintiffs would have faced several obstacles, including class certification, summary judgment, and trial, and if they prevailed on those, the appeals that would be likely to follow. A loss at any stage could have resulted in a recovery far less than the Settlement, or no recovery at all. Thus, there were very significant risks attendant to the continued prosecution of the Action.

## HOW ARE SETTLEMENT CLASS MEMBERS AFFECTED
## BY THE ACTION AND THE SETTLEMENT?

23.    As a Settlement Class Member, you are represented by Plaintiffs and Lead Counsel, unless you enter an appearance through counsel of your own choice at your own expense. You are not required to retain your own counsel, but if you choose to do so, such counsel must file a notice of appearance on your behalf and must serve copies of his or her appearance on the attorneys listed in the section entitled, "When And Where Will The Court Decide Whether To Approve The Settlement?," on page 17 below.

24.    If you are a Settlement Class Member and do not wish to remain a Settlement Class Member, you may exclude yourself from the Settlement Class by following the instructions in the section entitled, "What If I Do Not Want To Be A Member Of The Settlement Class? How Do I Exclude Myself?," on page 16 below.

25.    If you are a Settlement Class Member and you wish to object to the Settlement, the Plan of Allocation, or Lead Counsel's application for attorneys' fees, reimbursement of Litigation Expenses, and award to Lead Plaintiff and if you do not exclude yourself from the Settlement Class, you may present your objections by following the instructions in the section entitled, "When And Where Will The Court Decide Whether To Approve The Settlement?," on page 17 below.

26.    If you are a Settlement Class Member and you do not exclude yourself from the Settlement Class, you will be bound by any orders issued by the Court. If the Settlement is approved, the Court will enter a final judgment (the "Judgment"). The Judgment will dismiss with prejudice the claims against Defendants and will provide that, upon the Effective Date of the Settlement, Plaintiffs and each of the other Settlement Class Members, including any other Person or entity legally entitled to bring Released Plaintiffs' Claims (as defined in ¶ 27 below) on behalf of a Settlement Class Member in a representative capacity only, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiffs' Claim against the Defendants and the other Defendants' Releasees (as defined in ¶ 28 below), and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiffs' Claims against any of the Defendants' Releasees.

27.    "Released Plaintiffs' Claims" means upon final judicial approval of the Settlement, Defendants and Defendants' Releasees shall receive a full, unconditional release from Plaintiffs and all members of the Settlement Class for any and all claims, liabilities, demands, damages, losses, or causes of action, based upon, related to, or arising out of any claims, allegations, representations, omissions, or other matters that are or could have been the subject of the Action relating to the purchase, acquisition, sale, disposition or holding of RenovaCare securities during the Settlement Class Period. For avoidance of doubt, "Released Plaintiffs' Claims" do not include claims asserted derivatively on behalf of the Company in *In re Renovacare Derivative Litigation*, Case No. 21-cv-20569 (D.N.J.).

28.    "Defendants' Releasees" means all Defendants and any Persons or entities affiliated or connected with any of them, including all of their respective current and former officers, directors,

employees, consultants, accountants, attorneys, affiliated persons and entities, sponsors, parents, subsidiaries, beneficiaries, heirs, successors, predecessors, assigns, agents, auditors, immediate family members, general partners, limited partners, principals, shareholders, joint venturers, members, managers, managing directors, supervisors, contractors, experts, financial advisors, professional advisors, investment bankers, representatives, insurers, reinsurers, trustees, trustors, attorneys, legal representatives, professionals, executors, and administrators, and any controlling person thereof, all in their capacities as such.

29.    The Judgment will also provide that, upon the Effective Date of the Settlement, Defendants, including any other Person or entity legally entitled to bring Released Defendants' Claims (as defined in ¶ 30 below) on behalf of Defendants in a representative capacity only, shall be deemed to have, and by operation of law and of the judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Defendants' Claim against Plaintiffs and the other Plaintiffs' Releasees (as defined in ¶ 31 below), and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiffs' Releasees.

30.    "Released Defendants' Claims" means upon final judicial approval of the Settlement, Plaintiffs and Plaintiffs' Releasees shall receive a full, unconditional release from Defendants and all members of the Settlement Class for any and all claims, liabilities, demands, damages, losses, or causes of action, based upon, related to, or arising out of any claims, allegations, representations, omissions, or other matters that are or could have been the subject of the Action relating to the purchase, acquisition, sale, disposition or holding of RenovaCare securities during the Settlement Class Period.

31.    "Plaintiffs' Releasees" means (i) Plaintiffs, Plaintiffs' Counsel, and all other Settlement Class Members, and (ii) Plaintiffs' and the Settlement Class Members Immediate Family members, and their respective general partners, limited partners, principals, shareholders, joint venturers, members, officers, directors, managers, managing directors, supervisors, employees, contractors, consultants, experts, auditors, accountants, financial advisors, professional advisors, investment bankers, representatives, insurers, trustees, trustors, agents, attorneys, legal representatives, professionals, predecessors, successors, assigns, heirs, executors, administrators, affiliated persons and entities, sponsors, parents, subsidiaries, beneficiaries, and any controlling person thereof, all in their capacities as such.

**HOW DO I PARTICIPATE IN THE SETTLEMENT? WHAT DO I NEED TO DO?**

32.    To be eligible for a payment from the proceeds of the Settlement, you must be a member of the Settlement Class and you must timely complete and submit the electronic version of the Claim Form online at **www.strategicclaims.net/renovacare** **by 11:59 p.m. ET on _____, 2024,** or complete and return the enclosed Claim Form with adequate supporting documentation **postmarked no later than _____, 2024**. If mailed, the claim form should be sent to: RenovaCare, Inc. Securities Litigation, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson Street, Suite 205, Media, PA 19063. Please retain all records of your ownership of and transactions in RenovaCare Securities, as they may be needed to document your Claim. If you

request exclusion from the Settlement Class or do not submit a timely and valid Claim Form, you will not be eligible to share in the Net Settlement Fund.

## HOW MUCH WILL MY PAYMENT BE?

33.     At this time, it is not possible to make any determination as to how much any individual Settlement Class Member may receive from the Settlement.

34.     Pursuant to the Settlement, the Settlement Amount of two million dollars ($2,000,000) will be deposited into an escrow account. The Settlement Amount plus any interest earned thereon is referred to as the "Settlement Fund." If the Settlement is approved by the Court and the Effective Date occurs, the "Net Settlement Fund" (that is, the Settlement Fund less (a) all federal, state and/or local taxes on any income earned by the Settlement Fund and the reasonable costs incurred in connection with determining the amount of and paying taxes owed by the Settlement Fund (including reasonable expenses of tax attorneys and accountants); (b) the costs and expenses incurred in connection with providing notice to Settlement Class Members and administering the Settlement on behalf of Settlement Class Members; and (c) any attorneys' fees, award to Lead Plaintiff, and litigation expenses awarded by the Court) will be distributed to Settlement Class Members who submit valid Claim Forms, in accordance with the proposed Plan of Allocation or such other plan of allocation as the Court may approve.

35.     The Net Settlement Fund will not be distributed unless and until the Court has approved the Settlement and a plan of allocation, and the time for any petition for rehearing, appeal or review, whether by certiorari or otherwise, has expired.

36.     Neither Defendants nor any other person or entity that paid any portion of the Settlement Amount on their behalf are entitled to get back any portion of the Settlement Fund once the Court's order or judgment approving the Settlement becomes Final. Defendants shall not have any liability, obligation or responsibility for the administration of the Settlement, the disbursement of the Net Settlement Fund or the plan of allocation.

37.     Approval of the Settlement is independent from approval of a plan of allocation. Any determination with respect to a plan of allocation will not affect the Settlement, if approved.

38.     Unless the Court otherwise orders, any Settlement Class Member who fails to submit a Claim Form online at  www.strategicclaims.net/renovacare  or postmarked on or before _____, 2024 shall be fully and forever barred from receiving payments pursuant to the Settlement but will in all other respects remain a Settlement Class Member and be subject to the provisions of the Stipulation, including the terms of any Judgment entered and the releases given. This means that each Settlement Class Member releases the Released Plaintiffs' Claims (as defined in ¶ 27 above) against the Defendants' Releasees (as defined in ¶ 28 above) and will be enjoined and prohibited from filing, prosecuting, or pursuing any of the Released Plaintiffs' Claims against any of the Defendants' Releasees, whether or not such Settlement Class Member submits a Claim Form.

39.     The Court has reserved jurisdiction to allow, disallow, or adjust on equitable grounds the Claim of any Settlement Class Member.

40.     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to his, her or its Claim Form.

41.     Only Settlement Class Members will be eligible to share in the distribution of the Net Settlement Fund. Persons and entities that are excluded from the Settlement Class by definition, or that exclude themselves from the Settlement Class pursuant to request, will not be eligible to receive a distribution from the Net Settlement Fund and should not submit Claim Forms. RenovaCare Securities are the only securities that are included in the Settlement.

## PROPOSED PLAN OF ALLOCATION

42.     The objective of the Plan of Allocation is to equitably distribute the Net Settlement Fund among Authorized Claimants based on their respective alleged economic losses as a result of the alleged fraud, as opposed to losses caused by market- or industry-wide factors, or company-specific factors unrelated to the alleged fraud.  The Claims Administrator shall determine each Authorized Claimant's share of the Net Settlement Fund based upon the recognized loss formula (the "Recognized Loss") described below.

43.     A Recognized Loss will be calculated for each share of RenovaCare common stock purchased or otherwise acquired during the Settlement Class Period.[2]  The calculation of Recognized Loss will depend upon several factors, including when shares of RenovaCare common stock were purchased or otherwise acquired during the Settlement Class Period, and in what amounts, and whether those shares were sold, and if sold, when they were sold, and for what amounts.  The Recognized Loss is not intended to estimate the amount a Settlement Class Member might have been able to recover after a trial, nor to estimate the amount that will be paid to Authorized Claimants pursuant to the Settlement.  The Recognized Loss is the basis upon which the Net Settlement Fund will be proportionately allocated to the Authorized Claimants.  The Claims Administrator will use its best efforts to administer and distribute the Net Settlement Fund to the extent that it is equitably and economically feasible.

44.     The Plan of Allocation was created with the assistance of a consulting damages expert and reflects the assumption that the price of RenovaCare common stock was artificially inflated throughout the Settlement Class Period.  The estimated alleged artificial inflation in the price of RenovaCare common stock during the Settlement Class Period is reflected in Table 1 below.  The computation of the estimated alleged artificial inflation in the price of RenovaCare common stock during the Settlement Class Period is based on certain misrepresentations alleged by Lead Plaintiff and the price change in the stock, net of market- and industry-wide factors, in reaction to the public announcements that allegedly corrected the misrepresentations alleged by Lead Plaintiff.

45.     The U.S. federal securities laws allow investors to recover for losses caused by disclosures which corrected the defendants' previous misleading statements or omissions.  Thus, in order to

---

[2] During the Settlement Class Period, the common stock of RenovaCare, Inc. traded on the OTC under the ticker symbol "RCAR".

have been damaged by the alleged violations of the federal securities laws, RenovaCare common stock purchased or otherwise acquired during the Settlement Class Period must have been held during a period of time in which its price declined due to the disclosure of information which corrected an allegedly misleading statement or omission.  Lead Plaintiff and Plaintiffs' Counsel have determined that such price declines occurred on February 26, 2018, May 28, 2021, June 1, 2021, and June 2, 2021 (the "Corrective Disclosure Dates").[3]  Accordingly, if a share of RenovaCare common stock was sold before February 26, 2018 (the earliest Corrective Disclosure Date), the Recognized Loss for that share is $0.00, and any loss suffered is not compensable under the federal securities laws.  Likewise, if a share of RenovaCare common stock was both purchased and subsequently sold between two consecutive Corrective Disclosure Dates, the Recognized Loss for that share is $0.00.

| Table 1 | | |
|---|---|---|
| Artificial Inflation in RenovaCare Common Stock | | |
| **From** | **To** | **Per-Share Price Inflation** |
| August 14, 2017 | February 25, 2018 | $3.48 |
| February 26, 2018 | May 27, 2021 | $0.70 |
| May 28, 2021 | May 31, 2021 | $0.44 |
| June 1, 2021 | June 1, 2021 | $0.20 |
| June 2, 2021 | Thereafter | $0.00 |

46.    The "90-day look back" provision of the Private Securities Litigation Reform Act of 1995 ("PSLRA") is incorporated into the calculation of the Recognized Loss for RenovaCare common stock.  The limitations on the calculation of the Recognized Loss imposed by the PSLRA are applied such that losses on RenovaCare common stock purchased during the Settlement Class Period and held as of the close of the 90-day period subsequent to the Settlement Class Period (the "90-Day Lookback Period") cannot exceed the difference between the purchase price paid for such stock and its average price during the 90-Day Lookback Period.  The Recognized Loss on RenovaCare common stock purchased during the Settlement Class Period and sold during the 90-Day Lookback Period cannot exceed the difference between the purchase price paid for such stock and its rolling average price during the portion of the 90-Day Lookback Period elapsed as of the date of sale.

47.    The Plan of Allocation also takes into account the Court's order on Defendants' motion to dismiss the Complaint, that dismissed, without prejudice, the allegedly material false and misleading statements that occurred prior to January 8, 2018.  Accordingly, the Recognized Loss amount for shares of RenovaCare common stock purchased prior to January 8, 2018, shall be reduced by 90% by multiplying the Recognized Loss amount for such shares (calculated pursuant to the formula below under "Calculation of Recognized Loss Per Share of RenovaCare Common Stock") by 0.10.

48.    In the calculations below, all purchase and sale prices shall exclude any fees, taxes and commissions.  If a Recognized Loss amount is calculated to be a negative number, that Recognized

---

[3] Lead Plaintiff alleges that the disclosure of information which allegedly corrected a misleading statement or omission on May 28, 2021, caused a decline in the price of RenovaCare common stock for three consecutive trading days (i.e., May 28, 2021, June 1, 2021, and June 2, 2021).

Loss shall be set to zero. Any transactions in RenovaCare common stock executed outside of regular trading hours for the U.S. financial markets shall be deemed to have occurred during the next regular trading session.

## CALCULATION OF RECOGNIZED LOSS AMOUNT

49.    For each share of RenovaCare common stock purchased or otherwise acquired during the Settlement Class Period (i.e., August 14, 2017 through May 28, 2021, inclusive), the Recognized Loss per share shall be calculated as follows:

a.    For each share of RenovaCare common stock purchased during the Settlement Class Period that was subsequently sold prior to February 26, 2018 the Recognized Loss per share is $0.

b.    For each share of RenovaCare common stock purchased during the Settlement Class Period that was subsequently sold during the period February 26, 2018 through May 28, 2021, inclusive, the Recognized Loss per share is the amount of per-share price inflation on the date of purchase as appears in Table 1 above *minus* the amount of per-share price inflation on the date of sale as appears in Table 1.

c.    For each share of RenovaCare common stock purchased during the Settlement Class Period that was subsequently sold during the period June 1, 2021 through August 26, 2021, inclusive (i.e., the 90-Day Lookback Period), the Recognized Loss per share is *the lesser of*:

   i.    the amount of per-share price inflation on the date of purchase as appears in Table 1 above *minus* the amount of per-share price inflation on the date of sale as appears in Table 1; or

   ii.    the purchase price *minus* the "90-Day Lookback Value" on the date of sale provided in Table 2 below.

d.    For each share of RenovaCare common stock purchased during the Settlement Class Period and still held as of the close of trading on August 26, 2021, the Recognized Loss per share is *the lesser of*:

   i.    the amount of per-share price inflation on the date of purchase as appears in Table 1 above; or

   ii.    the purchase price *minus* the average closing price for RenovaCare common stock during the 90-Day Lookback Period, which is $1.81.

| Table 2 | | | | | |
|---|---|---|---|---|---|
| Sale / Disposition Date | 90-Day Lookback Value | Sale / Disposition Date | 90-Day Lookback Value | Sale / Disposition Date | 90-Day Lookback Value |
| 6/1/2021 | $2.20 | 6/30/2021 | $1.99 | 7/30/2021 | $1.92 |
| 6/2/2021 | $2.10 | 7/1/2021 | $1.99 | 8/2/2021 | $1.92 |

| | | | | | |
|---|---|---|---|---|---|
| 6/3/2021 | $2.13 | 7/2/2021 | $1.99 | 8/3/2021 | $1.92 |
| 6/4/2021 | $2.03 | 7/6/2021 | $1.99 | 8/4/2021 | $1.91 |
| 6/7/2021 | $2.00 | 7/7/2021 | $1.99 | 8/5/2021 | $1.91 |
| 6/8/2021 | $1.97 | 7/8/2021 | $1.99 | 8/6/2021 | $1.90 |
| 6/9/2021 | $1.97 | 7/9/2021 | $1.99 | 8/9/2021 | $1.89 |
| 6/10/2021 | $1.99 | 7/12/2021 | $1.99 | 8/10/2021 | $1.89 |
| 6/11/2021 | $1.99 | 7/13/2021 | $1.99 | 8/11/2021 | $1.88 |
| 6/14/2021 | $1.99 | 7/14/2021 | $1.99 | 8/12/2021 | $1.88 |
| 6/15/2021 | $1.99 | 7/15/2021 | $1.99 | 8/13/2021 | $1.87 |
| 6/16/2021 | $1.98 | 7/16/2021 | $1.99 | 8/16/2021 | $1.87 |
| 6/17/2021 | $1.98 | 7/19/2021 | $1.98 | 8/17/2021 | $1.87 |
| 6/18/2021 | $1.99 | 7/20/2021 | $1.98 | 8/18/2021 | $1.86 |
| 6/21/2021 | $2.00 | 7/21/2021 | $1.97 | 8/19/2021 | $1.86 |
| 6/22/2021 | $1.99 | 7/22/2021 | $1.96 | 8/20/2021 | $1.85 |
| 6/23/2021 | $2.00 | 7/23/2021 | $1.96 | 8/23/2021 | $1.84 |
| 6/24/2021 | $1.99 | 7/26/2021 | $1.95 | 8/24/2021 | $1.83 |
| 6/25/2021 | $1.99 | 7/27/2021 | $1.94 | 8/25/2021 | $1.82 |
| 6/28/2021 | $1.99 | 7/28/2021 | $1.94 | 8/26/2021 | $1.81 |
| 6/29/2021 | $1.99 | 7/29/2021 | $1.93 | N/A | N/A |

## INSTRUCTIONS APPLICABLE TO ALL CLAIMANTS

50.    The payment you receive will reflect your proportionate share of the Net Settlement Fund. Such payment will depend on the number of eligible shares that participate in the Settlement, and when those shares were purchased and sold.  The number of claimants who send in claims varies widely from case to case.

51.    A purchase or sale of RenovaCare common stock shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.

52.    All purchase and sale prices shall exclude any fees and commissions.

53.    Acquisition by Gift, Inheritance, or Operation of Law: If a Settlement Class Member acquired RenovaCare common stock during the Settlement Class Period by way of gift, inheritance or operation of law, such a claim will be computed by using the date and price of the original purchase and not the date and price of transfer.  To the extent that RenovaCare shares were originally purchased prior to commencement of the Settlement Class Period, the Recognized Loss for that acquisition shall be deemed to be zero ($0.00).

54.    Notwithstanding any of the above, receipt of RenovaCare common stock during the Settlement Class Period in exchange for securities of any other corporation or entity shall not be deemed a purchase or sale of RenovaCare common stock.

55.    The first-in-first-out ("FIFO") basis will be applied to purchases and sales.  Sales will be matched in chronological order, by trade date, first against RenovaCare common stock held as of

the close of trading on August 13, 2017 (the last day before the Settlement Class Period begins) and then against the purchase of RenovaCare common stock during the Settlement Class Period.

56.     The date of covering a "short sale" is deemed to be the date of purchase of shares.  The date of a "short sale" is deemed to be the date of sale of shares.  In accordance with the Plan of Allocation, however, the Recognized Loss on "short sales" is zero.  In the event that a claimant has a short position in RenovaCare common stock, the earliest Settlement Class Period purchases shall be matched against such short position and not be entitled to a recovery until that short position is fully covered.

57.     With respect to RenovaCare common stock purchased or sold through the exercise of an option, the purchase/sale date of the stock shall be the exercise date of the option and the purchase/sale price of the stock shall be the closing price of RenovaCare common stock on the date of exercise.  Any Recognized Loss arising from purchases of RenovaCare common stock acquired during the Settlement Class Period through the exercise of an option on RenovaCare common stock shall be computed as provided for other purchases of RenovaCare common stock in the Plan of Allocation.[4]

58.     Payment according to the Plan of Allocation will be deemed conclusive against all Authorized Claimants.  A Recognized Loss will be calculated as defined herein and cannot be less than zero. The Claims Administrator shall allocate to each Authorized Claimant a *pro rata* share of the Net Settlement Fund based on his, her, or its Recognized Loss as compared to the total Recognized Losses of all Authorized Claimants.  No distribution will be made to Authorized Claimants who would otherwise receive a distribution of less than $10.00.

59.     Settlement Class Members who do not submit an acceptable Proof of Claim and Release Form, with appropriate supporting documentation, will not share in the Settlement proceeds.  The Settlement and the Final Order and Judgment dismissing this Action with prejudice will nevertheless bind Settlement Class Members who do not submit a request for exclusion and/or submit an acceptable Proof of Claim and Release Form.

60.     Please contact the Claims Administrator or Plaintiffs' Counsel if you disagree with any determinations made by the Claims Administrator regarding your Proof of Claim and Release Form.  If you are unsatisfied with the determinations, you may ask the Court, which retains jurisdiction over all Class Members and the claims-administration process, to decide the issue by submitting a written request.

61.     Defendants, their respective counsel, and all other Released Parties will have no responsibility or liability whatsoever for the processing of Proof of Claim and Release Forms, the investment of the Settlement Fund, the distribution of the Net Settlement Fund, the Plan of Allocation, or the payment of any claim.  Lead Plaintiff and Plaintiffs' Counsel, likewise, will have no liability for their reasonable efforts to execute, administer, and distribute the Settlement.

---

[4] The "exercise of an option" as used in this sentence includes: (1) purchases of RenovaCare common stock as the result of the exercise of a call option, and (2) purchases of RenovaCare common stock by the seller of a put option as a result of the buyer of such put option exercising that put option.

62.    Distributions will be made to Authorized Claimants after all claims have been processed and after the Court has finally approved the Settlement.  If any funds remain in the Net Settlement Fund by reason of uncashed distribution checks or otherwise, then, after the Claims Administrator has made reasonable and diligent efforts to have Class Members who are entitled to participate in the distribution of the Net Settlement Fund cash their distributions, any balance remaining in the Net Settlement Fund after at least six (6) months after the initial distribution of such funds will be used in the following fashion: (a) first, to pay any amounts mistakenly omitted from the initial disbursement; (b) second, to pay any additional settlement administration fees, costs, and expenses, including those of Plaintiffs' Counsel or the Claims Administrator as may be approved by the Court; and (c) finally, to make a second distribution to claimants who cashed their checks from the initial distribution and who would receive at least $10.00, after payment of the estimated costs, expenses, or fees to be incurred in administering the Net Settlement Fund and in making this second distribution, if such second distribution is economically feasible. These redistributions shall be repeated, if economically feasible, until the balance remaining in the Net Settlement Fund is *de minimis* and such remaining balance will then be distributed pursuant to a method approved by the Court.

## WHAT PAYMENT ARE THE ATTORNEYS FOR THE SETTLEMENT CLASS SEEKING? HOW WILL THE LAWYERS BE PAID?

63.    Plaintiffs' Counsel have not received any payment for their services in pursuing claims against the Defendants on behalf of the Settlement Class, nor have Plaintiffs' Counsel been reimbursed for their out-of-pocket expenses. Before final approval of the Settlement, Lead Counsel will apply to the Court for an award of attorneys' fees for all Plaintiffs' Counsel in an amount not to exceed 33 1/3% of the Settlement Fund plus interest. At the same time, Lead Counsel also intends to apply for reimbursement of Litigation Expenses in an amount not to exceed $200,000, plus interest. Lead Counsel will also submit an application for an award to Lead Plaintiff related to her representation of the Settlement Class in an aggregate amount not to exceed $3,000. The Court will determine the amount of any award of attorneys' fees, reimbursement of Litigation Expenses, or award to Lead Plaintiff. Such sums as may be approved by the Court will be paid from the Settlement Fund. Settlement Class Members are not personally liable for any such fees or expenses.

## WHAT IF I DO NOT WANT TO BE A MEMBER OF THE SETTLEMENT CLASS? HOW DO I EXCLUDE MYSELF?

64.    Each Settlement Class Member will be bound by all determinations and judgments in this lawsuit, whether favorable or unfavorable, unless such person or entity mails or delivers a written Request for Exclusion from the Settlement Class, addressed to RenovaCare Securities Litigation – EXCLUSIONS, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson Street, Suite 205, Media, PA 19063. The exclusion request must be received no later than _____, 2024. You will not be able to exclude yourself from the Settlement Class after that date. Each Request for Exclusion must: (a) state the name, address and telephone number of the person or entity requesting exclusion, and in the case of entities the name and telephone number of the appropriate contact person; (b) state that such person or entity "requests exclusion from the Settlement Class in *In re Renovacare, Inc. Securities Litigation*, Master File No. 2:21-cv-13766-BRM-ESK"; (c)

identify and state the number of shares of RenovaCare Securities that the person or entity requesting exclusion purchased/acquired and/or sold during the Settlement Class Period (*i.e.*, between August 14, 2017 and May 28, 2021, inclusive), as well as the dates and prices of each such purchase/acquisition and sale; and (d) be signed by the person or entity requesting exclusion or an authorized representative. A Request for Exclusion shall not be valid and effective unless it provides all the information called for in this paragraph and is received within the time stated above or is otherwise accepted by the Court.

65.    If you do not want to be part of the Settlement Class, you must follow these instructions for exclusion even if you have pending, or later file, another lawsuit, arbitration, or other proceeding relating to any Released Plaintiffs' Claim against any of the Defendants' Releasees.

66.    If you ask to be excluded from the Settlement Class, you will not be eligible to receive any payment out of the Net Settlement Fund.

67.    Defendants have the right to terminate the Settlement if valid requests for exclusion are received from members of the Settlement Class in an amount that exceeds an amount agreed to by Plaintiffs and Defendants.

**WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE
SETTLEMENT? DO I HAVE TO COME TO THE HEARING?
MAY I SPEAK AT THE HEARING IF I DON'T LIKE THE SETTLEMENT?**

68.    **Settlement Class Members do not need to attend the Settlement Hearing. The Court will consider any submission made in accordance with the provisions below even if a Settlement Class Member does not attend the hearing. You can participate in the Settlement without attending the Settlement Hearing.**

69.    The Settlement Hearing will be held on _____, 202_ at __:__ _.m., before the Honorable Brian Martinotti at the United States District Court for the District of New Jersey, Frank Lautenberg Post Office & U.S. Courthouse, 2 Federal Square, Courtroom PO 01, Newark, New Jersey 07102, or via Zoom or some other video platform. The Court reserves the right to approve the Settlement, the Plan of Allocation, Lead Counsel's motion for an award of attorneys' fees, reimbursement of Litigation Expenses, award to Lead Plaintiff and/or any other matter related to the Settlement at or after the Settlement Hearing without further notice to the members of the Settlement Class.

70.    Any Settlement Class Member who or which does not request exclusion may object to the Settlement, the proposed Plan of Allocation or Lead Counsel's motion for an award of attorneys' fees, reimbursement of Litigation Expenses, and award to Lead Plaintiff. Objections must be in writing. You must file any written objection, together with copies of all other papers and briefs supporting the objection, with the Clerk's Office at the United States District Court for the District of New Jersey at the address set forth below on or before _____, 2024. You must also serve the papers on Lead Counsel and on Defendants' Counsel at the addresses set forth below so that the papers are *received* **on or before _____, 2024**.

| **Clerk's Office** | **Lead Counsel** | **Defense Counsel** |
|---|---|---|
| United States District Court | HAGENS BERMAN | COZEN O'CONNOR |
| District of New Jersey | SOBOL SHAPIRO LLP | Joseph P. Dever |
| Clerk of the Court | Reed Kathrein | 3 WTC, 175 Greenwich Street, |
| Martin Luther King Building | 715 Hearst Avenue, | 55th Floor |
| & U.S. Courthouse | Suite 202 | New York, NY 10007 |
| 50 Walnut Street Room 4015 | Berkeley, CA 94710 | |
| Newark, NJ 07101 | | |
| | | KING & SPALDING LLP |
| | | Craig Carpenito |
| | | 1185 Avenue of the Americas |
| | | 34th Floor |
| | | New York, NY 10036 |

71.     Any objection: (a) must state the name, address and telephone number of the person or entity objecting and must be signed by the objector; (b) must contain a statement of the Settlement Class Member's objection(s), and the specific reasons for each objection, including any legal and evidentiary support the Settlement Class Member wishes to bring to the Court's attention; and (c) must include documents sufficient to prove membership in the Settlement Class, including the number of shares of RenovaCare Securities that the objecting Settlement Class Member purchased, acquired, and/or sold during the Settlement Class Period (*i.e.*, between August 14, 2017 and May 28, 2021, inclusive), as well as the dates and prices of each such purchase, acquisition, and sale. You may not object to the Settlement, the Plan of Allocation or Lead Counsel's motion for attorneys' fees, reimbursement of Litigation Expenses, and award to Lead Plaintiff if you exclude yourself from the Settlement Class or if you are not a member of the Settlement Class.

72.     You may file a written objection without having to appear at the Settlement Hearing. You may not, however, appear at the Settlement Hearing to present your objection unless you first file and serve a written objection in accordance with the procedures described above, unless the Court orders otherwise.

73.     If you wish to be heard orally at the hearing in opposition to the approval of the Settlement, the Plan of Allocation or Lead Counsel's motion for an award of attorneys' fees or reimbursement of Litigation Expenses, and award to Lead Plaintiff and if you timely file and serve a written objection as described above, you must also file a notice of appearance with the Clerk's Office and serve it on Lead Counsel and Defendants' Counsel at the addresses set forth above so that it is ***received*** **on or before _____, 2024**.

74.     You are not required to hire an attorney to represent you in making written objections or in appearing at the Settlement Hearing. However, if you decide to hire an attorney, it will be at your own expense, and that attorney must file a notice of appearance with the Court and serve it on Lead Counsel and Defendants' Counsel at the addresses set forth in ¶ 70 above so that the notice is ***received*** **on or _____, 2024**.

75.    The Settlement Hearing may be adjourned by the Court without further written notice to the Settlement Class. If you intend to attend the Settlement Hearing, you should confirm the date and time with Lead Counsel.

76.    **Unless the Court orders otherwise, any Settlement Class Member who does not object in the manner described above will be deemed to have waived any objection and shall be forever foreclosed from making any objection to the proposed Settlement, the proposed Plan of Allocation or Lead Counsel's motion for an award of attorneys' fees, reimbursement of Litigation Expenses, and award to Lead Plaintiff. Settlement Class Members do not need to appear at the Settlement Hearing or take any other action to indicate their approval.**

## WHAT IF I BOUGHT SHARES ON SOMEONE ELSE'S BEHALF?

77.    If you purchased or otherwise acquired RenovaCare Securities between August 14, 2017 and May 28, 2021, inclusive, for the beneficial interest of Persons or organizations other than yourself as a nominee, you must within SEVEN (7) DAYS of receipt of a letter either: (a) request from the Claims Administrator sufficient copies of the Postcard Notice to forward to all such beneficial owners and within SEVEN (7) DAYS of receipt of those Postcard Notices, forward them to all such beneficial owners; (b) request from the Claims Administrator a link to the electronic Notice and Claim Form and email the link to all such beneficial owners for whom valid email addresses are available within SEVEN (7) DAYS of receipt of the link from the Claims Administrator; or (c) send a list of the names, mailing addresses, and email addresses (to the extent available) of all such beneficial owners to the Claims Administrator at RenovaCare Securities Litigation, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson Street, Suite 205, Media, PA 19063, info@strategicclaims.net, in which event the Claims Administrator shall promptly mail the Postcard Notice, or email a link to the Notice and Claim Form, to such beneficial owners. Nominees shall also provide email addresses for all such beneficial owners to the Claims Administrator, to the extent they are available. If you choose to follow procedures (a) or (b), the Court has directed that, upon such mailing or emailing, you send a statement to the Claims Administrator confirming that the mailing or emailing was made as directed.

78.    Upon full and timely compliance with these directions, nominees may seek reimbursement of their reasonable expenses actually incurred, not to exceed (a) $0.03 per name, mailing address and email address (to the extent available) provided to Claims Administrator; (b) $0.03 per Postcard Notice, plus postage at the current pre-sort rate used by the Claims Administrator, for mailing the Notice; or (c) $0.03 per emailed link to the Notice and Claim Form, by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought. **YOU ARE NOT AUTHORIZED TO PRINT THE NOTICE YOURSELF. NOTICES MAY ONLY BE PRINTED BY THE COURT-APPOINTED CLAIMS ADMINISTRATOR.**

## CAN I SEE THE COURT FILE?
## WHOM SHOULD I CONTACT IF I HAVE QUESTIONS?

79.    This Notice contains only a summary of the terms of the proposed Settlement. For more detailed information about the matters involved in this Action, you are referred to the papers on

file in the Action, including the Stipulation, which may be inspected during regular office hours at the Office of the Clerk, United States District Court for the District of New Jersey, Martin Luther King Building & U.S. Courthouse, 50 Walnut Street Room 4015, Newark, NJ 07101. Additionally, copies of the Stipulation and any related orders entered by the Court will be posted on the website maintained by the Claims Administrator, www.strategicclaims.net/renovacare. All inquiries concerning this Notice and the Claim Form should be directed to the Claims Administrator or Lead Counsel for the Plaintiffs at:

*Lead Counsel*
**HAGENS BERMAN SOBOL SHAPIRO LLP**
Reed Kathrein
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Telephone: (510) 725-3000
reed@hbsslaw.com


*Claims Administrator*
RenovaCare Securities Litigation
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson St., Ste. 205
Media, PA 19063
Toll-free: (866) 274-4004
info@strategicclaims.net

**DO NOT CALL OR WRITE THE COURT, THE OFFICE OF THE CLERK OF THE COURT, DEFENDANTS OR THEIR COUNSEL REGARDING THIS NOTICE.**


Dated: _____, 2024                 BY ORDER OF THE COURT
                                            UNITED STATES DISTRICT COURT
                                            DISTRICT OF NEW JERSEY

# EXHIBIT A-2

**Exhibit A-2**

*RenovaCare Securities Litigation*
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson Street, Suite 205
Media, PA 19063
Toll Free Number: (866) 274-4004
Settlement Website: www.strategicclaims.net/renovacare
Email: info@strategicclaims.net

## PROOF OF CLAIM AND RELEASE FORM

To be eligible to receive a share of the Net Settlement Fund in connection with the Settlement of this Action, you must be a Settlement Class Member and complete and sign this Proof of Claim and Release Form ("Claim Form") and either submit it online at www.strategicclaims.net/renovacare or mail it by first-class mail to the above address.  To be eligible, Claim Forms must be **submitted online or postmarked no later than _____, 2024.**

Failure to submit your Claim Form by the date specified will subject your claim to rejection and may preclude you from being eligible to recover any money in connection with the Settlement.

**Do not mail or deliver your Claim Form to the Court, the settling parties, or their counsel. Submit your Claim Form only to the Claims Administrator at the address set forth above**.

| TABLE OF CONTENTS | PAGE # |
|---|---|
| **PART I – CLAIMANT INFORMATION** | 2 |
| **PART II – GENERAL INSTRUCTIONS** | 3 |
| **PART III – SCHEDULE OF TRANSACTIONS IN RENOVACARE SECURITIES** | 6 |
| **PART IV – RELEASE OF CLAIMS AND SIGNATURE** | 8 |

1

## PART I – CLAIMANT INFORMATION
(Please read General Instructions below before completing this page.)

The Claims Administrator will use this information for all communications regarding this Claim Form. If this information changes, you MUST notify the Claims Administrator in writing at the address above.

| Beneficial Owner's Name | | |
|---|---|---|
| Co-Beneficial Owner's Name | | |
| Entity Name (if Beneficial owner is not an individual) | | |
| Representative or Custodian Name (if different from Beneficial Owner(s) listed above) | | |
| Address | | |
| City | State | ZIP |
| Foreign Province | Foreign Country | |
| Day Phone | Evening Phone | |
| Email | | |
| Account Number (account(s) through which the securities were traded)[1] | | |
| Social Security Number (for individuals): | OR | Taxpayer Identification Number (for estates, trusts, corporations, etc.): |

Claimant Account Type (check appropriate box):

☐ Individual (includes joint owner accounts)
☐ Corporation
☐ IRA/401K
☐ Pension Plan
☐ Estate

---

[1] If the account number is unknown, you may leave blank. If the same legal entity traded through more than one account, you may write "multiple." Please see paragraph 11 of the General Instructions for more information on when to file separate Claim Forms for multiple accounts, *i.e.*, when you are filing on behalf of distinct legal entities.

☐    Other _____ (please specify)

## **PART II – GENERAL INSTRUCTIONS**

1.    It is important that you completely read and understand the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") that accompanies this Claim Form and is available online at www.strategicclaims.net/renovacare, including the Plan of Allocation of the Net Settlement Fund set forth in the Notice. The Notice describes the proposed Settlement, how Settlement Class Members are affected by the Settlement, and the manner in which the Net Settlement Fund will be distributed if the Settlement and Plan of Allocation are approved by the Court. The Notice also contains the definitions of many of the defined terms (which are indicated by initial capital letters) used in this Claim Form. By signing and submitting this Claim Form, you will be certifying that you have read and that you understand the Notice, including the terms of the Releases described in the Notice and provided for in this Claim Form.

2.    This Claim Form is directed to all Persons and entities that purchased or otherwise acquired RenovaCare, Inc. ("RenovaCare") Securities between August 14, 2017 and May 28, 2021, both dates inclusive (the "Settlement Class Period"), and were damaged thereby. All Persons and entities that are members of the Settlement Class are referred to as "Settlement Class Members."

3.    Excluded from the Settlement Class are Defendants, the officers and directors of RenovaCare, at all relevant times, members of their Immediate Family and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest. Also excluded are any persons or entities who properly exclude themselves by filing a valid and timely request for exclusion in accordance with the requirements set by the Court.

4.    If you are not a Settlement Class Member do not submit a Claim Form. YOU MAY NOT, DIRECTLY OR INDIRECTLY, PARTICIPATE IN THE SETTLEMENT IF YOU ARE NOT A SETTLEMENT CLASS MEMBER. THUS, IF YOU ARE EXCLUDED FROM THE SETTLEMENT CLASS (AS SET FORTH IN PARAGRAPH 3 ABOVE), ANY CLAIM FORM THAT YOU SUBMIT, OR THAT MAY BE SUBMITTED ON YOUR BEHALF, WILL NOT BE ACCEPTED.

5.    If you are a Settlement Class Member, you will be bound by the terms of any judgments or orders entered in the Action WHETHER OR NOT YOU SUBMIT A CLAIM FORM, unless you submit a request for exclusion from the Settlement Class. Thus, if you are a Settlement Class Member, the Judgment will release, and enjoin the filing or continued prosecution of, the Released Plaintiffs' Claims against the Defendants' Releasees.

6.    You are eligible to participate in the distribution of the Net Settlement Fund only if you are a member of the Settlement Class and if you complete and return this form as specified below. If you fail to submit a timely, properly addressed, and completed Claim Form with the required documentation, your claim may be rejected and you may be precluded from receiving any distribution from the Net Settlement Fund.

7.    Submission of this Claim Form does not guarantee that you will share in the proceeds of the Settlement. The distribution of the Net Settlement Fund will be governed by the Plan of

3

Allocation set forth in the Notice, if it is approved by the Court, or by such other plan of allocation approved by the Court.

8.    Use the Schedule of Transactions in Part III of this Claim Form to supply all required details of your transaction(s) (including free transfers) in and holdings of the applicable RenovaCare Securities. On the Schedule of Transactions, please provide all of the requested information with respect to your holdings, purchases, acquisitions, and sales of the applicable RenovaCare Securities, whether such transactions resulted in a profit or a loss. Failure to report all transaction and holding information during the requested time periods may result in the rejection of your claim.

9.    Please note: Only RenovaCare Securities purchased and/or acquired during the Settlement Class Period are eligible under the Settlement. However, because the law provides for a "90-Day Lookback Period" (described in the Plan of Allocation set forth in the Notice), you must provide documentation related to your purchases and sales of RenovaCare Securities during the period from June 1, 2021 to August 26, 2021, inclusive, in order for the Claims Administrator to calculate your Recognized Loss amount under the Plan of Allocation and process your claim.

10.    You are required to submit genuine and sufficient documentation for all of your transactions and holdings in the RenovaCare Securities set forth in the Schedule of Transactions in Part III of this Claim Form. Documentation may consist of copies of brokerage confirmation slips or monthly brokerage account statements, or an authorized statement from your broker containing the transactional and holding information found in a broker confirmation slip or account statement. The Parties and the Claims Administrator do not independently have information about your investments in RenovaCare Securities. IF SUCH DOCUMENTS ARE NOT IN YOUR POSSESSION, PLEASE OBTAIN COPIES OR EQUIVALENT CONTEMPORANEOUS DOCUMENTS FROM YOUR BROKER. FAILURE TO SUPPLY THIS DOCUMENTATION MAY RESULT IN THE REJECTION OF YOUR CLAIM. DO NOT SEND ORIGINAL DOCUMENTS. Please keep a copy of all documents that you send to the Claims Administrator. Also, please do not highlight any portion of the Claim Form or any supporting documents.

11.    Separate Claim Forms should be submitted for each separate legal entity (*e.g.*, a claim from joint owners should not include separate transactions through an account that is in the name of just one of the joint owners, and an individual should not combine his or her IRA transactions with transactions made through an account in the individual's name). Conversely, a single Claim Form should be submitted on behalf of one legal entity including all transactions made by that entity on one Claim Form, no matter how many separate accounts that entity has (*e.g.*, a corporation with multiple brokerage accounts should include all transactions made in all accounts on one Claim Form).

12.    All joint beneficial owners must sign this Claim Form. If you purchased or otherwise acquired RenovaCare Securities during the Settlement Class Period and held the securities in your name, you are the beneficial owner as well as the record owner and you must sign this Claim Form to participate in the Settlement. If, however, you purchased or otherwise acquired RenovaCare Securities during the Settlement Class Period and the securities were registered in the name of a third party, such as a nominee or brokerage firm, you are the beneficial owner of these securities,

but the third party is the record owner. The beneficial owner, not the record owner, must sign this Claim Form.

13.    Agents, executors, administrators, guardians, and trustees must complete and sign the Claim Form on behalf of persons represented by them, and they must:

    a)  expressly state the capacity in which they are acting;

    b)  identify the name, account number, Social Security Number (or taxpayer identification number), address, and telephone number of the beneficial owner of (or other person or entity on whose behalf they are acting with respect to) the RenovaCare Securities; and

    c)  furnish evidence of their authority to bind to the Claim Form the person or entity on whose behalf they are acting. (Authority to complete and sign a Claim Form cannot be established by stockbrokers demonstrating only that they have discretionary authority to trade stock in another person's accounts.)

14.    By submitting a signed Claim Form, you will be swearing that you:

    a)  own(ed) the RenovaCare Securities you have listed in the Claim Form; or

    b)  are expressly authorized to act on behalf of the owner thereof.

15.    By submitting a signed Claim Form, you will be swearing to the truth of the statements contained therein and the genuineness of the documents attached thereto, subject to penalties of perjury under the laws of the United States of America. The making of false statements, or the submission of forged or fraudulent documentation, will result in the rejection of your claim and may subject you to civil liability or criminal prosecution.

16.    If the Court approves the Settlement, payments to eligible Authorized Claimants pursuant to the Plan of Allocation (or such other plan of allocation as the Court approves) will be made after the completion of all claims processing. This could take substantial time. Please be patient.

17.    **PLEASE NOTE:** As set forth in the Plan of Allocation, each Authorized Claimant shall receive its *pro rata* share of the Net Settlement Fund. If the prorated payment to any Authorized Claimant, however, calculates to less than $10.00, it will not be included in the calculation and no distribution will be made to that Authorized Claimant.

18.    If you have questions concerning the Claim Form, or need additional copies of the Claim Form or the Notice, you may contact the Claims Administrator at RenovaCare Securities Litigation, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson Street, Suite 205, Media, PA 19063, or by email at info@strategicclaims.net, or by toll-free phone at (866) 274-4004, or you may download the documents from the Settlement website, www.strategicclaims.net/renovacare.

19.    NOTICE REGARDING INSTITUTIONAL FILERS: Representatives with authority to file on behalf of (a) accounts of multiple Settlement Class Members and/or (b) institutional accounts with large numbers of transactions ("Representative Filers") must submit information regarding their transactions in an electronic spreadsheet format. (This is different than the online

claim portal on the Settlement website.)  If you are a Representative Filer, you must contact the Claims Administrator at efile@strategicclaims.net or visit their website at www.strategicclaims.net to obtain the required file layout. Claims which are not submitted in electronic spreadsheet format and in accordance with the Claims Administrator's instructions may be subject to rejection. All Representative Filers MUST also submit a manually signed Claim Form for each Settlement Class Member, as well as proof of authority to file (see Part II – General Instructions paragraph 13), along with the electronic spreadsheet format. Claims should be combined on a legal entity basis, where applicable. Sub-accounts should be rolled up into a parent account if the sub-accounts contain the same tax identification number. No claims submitted in electronic spreadsheet format will be considered to have been properly submitted unless the Claims Administrator issues to the Claimant a written acknowledgment of receipt and acceptance of electronically submitted data.

20.    NOTICE REGARDING ONLINE FILING: Claimants who are not Representative Filers may submit their claims online using the electronic version of the Claim Form hosted at www.strategicclaims.net/renovacare. If you are not acting as a Representative Filer, you do not need to contact the Claims Administrator prior to filing; you will receive an automated e-mail confirming receipt once your Claim Form has been submitted. If you are unsure if you should submit your claim as a Representative Filer, please contact the Claims Administrator at info@strategicclaims.net or (866) 274-4004. If you are not a Representative Filer, but your claim contains a large number of transactions, the Claims Administrator may request that you also submit an electronic spreadsheet showing your transactions to accompany your Claim Form.

## IMPORTANT: PLEASE NOTE

**YOUR CLAIM IS NOT DEEMED FILED UNTIL YOU RECEIVE AN ACKNOWLEDGEMENT POSTCARD. THE CLAIMS ADMINISTRATOR WILL ACKNOWLEDGE RECEIPT OF YOUR CLAIM FORM BY MAIL WITHIN 60 DAYS. IF YOU DO NOT RECEIVE AN ACKNOWLEDGEMENT POSTCARD WITHIN 60 DAYS, PLEASE CALL THE CLAIMS ADMINISTRATOR TOLL FREE AT 866-274-4004.**

### PART III – SCHEDULE OF TRANSACTIONS IN RENOVACARE SECURITIES

Complete this Part III if and only if you purchased or otherwise acquired RenovaCare securities between August 14, 2017 and May 28, 2021, both dates inclusive. Please include proper documentation with your Claim Form as described in detail in Part II – General Instructions, paragraph 10, above. Do not include information in this section regarding securities other than RenovaCare Securities.

**Beginning Holdings:**
A.  State the total number of shares of RenovaCare Securities held at the close of trading on August 11, 2017 (*must be documented*).  If none, write "zero" or "0."

**Purchases/Acquisitions:**

B.  Separately list each and every purchase or acquisition of RenovaCare Securities between August 14, 2017 through May 28, 2021, both dates inclusive, and provide the following information (*must be documented*):

| Trade Date (List Chronologically) (Month/Day/Year) | Number of Shares Purchased/Acquired | Price per Share | Total Cost (Excluding Commissions, Taxes, and Fees) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

C.  **PURCHASES/ACQUISITIONS DURING THE 90-DAY LOOKBACK PERIOD**: State the total number of shares of RenovaCare Securities purchased/acquired from after the opening of trading on June 1, 2021, through and including the close of trading on August 26, 2021. If none, write "zero" or "0."

_____

**Sales:**

D.  Separately list each and every sale of RenovaCare Securities between August 14, 2017 through August 26, 2021, both dates inclusive, and provide the following information (*must be documented*):

| Trade Date (List Chronologically) (Month/Day/Year) | Number of Shares Sold | Price per Share | Amount Received (Excluding Commissions, Taxes, and Fees) |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**Ending Holdings:**

E.  State the total number of shares of RenovaCare Securities held at the close of trading on August 26, 2021 (*must be documented*). If none, write "zero" or "0."



**IF ADDITIONAL SPACE IS NEEDED, ATTACH SEPARATE, NUMBERED SHEETS, GIVING ALL REQUIRED INFORMATION, SUBSTANTIALLY IN THE SAME FORMAT, AND PRINT YOUR NAME AND SOCIAL SECURITY OR TAXPAYER IDENTIFICATION NUMBER AT THE TOP OF EACH SHEET.**

## PART VI – RELEASE OF CLAIMS AND SIGNATURE

### *YOU MUST READ THE RELEASE AND CERTIFICATION BELOW AND SIGN ON PAGE [ ] OF THIS CLAIM FORM*

I (we) hereby acknowledge that as of the Effective Date of the Settlement, pursuant to the terms set forth in the Stipulation and Agreement of Settlement dated September 23, 2024 ("Stipulation"), I (we), on behalf of myself (ourselves) and my (our) respective heirs, predecessors, successors, assigns, executors, administrators, representatives, attorneys, and agents, in their capacities as such, shall be deemed to have, and by operation of law and of the Judgment shall have, fully, finally, and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiffs' Claim (as defined in the Stipulation and in the Notice) against the Defendants and the other Defendants' Releasees (as defined in the Stipulation and in the Notice), and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiffs' Claims against any of the Defendants' Releasees.

### CERTIFICATION

By signing and submitting this Claim Form, the Claimant(s) or the person(s) who represent(s) the Claimant(s) certifies (certify), that:

1.      I (we) have read and understand the contents of the Notice and this Claim Form, including the releases provided for in the Settlement and the terms of the Plan of Allocation;

2.      The Claimant(s) is a (are) Settlement Class Member(s), as defined in the Notice and in paragraph 2 on page 3 of this Claim Form, and is (are) not excluded from the Settlement Class by definition or pursuant to request as set forth in the Notice and in paragraph 3 on page 3 of this Claim Form;

3.      I (we) own(ed) the RenovaCare Securities identified in the Claim Form and have not assigned the claim against the Defendants' Releasees to another, or that, in signing and submitting this Claim Form, I (we) have the authority to act on behalf of the owner(s) thereof;

4.      The Claimant(s) has (have) not submitted any other claim covering the same purchases/acquisitions of RenovaCare Securities, and knows (know) of no other person having done so on the Claimant's (Claimants') behalf;

5.      The Claimant(s) submit(s) to the jurisdiction of the Court with respect to Claimant's (Claimants') claim and for purposes of enforcing the releases set forth herein;

6.      I (we) agree to furnish such additional information with respect to this Claim Form as Lead Counsel, the Claims Administrator, or the Court may require;

7.      The Claimant(s) waive(s) the right to trial by jury and agree(s) to the Court's summary disposition of the determination of the validity and amount of the claim made by means of this

Claim Form and knowingly and intentionally waive(s) any right of appeal to any court including the U.S. Court of Appeals for the Third Circuit;

8.      I (we) acknowledge that the Claimant(s) will be bound by and subject to the terms of any judgment(s) that may be entered in the Action; and

9.      The Claimant(s) is (are) NOT subject to backup withholding under the provisions of Section 3406(a)(1)(C) of the Internal Revenue Code because (a) the Claimant(s) is (are) exempt from backup withholding or (b) the Claimant(s) has (have) not been notified by the IRS that he/she/it is subject to backup withholding as a result of a failure to report all interest or dividends or (c) the IRS has notified the Claimant(s) that he/she/it is no longer subject to backup withholding. **If the IRS has notified the Claimant(s) that he, she, or it is subject to backup withholding, please strike out the language in the preceding sentence indicating that the claim is not subject to backup withholding in the certification above.**

UNDER THE PENALTIES OF PERJURY, I (WE) CERTIFY THAT ALL OF THE INFORMATION PROVIDED BY ME (US) ON THIS CLAIM FORM IS TRUE, CORRECT, AND COMPLETE, AND THAT THE DOCUMENTS SUBMITTED HEREWITH ARE TRUE AND CORRECT COPIES OF WHAT THEY PURPORT TO BE.

_____

Signature of Claimant                                                                    Date

_____

Print your name here

_____

Signature of Joint Claimant, if any                                                   Date

_____

Print your name here

_____

CAPACITY OF PERSON SIGNING ON BEHALF OF CLAIMANT, IF OTHER THAN AN INDIVIDUAL, *E.G.*, EXECUTOR, PRESIDENT, TRUSTEE, CUSTODIAN, ETC. (MUST PROVIDE EVIDENCE OF AUTHORITY TO ACT ON BEHALF OF CLAIMANT – SEE PARAGRAPH 13 ON PAGE _ OF THIS CLAIM FORM.)

### **REMINDER CHECKLIST:**

1.      Please sign the above release and certification. If this Claim Form is being made on behalf of joint Claimants, then both must sign.

9

2.    Remember to attach only copies of acceptable supporting documentation as these documents will not be returned to you.

3.    Please do not highlight any portion of the Claim Form or any supporting documents.

4.    Do not send original security certificates or documentation. These items cannot be returned to you by the Claims Administrator.

5.    Keep copies of the completed Claim Form and documentation for your records.

6.    The Claims Administrator will acknowledge receipt of your Claim Form by mail within 60 days. Your claim is not deemed filed until you receive an acknowledgement postcard. **If you do not receive an acknowledgement postcard within 60 days, please call the Claims Administrator toll free at 866-274-4004.**

7.    If your address changes in the future, or if this Claim Form was sent to an old or incorrect address, please send the Claims Administrator written notification of your new address. If you change your name, please inform the Claims Administrator.

8.    If you have any questions or concerns regarding your claim, please contact the Claims Administrator at the address below, by email at info@strategicclaims.net, or toll-free at 866-274-4004 or visit **www.strategicclaims.net/renovacare**. Please DO NOT call RenovaCare or any of the other Defendants or their counsel with questions regarding your claim.

THIS CLAIM FORM MUST BE MAILED TO THE CLAIMS ADMINISTRATOR BY FIRST-CLASS MAIL, **POSTMARKED NO LATER THAN _____, 2024**, ADDRESSED AS FOLLOWS:

*RenovaCare Securities Litigation*
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson Street, Suite 205
Media, PA 19063

**OR SUBMITTED ONLINE AT WWW.STRATEGICCLAIMS.NET/RENOVACARE ON OR BEFORE _____, 2024**.

A Claim Form received by the Claims Administrator shall be deemed to have been submitted when posted, if a postmark date on or before _____, 2024 is indicated on the envelope and it is mailed First Class and addressed in accordance with the above instructions. In all other cases, a Claim Form shall be deemed to have been submitted when actually received by the Claims Administrator.

# EXHIBIT A-3

Exhibit A-3

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE RENOVACARE, INC. SECURITIES LITIGATION | Case No. 2:21-cv-13766-BRM-ESK |

## SUMMARY NOTICE

**TO: All persons and entities that purchased or otherwise acquired RenovaCare, Inc. ("RenovaCare") securities between August 14, 2017 and May 28, 2021, inclusive, and were damaged thereby[1] (the "Settlement Class"):**

**PLEASE READ THIS NOTICE CAREFULLY, AS YOUR RIGHTS WILL BE AFFECTED BY A CLASS ACTION LAWSUIT PENDING IN THIS COURT.**

YOU ARE HEREBY NOTIFIED, pursuant to an Order of the United States District Court for the District of New Jersey, that a hearing will be held on _____, 202__, at __:__ __.m., before the Honorable Brian Martinotti at the United States District Court for the District of New Jersey, Frank Lautenberg Post Office & U.S. Courthouse, 2 Federal Square, Courtroom PO 01, Newark, New Jersey 07102, or via Zoom or some other video platform, for the purpose of determining: (1) whether the proposed Settlement of the claims in the above-captioned Action for the sum of $2,000,000 in cash should be approved by the Court as fair, reasonable, and adequate; (2) whether the proposed Plan of Allocation to distribute the Settlement proceeds is fair, reasonable, and adequate and therefore should be approved; and (3) whether the application of Lead Counsel for an award of attorneys' fees and Litigation Expenses, including interest earned thereon, and award to Lead Plaintiff, from the Settlement Fund, should be approved.

The Court reserves the right to hold the Settlement Hearing telephonically or by other virtual means. The Court appointed Hagens Berman Sobol Shapiro LLP as Lead Counsel to represent you and the other Settlement Class Members. However, you have the right to retain your own counsel and the right to appear at the Settlement Hearing through counsel of your choosing.

If you purchased or otherwise acquired RenovaCare securities between August 14, 2017, and May 28, 2021, both dates inclusive, your rights may be affected by this Settlement. As further described in the Notice of Pendency and Proposed Settlement of Class Action ("Notice"), you will

---

[1] All capitalized terms used in this Summary Notice that are not otherwise defined herein shall have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated ____, 2024 (the "Stipulation"), which is available at www.strategicclaims.net/renovacare.

be bound by any judgment entered in the Action, whether or not you make a claim, unless you request exclusion from the Settlement Class.

**If you are a member of the Settlement Class, your rights will be affected by the pending Action and the Settlement, and you may be entitled to share in the Settlement Fund.** The Notice and Proof of Claim Form ("Claim Form"), can be downloaded from the website maintained by the Claims Administrator, www.strategicclaims.net/renovacare ("Settlement Website"). You may also obtain copies of the Notice and Claim Form by contacting the Claims Administrator at RenovaCare Securities Litigation, c/o Strategic Claims Services, P.O. Box 230, 600 N. Jackson Street, Suite 205, Media, PA 19063, 1-866-274-4004, info@strategicclaims.net.

If you are a member of the Settlement Class, you must submit a Claim Form *postmarked*, or online at the Settlement Website, no later than _____, 2024 in order to be eligible to receive a payment under the proposed Settlement. If you are a Settlement Class Member and do not submit a proper Claim Form, you will not be eligible to share in the distribution of the net proceeds of the Settlement, but you will nevertheless be bound by any judgments or orders entered by the Court in the Action.

If you are a member of the Settlement Class and wish to exclude yourself from the Settlement Class, you must submit a request for exclusion such that it is *received* no later than _____, 2024, in accordance with the instructions set forth in the Notice. If you properly exclude yourself from the Settlement Class, you will not be bound by any judgments or orders entered by the Court in the Action and you will not be eligible to share in the proceeds of the Settlement.

Any objections to the proposed Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for attorneys' fees, reimbursement of Litigation Expenses, and award to Lead Plaintiff, must be filed with the Court and delivered to Lead Counsel and Defendants' Counsel such that they are *received* no later than _____, 2024, in accordance with the instructions set forth in the Notice.

**Please do not contact the Court, the Clerk's office, RenovaCare or any of the other Defendants, or their counsel regarding this notice. All questions about this notice, the proposed Settlement, or your eligibility to participate in the Settlement should be directed to Lead Counsel or the Claims Administrator.**

Inquiries, other than requests for the Notice and Claim Form, should be made to Lead Counsel:

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Reed Kathrein
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
510-725-3000
reed@hbsslaw.com

Requests for the Notice and Claim Form should be made to:

*RenovaCare Securities Litigation*
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson Street, Suite 205
Media, PA 19063
866-274-4004

www.strategicclaims.net/renovacare

Dated: _____, 2024

BY ORDER OF THE UNITED STATES
DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

# EXHIBIT A-4

*COURT-ORDERED LEGAL NOTICE*

*In re Renovacare, Inc. Securities Litigation*,
No. 2:21-cv-13766-BRM-ESK (D.N.J.)

**If you are a Settlement Class Member, your legal rights may be affected by a proposed Settlement of this securities class action, and you may be eligible for a cash payment. Please read this Postcard Notice carefully.**

**For more information, please visit [www.strategicclaims.net/renovacare](www.strategicclaims.net/renovacare) or call toll free (866) 274-4004.**

*RenovaCare Securities Litigation*
c/o Strategic Claims Services
P.O. Box 230
600 N. Jackson Street, Suite 205
Media, PA 19063

«Barcode»
Postal Service: Please do not mark barcode

«First1» «Last1»
«C/O»
«Addr1» «Addr2»
«City», «St» «Zip» «Country»

***THIS POSTCARD PROVIDES ONLY LIMITED INFORMATION ABOUT THE SETTLEMENT.***
**Please visit www.strategicclaims.net/renovacarefor more information.**

   The parties in the securities class action *In re Renovacare, Inc. Securities Litigation,* No. 2:21-cv-13766-BRM-ESK (D.N.J.) ("Action") have reached a proposed settlement of the claims asserted in the Action against RenovaCare, Inc., Harmel Rayat, Jatinder Bhogal, 1420527 Alberta Ltd., and Jeetenderjit Singh Sidhu (collectively, "Defendants"). If approved, the Settlement will resolve the Action in which Plaintiffs had alleged that Defendants made materially false or misleading statements and omissions about RenovaCare's business during the period from August 14, 2017 through May 28, 2021, inclusive (the "Settlement Class Period"). Defendants deny any liability or wrongdoing whatsoever and deny that any Settlement Class Member was damaged. You received this notice because you may be a member of the following Settlement Class: **All persons and entities that purchased or otherwise acquired RenovaCare, Inc. Securities between August 14, 2017 and May 28, 2021, inclusive, and were damaged thereby**.

   Pursuant to the Settlement, Defendants have agreed to pay **$2,000,000** in cash, which, after deducting Court-awarded fees and expenses, notice and administration costs, and  taxes, will be allocated among Settlement Class Members who submit valid claims, in exchange for the Settlement and the release of all claims asserted in the Action and related claims. **For additional information regarding the Settlement, please review the full Notice of Pendency and Proposed Settlement of Class Action ("Settlement Notice") available at www.strategicclaims.net/renovacare.** If you are a Settlement Class Member, your *pro rata* share of the Settlement will depend on the number of valid claims submitted, and the number, size, and timing of your transactions in RenovaCare common stock during the Class Period. If all Settlement Class Members elect to participate in the Settlement, the estimated average recovery will be $0.31 per eligible share of RenovaCare common stock *before* deducting any fees and expenses. Your actual share of the Settlement will be determined pursuant to the Plan of Allocation set forth in the Settlement Notice, or other plan of allocation ordered by the Court.

   **To be eligible for a payment from the Settlement, you must submit a valid Claim Form.** The Claim Form can be found and submitted at www.strategicclaims.net/renovacare, or you can request that one be mailed to you. **Claims must be postmarked (if**

mailed), or submitted online, by _____, 2024. If you DO NOT want to be legally bound by the Settlement, you must exclude yourself from the Settlement Class by ____, 2024, or you will not be able to sue the Defendants about the legal claims in this case. If you exclude yourself, you cannot get money from this Settlement.  If you want to object to any aspect of the Settlement, you must file and serve an objection by _____, 2024. The full Settlement Notice provides instructions on how to submit a Claim, exclude yourself from the Settlement, or object, and you must comply with all of the instructions in the Settlement Notice.

The Court will hold a hearing on _____, 2024 at _____ _.m., to consider, among other things, whether to approve the Settlement and a request by the lawyers representing the Settlement Class for attorneys' fees not to exceed 33 1/3% of the Settlement Fund and litigation expenses of no more than $200,000 (which equals an estimated cost of $0.14 per eligible share). You may attend the hearing and ask to be heard by the Court, but you do not have to. **For more information, call (866) 274-4004, send an email to info@strategicclaims.net, or visit www.strategicclaims.net/renovacare.**

# EXHIBIT B

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE RENOVACARE, INC. SECURITIES LITIGATION | Case No. 2:21-cv-13766-BRM-ESK |

## [PROPOSED] ORDER AND FINAL JUDGMENT

WHEREAS, a consolidated class action is pending in this Court styled *In re RenovaCare, Inc. Securities Litigation*, No. 2:21-cv-13766-BRM-ESK (the "Action");

WHEREAS, (a) Lead Plaintiff Diana Deidan and Named Plaintiff Marc Jay Gannon ("Plaintiffs"), on behalf of themselves and the Settlement Class, and (b) Defendants RenovaCare, Inc. ("RenovaCare"), Harmel Rayat, Jatinder Bhogal, 1420527 Alberta Ltd., and Jeetenderjit Singh Sidhu (collectively, "Defendants") (together with Plaintiffs, the "Parties") have entered into a Stipulation and Agreement of Settlement dated September 23, 2024 (the "Stipulation"), that provides for a complete dismissal with prejudice of the claims asserted against Defendants in the Action on the terms and conditions set forth in the Stipulation, subject to the approval of this Court (the "Settlement");

WHEREAS, by Order dated _____ __, 2024 (the "Preliminary Approval Order"), this Court: (a) preliminarily approved the Settlement; (b) certified the Settlement Class solely for purposes of effectuating the Settlement; (c) ordered that notice of the proposed Settlement be provided to potential Settlement Class Members; (d) provided Settlement Class Members with the opportunity either to exclude themselves from the Settlement Class or to object to the proposed Settlement; and (e) scheduled a hearing regarding final approval of the Settlement;

WHEREAS, the Court conducted a hearing on _____ __, 2025 (the "Settlement Hearing") to consider, among other things, (a) whether the terms and conditions of the Settlement are fair, reasonable and adequate to the Settlement Class, and should therefore be approved; and (b) whether a judgment should be entered dismissing the Action with prejudice as against the Defendants; and

WHEREAS, the Court having reviewed and considered the Stipulation, all papers filed and proceedings held herein in connection with the Settlement, all oral and written comments received regarding the Settlement, and the record in the Action, and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.     **Incorporation of Settlement Documents –** Unless otherwise defined herein, all capitalized words used herein shall have the same meanings as they have in the Stipulation;

2.     **Jurisdiction** – The Court has jurisdiction over the subject matter of the Action, and all matters relating to the Settlement, as well as personal jurisdiction over all of the Parties and each of the Settlement Class Members.

3.     **Incorporation of Settlement Documents** – This Order and Final Judgment incorporates and makes a part hereof: (a) the Stipulation filed with the Court on September 23, 2024; and (b) the Notice, Summary Notice, and Postcard Notice, all of which were filed with the Court on September 23, 2024.

4.     **Class Certification for Settlement Purposes** – The Court hereby affirms its determinations in the Preliminary Approval Order certifying, for the purposes of the Settlement only, the Action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of the Settlement Class consisting of all Persons and entities that purchased or otherwise acquired RenovaCare Securities between August 14, 2017 and May 28, 2021,

inclusive (the "Settlement Class Period"), and were damaged thereby. Excluded from the Settlement Class are Defendants, the officers and directors of RenovaCare, at all relevant times, members of their Immediate Families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest. [Also excluded from the Settlement Class are the persons and entities listed on Exhibit 1 hereto who or which are excluded from the Settlement Class pursuant to request.]

5.     **Adequacy of Representation** – Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for the purposes of the Settlement only, the Court hereby affirms its determinations in the Preliminary Approval Order certifying Plaintiffs as Class Representatives for the Settlement Class and appointing Lead Counsel as Class Counsel for the Settlement Class. Plaintiffs and Lead Counsel have fairly and adequately represented the Settlement Class both in terms of litigating the Action and for purposes of entering into and implementing the Settlement and have satisfied the requirements of Federal Rules of Civil Procedure 23(a)(4) and 23(g), respectively.

6.     **Notice** - The Court finds that the dissemination of the Postcard Notice, the emailing and online posting of the Notice, and the publication of the Summary Notice: (a) were implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of the Action; (ii) the effect of the proposed Settlement (including the Releases to be provided thereunder); (iii) Lead Counsel's motion for an award of attorneys' fees, reimbursement of Litigation Expenses, and award to Lead Plaintiff; (iv) their right to object to any aspect of the Settlement, the Plan of Allocation and/or Lead Counsel's motion for attorneys' fees, reimbursement of Litigation Expenses, and award to Lead Plaintiff; (v) their right to exclude themselves from the Settlement

3

Class; and (vi) their right to appear at the Settlement Hearing; (d) constituted due, adequate, and

sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement;

and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United

States Constitution (including the Due Process Clause), the Private Securities Litigation Reform

Act of 1995, 15 U.S.C. §§ 78u-4, 77z–1, as amended, and all other applicable law and rules.

7.      **Final Settlement Approval and Dismissal of Claims** – Pursuant to, and in

accordance with, Rule 23 of the Federal Rules of Civil Procedure, this Court hereby fully and

finally approves the Settlement set forth in the Stipulation in all respects (including, without

limitation: the amount of the Settlement; the Releases provided for therein; and the dismissal with

prejudice of the claims asserted against Defendants in the Action), and finds that the Settlement is,

in all respects, fair, reasonable and adequate to the Settlement Class. The Parties are directed to

implement, perform and consummate the Settlement in accordance with the terms and provisions

contained in the Stipulation.

8.      The Action and all of the claims asserted against Defendants in the Action by

Plaintiffs and the other Settlement Class Members are hereby dismissed with prejudice. The Parties

shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

9.      **Binding Effect** – The terms of the Stipulation and this Order and Final Judgment

shall be forever binding on Defendants, Plaintiffs and all other Settlement Class Members

(regardless of whether or not any individual Settlement Class Member submits a Claim Form or

seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors

and assigns. [The persons and entities listed on Exhibit 1 hereto are excluded from the Settlement

Class pursuant to request and are not bound by the terms of the Stipulation or this Order and Final

Judgment.]

10.    **Releases** – The Releases set forth in paragraphs 5 and 6 of the Stipulation, together with the definitions contained in paragraph 1 of the Stipulation relating thereto, are expressly incorporated herein in all respects. The Releases are effective as of the Effective Date. Accordingly, this Court orders that:

a.    Without further action by anyone, and subject to paragraph 11 below, upon the Effective Date of the Settlement, Plaintiffs and each of the other Settlement Class Members, on behalf of themselves, and on behalf of any other Person or entity legally entitled to bring Released Plaintiffs' Claims on behalf of the respective Settlement Class Member in such capacity only, shall be deemed to have, and by operation of law and of this Order and Final Judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived, and discharged each and every Released Plaintiffs' Claim against the Defendants and the other Defendants' Releasees, and shall forever be enjoined from prosecuting any or all of the Released Plaintiffs' Claims against any of the Defendants' Releasees. This Release shall not apply to any of the Excluded Claims (as that term is defined in paragraph 1(q) of the Stipulation).

b.    Without further action by anyone, and subject to paragraph 11 below, upon the Effective Date of the Settlement, Defendants, on behalf of themselves, and on behalf of any other person or entity legally entitled to bring Released Defendants' Claims on behalf of Defendants in such capacity only, shall be deemed to have, and by operation of law and of this Order and Final Judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Defendants' Claim against Plaintiffs and the other Plaintiffs' Releasees, and shall forever be enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiffs' Releasees. [This Release shall not apply to any person or entity listed on Exhibit 1 hereto.]

11.    Notwithstanding paragraphs 10(a) and (b) above, nothing in this Order and Final Judgment shall bar any action by any of the Parties to enforce or effectuate the terms of the Stipulation or this Order and Final Judgment.

12.    **Rule 11 Findings** – The Court finds and concludes that the Parties and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with the institution, prosecution, defense, and settlement of the Action.

13.    **No Admissions** – Neither this Order and Final Judgment, the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Stipulation, nor any proceedings taken pursuant to or in connection with the Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):

a.    shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any fact alleged by Plaintiffs or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees or in any way referred to for any other reason as against any of the Defendants' Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation;

6

b.      shall be offered against any of the Plaintiffs' Releasees, as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Plaintiffs' Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Complaint would not have exceeded the Settlement Amount or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiffs' Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation; or

c.      shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given under the Settlement represents the amount which could be or would have been recovered after trial; *provided, however*, that the Parties and the Releasees and their respective counsel may refer to this Order and Final Judgment and the Stipulation to effectuate the protections from liability granted hereunder and thereunder or otherwise to enforce the terms of the Settlement.

14.    **<u>Retention of Jurisdiction</u>** – Without affecting the finality of this Order and Final Judgment in any way, this Court retains continuing and exclusive jurisdiction over: (a) the Parties for purposes of the administration, interpretation, implementation and enforcement of the Settlement; (b) the disposition of the Settlement Fund; (c) any motion for an award of attorneys' fees, Litigation Expenses, and/or award to Lead Plaintiff by Lead Counsel in the Action that will be paid from the Settlement Fund; (d) any motion to approve the Plan of Allocation; (e) any motion to approve the Class Distribution Order; and (f) the Settlement Class Members for all matters relating to the Action.

15.     Separate orders shall be entered regarding approval of a plan of allocation and the motion of Lead Counsel for an award of attorneys' fees, reimbursement of Litigation Expenses, and award to Lead Plaintiff. Such orders shall in no way affect or delay the finality of this Order and Final Judgment and shall not affect or delay the Effective Date of the Settlement.

16.     **Modification of the Agreement of Settlement** – Without further approval from the Court, Plaintiffs and Defendants are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Order and Final Judgment; and (b) do not materially limit the rights of Settlement Class Members in connection with the Settlement. Without further order of the Court, Plaintiffs and Defendants may agree to reasonable extensions of time to carry out any provisions of the Settlement.

17.     **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation or the Effective Date of the Settlement otherwise fails to occur, this Order and Final Judgment shall be vacated, rendered null and void and be of no further force and effect, except as otherwise provided by the Stipulation, and this Order and Final Judgment shall be without prejudice to the rights of Plaintiffs, the other Settlement Class Members and Defendants, and the Parties shall revert to their respective positions in the Action as of August 9, 2024, as provided in the Stipulation.

18.     **Entry of Order and Final Judgment** – There is no just reason to delay the entry of this Order and Final Judgment and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this _____ day of _____, 2029.

_____
THE HONORABLE BRIAN MARTINOTTI
UNITED STATES DISTRICT JUDGE

# EXHIBIT 2




# HAGENS BERMAN







HAGENS  BERMAN  SOBOL  SHAPIRO LLP

Hagens Berman is a national leader in class-action litigation driven by an international team of legal powerhouses. With a tenacious spirit, we are motivated to make a positive difference in people's lives.

# Table of Contents

**INTRODUCTION** ...................................... 4
The Firm.............................................................. 4
Locations........................................................... 5
Quotes................................................................ 6
Victories & Settlements..................... 10

**PRACTICE AREAS** ................................ 8
Anti-Terrorism...................................... 16
Antitrust.................................................. 17
Automotive – Defect, Fraud &
   Products Liability ............................ 22
Automotive – Emissions Cheating ...... 27
Civil and Human Rights ..................... 30
Consumer Protection – General
   Class Litigation ............................... 31
Consumer Protection – Drug and
   Supplement Litigation ................... 36
Data Breach ........................................ 40
Employment Litigation ....................... 42
Environmental Litigation .................... 44
Governmental Representation ........... 47
High Tech Litigation............................ 49
Intellectual Property............................ 51
Investor Fraud – Individual and Class
   Action Litigation.............................. 53
Personal Injury and Abuse.................. 57
Sexual Abuse and Harassment ......... 59
Sports Litigation .................................. 62
Whistleblower Litigation..................... 66

**APPELLATE VICTORIES** .................... 70
Strengthening Consumer Law ........... 71

**U.S. LEGAL TEAM**................................ 74

**MANAGING PARTNER**....................... 75
Steve W. Berman.................................. 75

**PARTNER, EXECUTIVE
COMMITTEE MEMBER** ..................... 84
Thomas M. Sobol................................. 84
Robert B. Carey ................................... 87

**PARTNER**.............................................. 91
Leonard W. Aragon.............................. 91
Gregory T. Arnold ................................ 93
Lauren Guth Barnes ............................ 96
Hannah Brennan................................ 100
Erin C. Burns ..................................... 103
Elaine T. Byszewski .......................... 105
John DeStefano ................................. 107
Jeannie Y. Evans................................ 109
Rachel E. Fitzpatrick .......................... 112
Catherine Y.N. Gannon...................... 113
Lucas E. Gilmore ............................... 115
Ben Harrington .................................. 116
Anne F. Johnson................................ 117
Kristen A. Johnson............................. 119
Reed R. Kathrein............................... 122
Michella A. Kras................................. 124
Daniel J. Kurowski ............................. 126
Robert F. Lopez ................................. 128
Jessica R. MacAuley ......................... 130
Sean R. Matt...................................... 132
Martin D. McLean .............................. 134
Abbye Klamann Ognibene ................ 135
Christopher A. O'Hara........................ 136
Jerrod C. Patterson............................ 138
Rio S. Pierce...................................... 140
Christopher R. Pitoun........................ 142
Shana E. Scarlett .............................. 144
Craig R. Spiegel................................. 147
Shayne C. Stevenson ........................ 148
Whitney Street ................................... 153
Jessica Thompson ............................. 155
Breanna Van Engelen......................... 157
Mark Vazquez.................................... 158
Ted Wojcik.......................................... 159
Garth Wojtanowicz............................. 160

**SENIOR COUNSEL** ........................... 161
Kevin K. Green ................................... 161
Barbara Mahoney .............................. 164
David P. Moody .................................. 166

**OF COUNSEL** .................................... 168
Karl Barth........................................... 168
Mark S. Carlson ................................. 169
Laura Hayes ...................................... 171
John D. Jenkins .................................. 172
Robert A. Jigarjian ............................. 173
James J. Nicklaus .............................. 174
Hannah Schwarzschild....................... 175
Benjamin J. Siegel ............................. 176
Shelby R. Smith ................................. 178
Nathaniel A. Tarnor............................ 180

**ASSOCIATE**....................................... 182
Tory Beardsley ................................... 182
Jacob Berman..................................... 184
James M. Chong................................. 185
Rachel Downey................................... 186
Nathan Emmons ................................ 187
Kelly Fan............................................ 188
Rebekah Glickman-Simon.................. 189
Joseph M. Kingerski.......................... 190
Raffi Melanson ................................... 191
Claudia Morera .................................. 192
Chris O'Brien ..................................... 193
Laura K. Pedersen ............................. 194
Abigail D. Pershing ............................ 195
Ryan T. Pittman ................................. 196
Daniel Polonsky ................................. 197
Peter A. Schaeffer.............................. 198
Alisa V. Sherbow ............................... 199
Whitney K. Siehl................................. 201
Meredith S. Simons............................ 204
Emilee Sisco ...................................... 205
Stephanie A. Verdoia ......................... 206
Sophia Weaver .................................. 208
Lauriane Williams............................... 209
Abby Wolf .......................................... 210

INTRODUCTION

# The Firm

Hagens Berman Sobol Shapiro LLP was founded in 1993 with one purpose: to help victims with claims of fraud and negligence that adversely impact a broad group. Through the firm's focus on class-action litigation and other complex, multi-party cases, it fights for those seeking representation against wrongdoing and fraud. As the firm grew, it expanded its scope while staying true to its mission of taking on important cases that implicate the public interest and the greater good. We represent plaintiffs including consumers, inventors, investors, workers, the environment, governments, whistleblowers and others.

## We are one of the nation's leading class-action law firms and have earned an international reputation for excellence and innovation in ground-breaking litigation against large corporations.

### OUR FOCUS

Our focus is to represent plaintiffs in antitrust, consumer fraud, employment, environmental, intellectual property, product liability, securities and investment fraud, sexual harassment, tort and whistleblower law cases. Our firm is particularly skilled at managing multistate and nationwide class actions through an organized, coordinated approach. Our skilled team implements an efficient and aggressive prosecutorial strategy to place maximum pressure on defendants.

### WE WIN

We believe excellence stems from a commitment to try each case, vigorously represent the best interests of our clients and obtain maximum recovery. Our opponents know we are determined and tenacious. They respect our skills and recognize our track record of achieving top results for those who need it most.

### WHAT MAKES US DIFFERENT

We are driven to return to the class every possible portion of its damages — our track record proves it. While many class action or individual plaintiff cases result in large legal fees and no meaningful outcome for the client or class, Hagens Berman finds ways to return real value to the victims of corporate fraud and malfeasance through damages and real change.

### AN INTERNATIONAL REACH

Our firm offers clients an international scope of practice. We have flourished through our core network of U.S. offices, and with a global expansion, Hagens Berman has grown geographically to where our eyes have always been: trends of fraud, negligence and wrongdoing taking form anywhere in the world. The firm now does business through endeavors in London and Amsterdam. Our reach is not limited to the cities where we maintain offices. We have cases pending in several countries and have a vested interest in fighting global instances of oppression and injustice.

HAGENS BERMAN SOBOL SHAPIRO LLP

INTRODUCTION

# Locations

### SEATTLE

1301 Second Avenue, Suite 2000
Seattle, WA 98101
T 206-623-7292
F 206-623-0594

### BERKELEY

715 Hearst Avenue, Suite 300
Berkeley, CA 94710
T 510-725-3000
F 510-725-3001

### BOSTON

1 Faneuil Hall Square, 5th Floor
Boston, MA 02109
T 617-482-3700
F 617-482-3003

### CHICAGO

455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
T 708-628-4949
F 708-628-4950

### LOS ANGELES

301 North Lake Avenue, Suite 920
Pasadena, CA 91101
T 213-330-7150
F 213-330-7152

### NEW YORK

594 Dean Street, Suite 24
Brooklyn, NY 11238
T 212-752-5455
F 917-210-3980

### PHOENIX

11 West Jefferson Street, Suite 1000
Phoenix, AZ 85003
T 602-840-5900
F 602-840-3012

### SAN DIEGO

533 F Street
Suite 207
San Diego, CA 92101
T 619-929-3340

### LONDON

Hagens Berman UK LLP
125 Old Broad Street
London, EC2N 1AR
T 0203 150 1445

**INTRODUCTION**

# Quotes

"[A] clear choice emerges. That choice is the Hagens Berman firm."

*— U.S. District Court for the Northern District of California, In re Optical Disk Drive Products Antitrust Litigation (Appointing the firm lead counsel in the case which would later usher in $205 million in settlements.)*

"Landmark consumer cases are business as usual for Steve Berman."

*— The National Law Journal, naming Steve Berman one of the 100 most influential attorneys in the nation for the third time in a row*

"Berman is considered one of the nation's top class action lawyers."

*— Associated Press*

"unprecedented success in the antitrust field"

*— California Magistrate Judge Nathanael M. Cousins*
*A July 2015 order awarding attorneys' fees in student-athlete name and likeness litigation*

"All right, I think I can conclude on the basis with my five years with you all, watching this litigation progress and seeing it wind to a conclusion, that the results are exceptional…You did an exceptionally good job at organizing and managing the case…"

*— U.S. District Court for the Northern District of California, In re Dynamic Random Access Memory Antitrust Litigation (Hagens Berman was co-lead counsel and helped achieve the $406 million class settlement.)*

"aggressive and independent advocacy"

*— Hon. Thomas M. Durkin in an order appointing Hagens Berman as interim class counsel in In re Broiler Chicken Antitrust Litigation*

"Class counsel has consistently demonstrated extraordinary skill and effort."

*— Hon. James Selna, Central District of California, In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices and Products Liability Litigation, (The firm was appointed co-lead counsel without submitting to lead the case, and later achieved what was then the largest settlement in history brought against an automaker – $1.6 billion.)*

"…I have never worked with such professional, decent counsel."

*— Hon. Dennis M. Cavanaugh, United States District Judge (Retired), Transcript Of Proceedings Fairness Hearing for In re Mercedes-Benz Emissions Litigation, (Hagens Berman helped secure a $700 million settlement for class members and served as interim class counsel.)*

"…the track record of Hagens Berman['s] Steve Berman is…impressive, having racked… a $1.6 billion settlement in the Toyota Unintended

HAGENS  BERMAN  SOBOL  SHAPIRO LLP

Acceleration Litigation and a substantial number of really outstanding big-ticket results."

— Hon. Milton I. Shadur, Senior U.S. District Judge, naming Hagens Berman interim class counsel in Stericycle Pricing MDL (Hagens Berman served as lead counsel and secured a $295 million settlement.)

"…when you get good lawyers this is what happens; you get these cases resolved."

— Hon. Dennis M. Cavanaugh, United States District Judge (Retired), Proceedings Fairness Hearing for In re Mercedes-Benz Emissions Litigation

"…Class counsel have devoted considerable time and resources to this litigation…"

— Hon. Dennis M. Cavanaugh, United States District Judge (Retired), Proceedings Fairness Hearing for In re Mercedes-Benz Emissions Litigation

"...This result...puts significant money into the pockets of all of the class members, is an excellent result. ...I've also looked at the skill and quality of counsel and the quality of the work... and find that to have been at a high level."

— Hon. Beth Labson Freeman, United States District Judge, Final Approval of Settlement Hearing for Dean Sheikh et al v. Tesla, Inc.

"...respective clients certainly got their money's worth with these attorneys and the work that they did on their behalf. …Plaintiffs did an excellent job on behalf of their clients in this case."

— Hon. Dennis M. Cavanaugh, United States District Judge (Retired)
Proceedings Fairness Hearing for In re Mercedes-Benz Emissions Litigation

"Class Member reaction to the Mercedes Settlement is overwhelmingly positive."

— Hon. Dennis M. Cavanaugh (Ret.) Special Master, In re Mercedes-Benz Emissions Litigation

"I will reiterate that class counsel has demonstrated over many years, superior experience and capability in handling class actions of this sort."

— Hon. Beth Labson Freeman, United States District Judge, Final Approval of Settlement Hearing for Dean Sheikh et al v. Tesla, Inc.

"Not only did they work hard and do what was appropriate under the circumstances; their behavior was exemplary throughout. They were fair and firm. There were no pushovers involved here."

— Hon. Dennis M. Cavanaugh, United States District Judge (Retired), Proceedings Fairness Hearing for In re Mercedes-Benz Emissions Litigation

"Class Counsel are extremely qualified and competent counsel who have experience and expertise prosecuting complex class actions…successfully tried class actions to jury verdicts and…also obtained billions of dollars in settlements…"

— *Judge Magnuson, Final CBL Approval Order*

"Plaintiffs have zealously litigated this case on behalf of the class over the course of eight years...the reaction of the class members has been overwhelmingly positive."

— *Hon. Jeffrey S. White*
   *Order finalizing $28 million settlement in class-action against Schneider National Carriers Inc.*

"The level of representation of all parties in terms of the sophistication of counsel, was, in my view, of the highest levels. I can't imagine a case in which there was really a higher quality of representation across the board than this one."

— *Hon. William E. Smith, District Judge, U.S. District Court for the District of Rhode Island*
   *In re Loestrin 24 Antitrust Litigation, Master File No. 1:13-md-2472 (D.R.I.)*
   *Final Approval Hearing on the direct purchaser settlement ($120M)*

"…counsel provided strong representation for the class. Class counsel discovered and developed this case without the benefit of a government investigation's coattails. In total, class counsel reviewed 578,790 documents, deposed 19 fact and opposing-expert witnesses, and consulted with and retained 10 expert witnesses of their own."

— *Hon. William Alsup, District Judge*
   *U.S. District Court for the Northern District of California, In re Glumetza Antitrust Litigation*

"Class counsel also successfully defeated defendants' motions to dismiss, certified a Rule 23 class, and defeated defendants' summary judgment motions prior to reaching an agreement with all three defendants to settle this action mere weeks before the trial date. Class counsel accomplished all of this despite vigorous opposition from large multi-national companies with high-quality representation from six national law firms."

— *Hon. William Alsup, District Judge*
   *U.S. District Court for the Northern District of California, In re Glumetza Antitrust Litigation*

HAGENS BERMAN SOBOL SHAPIRO LLP

"The settlement was achieved at arm's length only after DPPs' highly skilled and experienced counsel had received and reviewed the voluminous discovery and exchanged over 30 expert reports with defendant…"

— Hon. Nina Gerson, District Judge
U.S. District Court for the Eastern District of New York, In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation

"I can't imagine attorneys litigating a case more rigorously than you all did in this case. It seems like every conceivable, legitimate, substantive dispute that could have been fought over was fought over to the max."

— Hon. William E. Smith, District Judge, U.S. District Court for the District of Rhode Island
Final Approval Hearing on the direct purchaser settlement ($120M), In re Loestrin 24 Antitrust Litigation

HAGENS BERMAN SOBOL SHAPIRO LLP

INTRODUCTION

# Victories & Settlements

Since its founding, the firm has secured settlements valued at more than $320 billion on behalf of class members in large-scale complex litigation.

## $260 BILLION
**STATE TOBACCO LITIGATION**
Hagens Berman represented 13 states prosecuting major actions against Big Tobacco. The settlement led to a multistate settlement requiring the tobacco companies to pay the states and submit to advertising and marketing restrictions. It was the largest civil settlement in history.

## $25 BILLION
**VISA CHECK/MASTERMONEY ANTITRUST LITIGATION**
The firm served as co-lead counsel in what was then the largest antitrust settlement in history. The class-action lawsuit alleged that Visa and MasterCard engaged in an anticompetitive scheme to monopolize the debit card services market and charge merchants artificially inflated interchange fees by tying merchant acceptance of their debit card services, Visa Check and MasterMoney, to merchant acceptance of their credit card services. Settlements secured categories of relief that court decisions valued at as much as $25-87 billion.

## $14.7 BILLION
**VOLKSWAGEN EMISSIONS LITIGATION**
Hagens Berman was named a member of the plaintiffs' steering committee and part of the settlement negotiating team in this monumental case that culminated in the largest automotive settlement in history. The firm was the first law firm to file against Volkswagen regarding its Dieselgate emissions-cheating scandal.

## $1.6 BILLION
**TOYOTA UNINTENDED ACCELERATION LITIGATION**
Hagens Berman served as co-lead counsel and secured what was then the largest automotive settlement in history in this class action that recovered $1.6 billion for vehicle owners.

## $1.6 BILLION
**VOLKSWAGEN FRANCHISE DEALERS LITIGATION**
The firm served as lead counsel representing VW franchise dealers in this lawsuit related to VW's Dieselgate scandal. The settlement recovered nearly full damages for the class.

## $1.45 BILLION
**MERACORD**
The firm secured a default judgment on behalf of consumers for a useless debt-settlement conspiracy, following years of plaintiff victories in the case. Hagens Berman filed its lawsuit in 2011, on behalf of consumers nationwide, claiming the company violated Washington law and the federal Racketeer Influenced and Corrupt Organizations Act.

## $1.3 BILLION
**HYUNDAI KIA THETA II GDI FIRE HAZARD LITIGATION I**
Hagens Berman is co-lead counsel in this case accusing automakers of selling vehicles with failure-prone engines that could sometimes catch fire. The case is still pending litigation pertaining to other affected models.

## $700 MILLION
**MERCEDES BLUETEC EMISSIONS LITIGATION**
A monumental settlement was reached on behalf of owners of Mercedes vehicles affected by Daimler's emissions cheating. The case was initially filed and researched by Hagens Berman, based on the firm's independent vehicle testing, and the firm served as co-lead counsel. The consumer settlement followed a $1.5 billion settlement between Mercedes and the U.S. Justice Department and California Air Resources Board. The settlement includes an $875 million civil penalty for violating the Clean Air Act.

HAGENS BERMAN SOBOL SHAPIRO LLP

# $700 MILLION

## WASHINGTON PUBLIC POWER SUPPLY SYSTEM (WPPSS) SECURITIES LITIGATION

Hagens Berman represented bondholders and the trustee in a class action stemming from the failure of two nuclear projects. Plaintiffs were awarded a $700 million settlement.

# $568 MILLION

## APPLE E-BOOKS ANTITRUST LITIGATION

Hagens Berman served as co-lead counsel against Apple and five of the nation's largest publishing companies and secured a combined $568 million settlement, returning class members nearly twice their losses in recovery, following the firm's victory over Apple after it appealed the case to the U.S. Supreme Court.

# $535 MILLION

## CHINA MEDIAEXPRESS HOLDINGS, INC. SECURITIES LITIGATION

Hagens Berman, which served as lead counsel in the case, alleged on behalf of a class of investors that China MediaExpress Holdings made false and misleading statements, including misrepresentations about its revenues, the number of buses in its network and the nature of its business relationships. The lawsuit resulted in relief for investors valued at $535 million.

# $470 MILLION

## LCD ANTITRUST LITIGATION

Hagens Berman served as a member of the Executive Committee representing consumers in multi-district litigation. Total settlements exceeded $470 million.

# $453 MILLION

## GLUMETZA ANTITRUST LITIGATION

The court denied summary judgment and paved the way for trial in this litigation against brand and generic manufacturers of the diabetes drug Glumetza. Hagens Berman served as co-lead counsel for the direct purchaser class. U.S. District Judge William Alsup approved $453.85 million in settlements resolving direct purchasers' allegations. The result was the largest antitrust recovery to receive final approval in 2022.

# $444 MILLION

## MCKESSON DRUG LITIGATION

Hagens Berman was lead counsel in a series of racketeering cases against McKesson for drug pricing fraud that settled for more than $444 million on the eve of trials.

# $383.5 MILLION

## DAVITA HEALTHCARE PERSONAL INJURY LITIGATION

A Denver jury awarded a monumental $383.5 million verdict to families of three patients who died after receiving dialysis treatments at DaVita clinics.

# $406 MILLION

## DRAM ANTITRUST LITIGATION

The firm was co-lead counsel in this antitrust case which settled for $406 million in favor of purchasers of dynamic random access memory chips.

# $385 MILLION

## SUBOXONE ANTITRUST LITIGATION

Hagens Berman was co-lead counsel in this pharmaceutical antitrust class action alleging defendants violated federal antitrust laws by delaying generic competition for its blockbuster opioid addiction medicine, Suboxone.

# $340 MILLION

## RANBAXY INC.

Hagens Berman served as co-lead counsel representing Meijer Inc. and Meijer Distribution Inc. in a class-action lawsuit against drugmaker Ranbaxy. The lawsuit alleged it recklessly stuffed the generic drug approval queues with grossly inadequate applications and deceiving the FDA into granting tentative approvals to lock in statutory exclusivities to which Ranbaxy was not entitled. Ranbaxy then excluded competition at the expense of U.S. drug purchasers. The settlement was part of a $485 million settlement for all plaintiffs. The result was the second largest antitrust recovery to receive final approval in 2022.

# $338 MILLION

## AVERAGE WHOLESALE PRICE DRUG LITIGATION

Hagens Berman was lead counsel in this ground-breaking drug pricing case against the world's largest pharmaceutical companies, resulting in a victory at trial. The court approved a total of $338 million in settlements.

# $325 MILLION

## NEURONTIN PFIZER LITIGATION

The firm brought suit against Pfizer and its subsidiary, Parke-Davis, accusing the companies of a fraudulent scheme to market and sell the drug Neurontin for a variety of "off-label" uses for which it is not approved or medically efficacious.

# $307 MILLION

## ECODIESEL EMISSIONS CHEATING LITIGATION

The firm achieved a settlement on behalf of owners of EcoDiesel Dodge 1500 and Jeep Grand Cherokee vehicles in response to Fiat Chrysler's emissions-cheating. Under the settlement, class members who repair their vehicles and submit a claim will receive $3,075. The total value of the deal is estimated at $307 million, granted all owners submit a valid claim.

# $300 MILLION

## HYUNDAI/KIA HYDRAULIC ELECTRONIC CONTROL UNIT (HECU) FIRE HAZARD

Approximately three million Hyundai and Kia vehicles nationwide were affected by a dangerous defect in the hydraulic and electronic control units (HECU), also known as anti-lock brake (ABS) modules which posed a risk of non-collision engine fires. Conservatively, plaintiffs' experts valued the settlement achieved by Hagens Berman as co-class counsel in the range of $326 million to $652 million.

# $295 MILLION

## STERICYCLE, STERI-SAFE LITIGATION

Hagens Berman served as lead counsel representing small businesses including veterinary clinics, medical clinics and labs in a class-action lawsuit alleging Stericycle's billing practices and accounting software violated consumer laws and constituted breach of contract.

# $255 MILLION

## HYUNDAI & KIA FUEL ECONOMY LITIGATION

Hagens Berman filed a class-action lawsuit on behalf of consumers alleging Hyundai and Kia overstated fuel economy for many vehicles they sold in the United States.

# $250 MILLION

## ENRON ERISA LITIGATION

Hagens Berman was co-lead counsel in this ERISA litigation, which recovered in excess of $250 million, the largest ERISA settlement in history.

# $250 MILLION

## BOFA COUNTRYWIDE APPRAISAL RICO

Hagens Berman served as co-lead counsel in a nationwide class-action lawsuit against Bank of America, Countrywide Financial and appraisal firm LandSafe Inc. on behalf of a class of home buyers accusing the suit's defendants of carrying out a series of phony appraisals in an attempt to secure more loans.

# $235 MILLION

## CHARLES SCHWAB SECURITIES LITIGATION

The firm was lead counsel in this action alleging fraud in the management of the Schwab YieldPlus mutual fund. A $235 million class settlement was approved by the court.

# $234 MILLION

## AEQUITAS CAPITAL MANAGEMENT

The firm settled this case on behalf of 1,600 investors of the now-defunct Aequitas companies. It is believed to be the largest securities settlement in Oregon history.

# $218 MILLION

## JP MORGAN MADOFF

Hagens Berman settled this case on behalf of Bernard L. Madoff investors in a suit filed against JPMorgan Chase Bank, its parents, subsidiaries and affiliates. The settlement against JPMorgan involved three simultaneous, separately negotiated settlements totaling more than $2.2 billion.

# $215 MILLION

## USC, DR. GEORGE TYNDALL SEXUAL ABUSE AND HARASSMENT

The firm served as co-lead counsel and secured a $215 million settlement on behalf of a class of thousands of survivors of sexual assault against the University of Southern California and its Dr. George Tyndall, the full-time gynecologist at USC's student health clinic.

# $212 MILLION

## TOYOTA, LEXUS DENSO FUEL PUMP DEFECT

Hagens Berman represented consumers in a lawsuit alleging that Toyota Motor Corp. sold vehicles with faulty engines made by Denso International America Inc. The defect left vehicle owners at risk of spontaneous vehicle shutdown, engine stall and other safety risks that increased the likelihood of a crash or injury. The settlement brought relief to more than 3.3 million vehicle owners.

# $208 MILLION

## NCAA SCHOLARSHIP CAP ANTITRUST LITIGATION

Hagens Berman was co-lead counsel in the damages portion of this historic antitrust class action claiming the NCAA unlawfully capped the value of athletic scholarships. In a historic ruling, the U.S. Supreme Court unanimously upheld a trial victory regarding the injunctive portion of the case securing monumental improvements for college athletes, and forever changing college sports. Steve Berman served as trial counsel.

# $205 MILLION
## OPTICAL DISC DRIVES (ODD) ANTITRUST LITIGATION

Hagens Berman served as lead counsel on behalf of consumers in a lawsuit filed against Philips, Pioneer and others for artificially inflating the price of ODDs.

# $200 MILLION
## NEW ENGLAND COMPOUNDING PHARMACY MENINGITIS OUTBREAK LITIGATION

Hagens Berman attorneys served as lead counsel for the plaintiffs' steering committee on behalf of plaintiff-victims of the 2012 fungal meningitis outbreak that led to more than 64 deaths and hundreds of joint infection cases.

# $181 MILLION
## BROILER CHICKEN ANTITRUST LITIGATION

Hagens Berman serves as interim class counsel in a case against Tyson, Purdue and 16 other chicken producers for allegedly conspiring to stabilize chicken prices by reducing production. The firm continues to litigate the case against remaining defendants.

# $169 MILLION
## ANIMATION WORKERS

Hagens Berman was co-lead counsel for a class of approximately 10,000 animators and other artistic workers in an antitrust class action against Pixar, DreamWorks, The Walt Disney Company, Sony and others for allegedly conspiring to restrain competition and suppress industry wages. A $169 million settlement resulted in a payment of more than $13,000 per class member.

# $150 MILLION
## FLONASE ANTITRUST LITIGATION

Hagens Berman was co-lead counsel representing purchasers in this case alleging GlaxoSmithKline filed petitions to prevent the emergence of generic competitors to its drug Flonase to overcharge consumers and purchasers of the drug, which would have been priced lower had a generic competitor been allowed to come to market.

# $150 MILLION
## LUPRON CONSUMER LITIGATION

Hagens Berman served as co-lead counsel on behalf of consumers and third-party payors who purchased the drug Lupron. Under the terms of the settlement, TAP Pharmaceuticals paid $150 million on behalf of all defendants.

# $125 MILLION
## PHARMACEUTICAL AWP LITIGATION

Hagens Berman was lead counsel against 11 pharmaceutical companies, including Abbott Laboratories and Watson Pharmaceuticals, resulting in multiple settlements between 2006 and 2012. Defendants agreed to pay $125 million in a nationwide settlement for intentionally inflating reports of the average wholesale prices (AWP) on certain prescription medications.

# $123.4 MILLION
## EXPEDIA LITIGATION

Hagens Berman led this class action arising from bundled "taxes and service fees" that Expedia collects when its consumers book hotel reservations. Plaintiffs alleged that by collecting exorbitant fees as a flat percentage of the room rates, Expedia violated both the Washington Consumer Protection Act and its contractual commitment to charge as service fees only "costs incurred in servicing" a given reservation.

# $120 MILLION
## GENERAL MOTORS

Hagens Berman represented owners of GM-branded vehicles as co-lead counsel in a national class-action lawsuit seeking compensation, statutory penalties and punitive damages against GM on behalf of owners of millions of vehicles affected by alleged safety defects and recalls. The court granted final approval to a $120 million settlement on behalf of affected GM vehicle owners on Dec. 18, 2020. Under the settlement, a trust controlled by creditors in GM's 2009 bankruptcy contributed up to $50 million.

# $120 MILLION
## LOESTRIN ANTITRUST LITIGATION

Hagens Berman served as interim co-lead counsel for the certified class of direct purchasers. The parties reached a proposed settlement shortly before trial.

# $113 MILLION
## BATTERIES ANTITRUST LITIGATION

Hagens Berman served as co-lead counsel and secured a settlement in this class-action lawsuit against some of the largest electronics manufacturers for allegedly illegally fixing the price of lithium-ion batteries, pushing costs higher for consumers.

HAGENS BERMAN SOBOL SHAPIRO LLP

# $108 MILLION
## FIAT CHRYSLER LOW OIL PRESSURE
As co-lead counsel, Hagens Berman represented a class of owners of Fiat Chrysler vehicles allegedly prone to spontaneous shut off when oil pressure is low. A federal judge approved a settlement valued at $108 million comprised of comprehensive relief including extended warranties, software upgrades, free testing and repairs and repair reimbursements.

# $100 MILLION
## APPLE IOS APP STORE LITIGATION
In this lawsuit against Apple, the firm served as interim lead counsel in this matter and represented U.S. iOS developers against the tech giant. The suit accused Apple of monopolizing distribution services for iOS apps and in-app digital products, allegedly resulting in commission overcharges. Apple agreed to pay $100 million and make developer-friendly changes to its App Store policy.

# $100 MILLION
## OPPENHEIMER CORE BOND AND CHAMPION INCOME FUNDS LITIGATION
Hagens Berman obtained settlements in two cases alleging that various Oppenheimer entities and certain individual defendants made materially false or misleading statements and omissions to the investing public regarding the investment profile and objectives of the two funds.

# $100 MILLION
## TENET HEALTHCARE
Hagens Berman achieved a settlement on behalf of uninsured patients who received care at Tenet facilities nationwide, alleging that the patients were charged excessive prices at 114 hospitals owned and operated by Tenet Healthcare. The suit claimed that Tenet took advantage of the uninsured and working poor who did not have the economic leverage to negotiate lower rates, while giving discounts to HMO's and other large payers.

# $100 MILLION
## TREMONT LITIGATION
The firm filed a class action on behalf of investors alleging the company and others grossly neglected fiduciary duties by turning capital over to Bernard Madoff Investment Securities.

# $98 MILLION
## PROGRAF ANTITRUST LITIGATION
Hagens Berman served as court-appointed co-lead class counsel representing a class of direct purchasers of Prograf. The antitrust lawsuit alleges that Astellas violated antitrust laws by filing a petition with the FDA as a means of delaying entry of a generic version of Prograf, a drug used to prevent organ rejection by kidney, liver, heart and lung transplant patients.

# $95 MILLION
## APPLECARE
This class action secured compensation for iPhone, iPad and iPod owners who bought AppleCare or AppleCare+ coverage. The suit accused Apple of using inferior, refurbished or used parts in device replacements, despite promising to provide consumers with a device "equivalent to new in performance and reliability," and Hagens Berman reached a settlement with the tech giant in April 2022, resolving these claims.

# $94 MILLION
## CELEBREX ANTITRUST LITIGATION
Hagens Berman litigated claims on behalf of a certified class of direct purchasers alleging Pfizer obtained reissuance of a follow-on patent by defrauding the Patent and Trademark Office. The case settled just weeks before trial.

# $92.5 MILLION
## BOEING SECURITIES LITIGATION
Boeing and Hagens Berman agreed to a settlement to this shareholder suit filed in November 1997 by Hagens Berman. The settlement, the then second largest awarded in the Northwest, affected tens of thousands of Boeing common stock shareholders.

# $90 MILLION
## GOOGLE PLAY STORE APP DEVELOPERS
The firm filed a class action on behalf of Android app developers for violating antitrust laws by allegedly illegally monopolizing markets for Android app distribution and in-app payment processing. A $90 million settlement has been preliminarily approved.



PRACTICE AREAS

PRACTICE AREAS

# Anti-Terrorism

With a long track record of upholding the rights of those who often go unheard, Hagens Berman fights for justice on behalf of victims of international terrorism. Our anti-terrorism legal team builds on our robust history to forge innovative cases, bringing action against those that support terrorism.

Hagens Berman has always believed in fighting for the rights of those who often go unheard – those who are victims to tragic circumstances beyond their control. With our guiding principles driving our efforts, the firm has expanded its practice areas to include anti-terrorism litigation.

It's no secret that some businesses and individuals have pled guilty to violating United States laws that prohibit financial transactions with terrorist organizations and foreign states that support terrorism. We believe that the law is one of the most powerful tools to combat terrorism, and our renowned team of litigators brings a fresh perspective to the fight for victims' rights in this complex arena.

Through a deep understanding of both U.S. and international anti-terrorism laws, Hagens Berman builds on its foundation to investigate acts of terrorism and forge ironclad cases against those responsible. Our goal is to help ensure that those at the mercy of the world's most egregious perpetrators of violence are represented with the integrity and determination they deserve.

The firm's practice area conducts our mission of building a safer world through novel applications of the law and steadfast dedication.

## CHIQUITA BANANAS

Hagens Berman represented American citizens who were victims of terrorism in Colombia. The victims were harmed by Colombian terrorists that Chiquita Brands International Inc. paid so that it could grow bananas in Colombia in regions the terrorists controlled. Chiquita is one of the world's largest producers and marketers of fruits and vegetables and admitted it paid Colombian terrorist organizations as part of a guilty plea to settle criminal charges brought by the U.S. Department of Justice. Because of its conduct in Colombia, Chiquita was placed on corporate probation and paid a $25 million fine.

Plaintiffs sued Chiquita under the U.S. Anti-Terrorism Act, which allows American victims of international terrorism to sue anyone responsible and to recover treble damages and attorney's fees. Claims were resolved in the U.S. District Court for the Southern District of Florida as part of the consolidated multi-district litigation to resolve claims related to Chiquita's payments to Colombian terrorist organizations.

## FARC ANTI-TERRORISM

Hagens Berman assisted the family of an American geologist who was kidnapped and murdered in Colombia by the FARC narco-terrorist organization. Hagens Berman sued the FARC and obtained a multimillion-dollar judgment on behalf of the family. Subsequently, it has successfully enforced the family's judgment against the assets of South American narco-traffickers that have been linked to the FARC's extensive drug trade.

PRACTICE AREAS

# Antitrust

Hagens Berman works to preserve fair trade and healthy marketplace competition by protecting consumers and businesses from price-fixing, market allocation agreements, monopolistic schemes and other trade restraints. The firm's lawyers have earned an enviable reputation as experts in this often confusing and combative area of commercial litigation in which we have recovered nearly $30 billion in settlements for our clients. Our attorneys have a deep understanding of legal and economic issues within the marketplace, allowing us to employ groundbreaking market theories that shed light on restrictive anti-competitive practices. Our cases have returned more than $320 billion across all practice areas.

Hagens Berman represents millions of class members in high-profile class-action lawsuits and takes on major antitrust litigation to improve market conditions for consumers, businesses and investors. We have represented plaintiffs in markets as diverse as college sports, app development, debit and credit card services, personal computer components, electric and gas power, airlines and internet services, and we have prevailed against some of the world's largest corporations. The firm has also taken on wage-fixing antitrust agreements in various industries including animation, food production and aerospace engineering.

The firm's antitrust cases span the reaches of anticompetitive behavior, impacting even the realm of college sports. In the Keller and O'Bannon cases, the firm represented college athletes against the NCAA and Electronic Arts Inc. claiming the companies illegally use college football and basketball players' names and likenesses in video games without permission or consent from the player. In those matters, the firm secured a total $60 million in settlements, and checks went out to about 15,000 players, some up to $7,600, with a median around $1,100.

Hagens Berman has also brought about significant changes already to the NCAA's policies and procedures regulating payments. In NCAA Grants-in-Aid Scholarships Litigation, the firm brought an antitrust class action against the NCAA on behalf of college athletes, claiming that the NCAA had violated the law when it kept the class from being able to receive compensation provided by schools or conferences for athletic services other than cash. Following a $208 million settlement in the damages portion of the case — an almost 100% recovery of single damages — the Supreme Court upheld the favorable opinion of the Ninth Circuit in a 9-0 ruling regarding injunctive relief. Justice Kavanaugh's opinion further underscored the massive win for plaintiffs and the ruling's ongoing effects: "The NCAA couches its arguments for not paying student athletes in innocuous labels. But the labels cannot disguise the reality: The NCAA's business model would be flatly illegal in almost any other industry in America," pushing for further scrutiny of the NCAA's regulations. After the ruling, the NCAA relaxed some of the name, image and likeness (NIL) restrictions and the market for NIL revenues exploded reaching almost $5 billion this year. Few antitrust decisions have been so transformative.

The firm continues its work litigating against the NCAA regarding name, image and likeness (NIL) rights. Currently Hagens Berman is co-lead counsel in *House v. NCAA*, which challenges current restrictions on athletes NIL rights and seeks damages for lost NIL opportunities. In House, plaintiffs seek a share of the golden goose, namely, NCAA and conference

broadcast and licensing revenues. So far, the firm has cleared two monumental hurdles in the lawsuit receiving class certification status for both the injunctive and damages portions of the case, for classes representing more than 184,000 college athletes.

The firm has also generated substantial recoveries on behalf of health plans and consumers in antitrust cases involving pharmaceutical companies abusing patent rights to block generic drugs from coming to market. Hagens Berman's settlements accounted for 35% of total U.S. antitrust settlements that reached final approval in 2022, including the two largest antitrust recoveries to receive final approval, In re Glumetza Antitrust Litigation ($453.85 million settlement) and In re Ranbaxy Generic Drug Application Antitrust Litigation ($340 million settlement). Hagens Berman has served as lead or co-lead counsel in landmark antitrust litigation in many matters, including Paxil Direct Purchaser Litigation ($100 million), Relafen Antitrust Litigation ($75 million), Tricor Indirect Purchaser Antitrust Litigation ($65.7 million), and Augmentin Antitrust Litigation ($29 million).

Representative antitrust successes include:

### VISA CHECK/MASTERMONEY ANTITRUST LITIGATION

Hagens Berman was co-lead counsel in this landmark antitrust case involving Visa and Mastercard. The case alleged the credit card giants engaged in anticompetitive practices to monopolize the debit card services market and impose artificially inflated interchange fees on merchants. The court valued the settlement between $25 billion and $87 billion, making it the largest antitrust settlement in U.S. history at the time.

RESULT: $3.05 billion settlement and injunctive relief valued at more than $23 billion

### APPLE E-BOOKS LITIGATION

With state attorneys general, the firm served as lead counsel to secure a settlement with publishing companies that conspired with Apple to fix e-book prices. The firm then took on Apple for its part in the price-fixing conspiracy. In the final stage, the U.S. Supreme Court denied appeal from Apple, bringing the consumer payback amount to more than twice the amount of losses suffered by the class of e-book purchasers. This represents one of the most successful recoveries in any antitrust lawsuit in the country.

RESULT: $568 million in total settlements

### LG PHILIPS AND TOSHIBA LCD ANTITRUST LITIGATION

Hagens Berman filed a class action against more than 20 manufacturers of TFT LCD products, including LG Philips and Toshiba, claiming the companies engaged in a conspiracy to fix, raise, maintain and stabilize the price of electronic products and devices. After years of representing consumers in multi-district litigation, the case against Toshiba went to trial. In 2012, Toshiba was found guilty of price-fixing and settled.

RESULT: $470 million in total settlements

### DYNAMIC RANDOM ACCESS MEMORY (DRAM) ANTITRUST LITIGATION

The suit claimed DRAM (Dynamic Random Access Memory) manufacturers secretly agreed to reduce the supply of DRAM, a necessary component in a wide variety of electronics, which artificially raised prices. The class included equipment manufacturers, franchise distributors and purchasers.

RESULT: $406 million settlement

### OPTICAL DISK DRIVES ANTITRUST LITIGATION

Hagens Berman fought on behalf of consumers in a lawsuit filed against Philips, Pioneer and others for artificially inflating the price of ODDs for consumers.

RESULT: $205 million in total settlements

## BROILER CHICKEN ANTITRUST LITIGATION

Hagens Berman serves as co-lead counsel in this massive antitrust class action asserting that the nation's largest broiler chicken producers – Tyson, Pilgrim's Pride, Perdue and a host of others – conspired to fix the price of chicken for consumers by up to 50 percent since 2009. Settlements will offer compensation to millions of American consumers who have unknowingly overpaid for chicken products for years.

**RESULT:** $181 million in total settlements. The firm continues to litigate against remaining defendants

## ANIMATION WORKERS ANTITRUST LITIGATION

Hagens Berman served as co-lead counsel for a nationwide class of approximately 10,000 animators and other artistic workers in an antitrust class-action case filed against Pixar, DreamWorks, The Walt Disney Company, Sony, Blue Sky Studios and others for allegedly conspiring to restrain competition to suppress compensation. The settlement resulted in a payment of more than $13,000 per class member.

**RESULT:** $169 million settlement

## LITHIUM-ION BATTERIES ANTITRUST LITIGATION

Hagens Berman filed a class-action lawsuit against some of the largest electronics manufacturers for illegally fixing the price of lithium-ion batteries, pushing costs higher for consumers.

**RESULT:** $113 million in total settlements

## APPLE IOS APP DEVELOPERS

The firm achieved a $100 million settlement with Apple on behalf of US iOS app developers and developers of in-app products sold on Apple's App Store following the filing of an antitrust class-action lawsuit. The suit accused Apple monopolized U.S. distribution for iOS apps and in-app digital products, resulting in commission overcharges to developers. The settlement brings important changes to App Store policies and practices, and U.S. iOS developers with less than $1 million in annual proceeds from App Store sales can receive hundreds to tens of thousands of dollars in compensation.

**RESULT:** $100 million settlement

## GOOGLE PLAY STORE APP DEVELOPERS

The firm achieved a $90 million settlement with Google on behalf of roughly 43,000 US Android app developers and developers of in-app products sold on Google's Play Store following the filing of an antitrust class-action lawsuit. The firm filed the class action against Google for violations of antitrust laws by illegally monopolizing markets for Android app distribution and in-app payment processing.

**RESULT:** $90 million settlement

## PORK ANTITRUST LITIGATION

In this antitrust class action, the firm's investigation revealed that since 2014, pork producers such as Tyson, Hormel and others colluded to knowingly reduce pork production to artificially inflate prices. The pork producers engaged in a conspiracy that has cost American consumers millions of dollars over the years, and so far Hagens Berman's antitrust team have achieved multiple settlements with defendants and continues to litigate claims against those remaining.

**RESULT:** $95 million in settlements

## GENERIC PHARMACEUTICAL PRICING ANTITRUST LITIGATION

Hagens Berman filed multiple lawsuits against numerous generic pharmaceutical companies for conspiring to increase and set prices on inexpensive, commonly used generic drugs. In 2022, U.S. District Judge Cynthia M. Rufe preliminarily approved $86 million in settlements with Sun Pharmaceutical Industries Inc., Taro Pharmaceuticals USA Inc. and

Breckenridge Pharmaceutical Inc. for direct purchasers and indirect resellers to settle price-fixing allegations. The U.S. Department of Justice has since opened a criminal probe into the matter following Hagens Berman's case.

**RESULT:** $86 million settlement

### RELAFEN ANTITRUST LITIGATION

In 2006, Judge William Young issued preliminary approval of a proposed settlement between GlaxoSmithKline and a class of consumers and third-party payors who purchased the drug Relafen or its generic alternatives. Under the terms of the settlement, the defendants paid damages of $75 million to class members. Of the total settlement amount, $25 million was allocated to consumers and $50 million was used to pay the claims of insurers and other third-party payors.

**RESULT:** $75 million settlement

### DAIRY PRICE-FIXING LITIGATION

The firm filed a class-action suit against several large players in the dairy industry, including the National Milk Producers Federation, Dairy Farmers of America, Land O'Lakes, Inc., Agri-Mark, Inc. and Cooperatives Working Together that together produce nearly 70 percent of milk consumed in the U.S. The suit alleged the groups conspired to fix U.S. milk prices through an organized scheme to limit production, involving the needless, premature slaughtering of 500,000 cows.

**RESULT:** $52 million settlement

### PANASONIC RESISTORS ANTITRUST LITIGATION

Hagens Berman was co-lead counsel, representing direct purchasers of linear resistors, a device in electronics used to limit electric current, against an alleged cartel of manufacturers who conspired to limit linear resistor price competition for nearly a decade.

**RESULT:** $50.25 million settlement

### TOYS "R" US BABY PRODUCTS ANTITRUST LITIGATION

The complaint claimed Toys "R" Us and several baby product manufacturers violated provisions of the Sherman Antitrust Act by conspiring to inflate prices of high-end baby products, including car seats, strollers, high chairs, crib bedding, breast pumps and infant carriers. The lawsuit asked the court to end what it claims are anti-competitive activities and sought damages caused by the company's actions.

**RESULT:** $35.5 million settlement

### EA MADDEN NFL ANTITRUST LITIGATION

The firm represented a class of consumers against Electronic Arts (EA) alleging it violated antitrust and consumer laws by inflating the price of EA-published videogames. The lawsuit alleged EA established agreements with the National Football League, The NFL Players Union, Arena Football League and the National Collegiate Athletic Association that drove competition out of the market and prevented new competitors from entering.

**RESULT:** $27 million settlement

### HOTEL ROOM OVERPRICING

The nation's largest hotel chains settled a class-action lawsuit brought by consumers of hotel room reservations booked online. Consumers represented by Hagens Berman alleged hotel chains agreed to restrain competition for paid search advertising for hotel rooms associated with defendants' brand names, depriving consumers free, competitive information, and raising the price of hotel rooms booked online.

**RESULT:** The parties reached a confidential settlement.

### REAL ESTATE COMMISSIONS ANTITRUST LITIGATION

The firm represents home sellers accusing the National Association of Realtors (NAR) and the largest real estate brokerage firms in the United States of conspiring to artificially inflate commissions associated with home sales – in part by implementing rules that require home sellers to pay commission to the agent representing the buyer. As of May 2024, the firm has reached $980.9 million in settlements with all defendants in *Moehrl v NAR* and *Burnett v NAR*, and with some of the defendants in *Gibson v NAR*. The litigation is pending against remaining defendants in *Gibson v NAR*. The courts in *Moehrl* and *Burnett* certified damages and injunctive relief classes of sellers who sold their home through a Multiple Listing Service (MLS) during the relevant time periods, as well as current and future owners of residential real estate in affected jurisdictions who are currently listing or will list homes on an MLS. Class settlements encompass sellers who listed their homes on an MLS anywhere in the United States.  In an order related to expert discovery, the court said that the buyer-broker policies challenged in the lawsuit facilitate "keeping buyers in the dark and severely restricting negotiations over buyer-broker commissions."

**RESULT:** The firm has reached settlements totaling over $980.9 million. The court has granted final approval of the settlements with Anywhere Real Estate ($83.5 mil lion), Keller Williams Realty Inc. ($70 million), and RE/MAX ($55 million). The Court has further granted preliminary approval of settlements with NAR ($418 million), Compass ($57.5 million, The Real Brokerage Inc. ($9.25 million), Douglas Elliman ($7.75 million), @properties ($6.5 million), and Realty ONE ($5 million). The case is pending against remaining defendants. The New York Times reported that Steve Brobeck, Ph.D., who served as the executive director of Consumer Federation of America for nearly four decades, estimates that the $100 billion spent per year on residential real estate commissions will probably decline by between $20 billion and $50 billion, if the settlement with NAR is approved by the court.

PRACTICE AREAS

# Automotive – Defect, Fraud & Products Liability

In litigating cases, we strive to make an impact for large classes of consumers, especially those who fall victim to the gross negligence and lack of oversight of one of the nation's largest industries: auto manufacturing. Hagens Berman's automotive litigation team has repeatedly been named a Practice Group of the Year by Law360, highlighting its "eye toward landmark matters and general excellence" in this area of law.

The federal court overseeing the massive multi-district litigation against Toyota appointed the firm to co-lead one of the largest consolidations of class-action cases in U.S. history. The litigation combined more than 300 state and federal suits concerning acceleration defects tainting Toyota vehicles. Hagens Berman was selected from more than 70 law firms applying for the role. Since then, the firm's automotive practice area has grown at an unrivaled pace, pioneering new investigations into emissions-cheating, defects, false marketing and safety hazards affecting the wellbeing of millions of drivers.

Hagens Berman's work fighting corporate wrongdoing in the automotive industry has repeatedly earned it a spot in the National Law Journal's list of Elite Trial Lawyers, and the firm's auto team who worked on *Toyota* were also named finalists for Public Justice's Trial Lawyer of the Year award.

Our firm has been a leader in this area of law for nearly a decade, and our settled cases include the following matters related to public safety, defect mitigation and more.

## TOYOTA SUDDEN, UNINTENDED ACCELERATION LITIGATION

Steve Berman served as co-lead counsel for the economic loss class in this lawsuit filed on behalf of Toyota owners alleging a defect caused vehicles to undergo sudden, unintended acceleration. In addition to safety risks, consumers suffered economic loss from decreased value of Toyota vehicles following media coverage of the alleged defect.

**RESULT:** $1.6 billion settlement, which was the largest automotive settlement in history at the time, surpassed only by the firm's future settlements

## HYUNDAI/KIA THETA II GDI ENGINE FIRE HAZARD LITIGATION I

As co-lead counsel against Hyundai and Kia, Hagens Berman helped secure a $1.3 billion settlement on behalf of owners of cars affected by an engine defect causing spontaneous fires. The compensation includes lifetime warranty protection, software installation aimed to detect and prevent the engine defect, reimbursements for repair-related costs and lost value due to engine failures or fires, and payment for repair delays.

**RESULT:** $1.3 billion settlement

## HYUNDAI/KIA ENGINE FIRE HAZARD LITIGATION II

Following the firm's $1.3 billion settlement on behalf of owners of cars affected by an engine defect causing spontaneous fires in millions of Hyundai and Kia cars, Hagens Berman, which served as co-lead counsel in this case, also secured an additional settlement concerning engines not included in the first settlement. The newest settlement brings relief to owners of about 2.1 million vehicles with Gamma GDI and Nu GDI engines as well as Theta II MPI engines. "The

settlement is comprehensive in compensating class members for the harms suffered and providing protection against future harms," Judge Staton said, noting that the deal is substantially similar to the one finalized in May 2021 in *In re Hyundai and Kia Engine Litigation*, which was valued at up to $1.3 billion.

**RESULT:** Settlement comparable to prior $1.3 billion in *In re Hyundai and Kia Engine Litigation*

### HYUNDAI/KIA HYDRAULIC ELECTRONIC CONTROL UNIT (HECU) FIRE HAZARD LITIGATION

Hagens Berman filed this class-action lawsuit against automakers Hyundai and Kia on behalf of owners and lessees of approximately three million U.S. vehicles regarding a defect affecting the vehicles' hydraulic and electronic control units. The defect, which the lawsuit alleges Hyundai and Kia were aware of upon selling the affected vehicles, can cause electrical short-circuits and engine fires. Conservatively, plaintiffs' expert values the settlement in the range of $326 million to $652 million, depending on relief claimed by affected owners and lessors.

**RESULT:** Settlement valued at more than $300 million

### HYUNDAI KIA FUEL ECONOMY LITIGATION

Hagens Berman sued Hyundai and Kia on behalf of owners after the car manufacturers overstated the MPG fuel economy ratings on 900,000 of their cars. The suit seeks to give owners the ability to recover a lump-sum award for the lifetime extra fuel costs, rather than applying every year for that year's losses.

**RESULT:** $255 million settlement. Lump-sum payment plan worth $400 million on a cash basis, and worth even more if owners opt for store credit (150 percent of cash award) or new car discount (200 percent of cash award) options.

### TOYOTA, LEXUS DENSO FUEL PUMP LITIGATION

The firm filed this class action regarding a defect in the DENSO fuel pump installed in the affected Toyota and Lexus vehicles which can leave vehicle owners at risk of spontaneous vehicle shutdown, engine stall and other safety risks that increase the likelihood of a crash or injury.

**RESULT:** Settlement valued between $212 million and $288 million

### HYUNDAI KIA CAR THEFT DEFECT LITIGATION

Serving as co-lead counsel, the firm achieved swift relief in this class action stemming from Hyundai and Kia's failure to equip nearly nine million 2011-2022 models with an immobilizer, a common antitheft device in modern cars which prevents most vehicles from being started unless a code is transmitted from the vehicle's smart key. The lack of immobilizer in affected vehicles spawned viral "Kia Challenge" TikTok videos demonstrating simple measures "Kia Boys" take to steal affected Hyundai and Kia vehicles using only a common USB charging cord or similar metal object to start the engine, allowing thieves to steal them in less than 90 seconds.

**RESULT:** Settlement-in-principle valued at more than $200 million

### GENERAL MOTORS IGNITION SWITCH LITIGATION

The firm served as co-lead counsel in a high-profile case on behalf of millions of owners of recalled GM vehicles affected by a safety defect linked to more than 120 fatalities. The lawsuit alleged GM did not take appropriate remedial measures, despite having prior knowledge of the defect.

**RESULT:** $120 million settlement

## FIAT CHRYSLER (FCA) LOW OIL PRESSURE SHUT OFF LITIGATION

Hagens Berman represented owners of Chrysler, Dodge, Fiat, Jeep and Ram vehicles affected by a defect causing overconsumption of oil and spontaneous vehicle shut off during low oil pressure. In 2022 a federal judge approved a settlement for owners of vehicles with 2.4L TigerShark MultiAir II engines.

**RESULT:** $108 million settlement

## HONDA INFOTAINMENT SYSTEM LITIGATION

In 2019, owners of Honda vehicles filed a class-action lawsuit against the automaker for a defect affecting the vehicles' infotainment system which was prone to failing to boot, freezing during use and suffering general malfunctions and glitches. Owners reported the issues on vehicles with as few as 580 miles. The U.S. district judge called the settlement for vehicle owners a "significant effort" in light of the difficulties and complexities of the case.

**RESULT:** $33 million settlement

## FORD MYFORD TOUCH LITIGATION

Hagens Berman served as co-lead counsel on behalf of owners of Ford vehicles equipped with MyFord Touch, an in-car communication and entertainment package, who claim that the flawed system put drivers at risk of an accident while causing economic hardship for owners. The complaint cites internal Ford documents that show that 500 of every 1,000 vehicles have issues involving MyFord Touch due to software bugs, and failures of the software process and architecture. Owners report that Ford has been unable to fix the problem, even after repeated visits.

**RESULT:** $17 million settlement

## ACURA RDX INFOTAINMENT SYSTEM LITIGATION

In this class-action lawsuit filed against American Honda Motor Co. Inc., owners of 2019 and 2020 Acura RDX vehicles accused the automaker of knowingly selling the vehicles with defective infotainment systems, posing a serious safety risk to drivers. The alleged defect causes many of the vehicles' features associated with the infotainment system to malfunction, including the navigation system, audio system, as well as safety features like the backup camera.

**RESULT:** $10.5 million settlement

## TESLA AUTOPILOT AP2 ROLLOUT DELAY LITIGATION

The firm filed a lawsuit against Tesla for knowingly selling nearly 50,000 cars with nonfunctional Enhanced Autopilot AP2.0 software that did not meet Tesla's promises, including inoperative Standard Safety Features on affected models sold in Q4 2016 and Q1 2017.

**RESULT:** $5.4 million settlement

## NISSAN QUEST ACCELERATOR LITIGATION

Hagens Berman represented Nissan Quest minivan owners alleging their vehicles developed deposits in a part of the engine, causing drivers to apply increased pressure to push the accelerator down.

**RESULT:** Settlement providing reimbursement for cleanings or replacements and applicable warranty coverage

## PENDING LITIGATION AGAINST AUTOMAKERS

The firm has filed several pending cases against major automakers, including the following class actions promoting consumers' rights:

## FCA CHRYSLER PACIFICA HYBRID MINIVAN ENGINE SHUTDOWN LITIGATION

Over 67,000 Chrysler plug-in hybrid electric vehicles are at risk for spontaneous power loss while the vehicle is in motion due to a serious wiring defect in the transmission of the gasoline-driven portion of the powertrain. The automaker's response to this potentially life-threatening issue falls short, leaving Chrysler customers with little recourse. According to a recall report filed with the National Highway Traffic Safety Administration in January 2023, 100% of 2017-2023 Chrysler Pacifica PHEVs are at risk for sudden engine shutoff due to this defect. Loss of motive power is total and comes without warning, giving drivers little or no opportunity to maneuver vehicles to safety, and can occur while moving at highway speeds.

## FCA CHRYSLER PACIFICA HYBRID MINIVAN FIRE HAZARD LITIGATION

In this automotive class-action lawsuit, the firm serves as co-lead counsel representing owners of 2017 and 2018 Chrysler Pacifica plug-in hybrid electric minivans. Twelve fires have been reported in Chrysler Pacifica hybrid minivans. All of the vehicles that caught fire were parked and turned off; eight of the 12 vehicles were plugged in and charging. In the recall report filed with the National Highway Traffic Safety Administration, Chrysler said the "root cause is unknown." Hagens Berman filed a consolidated master complaint Nov. 4, 2022. The complaint highlights Fiat Chrysler's proposed "fix" as a "Hobson's choice foisted on consumers" that fails to solve the issue. Even after having the recall performed, at least two Hybrid Pacifica vehicles have exploded into flames in owners' garages and driveways. In December 2023, the federal judge overseeing the consolidated lawsuit denied Fiat Chrysler's motion to dismiss plaintiffs' claims.

## FCA DODGE RAM 1500 & 1500 CLASSIC ECODIESEL TRUCKS EGR COOLER FIRE HAZARD LITIGATION

Hagens Berman represents owners of certain Dodge Ram 1500 trucks at risk for vehicle fire. Affected trucks have been built with defective EGR coolers that can crack due to thermal fatigue. This can allow coolant to leak into the running engine, which can result in combustion and a vehicle fire.

## FCA MONOSTABLE GEARSHIFT LITIGATION

Over 811,000 Dodge Chargers, Chrysler 300s and Jeep Grand Cherokees were equipped with defective gear shifters that could cause the vehicles to roll away after the driver attempted to place the vehicle in park. The case went to trial, resulting in a mixed verdict in which the jury found the vehicles had a design defect under Utah law. Hagens Berman continues to pursue claims for damages on behalf of a class of owners/lessees from California and New York.

## FORD, GM, FCA, NISSAN CP4 HIGH-INJECTION FUEL PUMP DEFECT LITIGATION

Hagens Berman has filed multiple class-action lawsuits against the "Big Three" — Ford, GM, and FCA — in addition to Nissan on behalf of diesel truck owners due to a defective high-pressure fuel injection pump in affected vehicles. The defective part generates metallic shavings and can lead to catastrophic failure of the engine. The complaints allege defendants routinely denied repair under warranty, even though the repair costs at least $7,000, and in some cases exceeds $10,000. After Hagens Berman filed suit against FCA with respect to the 3.0-liter engine cars and trucks, FCA issued a safety recall for those vehicles. In March 2023, Hon. Bernard A. Friedman allowed the majority of claims against Ford to continue, and in that same month, Hon. Terrence Berg certified seven state-specific classes on behalf of GM truck owners. In June 2024, the firm filed a motion for preliminary approval of a settlement reached with GM.

## FORD ESCAPE, MAVERICK AND LINCOLN CORSAIR HYBRID FIRES LITIGATION

Ford has recalled more than 100,000 of its Escape, Maverick and Lincoln Corsair hybrid models manufactured since 2020 for a risk of spontaneously catching fire due to a safety defect. The issue has been traced to leaking fluid from the vehicles' engine block or oil pan. In response, rather than fix the faulty engine blocks and oil pans, Ford has issued "fix" instructions to its dealers that ask them to remove blinds from the grill shutter and drill holes in the floor of the engine compartment, potentially causing flammable fluids to drip into the roadway and owners' garages and driveways. The firm's class-action lawsuit against Ford was filed in August of 2022.

## FORD MUSTANG MACH-E SHUTDOWN DEFECT LITIGATION

Owners of 2021-2022 Ford Mustang Mach-E vehicles filed a class-action lawsuit against the automaker in relation to a defective high voltage main battery contactor that can reportedly suddenly and unexpectedly cause the vehicle to lose power, disabling the engine and key safety features. The defect presents a high risk of crash, injury and death. Ford's remedies have so far been unsuccessful and may be increasing charging times and decreasing the engine power for owners.

## HONDA CIVIC ELECTRONIC POWER STEERING DEFECT LITIGATION

The firm filed a class-action lawsuit accusing American Honda Motor Company of selling 2022-2023 Civics which it knew were equipped with dangerously faulty electronic power steering (EPS) systems. The EPS system failure occurs without warning and under various driving conditions, causing the vehicles to lose steering control at high speeds. The National Highway Traffic Safety Administration opened a preliminary investigation after receiving 145 reports of "momentary increase in steering effort," described as "sticky steering," which could result in the inability to avoid a road hazard.

## HYUNDAI, KIA & GENESIS EV BATTERY CHARGE DEFECT

According to the suit, owners of Hyundai Ioniq 5s, Hyundai Ioniq 6s, Genesis GV60s and Kia EV6s experience vehicle charging ports overheating in as little as 30 minutes, causing charging sessions to repeatedly fail. The plaintiffs say this can leave them with unexpectedly empty vehicle batteries, and Hyundai's proposed fix for the problem is inadequate. The proposed class brings claims that the automakers violated the Computer Fraud and Abuse Act and various state consumer protection laws.

## TESLA MODEL S & MODEL X SOFTWARE BATTERY DRAIN DEFECT LITIGATION

Hagens Berman has filed a lawsuit on behalf of owners and lessors of Tesla Model S and Model X vehicles, alleging that Tesla's automatic software updates are responsible for a drastic drop in battery performance and driving range in affected vehicles. In some cases, attorneys allege, the software update renders batteries fully inoperable, and drivers are told they must purchase a new $15,000 battery.

## VW ATLAS WIRING HARNESS DEFECT LITIGATION

Hagens Berman represents owners and lessors of more than 222,000 defective Volkswagen Atlas vehicles affected by a dangerous manufacturing defect in the door wiring harness. The defect can cause vehicles' systems to malfunction, affecting the functionality of airbags, brakes and more. This defect can place drivers, passengers and other traffic or pedestrians in immediate safety risk and danger of crashes.

PRACTICE AREAS

# Automotive – Emissions Cheating

Having filed the first Dieselgate case in the country, Hagens Berman played a lead role in the record-breaking Volkswagen diesel emissions litigation. But Hagens Berman knew the story didn't end there. Since the Dieselgate scandal, the firm has uniquely dedicated resources to uncovering cheating devices used by other automakers. We have become a trailblazer in this highly specialized realm, outpacing federal agencies in unmasking fraud in emissions reporting.

When news broke in 2015 of Volkswagen's massive diesel emissions-cheating scandal, Hagens Berman was the first law firm in the nation to file suit against the automaker for its egregious fraud, going on to represent thousands of owners in litigation and take a leading role on the Plaintiffs' Steering Committee that would finalize a $14.7 billion, record-breaking settlement for affected owners. Since this case emerged, Hagens Berman has remained on the forefront of emissions litigation, relying on our legal team's steadfast and intensive investigative skills to unearth many other emissions-cheating schemes perpetrated by BMW, General Motors, Fiat Chrysler, Mercedes and other automakers, staying one step ahead of government regulators in our pursuit of car manufacturers that have violated emissions standards and regulations, as well as consumer confidence.

Hagens Berman's managing partner, Steve Berman, has dedicated the firm's resources to upholding the rights of consumers and the environment. The firm is uniquely dedicated to this cause and is the only firm that has purchased an emissions testing machine to determine if other diesel car manufacturers install cheating devices. The firm brings new cases based on its own research, time and testing.

### VOLKSWAGEN DIESEL EMISSIONS LITIGATION

Hagens Berman was the first law firm in the nation to file a lawsuit against Volkswagen for its emissions fraud, seeking swift remedies for consumers affected by its fraud and violation of state regulations. The firm was named to the Plaintiffs' Steering Committee leading the national fight against VW, Porsche and Audi on behalf of owners and lessors of affected vehicles and also served as part of the Settlement Negotiating team in this record-breaking achievement.

**RESULT:** $14.7 billion settlement, the largest automotive settlement in history

### VOLKSWAGEN FRANCHISE DEALERS EMISSIONS LITIGATION

Hagens Berman served as lead counsel in a first-of-its-kind lawsuit brought by a franchise dealer. Three family-owned Volkswagen dealers filed a class action against VW for intentionally defrauding dealers by installing so-called "defeat devices" in its diesel cars that cause them direct harm. The suit states VW separately carried out a systematic, illegal pricing and allocation scheme that favored some dealers over others and illegally channeled financing business to VW affiliate, Volkswagen Credit Inc. The settlement received nearly unanimous approval, with 99 percent participation in the settlement.

**RESULT:** $1.67 billion settlement

## MERCEDES BLUETEC EMISSIONS LITIGATION

Hagens Berman was appointed co-lead counsel in this class action representing thousands of vehicle owners against Mercedes concerning emissions-cheating in its BlueTEC diesel vehicles. The lawsuit states Mercedes told vehicle owners and lessees their diesel cars were "the world's cleanest and most advanced diesel," when in fact testing indicated a systemic failure to meet emissions standards. Low temperature testing at highway speeds for example, produced emissions that were 8.1 to 19.7 times the highway emissions standard; at variable speeds, testing produced emissions as high as 30.8 times the standard, according to the firm's independent testing.

Since the case settled, Hagens Berman has taken an advisory role in the emissions-cheating litigation against Mercedes' parent company, Daimler, filed in Australia. The firm looks to build upon its existing win against Mercedes for emissions cheating in its vehicles sold in the U.S. and support Australians who were similarly deceived.

**RESULT:** $700 million settlement

## FIAT CHRYSLER ECODIESEL EMISSIONS LITIGATION

The firm led charges against Fiat Chrysler that it sold hundreds of thousands of EcoDiesel-branded vehicles that release illegally high levels of NOx emissions, despite explicitly selling these "Eco" diesels to consumers who wanted a more environmentally friendly vehicle. Hagens Berman was the first firm in the nation to uncover this scheme and file against Fiat Chrysler on behalf of owners of affected Dodge RAM 1500 and Jeep Grand Cherokee EcoDiesel vehicles. Following the firm's groundbreaking suit, the EPA took notice, filing formal accusations against Fiat Chrysler.

**RESULT:** Settlement valued at $307 million, dependent upon claims rate

## PORSCHE EMISSIONS LITIGATION

This lawsuit claimed fuel economy inaccuracies in half a million 2005 to 2020 Volkswagen and Porsche gasoline models, and in 2022, a federal judge granted preliminary approval of an $80 million settlement agreement regarding emissions-cheating claims. Under the settlement, consumers in the most basic bracket of the class can receive payments from $250 to $1,109 per vehicle, and those who purchased higher-performance vehicles can receive an additional $250 in compensation, with other payments of $200 per vehicle available to other eligible class members.

**RESULT:** $80 million settlement

## AUDI EMISSIONS LITIGATION

In 2016, Hagens Berman unearthed additional emissions-cheating by Audi, affecting its gasoline 3.0-liter vehicles. The firm's investigation revealed a newly discovered defeat device installed in gasoline engines which changed how the transmission operated when testing was detected to lower CO2 emissions, but otherwise allowed excessive CO2 emissions in normal, on-road driving. The firm was appointed lead counsel.

**RESULT:** The lawsuit was folded into the Volkswagen Dieselgate multidistrict litigation. The settlement benefited more than 88,000 vehicle owners and resulted in vehicle buybacks valued at more than $30,000 for some class members.

### PENDING LITIGATION AGAINST AUTOMAKERS

The firm is currently litigating many pending cases against major automakers regarding emissions, including the following:

## CHEVY CRUZE DIESEL EMISSIONS LITIGATION

Hagens Berman filed a class-action lawsuit against Chevrolet (a division of General Motors) and Robert Bosch, LLC for installing emissions-cheating software in Cruze Clean Turbo Diesel cars, forcing consumers to pay high premiums for vehicles that pollute at illegal levels. While Chevy marketed these cars as a clean option, testing by an expert retained by Hagens Berman revealed the cars' emissions are often up to 36 times the federal standard. In a recent ruling, U.S. District Judge Thomas L. Ludington upheld the bulk of the owners' claims, and admitted the extensive emissions testing, software analysis, marketing and damages testimony offered by experts retained by Hagens Berman on behalf of Cruze

owners. In 2022, Judge Ludington excluded one of GM's experts and ruled on GM's and Bosch's motions for summary judgment, allowing the bulk of plaintiffs' claims to proceed.

## BMW X5 & 335D EMISSIONS LITIGATION

Based on BMW's marketing, consumers who purchased its X5 Diesel and 335d vehicles assumed they were making a choice that was better for the environment than other options. BMW told the public that the vehicles "met emissions standards in all 50 states," that "BMW Efficient Dynamics" meant "Less emissions," that its engines "protect the environment every day," were "environmentally friendly," and turned nitric oxides (harmful pollutants in diesel exhaust) "into environmentally compatible nitrogen and water vapor." In reality, the 2009-2013 BMW X5 diesel and 2009-2011 335d vehicles emit harmful pollutants and emissions many times above legal emissions standards. A federal judge granted preliminary approval to a settlement valued at $6 million and preliminarily appointed Hagens Berman co-class counsel for the settlement class.

## DODGE RAM 2500/3500 DIESEL EMISSIONS LITIGATION

According to the firm's investigation, Dodge has sold hundreds of thousands of Dodge RAM 2500 and 3500 trucks equipped with Cummins diesel engines that release illegally high levels of NOx emissions because fuel is diverted and burned to clear out the soot in the emission system. The firm is leading a national class action against Fiat Chrysler and Cummins (the engine manufacturer) for knowingly inducing consumers to pay premium prices for vehicles that exceed emissions standards, and lead to decreased fuel economy and higher costs because of the wasted fuel. Hagens Berman has also determined that there is a defeat device in these vehicles.

## GENERAL MOTORS DURAMAX EMISSIONS LITIGATION

Hagens Berman recently pioneered another instance of diesel emissions fraud. The firm's independent testing revealed that GM had installed an emissions-masking defeat device in its Duramax trucks, including Chevy Silverado and GMC Sierra models, in a cover-up akin to Volkswagen's Dieselgate concealment. In real world conditions the trucks frequently emit 1.6 – 2.5 times the legal limit of deadly NOx pollutants and have been observed emitting almost 50 times the federal standard. Emissions cheating devices are installed in an estimated 705,000 affected vehicles.

PRACTICE AREAS

# Civil and Human Rights

Hagens Berman has represented individuals and organizations in difficult civil rights challenges that have arisen in the past two decades. In doing so, we have managed cases presenting complex legal and factual issues that are often related to highly charged political and historical events. Our clients have included such diverse communities as World War II prisoners of war, conscripted civilians and entire villages.

In this cutting-edge practice area, the firm vigilantly keeps abreast of new state and national legislation and case-law developments. We achieve positive precedents by zealously prosecuting in our clients' interests. Some examples of our work in this area include:

## WORLD TRADE ORGANIZATION PROTESTS

During the 1999 World Trade Organization protests in Seattle, tens of thousands of Seattle citizens became targets after Seattle officials banned all forms of peaceful protest. Seattle police attacked anyone found in the designated "no protest" zones with rubber bullets and tear gas. Hundreds of peaceful protesters were arrested and incarcerated without probable cause for up to four days. The firm won a jury trial on liability and ultimately secured a settlement from Seattle officials after filing a class action alleging violations of the First and Fourth Amendments.

## HUNGARIAN GOLD TRAIN

Following the firm's representation of former forced and enslaved laborers for German companies in the Nazi Slave Labor Litigation, Hagens Berman led a team of lawyers against the U.S. on behalf of Hungarian Holocaust survivors in the Hungarian Gold Train case. The suit claimed that, during the waning days of World War II, the Hungarian Nazi government loaded plaintiffs' valuable personal property onto a train, which the U.S. Army later seized, never returning the property to its owners and heirs.

## DOLE BANANAS LITIGATION

Hagens Berman filed suit against The Dole Food Company, alleging that it misled consumers about its environmental record. The complaint alleged that Dole purchased bananas from a grower in Guatemala that caused severe environmental damage and health risks to local residents. Dole ultimately agreed to take action to improve environmental conditions, collaborating with a non-profit group on a water filtration project for local communities.

PRACTICE AREAS

# Consumer Protection – General Class Litigation

Hagens Berman is a leader in protecting consumers, representing millions in large-scale cases that challenge unfair, deceptive and fraudulent practices.

We realize that consumers suffer the brunt of corporate wrongdoing and have little power to hold companies responsible or to change those tactics. We believe that when backed by a tenacious spirit and determination, class action cases have the ability to serve as a powerful line of defense in consumer protection.

Hagens Berman pursues class litigation on behalf of clients to confront fraudulent practices that consumers alone cannot effectively dispute. We make consumers' concerns a priority, collecting consumer complaints against suspected companies and exploring all avenues for prosecution.

Hagens Berman's legacy of protecting consumer rights reflects the wide spectrum of scams that occur in the marketplace. The cases that we have led have challenged a variety of practices such as:

- False, deceptive advertising of consumer products and services
- False billing and over-charging by credit card companies, banks, telecommunications providers, power companies, hospitals, insurance plans, shipping companies, airlines and Internet companies
- Deceptive practices in selling insurance and financial products and services such as life insurance and annuities
- Predatory and other unfair lending practices, and fraudulent activities related to home purchases

A few of our notable settlements include:

### T-MOBILE DATA BREACH LITIGATION (2021)

Hagens Berman served a court-appointed position on the Executive Committee in this consumer class action against T-Mobile for a data breach affecting 7.8 million subscribers, as well as 40 million people who had applied for credit with T-Mobile. T-Mobile also reported that approximately 850,000 active T-Mobile prepaid customers names, phone numbers and PIN numbers were exposed, as well as up to 52,000 names of customers related to current Metro by T-Mobile accounts.

**RESULT:** $350 million settlement pending preliminary approval

### BANK OF AMERICA COUNTRYWIDE APPRAISAL RICO LITIGATION

Hagens Berman filed a nationwide class-action lawsuit against Bank of America, Countrywide Financial and appraisal firm, LandSafe Inc. on behalf of a class of home buyers alleging defendants carried out a series of phony appraisals in an attempt to secure more loans.

**RESULT:** $250 million settlement

HAGENS BERMAN SOBOL SHAPIRO LLP

## STERICYCLE CONTRACT LITIGATION

The firm served as court-appointed lead counsel in a class-action lawsuit against Stericycle alleging that the company violated contracts and defrauded them by hundreds of millions of dollars through an automatic price-increasing scheme. In February of 2017, a federal judge certified a nationwide consumer class. The class had more than 246,000 class members, with damages estimated preliminarily at $608 million.

**RESULT:** $295 million settlement

## NOTEWORLD/MERACORD DEBT SETTLEMENT LITIGATION

Hagens Berman filed its lawsuit in 2011 on behalf of consumers nationwide, claiming the company violated Washington law and the federal Racketeer Influenced and Corrupt Organizations Act by conspiring with debt settlement providers to defraud consumers through trust accounts related to useless debt-settlement programs. Following years of plaintiff victories in the District Court and in the Ninth Circuit Court of Appeal, Judge Settle granted plaintiffs' motion for class certification and default final judgment against the Tacoma, WA company after Meracord ceased defending itself from plaintiffs' claims.

**RESULT:** $1.45 billion default judgment

## APPLECARE WARRANTY LITIGATION

The firm represented a class of Apple device owners claiming that Apple violated consumer laws, illegally charging customers premium prices for what they believed to be new replacement devices under its AppleCare/AppleCare+ programs. Attorneys for the class estimate the settlement will cover between 3.5 and 4 million refurbished Apple devices.

**RESULT:** $95 million settlement has been preliminarily approved

## BANK OF AMERICA MILITARY CUSTOMER FRAUD LITIGATION

Hagens Berman filed a class-action lawsuit alleging that Bank of America violated the Servicemembers Civil Relief Act, the Truth in Lending Act and North Carolina's Unfair and Deceptive Trade Practices Act. The suit also accused Bank of America of violating common law, including breach of contract, negligence and negligent misrepresentation.

**RESULT:** $250 million settlement

## MIDLAND NATIONAL LIFE INSURANCE LITIGATION

Hagens Berman filed a class-action lawsuit against Midland National Life Insurance Company claiming it engaged in a scheme to reap profits by exploiting and preying on senior citizens. The complaint states Midland National knowingly sold deferred annuity products to senior citizens that would not mature until after the annuitant's life expectancy. The 2012 settlement benefited more than 70,000 senior citizens.

**RESULT:** $80 million settlement

## LUMBER LIQUIDATORS FLOORING PRODUCTS LIABILITY LITIGATION

National laminate wood flooring company Lumber Liquidators Inc. reportedly sold flooring tainted with hazardous levels of formaldehyde to consumers across the country. Hagens Berman represented consumers who purchased composite wood flooring products from the company in a class-action lawsuit.

**RESULT:** $36 million settlement

## CHASE FORCE-PLACED INSURANCE LITIGATION

Hagens Berman filed a lawsuit on behalf of a proposed class of JPMorgan Chase borrowers nationwide whose home loans were serviced by Chase. The lawsuit alleged Chase illegally charged homeowners for inferior and often unnecessary flood insurance at premium rates nearly 10 times the market rate for similar policies.

**RESULT:** $22 million settlement

## COVID-19 COLLEGE TUITION & FEES REIMBURSEMENT

In 2020, as the COVID-19 pandemic unfolded, Hagens Berman sought to represent tuition and fee payers in class-action lawsuits seeking reimbursement for parents and guardians of college students or college students for tuition, fees and other expenses at colleges and universities across the nation. Hagens Berman believes that institutions of higher learning had no right to keep these charges given the coronavirus outbreak and lack of options to students, as college campuses closed. The firm has so far settled cases with Brown University, Quinnipiac University and Rutgers University, with several active cases pending.

**RESULT:** $9 million in combined settlements so far

## TREX AND FIBER COMPOSITES LLC PORTICO DECKING

Hagens Berman filed multiple class-action lawsuits against the makers of composite decking, including Fiber Composites LLC and Trex. The lawsuits were filed on behalf of consumers and alleged that the companies failed to uphold their promises to their customers, calling out defects in their decking including mold, fading and decking prone to fungus.

**RESULT:** More than $8 million in combined settlement

## WALMART ORGANIC MILK MARKETING AND SALES PRACTICES LITIGATION

The firm filed a lawsuit against Wal-Mart alleging the organic milk sold in stores under the Great Value label isn't organic. The lawsuit named Aurora Dairy Corp. as the milk producer and supplier for Wal-Mart.

**RESULT:** $7.5 million settlement

## TENET HEALTHCARE

In a pioneering suit filed by Hagens Berman, plaintiffs alleged that Tenet Healthcare charged excessive prices to uninsured patients at 114 hospitals owned and operated by Tenet subsidiaries in 16 different states.

**RESULT:** Settlement under which class members received amounts paid in excess of certain thresholds over a four-and-a-half-year period

## HOMEBUILDER AND REAL ESTATE DEVELOPER LITIGATION

Hagens Berman has filed multiple class-action lawsuits against homebuilders and real estate development companies on behalf of homeowners seeking damages for alleged poor construction, depressed property values and unfair and deceptive practices often preying on elderly communities.

**RESULT:** The parties reached confidential settlements

## WELLS FARGO FORCE-PLACED INSURANCE

Hagens Berman brought a case against Wells Fargo alleging it used "force-placed" insurance clauses in mortgage agreements, a practice that enables the bank to charge homeowners insurance premiums up to 10 times higher than normal rates.

**RESULT:** All class members received checks for more than double the amount of commissions that Wells Fargo wrongfully extracted from the force placement of insurance on class members' properties

## AMERICAN EQUITY INVESTMENT LIFE INSURANCE LITIGATION

The firm served as co-counsel in a case against American Equity Investment Life Insurance Company that claimed the company knowingly engaged in an unethical and fraudulent scheme targeted towards senior citizens.

**RESULT:** The parties reached a confidential settlement

## CARRIER IQ CELL PHONE CONSUMER PRIVACY LITIGATION

Hagens Berman served as co-lead counsel in this class-action lawsuit claiming that smartphone manufacturers HTC Corporation, HTC America Inc. and Samsung Electronics Co. Ltd. used software developed by Carrier IQ Inc. that illegally intercepted incoming text messages and captured users' keystrokes, including those used to compose email and text messages or to dial numbers, without consumers' knowledge or permission.

**RESULT:** The parties reached a confidential settlement

## AMAZON CONSUMER PROTECTION LITIGATION

The firm has filed several active consumer-rights class actions against Amazon Inc. In one active matter, Hagens Berman represents a proposed class of consumers seeking to hold Amazon accountable for its alleged use of "dark patterns" to deceive users into subscribing to Amazon Prime, or complicate the process of unsubscribing. Since the firm's lawsuit, the Federal Trade Commission filed a complaint against Amazon for the same actions, bolstering the firm's existing claims.

Hagens Berman's consumer attorneys have also taken up the fight against the retail giant for its alleged price gouging that occurred during the COVID-19 pandemic, causing massive price spikes for essential goods including food, personal hygiene products and other emergency or medical supplies, allegedly violating California state consumer-protection laws.

## CBL & ASSOCIATES UTILITY CHARGES

In this class-action lawsuit, the firm represents past and present small business tenants of CBL & Associates, a real estate investment trust. The lawsuit accuses CBL of illegally overcharging thousands of its mall tenants for years through a calculated "criminal enterprise" of inflated electricity charges, charging tenants up to 100 percent more than the cost of electricity actually used, in violation of its own lease agreements and state law.

## ONEWHEEL SHUT OFF DEFECT

Consumers have reported sudden shutoffs and nosedives while operating Future Motion Inc.'s OneWheel electronic skateboards that launch riders from the board at potentially high speeds and steep angles. The boards have since been recalled yet Future Motion has yet to remedy the defect causing sudden loss of power. Hagens Berman filed its class action in 2022, seeking damages on behalf of consumers.

## EVENFLO BIG KID BOOSTER CAR SEAT

Hagens Berman has been appointed co-lead counsel in a class-action lawsuit pertaining to a dangerous and defective line of child booster seats sold by Evenflo. Testing revealed Evenflo's Big Kid car seats place children weighing less than 40 pounds at grave risk of injury in the event of a car crash, especially side-impact collisions. Despite selling its Big Kid booster seat as safe for kids that weigh less than 40 pounds and "side impact tested," Evenflo does not tell consumers that its own tests showed a child seated in its booster could be in danger in such a crash.

## CONSUMER INSURANCE LITIGATION

Hagens Berman has pioneered theories to ensure that, in first- and third-party contexts, consumers and health plans always receive the treatment and benefits to which they are entitled. Many of our cases have succeeded in expanding coverage owed and providing more benefits; recovering underpayments of benefits; and returning

HAGENS  BERMAN  SOBOL  SHAPIRO LLP

uninsured/underinsured premiums from the misleading tactics of the insurer. The firm's existing cases include pending litigation against Allstate and CNA Casualty Company.

**ADDITIONAL CONSUMER-FACING LITIGATION**

The firm's core ethos of bringing positive change to large numbers of affected individuals in need of recourse means that the vast majority of our cases benefit consumers directly. Many of these matters fall under additional complex areas of law. For additional consumer-facing litigation, settlements and victories see our work in the areas of antitrust price-fixing, automotive litigation and emissions cheating.

PRACTICE AREAS

# Consumer Protection – Drug and Supplement Litigation

Hagens Berman aggressively pursues pharmaceutical industry litigation, fighting against waste, fraud and abuse in healthcare. For decades, pharmaceutical manufacturers have been among the most profitable companies in America. But while pharmaceutical companies become richer, consumers, health plans and insurers pay higher costs for prescription and over-the-counter drugs and supplements. We shine the light of public scrutiny on this industry's practices and represent individuals, direct and indirect purchasers, and the nation's most forward-thinking public-interest groups.

The firm's pharmaceutical and dietary supplement litigation practice is second to none in the nation in terms of expertise, commitment and landmark results. Hagens Berman's attorneys have argued suits against dozens of major drug companies, and the firm's aggressive litigation against the pharmaceutical industry has recovered settlements valued at more than $3.8 billion.

**RECENT ANTITRUST RESOLUTIONS**

In the last few years, Hagens Berman — as lead or co-lead class counsel — has garnered significant settlements in several antitrust cases involving prescription drugs. In each case, the plaintiffs alleged that a manufacturer of a brand-name drug violated federal or state antitrust laws by delaying generic competitors from coming to market, forcing purchasers to buy the more expensive brand name version instead of the generic equivalent. Examples of our recent successes include:

**ZETIA ANTITRUST LITIGATION**

Hagens Berman served as court-appointed lead counsel in this class-action lawsuit representing a class of direct purchasers of Merck's blockbuster cholesterol drug, Zetia. The lawsuit against pharma giant Merck and generic drugmaker Glenmark alleges the two colluded to illegally delay the market entry of generic versions and settled in 2024.

**RESULT:** Confidential settlement valued at hundreds of millions of dollars

**GLUMETZA ANTITRUST LITIGATION**

The court denied summary judgment and paved the way for trial in this litigation against brand and generic manufacturers of the diabetes drug Glumetza. Hagens Berman served as co-lead counsel for the direct purchaser class. U.S. District Judge William Alsup approved $453.85 million in settlements resolving direct purchasers' allegations. The result was the largest antitrust recovery to receive final approval in 2022.

**RESULT:** $453.85 million settlement

## SUBOXONE ANTITRUST LITIGATION

Hagens Berman was co-lead counsel for a class of direct purchasers in this pharmaceutical antitrust class action MDL alleging defendants violated federal antitrust laws by delaying generic competition for its blockbuster opioid addiction medicine, Suboxone. The complaint alleges this scheme succeeded, and purchasers incurred substantial damages as a result.

**RESULT:** $385 million settlement

## RANBAXY ANTITRUST LITIGATION

Hagens Berman served as co-lead counsel representing Meijer Inc. and Meijer Distribution Inc. in a class-action lawsuit against drug maker, Ranbaxy. The lawsuit alleged it recklessly stuffed the generic drug approval queues with grossly inadequate applications, deceiving the FDA into granting tentative approvals to lock in statutory exclusivities to which Ranbaxy was not entitled and that it brandished these undeserved exclusivities to exclude others while its own applications floundered, all at the direct expense of U.S. drug purchasers. The settlement was part of a $485 million total settlement for all plaintiffs in the case. The result was the second largest antitrust recovery to receive final approval in 2022.

**RESULT:** $340 million settlement

## FLONASE ANTITRUST LITIGATION

Hagens Berman represented purchasers in this case alleging pharmaceutical giant GlaxoSmithKline filed petitions to prevent the emergence of generic competitors to its drug Flonase, all to overcharge consumers and purchasers of the drug, which would have been priced lower had a generic competitor been allowed to come to market.

**RESULT:** $150 million settlement

## PROGRAF ANTITRUST LITIGATION

Hagens Berman represented purchasers who alleged Astellas Pharma US, Inc. unlawfully maintained its monopoly and prevented generic competition for Prograf, an immunosuppressant used to help prevent organ rejection in transplant patients, harming purchasers by forcing them to pay inflated brand name prices for longer than they should have absent the anticompetitive conduct.

**RESULT:** $98 million settlement

## RELAFEN ANTITRUST LITIGATION

Hagens Berman filed a class-action lawsuit against GlaxoSmithKline, SmithKline Beecham Corporation, Beecham Group PLC and SmithKline Beecham PLC, on behalf of consumers and third-party payors who purchased the drug Relafen or its generic alternatives. The suit alleged that the companies who manufacture and sell Relafen unlawfully obtained a patent which allowed them to enforce a monopoly over Relafen and prevented competition by generic prescription drugs, causing consumers to pay inflated prices for the drug.

**RESULT:** $75 million settlement, $25 million of which was allocated to consumers and $50 million paid the claims of insurers and other third-party payors

## SKELAXIN ANTITRUST LITIGATION

The firm represented purchasers in this case alleging King Pharmaceuticals LLC and Mutual Pharmaceutical Company alleging conspired to suppress generic competition and preserve King's monopoly in the market for the brand name muscle relaxant Skelaxin.

**RESULT:** $73 million class settlement

HAGENS BERMAN SOBOL SHAPIRO LLP

## TRICOR ANTITRUST LITIGATION

In June 2005, Hagens Berman filed an antitrust lawsuit on behalf of a class of consumers and third-party payors against pharmaceutical manufacturers Abbott Laboratories and Fournier Industries concerning the brand name cholesterol drug Tricor. HBSS was appointed co-lead class counsel by the Court.

**RESULT:** $65.7 million settlement

## ALLERGAN RESTASIS LITIGATION

Hagens Berman served as court-appointed interim lead counsel for a proposed class of direct purchasers of the Allergan Inc. dry-eye emulsion, Restasis. The lawsuit accused the drugmaker fraudulently obtained a series of patents for Restasis by misrepresenting that clinical trials newly showed that a lower strength Restasis formulation worked better than a stronger version.

**RESULT:** $51.25 million settlement

## FRAUDULENT DRUG PRICING RESOLUTIONS

Hagens Berman has led many complex cases that take on fraud and inflated drug prices throughout the U.S. This includes sweeping manipulation of the average wholesale price benchmark used to set prices for prescription drugs nationwide, fraudulent marketing of prescription drugs and the rampant use of co-pay subsidy cards that drive up healthcare costs. These efforts have led to several significant settlements:

## MCKESSON AND FIRST DATABANK DRUG LITIGATION

The firm discovered a far-reaching fraud by McKesson and became lead counsel in this RICO case against McKesson and First DataBank, alleging the companies fraudulently inflated prices of more than 400 prescription drugs. Following the culmination of this case, states and federal government then used Hagens Berman's work to bring additional suits. Hagens Berman represented several states and obtained settlements three to seven times more than that of the Attorneys General. Almost $1 billion was recovered from the McKesson fraud.

**RESULT:** $350 million settlement and a four percent rollback on the prices of 95 percent of the nation's retail branded drugs, the net impact of which could be in the billions of dollars

## AVERAGE WHOLESALE PRICE DRUG LITIGATION

Hagens Berman served as co-lead counsel and lead trial counsel in this sprawling litigation against most of the nation's largest pharma companies, which alleges defendants artificially inflated Average Wholesale Price. Hagens Berman's work in this area led to many state governments filing suit and hundreds of millions in additional recovery.

**RESULT:** Approximately $338 million in settlements

## FRAUDULENT MARKETING RESOLUTIONS

Hagens Berman also litigates against drug companies that fraudulently promote drugs for uses not approved by the Food and Drug Administration (FDA), commonly known as "off-label" uses. We also litigate cases against dietary supplement manufacturers for making false claims about their products. Recent successes include:

## NEURONTIN THIRD-PARTY PAYOR LITIGATION

Hagens Berman served as co-lead trial counsel in this case alleging that Pfizer fraudulently and unlawfully promoted the drug Neurontin for uses unapproved by the FDA.

**RESULT:** $47 million jury verdict in favor of a single third-party payor plaintiff, automatically trebled to $142 million, and court-approved a $325 million class settlement

## NEW ENGLAND COMPOUNDING CENTER MENINGITIS OUTBREAK

In 2012, the Center for Disease Control confirmed that New England Compounding Center sold at least 17,000 potentially tainted steroid shots to 75 clinics in 23 states across the country, resulting in more than 64 deaths and 751 cases of fungal meningitis, stroke or paraspinal/peripheral joint infection. HBSS attorneys Thomas M. Sobol and Kristen A. Johnson serve as Court-appointed Lead Counsel for the Plaintiffs' Steering Committee on behalf of plaintiff-victims in MDL 2419 consolidated before The Honorable Ray W. Zobel in the United States District Court for the District of Massachusetts.

**RESULT:** $200 million settlement

## LUPRON LITIGATION

Hagens Berman prosecuted a lawsuit against TAP Pharmaceuticals Products, Inc. on behalf of a class of consumers and third-party payors who purchased the drug Lupron. The suit charged that TAP Pharmaceutical Products, Inc., Abbott Laboratories and Takeda Pharmaceutical Company Limited conspired to fraudulently market, sell and distribute Lupron, causing consumers to pay inflated prices for the drug.

**RESULT:** $150 million settlement

## CELEBREX/BEXTRA LITIGATION

Hagens Berman filed a class-action lawsuit against Pfizer on behalf of individual consumers and third-party payors who paid for the drug Bextra. The firm was praised by Judge Breyer for its "unstinting" efforts on behalf of the class, adding, "The attorneys on both sides were sophisticated, skilled, professional counsel whose object was to zealously pursue their clients' interest, but not at the cost of abandoning the appropriate litigation goals, which were to see, whether or not, based upon the merits of the cases, a settlement could be achieved."

**RESULT:** $89 million settlement

## VIOXX THIRD PARTY PAYOR MARKETING AND SALES PRACTICES LITIGATION

The firm served as lead counsel for third party payors in the Vioxx MDL, alleging that Merck & Co. misled physicians, consumers and health benefit providers when it touted Vioxx as a superior product to other non-steroidal anti-inflammatory drugs. According to the lawsuit. The drug had no benefits over less expensive medications but carried increased risk of causing cardiovascular events.

**RESULT:** $80 million settlement

## SERONO DRUG LITIGATION

Hagens Berman served as lead counsel for a class of consumers and third-party payors in a suit alleging that global biotechnology company Serono, Inc. schemed to substantially increase sales of the AIDS drug Serostim by duping patients diagnosed with HIV into believing they suffered from AIDS-wasting and needed the drug to treat that condition.

**RESULT:** $24 million settlement

## BAYER COMBINATION ASPIRIN/SUPPLEMENT LITIGATION

Hagens Berman served as lead counsel on behalf of consumers in a suit alleging that Bayer Healthcare LLC deceptively marketed Bayer® Women's Low-Dose Aspirin + Calcium, an 81 mg aspirin pill combined with calcium, and Bayer® Aspirin With Heart Advantage, an 81 mg aspirin pill combined with phytosterols. Plaintiffs alleged that Bayer overcharged consumers for these products or that these products should not have been sold, because these products were not FDA-approved, could not provide all advertised health benefits, and were inappropriate for long-term use.

**RESULT:** $15 million settlement

PRACTICE AREAS

# Data Breach

## Hagens Berman defends privacy rights and protects consumers' sensitive personal information in an era of ever-increasing threats to cybersecurity.

In 2022 alone, over 422 million people became vulnerable to cybercriminals via data breaches, often due to the negligence or wrongdoing of corporations and other institutions that collect people's private information. Hagens Berman's data breach legal team pursues litigation on behalf of the hundreds of millions of individuals impacted by data breaches every year, and our dedicated team includes attorneys highly skilled in this area of law and the high tech industry. Our firm is committed to holding corporations and institutions accountable for mishandling consumers' information, and to recovering compensation for those who have been harmed. While some firms pursue litigation only to protract the incident and expense their hours, our firm persistently pursues meaningful litigation to bring about swift relief and strengthen the laws and protocols protecting consumers. Some examples of our work in this area include:

### T-MOBILE DATA BREACH LITIGATION – 2021

T-Mobile's 2021 data breach was the cellular company's fifth since 2018, and exposed more than 40 million customers' sensitive personal information to cybercriminals. According to an interview, the hacker carried out the data breach using "a simple tool available to the public," and Hagens Berman attorneys pursued claims of negligence and breach of contract against T-Mobile for allegedly failing to adhere to "industry-standard security measures," according to the complaint.

**RESULT:** $350 million settlement

### CAPITAL ONE DATA BREACH LITIGATION

The 2019 Capital One data breach was the largest instance of data theft from a bank to date, and compromised the social security numbers and bank account numbers of 140,000 and 80,000 people, respectively. Hagens Berman pursued claims of negligence, unjust enrichment and violation of state data breach disclosure laws on behalf of Capital One's customers.

**RESULT:** $190 million settlement

### VALLEY ANESTHESIOLOGY DATA BREACH LITIGATION

In 2019, the firm reached a settlement with Valley Anesthesiology & Pain Consultants after a 2016 security incident in which hackers illegally accessed Valley's computer system, allegedly due to the company's failure to take appropriate security measures to protect its customers' data.

**RESULT:** The settlement provided identity theft protection to class members whose information was compromised in the breach

**PENDING DATA BREACH LITIGATION**

### PROGRESS SOFTWARE MOVEIT DATA BREACH LITIGATION

Hagens Berman filed suit against Progress Software and a host of other defendants, including Bank of America, Fidelity Investments and Pension Benefit Information, following a 2023 hack that exploited a security vulnerability in MOVEit, a managed file transfer software owned by Progress and utilized by other defendants. More than 600 organizations

worldwide were impacted by this security breach, which exposed the personal information, including social security numbers, medical records and banking information of over 40 million people.

## T-MOBILE DATA BREACH LITIGATION – 2022

The firm serves on the executive committee in this class-action lawsuit on behalf of the 37 million customers impacted by T-Mobile's eighth data hack since 2018, pursuing claims of negligence and unjust enrichment. The complaint alleged that the company had failed to "adhere to even its most basic obligations," putting the livelihoods of millions of people around the country at risk with its allegedly lax security measures. The firm also served on the executive committee of T-Mobile Data Breach Litigation – 2021, helping to secure a $350 million settlement for the class.

## TEMU SHOPPING APP PRIVACY VIOLATIONS LITIGATION

Hagens Berman represents consumers — including four children — against the creators of the popular shopping app Temu, accusing defendants of luring users with the promise of low-cost goods only to capture and disseminate their private information to unauthorized parties. Experts state Temu is purposefully and intentionally loaded with tools to execute virulent and dangerous malware and spyware, capturing biometric data, WiFi information, camera access and more.

PRACTICE AREAS

# Employment Litigation

Hagens Berman takes special interest in protecting workers from exploitation or abuse. We take on race and gender discrimination, immigrant worker issues, wage and hour issues, on-the-job injury settlements and other crucial workplace issues.

Often, employees accept labor abuses or a curbing of their rights because they don't know the law, respect their superiors or fear for their jobs. We act on behalf of employees who may lack the individual power to bring about meaningful change in the workplace. We take a comprehensive approach to rooting out systemic employee abuses through in-depth investigation, knowledgeable experts and fervent exploration of prosecution strategies. Hagens Berman is a firm well-versed in taking on complicated employee policies and bringing about significant results. Representative cases include:

### CB RICHARD ELLIS SEXUAL HARASSMENT LITIGATION

Filed a class action against CB Richard Ellis, Inc., on behalf of 16,000 current and former female employees who alleged that the company fostered a climate of severe sexual harassment and discriminated against female employees by subjecting them to a hostile, intimidating and offensive work environment, also resulting in emotional distress and other physical and economic injuries to the class.

**RESULT:** An innovative and unprecedented settlement requiring changes to human resources policies and procedures, as well as the potential for individual awards of up to $150,000 per class member. The company agreed to increase supervisor accountability, address sexually inappropriate conduct in the workplace, enhance record-keeping practices and conduct annual reviews of settlement compliance by a court appointed monitor.

### SCHNEIDER NATIONAL CARRIERS - REGIONAL DRIVERS

The firm represents a certified class of regional drivers in a suit filed against Schneider National Carriers, claiming that the company failed to pay its workers for all of their on-duty time devoted to a variety of work tasks, including vehicle inspections, fueling, and waiting on customers and assignments. The suit also claims that the company does not provide proper meal and rest breaks and the company is liable for substantial penalties under the California Labor Code.

**RESULT:** $28 million settlement

### SCHNEIDER NATIONAL CARRIERS – MECHANICS

Hagens Berman filed a class-action lawsuit alleging that Schneider National Carriers failed to provide mechanics with proper overtime compensation, meal and rest break premiums, and accurate wage statements as required by California law.

**RESULT:** Settlement on terms mutually acceptable to the parties

### COSTCO WHOLESALE CORPORATION WAGE & HOUR LITIGATION

Filed a class action against Costco Wholesale Corporation on behalf of 2,000 current and former ancillary department employees, alleging that the company misclassified them as "exempt" executives, denying these employees overtime compensation, meal breaks and other employment benefits.

**RESULT:** $15 million cash settlement

## SUNDANCE REHABILITATION CORPORATION

Filed a class action against SunDance challenging illegal wage manipulation, inconsistent contracts and other compensation tricks used to force caregivers to work unpaid overtime.

**RESULT:** $3 million settlement of stock to be distributed out of the company's bankruptcy estate

## WASHINGTON STATE FERRY WORKERS WAGE LITIGATION

Represented "on-call" seamen who alleged that they were not paid for being "on call" in violation of federal and state law.

**RESULT:** Better working conditions for the employees and rearrangement in work assignments and the "on-call" system

PRACTICE AREAS

# Environmental Litigation

Since Hagens Berman's founding, the firm has sought to work toward one simple goal: work for the greater good. Hagens Berman has established a nationally recognized environmental litigation practice, having handled several landmark cases in the Northwest, the nation and internationally.

Hagens Berman believes that protecting and restoring our environment from damage caused by irresponsible and illegal corporate action is some of the most rewarding work a law firm can do. As our firm has grown, we have established an internationally recognized environmental litigation practice.

**SCIENCE AND THE LAW**

Hagens Berman's success in environmental litigation stems from a deep understanding of the medical and environmental science that measures potential hazards. That expertise is translated into the courtroom as our attorneys explain those hazards to a judge or jury in easily understood terms.

**ENVIRONMENTAL EXPERTS**

Our firm's fostered deep relationships with top-notch environmental experts result in resonating arguments and court victories, as well as thoroughly researched and vetted investigations.

**REAL IMPACTS**

Environmental law is a priority at our firm and we have taken an active role in expanding this practice area. In 2003, Steve Berman and his wife Kathy worked with the University of Washington to create the Kathy and Steve Berman Environmental Law Clinic, giving law students the training and opportunities needed to become hands-on advocates for the environment.

Hagens Berman's significant environmental cases include:

**EXXON VALDEZ OIL SPILL LITIGATION**

Hagens Berman represented various classes of claimants, including fisherman and businesses located in Prince William Sound and other impacted areas who were damaged by one of the worst oil spills in United States history.

**RESULT:** $5 billion judgment awarded by a federal jury, and a $98 million settlement was achieved with Alyeska, the oil company consortium that owned the output of the pipeline

**SKAGIT VALLEY FLOOD LITIGATION**

Hagens Berman represented farmers, homeowners and businesses who claimed damages as a result of the 1990 flooding of this community. The case was in litigation for ten years and involved a jury trial of more than five months. Ultimately, the State Supreme Court reversed this judgment. Despite this reversal, the firm is proud of this representation and believes that the Supreme Court erred.

**RESULT:** Judgments exceeding $6.3 million entered by the trial court following the entry of 53 verdicts against Skagit County

### KERR-MCGEE RADIATION LITIGATION

The firm brought a class action on behalf of residents of West Chicago, Illinois who were exposed to radioactive uranium tailings from a rare earth facility operated by Kerr-McGee.

**RESULT:** Medical monitoring settlement valued in excess of $5 million

### CHINOOK FERRY LITIGATION

The firm represented a class of property owners who challenged Washington State Ferries' high-speed operation of a new generation of fast ferries in an environmentally sensitive area of Puget Sound. Two of the ferries at issue caused environmental havoc and property damage, compelling property owners to act. A SEPA study conducted in response to the suit confirmed the adverse environmental impacts of the fast ferry service

**RESULT:** $4.4 million settlement, among the most favorable in the annals of class litigation in Washington state

### SYCAMORE, ILLINOIS WATER CONTAMINATION LITIGATION

Hagens Berman represented a proposed class of residents of Sycamore, Illinois in this class-action lawsuit against the city for allegedly creating a public health crisis through decades of negligence to its water system. Residents reported high lead levels from lab tests, experienced discolored and foul-smelling water coming from their taps, and complained of health issues stemming from exposure to the city's water. Testing conducted during the litigation revealed chlorine levels well below state and federal regulations.

**RESULT:** In 2023, the firm reached a settlement that required the city to: (1) spend an average of $1.2 million per year on water infrastructure improvement projects through 2027; and (2) engage an independent laboratory to conduct widespread lead, copper, and chlorine testing at sites selected by both the city and residents through 2025.

### GRAND CANYON LITIGATION

The firm represented the Sierra Club in a challenge to a Forest Service decision to allow commercial development on the southern edge of the Grand Canyon National Park.

**RESULT:** Project enjoined by the trial court

### IDAHO GRASS BURNING LITIGATION

In 2002, Hagens Berman brought a class-action lawsuit on behalf of Idaho residents who claimed grass-burning farmers released more than 785 tons of pollutants into the air, including concentrations of polycyclic aromatic hydrocarbons (PAHs), proven carcinogens. Burning the fields annually caused serious health problems, especially to those with respiratory ailments such as cystic fibrosis and asthma. The suit also asserted that Idaho's grass burning policies are far below the standards of other states such as neighboring Washington, where farmers use other techniques to remove grass residue from the fields.

**RESULT:** Settlement under confidential terms

### DOLE BANANAS LITIGATION

The firm took on Dole Food Company Inc. in a class-action lawsuit claiming the world's largest fruit and vegetable company lied to consumers about its environmental record and banana-growing practices. The suit alleged that Dole misrepresented its commitment to the environment in selling bananas from a Guatemalan banana plantation that did not comply with proper environmental practices.

**RESULT:** Culminated in 2013 when Dole and non-profit organization Water and Sanitation Health Inc. collaborated on a water filter project to assist local communities in Guatemala

### DIESEL EMISSIONS LITIGATION

Second to none in uncovering emissions cheating, the firm has dedicated its time and resources to breaking up the dirty diesel ring. After filing the first lawsuit in the country against Volkswagen, Audi and Porsche for its massive Dieselgate scandal in 2015, the firm went on to unmask emissions-cheating devices installed in vehicles made by Fiat Chrysler, Mercedes and General Motors and continues to investigate diesel cars for excessive, illegal and environmentally harmful levels of emissions.

**RESULT:** The firm's independently researched active cases have led to investigations by the EPA, DOJ and European authorities

### SAN FRANCISCO AND OAKLAND CLIMATE CHANGE LITIGATION

Hagens Berman represents the cities of San Francisco and Oakland, Calif. in two lawsuits filed against BP, Chevron Corp., Exxon Mobil Corp., Royal Dutch Shell PLC and ConocoPhillips alleging that the Big Oil giants are responsible for the cities' costs of protecting themselves from global warming-induced sea level rise, including expenses to construct seawalls to protect the two cities' more than 5 million residents. The newly filed case seek an order requiring defendants to abate the global warming-induced sea level rise by funding an abatement program to build sea walls and other infrastructure. Attorneys for the cities say this abatement fund will be in the billions.

### KIVALINA GLOBAL WARMING LITIGATION

A tiny impoverished Alaskan village of Inupiat Eskimos took action against some of the world's largest greenhouse gas offenders, claiming that contributions to global warming are leading to the destruction of their village and causing erosion to the land that will eventually put the entire community under water. Hagens Berman, along with five law firms and two non-profit legal organizations, filed a suit against nine oil companies and 14 electric power companies that emit large quantities of greenhouse gases into the atmosphere. The lawsuit alleged their actions resulted in the destruction of protective ice, exposing the village to severe storms that destroy the ground the village stands on. Relocating the village of Kivalina could cost between $95 and $400 million, an expense the community cannot afford.

### CANE RUN POWER PLANT COAL ASH LITIGATION

In 2013, Hagens Berman filed a class-action lawsuit against Louisville Gas and Electric Company alleging it illegally dumped waste from a coal-fired power plant onto neighboring property and homes where thousands of Kentucky residents live. According to the complaint, Louisville Gas and Electric Company's Cane Run Power Plant is fueled by the burning of coal, which also produces coal combustion byproducts — primarily fly ash and bottom ash — that contain significant quantities of toxic materials, including arsenic, chromium and lead. The dust spewed by Cane Run contains known carcinogens, posing significant potential health hazards.

PRACTICE AREAS

# Governmental Representation

Hagens Berman has been selected by public officials to represent government agencies and bring civil law enforcement and damage recoupment actions designed to protect citizens and the treasury. We understand the needs of elected officials and their obligation to impartially and zealously represent the interests of the public without taking excessive risks in litigation. We are often chosen after competitive bidding, and have been hired by officials from across the political spectrum.

Hagens Berman has assisted governments in recovering billions of dollars in damages and penalties from corporate wrongdoers and, in the process, helped reform how some industries do business. In serving government, we are often able to leverage the firm's expertise and success in related private class-action litigation. Successes on behalf of government clients include:

## TOBACCO LITIGATION

We represented 13 states in landmark Medicaid-recoupment litigation against the country's major tobacco companies. Only two states took cases to trial – Washington and Minnesota. The firm served as trial counsel for the state of Washington, becoming only one of two private firms in the entire country to take a state case to trial.

Hagens Berman was instrumental in developing what came to be accepted as the predominant legal tactic to use against the tobacco industry: emphasizing traditional law enforcement claims such as state consumer protection, antitrust and racketeering laws. This approach proved to be nearly universally successful at the pleading stage, leaving the industry vulnerable to a profits-disgorgement remedy, penalties and double damages. The firm also focused state legal claims on the industry's deplorable practice of luring children to tobacco use.

**RESULT:** $260 billion for state programs, the largest settlement in the history of civil litigation in the U.S.

## MCKESSON AVERAGE WHOLESALE PRICE LITIGATION

This litigation is yet another example of fraudulent drug price inflation impacting not just consumers and private health plans, but public health programs such as Medicaid and local government-sponsored plans as well.

**RESULT:** Hagens Berman started the AWP class action, which resulted in many states filing cases. The firm represented several of those states in successful litigation.

## MCKESSON GOVERNMENT LITIGATION

On the heels of Hagens Berman's class action against McKesson, the firm led lawsuits by states (Connecticut, Utah, Virginia, Montana, Arizona).

**RESULT:** These states obtained recoveries three to seven times larger than states settling in the multi-state Attorneys General settlement. In addition, the firm obtained $12.5 million for the City of San Francisco and $82 million for a nationwide class of public payors.

**ZYPREXA MARKETING & SALES PRACTICES LITIGATION – CONNECTICUT**

Hagens Berman served as outside counsel to then-Attorney General Richard Blumenthal in litigation alleging that Lilly engaged in unlawful off-label promotion of the atypical antipsychotic Zyprexa. The litigation also alleged that Lilly made significant misrepresentations about Zyprexa's safety and efficacy, resulting in millions of dollars in excess pharmaceutical costs borne by the State and its taxpayers.

**RESULT:** $25 million settlement

**GENERAL MOTORS IGNITION SWITCH LITIGATION**

Hagens Berman is pleased to have assisted the Arizona Attorney General in its action against GM, as well as the district attorney of Orange County, California who filed a consumer protection lawsuit against GM, claiming the automaker deliberately endangered motorists and the public by intentionally concealing widespread, serious safety defects.

**STATE OPIOID LITIGATION**

Hagens Berman was hired to assist multiple state and local governments in lawsuits brought against large pharmaceutical manufacturers including Purdue Pharma, Cephalon, Janssen Pharmaceuticals, Endo Health Solutions and Actavis charging that these companies and others deceived physicians and consumers about the dangers of prescription painkillers. Hagens Berman was also hired to represent several municipalities in lawsuits challenging the reckless distribution of prescription opioids by wholesale distributors and pharmacy chains.

The firm was first hired by California governmental entities for the counties of Orange and Santa Clara. The state of Mississippi also retained the firm's counsel in its state suit brought against the manufacturer of opioids. The suit alleges that the pharma companies engaged in tactics to prolong use of opioids despite knowing that opioids were too addictive and debilitating for long-term use for chronic non-cancer pain.

In a third filing, Hagens Berman was retained as trial counsel for the state of Ohio. Filed on May 31, 2017, the firm is assisting the Ohio Attorney General's office in its case against five opioid makers. Ohio Attorney General Mike DeWine stated that "drug companies engaged in fraudulent marketing regarding the risks and benefits of prescription opioids which fueled Ohio's opioid epidemic," and that "these pharmaceutical companies purposely misled doctors about the dangers connected with pain meds that they produced, and that they did so for the purpose of increasing sales."

In a fourth filing, Hagens Berman was retained by the state of Arkansas to challenge opioid manufacturers' deceptive marketing of prescription opioids. Announcing the lawsuit on April 2, 2018, Arkansas Attorney General Leslie Rutledge stated that "the reckless actions of these opioid manufacturers have wreaked havoc upon Arkansas and her citizens for far too long."

Hagens Berman has also represented the city of Seattle and Salt Lake County in separate lawsuits against the opioid manufacturers. These lawsuits also name the nation's largest wholesale distributors and pharmacy chains as defendants, alleging that they failed to implement adequate controls to prevent the diversion of opioids into the black market and other unlawful distribution channels.

**MUNICIPAL LENDING LITIGATION**

Hagens Berman represents the cities of Los Angeles and Miami in a series of lawsuits filed against the nation's largest banks, including CitiGroup, JP Morgan, Wells Fargo and Bank of America alleging that they engage in systematic discrimination against minority borrowers, resulting in reduced property tax receipts and other damages to the cities. The suits seek damages for the City, claiming that the banks' alleged discriminatory behavior resulted in foreclosures, causing a reduction of property tax revenues and increased municipal service costs.

PRACTICE AREAS

# High Tech Litigation

Hagens Berman routinely takes on the world's largest tech companies and has pending litigation against Facebook, Apple, Amazon and other Big Tech players for issues related to intellectual property, antitrust infringement, consumer rights and product defects affecting millions of individuals' daily lives.

**HIGH TECH LITIGATION ATTORNEYS**

Hagens Berman brings cutting edge cases against major tech companies. We leverage our resources, breadth of knowledge and expert litigation strategies against harmful anticompetitive practices, defective products and other instances of malfeasance perpetrated by Big Tech. While some of these companies believe they are too big to fail, our firm is well-practiced in uncovering wrongdoing and holding responsible parties accountable for widespread fraud, even when governing bodies are constrained by red tape and bureaucracy.

Hagens Berman also litigates claims against tech companies in the areas of trade secrets, IP and patent law, and we represent individual business owners as well as large groups of consumers.

**HIGH TECH CLASS-ACTION CASES**

Throughout Hagen's Berman's decades-long track record, some of our largest cases have been brought against Big Tech companies, resulting in monumental recoveries for our clients:

**APPLE E-BOOKS LITIGATION**

Hagens Berman served as co-lead counsel representing a class of Apple e-book purchasers claiming that Apple and five of the nation's top publishers, including HarperCollins Publishers, Hachette Book Group, Macmillan Publishers, Penguin Group Inc. and Simon & Schuster Inc. illegally fixed prices of electronic books. Working with the State Attorneys General in 33 jurisdictions. Hagens Berman reached settlements with the publishers, and after the Second Circuit confirmed its liability, Apple paid $450 million to the consumer class, a combined settlement that provided more than twice the estimated losses suffered by consumers.

**RESULT:** $568 million settlement

**APPLE IOS APP STORE FEES LITIGATION**

In this lawsuit against Apple, the firm served as interim lead counsel and represented U.S. iOS developers. The lawsuit accused Apple of monopolizing distribution services for iOS apps and in-app digital products, resulting in commission overcharges.

**RESULT:** $100 million and developer-friendly changes to the App Store's policies

**GOOGLE PLAY STORE FEES LITIGATION**

The firm filed a class action on behalf of Android app developers against Google accusing it of violating antitrust laws by illegally monopolizing markets for Android app distribution and in-app payment processing. Hagens Berman was the

first to file a class case, led settlement negotiations and patterned the settlement with Google after its 2021 legal win against Apple regarding damages to iOS developers through Apple's App Store policies.

**RESULT:** $90 million settlement

### GOOGLE ADSENSE LITIGATION

Hagens Berman represented a class of Google AdSense users who suffered unjust account suspensions.

**RESULT:** $11 million settlement

## PENDING LITIGATION AGAINST BIG TECH COMPANIES

The firm also has several pending litigations against Big Tech giants like Amazon, Apple and Facebook. Some of our most notable pending claims include:

### AMAZON ANTITRUST VIOLATIONS

Independent investigations by Hagens Berman's legal team and expert antitrust attorneys have revealed that Amazon.com has violated federal antitrust price-fixing and monopoly laws, causing Amazon customers to pay artificially increased prices for products purchased online. In each of the pending cases, Hagens Berman was the first to file, and it serves as interim lead counsel, where leadership was contested. In two cases, representing consumers who purchased on and off Amazon Marketplace, Hagens Berman alleges a broad-reaching agreement between Amazon and the 2 million merchants that sell on its platform as third-party sellers. This agreement prevents third-party sellers from selling at lower prices anywhere else online, even if it costs them less to sell on other platforms and it would be more profitable to do so. This agreement substantially increases the price of virtually every product sold online and consolidates Amazon's iron hold on the online retail market. In a third suit, Hagens Berman alleges that Amazon's agreements with its suppliers likewise increase online consumer prices by restraining price competition from other online retailers. These agreements impose financial penalties on the suppliers, whenever Amazon reduces its own retail price to match a lower online price of the supplier's products. These penalties pressure suppliers to impose minimum retail prices and enforce them against Amazon's retail competitors that would otherwise sell at a lower price than Amazon. In other litigation, the firm also represents booksellers and is interim lead counsel, representing e-book purchasers in antitrust matters regarding those markets and Amazon's monopolistic practices that have harmed businesses and consumers alike.

### APPLE PAY ANTITRUST

The firm filed a class-action lawsuit accusing Apple of intentionally monopolizing the billion-dollar mobile wallet market on iOS platforms, forcing payment card issuers to pay supracompetitive fees and stifling mobile wallet innovation. The lawsuit claims that Apple's antitrust behavior has led to upwards of $1 billion in illicit annual revenue through Apple Pay fees paid by payment card issuers including credit unions and other small businesses.

### FACEBOOK ANTITRUST

Hagens Berman filed a class-action lawsuit alleging that Facebook gained an illegal monopoly by exploiting and selling user data. We believe Facebook utilized its own user data to identify emerging threats to its social-media monopoly without properly compensating consumers and without notifying them the extent to which their personal information was being used. A key attorney on the case at Hagens Berman was named co-lead counsel for the class of consumers.

## NONPUBLIC INVESTIGATIONS

Hagens Berman is also involved in a number of nonpublic investigations of tech companies for various forms of deception and harm to consumers and employees.

PRACTICE AREAS

# Intellectual Property

The Hagens Berman intellectual property team has deep experience in all aspects of intellectual property litigation. We specialize in complex and significant damages cases against some of the world's largest corporations.

The firm is primarily engaged in patent and copyright infringement litigation at this time. We represent intellectual property owners, including inventors, universities, non-practicing entities, authors and other groups whose patent and copyright portfolios represents a significant creative and capital investment.

Our current and recent engagements include the following:

### DISNEY, FOX, MARVEL, PARAMOUNT COPYRIGHT LITIGATION

Hagens Berman currently represents Rearden LLC in three cases against Hollywood film studios. The complaint alleges that the studios are liable for thousands of unauthorized copies of Rearden's groundbreaking MOVA facial performance capture software, used by the studios for CG characters that appeared in seven major motion pictures. The complaint also alleges infringement of the MOVA trademark.

### ANGRY BIRDS TRADEMARK LITIGATION

Hagens Berman represented a Seattle artist who filed a lawsuit against Hartz Mountain Corporation — one of the nation's largest producers of pet-related products — claiming the company illegally sold the artist's trademarked Angry Birds pet toy line to video game giant Rovio Entertainment Ltd, robbing her of millions of dollars of royalty fees.

**RESULT:** Settled under confidential terms

### BOMBARDIER INC. PATENT LITIGATION

The firm represented Arctic Cat Inc. in patent infringement litigation against Bombardier Recreational Products and BRP U.S. Inc. The complaint alleges that Bombardier's Sea-Doo personal watercraft infringe Arctic Cat's patents covering temporary steerable thrust technology used when the rider turns in off-throttle situations.

**RESULT:** $46.7 million final judgment against defendants, trebling initial damages of $15.5 million awarded in a unanimous jury verdict

### NINTENDO PATENT LITIGATION

The firm represented Japan-based Shinsedai Company in patent infringement litigation against Nintendo. The suit alleged that our client's patents were infringed by various sports games for the Nintendo Wii.

**RESULT:** Settled under confidential terms

### SAMSUNG, LG, APPLE PATENT LITIGATION

The firm represented FlatWorld Interactives LLC in patent litigation against Apple, LG and Samsung. The complaints allege that the defendants' mobile handsets, tablets, media players and other devices infringe a FlatWorld patent covering the use of certain gestures to control touchscreen displays.

**RESULT:** Settled under confidential terms

Hagens Berman is also skilled in other aspects of intellectual property law, including trademark, trade dress, unfair competition, and trade secret litigation.

Unlike other intellectual property firms, Hagens Berman only represents plaintiffs. This reduces the risk of potential conflicts of interest which often create delays in deciding whether or not to take a case at larger firms.

PRACTICE AREAS

# Investor Fraud – Individual and Class Action Litigation

Investing is a speculative business involving assessment of a variety of risks that can only be properly weighed with full disclosure of accurate information. No investor should suffer undue risk or incur losses due to misrepresentations related to their investment decisions.

Our attorneys work for institutional and individual investors defrauded by unscrupulous corporate insiders and mutual funds. The firm vigorously pursues fraud recovery litigation, forcing corporations and mutual funds to answer to deceived investors.

Hagens Berman is one of the country's leading securities litigation firms advising clients in both individual and class-action cases. The firm has experience, dedication and a team with the horsepower required to drive complex cases to exemplary outcomes. Our attorneys are authorities in an array of issues unique to federal and state securities statutes and related laws. We use a variety of highly experienced experts as an integral part of our prosecution team. A few notable successes on behalf of our investor clients include:

### CHINA MEDIAEXPRESS HOLDINGS, INC. SECURITIES LITIGATION

Hagens Berman served as lead counsel in the case alleging on behalf of a class of investors that China MediaExpress Holdings made false and misleading statements, including misrepresentations about its revenues, the number of buses in its network and the nature of its business relationships. The lawsuit resulted in relief for investors valued at $535 million.

**RESULT:** $535 million settlement

### CHARLES SCHWAB YIELD PLUS SECURITIES LITIGATION

Lead counsel, alleging fraud in the management of the Schwab YieldPlus mutual fund.

**RESULT:** $235 million settlement

### AEQUITAS CAPITAL MANAGEMENT SECURITIES LITIGATION

Prosecuted class action against the bankers, lawyers and accountants who assisted Aequitas in carrying out a massive Ponzi scheme that defrauded investors of millions of dollars before the firm was shut down in 2016.

**RESULT:** $234 million in total settlements, representing the largest settlement of a securities lawsuit in Oregon history.

### JPMORGAN – MADOFF PONZI SCHEME LITIGATION

Case alleged that banking and investment giant JPMorgan was complicit in aiding Bernard Madoff's Ponzi scheme. Investors claim that JPMorgan operated as Bernard L. Madoff Investment Securities LLC's primary banker for more than 20 years.

**RESULT:** $218 million settlement amount for the class and a total of $2.2 billion paid from JPMorgan that will benefit victims of Madoff's Ponzi scheme

## MCKESSON

Hagens Berman filed this class action investor-rights derivative action based on the McKesson board's failure to monitor and oversee the company's opioid distribution operations resulting in hundreds of millions of dollars of potential damages from scores of lawsuits filed against McKesson.

**RESULT:** $175 million record-breaking derivative settlement and strong corporate governance changes

## OPPENHEIMER SECURITIES LITIGATION

Additional counsel for lead plaintiffs in class action alleging Oppenheimer misled investors regarding its Champion and Core Bond Funds.

**RESULT:** $100 million settlement

## TREMONT

Co-lead counsel in a case alleging Tremont Group Holdings (and its five Madoff feeder funds: Rye Select Broad Market Fund, L.P., Rye Select Broad Market Prime Fund, L.P., Rye Select Broad Market XL Fund, L.P., Rye Select Broad Market XL Portfolio Limited, and Rye Select Broad Market Portfolio Limited) breached its fiduciary duties by turning over $3.1 billion to Bernard Madoff. On Sept. 14, 2015, after nearly two years of negotiations and mediation, the court granted final approval of the plan of allocation and distribution of the funds which markets estimate could yield investors as much as $1.45 billion.

**RESULT:** $100 million plus negotiated bankruptcy proceed resulting in distributions of over $1 billion to investors

## BOEING

Uncovered critical production problems with the 777 airliner documented internally by Boeing, but swept under the rug until a pending merger with McDonnell Douglas was completed.

**RESULT:** $92.5 million record-breaking settlement

## ZUORA, INC. SECURITIES LITIGATION

The firm filed a securities fraud class action alleging misrepresentations and concealment of delays in implementing and integrating RevPro, the company's revenue recognition management software application. A $75.5 million settlement provided significant relief to investors.

**RESULT:** $75.5 million settlement

## MORRISON KNUDSEN

Filed a shareholder class action alleging that MK's senior officers concealed hundreds of millions in losses.

**RESULT:** $63 million settlement

## RAYTHEON/WASHINGTON GROUP

Charged Raytheon with deliberately misrepresenting the true financial condition of Raytheon Engineers & Constructors division in order to sell this division to the Washington Group at an artificially inflated price.

**RESULT:** $39 million settlement

## THERANOS INVESTOR LITIGATION

Hagens Berman represented Theranos investors in a lawsuit that states that Theranos and its officers set in motion a publicity campaign to raise billions of dollars for Theranos and themselves, and to induce investors to invest in Theranos, all the while knowing that its "revolutionary" blood test technology was essentially a hoax. In a case of first impression, the court upheld the investor claims where plaintiffs did not directly purchase their securities from Theranos, Elizabeth Holmes and Sunny Balwani, but through funds whose purpose included investing in Theranos.

**RESULT:** The firm secured a confidential settlement with Theranos, Holmes and Balwani ending the suit. The settlement also allowed for continued public access to depositions, video and exhibits which were featured prominently in various podcasts and streaming services, including **"Bad Blood the Final Chapter,"** Netflix's **"The Inventor: Out for Blood in Silicon Valley"** and Hulu's **"The Dropout."**

## U.S. WEST

Represented shareholders of U.S. West New Vector in a challenge to the proposed buyout of minority shareholders by U.S. West.

**RESULT:** Settlement achieved, resulting in a $63 million increase in the price of the buyout, and the proposed buyout was stayed

Our current casework includes:

## SPAC LITIGATION

Hagens Berman represents investors in a number of private securities class action lawsuits arising out of fraud and other misconduct in connection with private companies that went public through special purpose acquisition vehicle ("SPAC") business combinations.

SPACs are shell entities that raise money and list on an exchange, usually with the goal of merging with a private firm and taking it public. SPACS burst onto the scene in 2020, as a hot alternative to traditional initial public offerings, raising more than $80 billion raised in 2020 and more than $160 billion raised in 2021, alone.

The SEC has recently raised serious concerns regarding the information asymmetries, the potential for misleading information and fraud, and conflicts of interest inherent SPAC business combinations. Several high-profile SPAC debacles have resulted in serious allegations of green washing, false projections and other securities fraud, collectively costing investors billions of dollars in investment losses.

The Firm's attorneys, together with its investigators, accountants and economic consultants, are prosecuting a number of securities class actions brought on behalf of damaged SPAC investors. For example, Hagens Berman serves as the court-appointed counsel in Berkeley Lights, Danimer, Desktop Metal, Hyzon, and Redwire.

## COVID-19-RELATED CLASS ACTIONS

As COVID-19 has continued to spread across the United States, Hagens Berman has remained keenly focused on protecting investors from frauds, illicit schemes and other misconduct relating to COVID-19. For example, Hagens Berman investigated, filed a proprietary action and serves as court-appointed lead counsel in one of the first securities class actions arising from a fraudulent scheme for corporate insiders to profit from disseminating false and misleading information concerning a company's COVID-19 vaccine candidate, *In re Vaxart*, Inc. Sec. Litig., No. 3:20-cv-05949-VA (N.D. Cal.). The Firm and its co-counsel recently defeated in large part defendants' motions to dismiss in Vaxart.

## CANNABIS SECURITIES FRAUD

The expanding legalization and sale of cannabis in not only the U.S. but globally, spurred a wave of cannabis-related initial public offerings and mergers and acquisitions. But as investors would later learn, the nascent industry was rife with accounting fraud, false projections and egregious insider trading. Hagens Berman currently serves as co-lead counsel in *In re Aurora Cannabis Inc. Securities Litigation*, 2:19-cv-20588-JMV-JBC (D. N.J.). The Firm and its-counsel also recently obtained a $13 million settlement on behalf of investors in *Ortiz v. Canopy Growth Corp. et al.*, 2:19-cv-20543 (D. N.J.).

**U.S.-LISTED FOREIGN COMPANIES**

Investing in U.S.-listed foreign companies is a convenient way for U.S. investors to gain exposure to vast and fast-growing foreign economies. But the inability to inspect the audits of certain foreign firms, together with the spectacular collapses of several large issuers, have shined the light on rampant financial fraud at foreign issuers trading on American exchanges. The firm is currently leading the prosecution in a number of private securities class actions against U.S.-listed foreign companies, including against JOYY, Sasol, SOS and Wirecard.

**TECHNOLOGY SECTOR**

Claims of lucrative contracts, investments and acquisitions, or of new product lines are common ways in which issuers in the technology space are about to get investors excited about the company so that they will purchase shares. But in recent history, several high-profile technology firms have been accused of attempting to pump their share price through fictitious statements about their products, prospects and economic activity. The firm was appointed lead counsel in an action against a recent IPO cloud application company, *Roberts v. Zuora Inc. et al*, 3:19-cv-03422 (N.D. Cal.), where the firm and its client have defeated defendants' motion to dismiss, certified a class of investors, and are preparing for trial. The firm was also appointed lead counsel against tech real-estate marketplace company Zillow over its failed house-flipping business, *Barua v. Zillow Group, Inc., et al.*, 2:21-cv-01551-TSZ (W. Wash.).

**WHISTLEBLOWERS**

In an effort to curb Wall Street excesses, Congress passed the Dodd-Frank Wall Street Reform and Consumer Protection Act, which built vigorous whistleblower protections into the legislation known as the "Wall Street Tip-Off Law." The law empowers the U.S. Securities and Exchange Commission to award between 10 and 30 percent of any monetary sanctions recovered in excess of $1 million to whistleblowers who provide information leading to a successful SEC enforcement. It also provides similar rewards for whistleblowers reporting fraud in the commodities markets.

Hagens Berman represents whistleblowers with claims involving violations of the Securities Exchange Act and the Commodities Exchange Act. Unlike traditional whistleblower firms who have pivoted into this area, Hagens Berman has a strong background and history of success in securities, antitrust and other areas of fraud enforcement, making us an ideal partner for these cases. Our matters before the SEC/CFTC include a range of claims, including market manipulation and fraudulent financial statements.

PRACTICE AREAS

# Personal Injury and Abuse

For nearly two decades, Hagens Berman's blend of professional expertise and commitment to our clients has made our firm one of the most well-respected and successful mass tort and personal injury law firms in the nation. We deliver exceptional results for our clients by obtaining impressive verdicts and settlements in personal injury litigation.

Our attorneys have experience in wrongful death, brain injury and other catastrophic injury cases, as well as deep experience in social work negligence, medical malpractice, nursing home negligence and sexual abuse cases.

Hagens Berman also has unparalleled experience in very specific areas of abuse law, recovering damages on behalf of some of the most vulnerable people in our society.

### VEHICLE COLLISION/TRAUMATIC INJURIES

Hagens Berman is an established leader in traumatic injury litigation. Our attorneys fight for the rights of injured athletes, slip-and-fall victims, victims of life-changing collisions and car crashes, those injured in the workplace and other victims of negligence who have suffered severe injuries. Our firm has successfully litigated personal injury claims involving traumatic brain injuries, spinal cord damage and other catastrophic injuries that require immediate care and leave victims physically, emotionally and financially vulnerable.

### MEDICAL MALPRACTICE

Litigating a medical malpractice case takes acute specialization and knowledge of medical treatments and medicine. Notwithstanding these facts, Hagens Berman pursues meritorious medical malpractice claims in instances where clients have suffered life-altering personal injuries. Our firm's personal injury attorneys handle medical malpractice cases with the dedication and detail necessary to make victims whole. Hagens Berman is very selective in accepting medical malpractice cases and has been successful in recovering significant compensation for victims of medical error and negligence.

### NURSING HOME NEGLIGENCE

Nursing home negligence is a growing problem throughout the nation. As our population ages, reports of elder abuse and nursing home negligence continue to rise. Today, elder abuse is one of the most rapidly escalating social problems in our society. Hagens Berman is uniquely qualified to represent victims of elder abuse and nursing home negligence. Our attorneys have secured outstanding settlements in this area of law and have committed to holding nursing homes accountable for wrongdoing.

### SEXUAL ABUSE LITIGATION

Hagens Berman has represented a wide spectrum of individuals who have been victims of sexual abuse, including children and developmentally disabled adults. We treat each case individually, with compassion and attention to detail and have the expertise, resources and track record to stand up to the toughest opponents. In the area of sexual abuse, our attorneys have obtained record-breaking verdicts, including the largest personal injury verdict ever upheld by an

appellate court in the state of Washington. More about Hagens Berman's sexual abuse practice can be found on the Sexual Abuse and Harassment practice area page.

## SOCIAL WORK NEGLIGENCE

Social workers play a critical role in the daily lives of our nation's most vulnerable citizens. Social workers, assigned to protect children, the developmentally disabled and elderly adults, are responsible for critical aspects of the lives of tens of thousands of citizens who are unable to protect themselves. Many social workers do a fine job. Tragically, many do not. The results are often catastrophic when a social worker fails to monitor and protect his or her vulnerable client. All too often, the failure to protect a child or disabled citizen leads to injury or sexual victimization by predators. With more than $40 million in recoveries on behalf of vulnerable citizens who were neglected by social workers, Hagens Berman is the most experienced, successful and knowledgeable group of attorneys in this dynamic area of law.

## WORKPLACE INJURY

While many workplace injury claims are precluded by workers' compensation laws, many instances of workplace injury are caused by the negligence and dangerous oversight of third parties. In these instances, victims may have valid claims. Hagens Berman's personal injury legal team has successfully brought many workplace injury claims, holding third parties liable for our clients' serious bodily injuries. This includes successfully litigating claims under the Washington Law Against Discrimination, which protects all people in the state from unfair and discriminatory practices in employment and public accommodations access.

PRACTICE AREAS

# Sexual Abuse and Harassment

Hagens Berman's attorneys recently achieved a nationwide sexual harassment settlement on behalf of 16,000 women and has represented survivors of abuse by Harvey Weinstein, as well as USC alumnae abused by the university's former gynecologist, Dr. George Tyndall. Our firm is committed to protecting and empowering individuals.

At Hagens Berman, we believe no one is above the law, and that no position of power should shield someone from being held accountable.

Right now, we are witnessing the silencing, disparaging and abuse that people everywhere in this nation are subjected to. Many are subjected to a system that does not respect them. The backlash against the brave survivors who have come forward to report sexual assault and harassment is unacceptable.

We believe survivors. Our firm's sexual harassment attorneys have protected their rights for decades, and we are dedicated to upholding the rights of the most vulnerable. Survivors should be heard, respected and protected from systemic abuse.

Sexual harassment is present and pervasive in many workplaces, industries and professional environments, and has damaged the lives and careers of countless individuals. It affects hundreds of thousands of people in the U.S., 51 percent of which are harassed by an authority figure, making it harder to come forward for fear of retaliation.

All too often, acts of sexual harassment and sexual misconduct are protected by systemic cover-ups by companies and organized agreements between those in power. Particular industries are more susceptible to these cover-ups including: entertainment and sports media, STEM, law enforcement, food service, politics, military, tech, finance, hospitality and transportation. But sexual harassment is pervasive in many other environments and is often obscured from view for years.

In these industries, survivors are routinely subjected to widespread policies and practices that create an environment promoting quid pro quo arrangements in which survivors feel pressured to take part in sexual acts and feel powerless against unwanted advancements. Survivors are also often punished for not taking part.

The firm achieved a nationwide sexual harassment settlement on behalf of 16,000 women and has represented survivors of sexual harassment and abuse by Harvey Weinstein, as well as USC alumnae abused by the university's former gynecologist, Dr. George Tyndall.

Representative sexual harassment successes and cases on behalf of our clients include:

## USC, DR. TYNDALL SEXUAL HARASSMENT LITIGATION

In May of 2018, Hagens Berman filed a class-action lawsuit against the University of Southern California (USC) and Dr. George Tyndall, the full-time gynecologist at USC's student health clinic. Tyndall sexually harassed, violated and engaged in wildly inappropriate behavior with female students who sought his medical care, according to news outlets, which stated he saw tens of thousands of female patients during his time at USC.

Official complaints of Dr. Tyndall's behavior began to surface at USC in the 1990s, but despite the university's knowledge of Dr. Tyndall's behavior, it did not report him to the agency responsible for protecting the public from problem doctors. USC did nothing, for decades, as more and more female students were sent into Dr. Tyndall's office.

The settlement's three-tier structure allowed class members to choose how much they wanted to engage with the claims process. Those who did not want to revisit a private, traumatic event could simply keep the guaranteed Tier 1 payment of $2,500. Those who chose to provide additional information in a claim form about their experience with Tyndall and how it affected them were eligible for up to $20,000 and those who chose to provide an interview were eligible for up to $250,000. The special master and her team of experts evaluated claims and allocated awards to Tier 2 and Tier 3 claimants. This focus on choice ensured that all class members received compensation while giving each class member the autonomy to decide for herself how involved she wanted to be in the settlement process.

The class-action settlement also went beyond monetary compensation and forced USC to implement real changes to their policies and procedures to help ensure that what happened at USC does not happen again.

**RESULT:** $215 million settlement

## HARVEY WEINSTEIN SEXUAL HARASSMENT

In a first-of-its-kind class-action lawsuit, Hagens Berman represented women on behalf of a class of all victims who were harassed or otherwise assaulted by Harvey Weinstein, seeking to hold him and his co-conspirators accountable for a years-long pattern of sexual harassment and cover-ups.

The lawsuit, filed Nov. 15, 2017, in the U.S. District Court for the Central District of California alleged that Miramax and The Weinstein Company (which Weinstein co-founded) facilitated Weinstein's organized pattern of predatory behavior, equating to an enterprise that violates the Racketeer Influenced and Corrupt Organizations Act, commonly referred to as the RICO Act, the same law brought against members of the Mafia for organized criminal behavior.

The lawsuit brought various charges against Weinstein and his companies for violating the RICO Act, mail and wire fraud, assault, civil battery, negligent supervision and retention, and intentional infliction of emotional distress.

**RESULT:** $17.1 million Sexual Misconduct Claims Fund

## FAIRFAX BEHAVIORAL HEALTH

Attorneys from Hagens Berman filed a class-action complaint on behalf of a proposed class of hundreds of patients that were arbitrarily strip-searched and video recorded while receiving treatment for mental illness at Fairfax Behavioral Health in Washington state.

One of the suit's named plaintiffs recalls being ordered to undress for an invasive strip-search when she presented for inpatient admission, even after disclosing her history of sexual abuse to Fairfax staff. She was not given a gown or towel to cover up during the search, and the staff member watched her undress and left the door open where other Fairfax staff members could see her.

Video cameras were located in the hallway, the holding area outside bathroom, and the room where the strip search was conducted. The cameras recorded her undressing and the strip-search.

The complaint states that Fairfax's practices — and its failure to limit the discretion of its staff — means that a substantial number of its mental health patients do not have reasonable access to inpatient care for mental health disorders.

**RESULT:** Settlement under confidential terms

## CB RICHARD ELLIS SEXUAL HARASSMENT LITIGATION

Filed a class action against CB Richard Ellis, Inc., on behalf of 16,000 current and former female employees who alleged that the company fostered a climate of severe sexual harassment and discriminated against female employees by subjecting them to a hostile, intimidating and offensive work environment, also resulting in emotional distress and other physical and economic injuries to the class. Under the terms of the settlement, the company agreed to increase

supervisor accountability, address sexually inappropriate conduct in the workplace, enhance record-keeping practices and conduct annual reviews of settlement compliance by a court appointed monitor.

**RESULT**: Innovative and unprecedented settlement requiring changes to human resources policies and procedures, as well as the potential for individual awards of up to $150,000 per class member

### KING COUNTY CHILD SEX ABUSE

Hagens Berman represented the victim of eight years of sexual abuse as a minor, at the hands of her brother-in-law. The lawsuit states that from 2005 to 2012, the case's defendant repeatedly sexually abused Hagens Berman's client. She was only eleven years old when the abuse began and was a minor during the entire duration of the abuse. In 2013, the state of Washington charged Willis with three counts of child molestation, to which he pled guilty. Court documents state, "Joshua Blaine Willis used his position of trust, confidence, or fiduciary responsibility to facilitate the commission of the … offense[s]…"

Court documents in the civil case filed in June of 2017 detail Willis' highly disgusting and horrifying actions including groping and molestation, exposing himself and other highly sexual and inappropriate behavior.

Following the years of sexual abuse, Hagens Berman's client suffers from Post-Traumatic Stress Disorder and the court awarded damages for treatment of her condition and other emotional distress, as well as loss of earning capacity and other economic damages in her "struggle with consistency and stability."

**RESULT**: $4,031,000 judgment

### STATE OF WASHINGTON SEXUAL ASSAULT, DSHS

Our client, a disabled Spokane, Wash. woman, was a patient at Eastern State Hospital. The hospital assigned a male nurse to provide one-on-one care and supervision for our client. The nurse trapped our client in a laundry room and raped her. Hagens Berman determined that the nurse, a state employee, had been reprimanded and accused on previous occasions of sexual assault of vulnerable patients. Hagens Berman initiated a negligence and civil rights lawsuit against the hospital and its administrators for failing to protect our client from a known sexual predator and for allowing that predator to remain on staff with the responsibility to care for vulnerable patients.

**RESULT**: $2.5 million settlement

### WORKPLACE SEXUAL HARASSMENT & OTHER INVESTIGATIONS

Sexual harassment is present and pervasive in many workplaces. It affects hundreds of thousands of women and men in the U.S., 51 percent of which are harassed by a supervisor, making it harder to come forward for fear of retaliation.

All too often, sexual harassment in the workplace is protected by systemic cover-ups by companies and those in power. Particular industries are more susceptible to these cover-ups including: commercial real estate, law enforcement, politics, military, tech, entertainment, sports media, finance, restaurants and hospitality, advertising and trucking.

In these industries, employees are routinely subjected to widespread policies that create an environment promoting quid pro quo arrangements in which they feel pressured to take part in sexual acts and feel powerless against unwanted advancements. Employees are also often punished for not taking part.

Hagens Berman is also investigating sexual harassment and abuse in various specific areas of study, including STEM programs. The firm also serves as a watchdog for industries where misconduct is particularly prevalent. These include hospitality, college campuses and research labs, boarding schools and the entertainment industry, especially within the area of professional music.

The firm remains committed to uncovering instances of sexual harassment in the workplace, and within fields of study and areas prone to harboring misconduct and abusive behavior.

PRACTICE AREAS
# Sports Litigation

Hagens Berman has one of the nation's most highly regarded sports litigation law practices. Our attorneys are the vanguard of new and innovative legal approaches to protect the rights of professional and college athletes in cases against large, well-financed interests, including the National Collegiate Athletic Association (NCAA), the National Football League (NFL), the Fédération Internationale de Football Association (FIFA) and other sports governing institutions.

## NCAA SCHOLARSHIPS/GRANT-IN-AID LITIGATION

In a first-of-its-kind antitrust action and far-reaching case affecting approximately 40,000 Division I college athletes, Hagens Berman filed a class-action against the NCAA and its most powerful member conferences, including the Pac-12, Big Ten, Big-12, SEC and ACC, claiming these entities violated federal antitrust laws by drastically reducing the number of scholarships and financial aid student-athletes receive to an amount below the actual cost of attendance and far below what the free market would bear.

The damages portion of the case resulted in an estimated average amount of $6,500 to each eligible class member who played his or her sport for four years.

In March of 2019, the firm as co-lead trial counsel on the injunctive aspect of the case obtained a court order that resulted in a change of NCAA rules limiting the financial treatment of athletes. That injunction was affirmed in a unanimous 9-0 Supreme Court victory, with the injunctive relief culminating in a monumental victory for plaintiffs in the case and for college athletes in years to come. The Court ruled that NCAA college athletes should be able to receive compensation from schools or conferences for athletic services other than cash compensation unfettered to education-related expenses, prohibiting the NCAA from enforcing rules limiting those payments. The media called the firm's victory in the scholarships case against the NCAA a "major ruling" (ABC World News Tonight), that "will change the game" (ABC Good Morning America), "…the highest court left the NCAA unhoused and naked, with nothing left but its pretensions," (The Washington Post), it "delivered a heavy blow," (AP), and leaves the NCAA "more vulnerable than ever."

**RESULT:** $208 million settlement regarding the damages portion of the case, 100% of estimated single damages, followed by a unanimous 9-0 decision in favor of plaintiffs from the U.S. Supreme Court regarding the injunctive portion. The media called the firm's victory in the scholarships case against the NCAA a "major ruling" (ABC World News Tonight), that "will change the game" (ABC Good Morning America), "…the highest court left the NCAA unhoused and naked, with nothing left but its pretensions," (The Washington Post), it "delivered a heavy blow," (AP), and leaves the NCAA "more vulnerable than ever."

## NCAA CONCUSSIONS LITIGATION

Cases of particular nationwide interest for fans, athletes and the general public involve numerous cases filed by Hagens Berman against the NCAA. Recently, the firm took on the NCAA for its failure to prevent concussions and protect student-athletes who suffered concussions. Steve Berman served as lead counsel in multi-district litigation and led the firm to finalize a settlement bringing sweeping changes to the NCAA's approach to concussion treatment and prevention.

The settlement's medical monitoring program is overseen by a medical science committee appointed by the court that screens and tracks concussions. Examinations include neurological and neurocognitive assessments to evaluate potential injuries. Each player now receives a seasonal baseline test to better assess concussions sustained during the season. All athletes who have sustained a concussion will now need to be cleared before returning to play. A medical professional trained in the diagnosis of concussions will be present at all games involving contact sports. The settlement also creates reporting mandates for concussions and their treatment.

**RESULT**: 50-year medical monitoring settlement funded by a $70 million medical monitoring fund, paid by the NCAA and its insurers, as well as significant changes to and enforcement of the NCAA's concussion management policies and return-to-play guidelines

### NCAA & EA PLAYER NAME, IMAGE & LIKENESS (NIL) RIGHTS IN VIDEOGAMES

Hagens Berman attorneys represented student-athletes who claimed that the NCAA illegally used their names, images and likenesses in Electronic Arts' popular NCAA Football, Basketball and March Madness videogame series.

The firm began this case with the knowledge that the NCAA and member schools were resolute in keeping as much control over student-athletes as possible and fought hard to ensure that plaintiffs would not be exploited for profit, especially by the organization that vowed to prevent the college athletes from exploitation. Settlement checks were sent to about 15,000 players, with average amounts of $1,100 and some up to $7,600.

The firm also represented NFL legend Jim Brown in litigation against EA for improperly using his likeness in its NFL video games, culminating in a $600,000 voluntary judgment offered by the video game manufacturer.

**RESULT**: Combined $60 million settlement, marking the first time the NCAA agreed to a settlement that pays student-athletes for acts related to their participation in athletics

### CONTINUED NIL LITIGATION

Hagens Berman has continued efforts against the NCAA in an additional pending antitrust case regarding NIL rights. In June 2020, the firm filed its case against the NCAA and the five most powerful conferences — the Pac-12, Big Ten, Big 12, SEC and ACC — claiming the defendants had knowingly violated federal antitrust laws in abiding by a particular subset of NCAA amateurism rules that prohibit college athletes from receiving anything of value in exchange for the commercial use of their name and likeness. The firm holds that the NCAA's regulations illegally limit the compensation that Division I college athletes may receive for the use of their NIL and athletic reputations.

In unanimously upholding the rights of NCAA athletes in *Alston*, Justice Gorsuch wrote the NCAA had sought "immunity from the normal operation of the antitrust laws," and Justice Kavanaugh stated, "The NCAA is not above the law." The firm looks forward to continuing to uphold that same sentiment regarding NCAA athlete NIL rights.

In July 2021, following the firm's victory in the *Alston* case and denial of defendants' motion to dismiss in the NIL Litigation, the NCAA chose to temporarily lift rules restricting certain NIL deals in what the firm believes will be the first step in another massive change in college sports to support college athletes.

### FIFA & U.S. SOCCER CONCUSSIONS

Several soccer players filed a class action against U.S. Soccer's governing bodies, which led to life-changing safety measures brought to millions of U.S. youth soccer players. Players represented by Hagens Berman alleged these groups failed to adopt effective policies to evaluate and manage concussions, leaving millions of players vulnerable to long-lasting brain injury.

The settlement against six of the largest youth soccer organizations greatly diminished risks of concussions and traumatic head injuries. Prior to the settlement, no rule limited headers in children's soccer. The settlement also highlights the importance of on-staff medical personnel at youth tournaments. Under the settlement, youth players who have sustained a concussion during practice or a game will need to follow certain return-to-play protocols before they are allowed to play again. Steve Berman, a youth soccer coach, has seen first-hand the settlement's impacts and life-changing effects every time young athletes take to the field.

**RESULT**: New return-to-play guidelines, benchmarks for concussion measurement and safety protocols, as well as new safety guidelines throughout U.S. Soccer, including completely eliminating heading for youth soccer's youngest players

## NCAA TRANSFER ANTITRUST

Hagens Berman took on the NCAA for several highly recruited college athletes whose scholarships were revoked after a coaching change, or after the student-athletes sought to transfer to another NCAA-member school. The suit claimed the organization's limits and transfer regulations violate antitrust law.

The firm's case hinges on a destructive double standard. While non-athlete students are free to transfer and are eligible for a new scholarship without waiting a year, and coaches often transfer to the tune of a hefty pay raise, student-athletes are penalized and forced to sit out a year before they can play elsewhere, making them much less sought after by other college athletic programs. Hagens Berman continues to fight for student-athletes' rights to be treated fairly and terminate the NCAA's anticompetitive practices and overbearing regulations that limit players' options and freedoms.

## POP WARNER

Hagens Berman represented youth athletes who have suffered traumatic brain injuries due to gross negligence and filed a lawsuit on behalf of former Pop Warner football player Donnovan Hill and his mother Crystal Dixon. The suit claims that the league insisted Hill use improper and dangerous tackling techniques which left the then 13-year-old paralyzed from the neck down.

Hagens Berman sought to hold Pop Warner, its affiliates, Hill's coaches and members of the Lakewood Pop Warner board of directors accountable for the coaches' repeated and incorrect instruction that Hill and his teammates tackle opposing players by leading with the head. Sadly, months after the firm's settlement was reached in January 2016, 17-year-old Donnovan passed away. The firm believes that his case will continue to have a lasting impact on young athletes for generations and will help ensure safety in youth sports.

**RESULT:** Confidential settlement on behalf of Donnovan and his mother

## MLB FOUL BALL INJURIES

Hagens Berman filed a class-action lawsuit on behalf of baseball fans, seeking to extend safety netting to all major and minor league ballparks from foul pole to foul pole. The suit alleges that tens of millions attend an MLB game annually, and every year fans of all ages, but often children, suffer horrific and preventable injuries, such as blindness, skull fractures, severe concussions and brain hemorrhages when struck by a fast-moving ball or flying shrapnel from a shattered bat. The lawsuit was dismissed with the court ruling that the plaintiffs lacked standing because the chance of getting hit by a ball is remote.

While the firm commends the league for finally addressing the serious safety issue at stake in December 2015, the firm continues to urge MLB and its commissioner to make these more than recommendations to help end senseless and avoidable injuries to baseball's biggest fans. We believe our case sparked the eventual move to netting. After one of the owners of the Mariners belittled Steve for having filed the case, the firm happily saw the addition of netting extended to the foul poles at T-Mobile Park in the firm's headquarters of Seattle.

**RESULT:** MLB's commissioner Rob Manfred issued a recommendation to all 30 MLB teams to implement extended safety measures, including additional safety netting at ballparks

## OTHER SPORTS CASES

In addition to its class actions, Hagens Berman has filed several individual cases to uphold the rights of athletes and ensure a fair and safe environment. The firm has filed multiple individual cases to address concussions and other traumatic head injuries among student-athletes at NCAA schools and in youth sports. Hagens Berman continues to represent the interests of athletes and find innovative and effective applications of the law to uphold players' rights.

The firm has also brought many concussions cases on behalf of individual athletes, challenging large universities and institutions for the rights those who have suffered irreversible damage due to gross negligence and lack of even the most basic concussion-management guidelines.

PRACTICE AREAS

# Whistleblower Litigation

Hagens Berman successfully represents whistleblowers under several whistleblower programs which financially reward private citizens who blow the whistle on fraud.

In cases brought under federal and state False Claims Act statutes, whistleblowers report fraud committed against the government and may sue those individuals or companies responsible, helping the government recover losses in return for a share of the damages.

In cases brought under the Dodd-Frank Whistleblower Programs of the Securities and Exchange Commission and the Commodity Futures Trading Commission, whistleblowers are awarded for original information that supports successful enforcement actions by those agencies. This is also true of the whistleblower programs of the Internal Revenue Service and the Department of Treasury.

Our depth and reach as a leading international plaintiffs' firm with significant success in cases against industry leaders in finance, health care, pharmaceuticals, the defense industry, consumer products, and many others leads whistleblowers to seek us to represent them in claims alleging fraud against the many of the largest and most successful corporations in the world.

Our firm has challenged these industries with great, unparalleled success, and has achieved several milestone victories for our whistleblower clients. With several former prosecutors and other government attorneys in its ranks and nearly 30-years of history of working with governments across the country, including close working relationships with senior attorneys at the U.S. Department of Justice, SEC, CFTC and state Attorneys General offices, the firm is second-to-none in its ability to advocate for whistleblowers.

The whistleblower programs under which Hagens Berman pursues cases include:

### FALSE CLAIMS ACT

Under the federal False Claims Act, and more than 30 similar state laws, a whistleblower reports fraud committed against the government, and under the law's *qui tam* provision, may file suit on behalf of the government to recover falsely and fraudulently obtained funds. These False Claims Acts statutes are the more effective tools in fighting Medicare and Medicaid fraud, defense contractor fraud, financial fraud, procurement and other contracting fraud, education fraud, and other types of fraud perpetrated against governments.

Under the False Claims Act, the whistleblower, known as a "relator," initially files a complaint under seal of the court, giving it only to the government and not to the defendant, which permits the government to investigate confidentially. After the investigation, the government may take over the whistleblower's suit, or it may decline. If the government declines, the whistleblower can proceed alone on his or her behalf. In successful suits, the whistleblower normally receives between 15 and 30 percent of the government's recovery as a reward.

HAGENS BERMAN SOBOL SHAPIRO LLP

Since 1986, federal and state false claims act recoveries have totaled more than $72 billion. Some examples of our cases brought under the False Claims Act include:

### U.S. EX REL. LAGOW V. BANK OF AMERICA

Represented former District Manager at Landsafe, Countrywide Financial's mortgage appraisal arm, who alleged systematic abuse of appraisal requirements as a means of inflating mortgage values.

**RESULT**: $1 billion settlement and substantial client reward

### U.S. EX REL. MACKLER V. BANK OF AMERICA

Represented a whistleblower who alleged that Bank of America failed to satisfy material conditions of its government contract to provide homeowners mortgage relief under the HAMP program.

**RESULT:** Settled as part of the 2012 global mortgage settlement, resulting in a substantial award to our client

### U.S. EX REL. HORWITZ V. AMGEN

Represented Dr. Marshall S. Horwitz, who played a key role in uncovering an illegal scheme to manipulate the scientific record regarding two of Amgen's blockbuster drugs.

**RESULT:** $762 million in criminal and civil penalties levied by the U.S. Department of Justice and a substantial award to our client

### U.S. EX REL. DOE V. US WORLD MEDS LLC

Represented a Senior Medical Director challenging off-label promotion and unlawful kickbacks to medical providers for use of its injectable products.

**RESULT:** Settled with a substantial award to our client.

### U.S. EX REL. KITE V. BROOKHAVEN MEMORIAL, ET AL.

Represented a health care finance expert in this complex, declined False Claims Act case against several large hospitals who committed Medicare fraud through false claims for "outlier" payments.

**RESULT:** Settlements with every hospital defendant and a substantial award for our client

### U.S. EX REL. THOMAS V. SOUND INPATIENT PHYSICIANS INC.

Represented a former regional vice president of operations for Sound Physicians, who blew the whistle on Sound's alleged misconduct.

**RESULT:** $14.5 million in payments to the U.S. government by Tacoma-based Sound Physicians and a substantial award to our client

### U.S. EX REL. PLAINTIFFS V. CENTER FOR DIAGNOSTIC IMAGING INC.

Hagens Berman joined as lead trial counsel a qui tam lawsuit on behalf of two whistleblowers against Center for Diagnostic Imaging, Inc. (CDI), alleging that CDI violated anti-kickback laws and defrauded federally funded health programs.

**RESULT:** Through litigation we increased the settlement and secured a substantial award for our client.

### MEDTRONIC

Represented a top sales representative in this action challenging fraudulent medical device applications to the FDA and off-label promotion of its biliary devices.

**RESULT:** Secured a confidential settlement for our client.

## SECURITIES AND EXCHANGE COMMISSION / COMMODITY FUTURES TRADING COMMISSION

Since implementation of the SEC/CFTC Dodd Frank whistleblower programs in 2011, Hagens Berman has become a leading firm representing whistleblowers with claims involving violations of the Securities Exchange Act and the Commodities Exchange Act.

Unlike the False Claims Act, whistleblowers under the SEC and CFTC programs do not file a sealed lawsuit. Instead, they provide information directly to the SEC or the CFTC regarding violations of the federal securities or commodities laws. If the whistleblower's information leads to an enforcement action, they may be entitled to between 10 and 30 percent of the recovery.

Our firm has represented high-profile financial fraud whistleblowers, including in cases with front-page coverage in the Wall Street Journal and other respected publications. We were the first firm to represent a whistleblower whose complaint led to the criminal extradition of a market manipulator and the firm who represented a client whose complaint resulted in the largest fines ever levied against financial exchanges, including BATS and NYSE.

The firm represents several high-level Wall Street veterans in several areas of finance and trading as well as several directors and management level personnel at large corporations around the world.

Hagens Berman has worked closely in support of top government officials and enforcement personnel at both the SEC and CFTC across their several regional offices, establishing the credibility necessary to bring a case that is closely examined and acted upon.

Though many cases remain confidential in perpetuity at client request, a few of the firm's most recent whistleblower cases in this area include:

### EDGA EXCHANGE INC. AND EDGX EXCHANGE INC.

Represented HFT whistleblower and market expert, Haim Bodek, in an SEC fraud whistleblower case against two exchanges formerly owned by Direct Edge Holdings and since acquired by Bats Global Markets challenging undisclosed and improper practices undermining fair and orderly markets.

**RESULT:** Record-breaking $14 million fine secured by the U.S. Securities and Exchange Commission against defendants, the largest ever brought against a financial exchange at the time This resulted in a substantial award to our client.

### NAV SARAO FUTURES LIMITED PLC

Represented an anonymous market expert whistleblower who brought his concerns and original analysis to the CFTC after hundreds of hours spent analyzing data and other information regarding manipulation of the S&P 500 eMini.

**RESULT:** The market manipulator Mr. Sarao was criminally extradited and pled guilty to market manipulation and was forced to disgorge his ill-gotten gains. Our client received a substantial award.

### NEW YORK STOCK EXCHANGE (NYSE)

Represented Mr. Bodek in another successful SEC whistleblower complaint against a financial exchange for violations of SEC rules.

**RESULT:** The SEC secured a record fine against NYSE and our client received a substantial award.

### CARGILL

Represented the whistleblower responsible for the CFTC's action against the largest privately held company in the U.S., challenging Cargill's misconduct in providing inaccurate information on swaps and failures to supervise.

**RESULT:** Our client received a substantial award from the CFTC's successful enforcement action.

### GRANT THORNTON

Represented a whistleblower who brought allegations that a leading accounting and audit firm ignored red flags and conducted materially deficient audits of a public traded company about which our client reported.

**RESULT:** Grant Thornton was ordered to pay a fine to the SEC and our client received a substantial award.

### MODDHA INTERACTIVE INC. ET AL.

Represented the whistleblower who sparked the successful investigation and prosecution of a "hi-tech scam" investment fraud that resulted in freezing of assets.

**RESULT:** Defendants were ordered to pay a fine and penalties and our client shall receive an award from monies collected.

### INTERNAL REVENUE SERVICE

Hagens Berman also confidentially represents whistleblowers under the IRS whistleblower program enacted with the Tax Relief and Health Care Act of 2006. These cases enforced by the IRS are generally not made public.

The IRS program offers rewards to those who come forward with information about persons, corporations or any other entity that cheats on its taxes. In the event of a successful recovery of government funds, a whistleblower can be rewarded with up to 30 percent of the overall amount collected in taxes, penalties and legal fees.

Hagens Berman helps IRS whistleblowers present specific, credible tax fraud information to the IRS. Unlike some traditional False Claims Act firms, Hagens Berman has forensic accounting and tax fraud experience representing governments facing lost tax revenue due to fraud, making us well-positioned to represent IRS whistleblowers, as we currently do in cases with clients from around the world challenging evasion of U.S. tax laws.

### ANTI-MONEY LAUNDERING

The most recent whistleblower bounty program is the Anti-Money-Laundering (AML) program operated by the Department of Treasury's Financial Crimes Enforcement Unit (FinCEN), strengthened in 2023 and offering whistleblower retaliation and confidentiality protections in reporting potential violations of AML laws by companies subject to the Bank Secrecy Act. The program also patterns itself on the Dodd-Frank whistleblower programs of the SEC and CFTC and offers similar awards to potential whistleblowers.

Hagens Berman has expanded its efforts to represent these AML whistleblowers.

HAGENS  BERMAN  SOBOL  SHAPIRO LLP



APPELLATE VICTORIES

APPELLATE VICTORIES

# Strengthening Consumer Law

At Hagens Berman, we distinguish ourselves not merely by the results we obtain, but by how we obtain them. Few class-action firms have our firm's combination of resources and acumen to see a case through as long as needed to obtain a favorable outcome. Our attorneys were instrumental in obtaining these federal appellate decisions that have shaped consumer law and bolstered the rights of millions nationwide:

- *Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299 (11th Cir. 2023) (affirming class certification under laws of several states and remanding for trial)

- *Hernandez v. Illinois Inst. of Tech*., 63 F.4th 661 (7th Cir. 2023) (claims for breach of contract and unjust enrichment upheld for failure to provide in-person education during COVID-19 pandemic)

- *In re Evenflo Co., Inc., Mktg., Sales Pracs. & Prod. Liab. Litig*., 54 F.4th 28, 32 (1st Cir. 2022) (consumers had standing to challenge overpayment for defective car booster seats)

- *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.,* 27 F.4th 291 (4th Cir. 2022) (affirming fee award as authorized by Class Action Fairness Act)

- *NCAA v. Alston*, 141 S. Ct. 2141 (2021) (landmark decision invalidating NCAA antitrust restrictions on compensating student athletes)

- *Shaffer v. George Washington Univ.*, 27 F.4th 754 (D.C. Cir. 2022) (students adequately alleged universities breached contract to provide in-person education during COVID-19 pandemic)

- *United Food & Com. Workers Loc. 1776 & Participating Emps. Health & Welfare Fund v. Takeda Pharm. Co. Ltd*., 11 F.4th 118 (2d Cir. 2021) (monopolization sufficiently alleged and brand drug manufacturer's combination patents did not claim brand drug under Hatch-Waxman Act)

- *Cherry v. Dometic Corp.*, 986 F.3d 1296 (11th Cir. 2021) (administrative feasibility identifying absent class members not required for class certification)

- *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.,* 967 F.3d 264 (3d Cir. 2020) (upholding certified class of direct purchasers alleging anticompetitive conduct impeding market entry of generic versions of Suboxone)

- *In re NCAA Grant-in-Aid Cap Antitrust Litig.*, 958 F.3d 1239 (9th Cir. 2020) (affirming injunction in favor of student athletes against NCAA, later sustained by Supreme Court in *NCAA v. Alston*, 141 S. Ct. 1231 (2020))

- *In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471 (4th Cir. 2020) (approving class action settlement concerning defective laminate flooring)

- *In re Lantus Direct Purchaser Antitrust Litig.*, 950 F.3d 1 (1st Cir. 2020) (drug manufacturer improperly listed insulin patent in FDA's Orange Book to extend monopoly)

- *In re Avandia Mktg., Sales & Prod. Liab. Litig.,* 945 F.3d 749 (3d Cir. 2019) (state law claims against manufacturer of type-2 diabetes drug not preempted by federal law)

- *In re Hyundai & Kia Fuel Econ. Litig.,* 926 F.3d 539 (9th Cir. 2019) (*en banc*) (upholding nationwide settlement class and providing guidance for district courts on choice-of-law inquiry in settlement context)

- *City of Miami v. Wells Fargo & Co.,* 923 F.3d 1260 (11th Cir. 2019) (municipality adequately alleged causation for discrimination violating Fair Housing Act)

- *In re Avandia Mktg., Sales Pracs. & Prod. Liab. Litig.,* 924 F.3d 662 (3d Cir. 2019) (vacating protective order for impeding common law right of public access to court filings)

- *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.,* 895 F.3d 597 (9th Cir. 2018) (affirming $10 billion nationwide settlement providing relief to one-half million consumers for Volkswagen's emissions cheating and misleading "clean diesel" advertising)

- *In re Lipitor Antitrust Litig.,* 868 F.3d 231 (3d Cir. 2017) (direct purchasers of Lipitor and Effexor plausibly alleged unlawful reverse payment settlement agreements in violation of antitrust laws)

- *In Matter of Motors Liquidation Co.,* 829 F.3d 135 (2d Cir. 2016) (General Motors bankruptcy reorganization did not bar claims stemming from defective ignition switches)

- *George v. Urban Settlement Servs.,* 833 F.3d 1242 (10th Cir. 2016) (complaint adequately alleged Bank of America's mortgage modification program violated RICO)

- *In re Loestrin 24 Fe Antitrust Litig.,* 814 F.3d 538 (1st Cir. 2016) ("reverse payments" for antitrust purposes under Actavis are not limited to cash payments)

- *Osborn v. Visa Inc.,* 797 F.3d 1057 (D.C. Cir. 2015) (complaint adequately alleged Visa and MasterCard unlawfully agreed to restrain trade in setting ATM access fees)

- *Little v. Louisville Gas & Elec. Co.,* 805 F.3d 695 (6th Cir. 2015) (Clean Air Act did not preempt state nuisance claims against coal plant for polluting surrounding community)

- *City of Miami v. Citigroup Inc.,* 801 F.3d 1268 (11th Cir. 2015) (reversing dismissal of complaint alleging Citigroup violated Fair Housing Act by pattern of discriminatory lending)

- *Rajagopalan v. NoteWorld, LLC,* 718 F.3d 844 (9th Cir. 2013) (non-party could not invoke arbitration clause against plaintiff suing debt services provider)

- *In re Neurontin Mktg. & Sales Practices Litig.,* 712 F.3d 21 (1st Cir. 2013) (affirming $142 million verdict for injury suffered from RICO scheme by Neurontin manufacturer Pfizer)

- *In re NCAA Student-Athlete Name & Likeness Licensing Litig.,* 724 F.3d 1268 (9th Cir. 2013) (First Amendment did not shield video game developer's use of college athletes' likenesses)

- *Garcia v. Wachovia Corp.,* 699 F.3d 1273 (11th Cir. 2012) (Wells Fargo could not rely on Concepcion to evade waiver of any right to compel arbitration)

- *Agnew v. Nat'l Collegiate Athletic Ass'n,* 683 F.3d 328 (7th Cir. 2012) (NCAA bylaws limiting scholarships per team and prohibiting multi-year scholarships are subject to antitrust scrutiny and do not receive pro-competitive justification at pleading stage)

- *In re Lupron Mktg. & Sales Practices Litig.,* 677 F.3d 21, 24 (1st Cir. 2012) (approving cy pres provision in $150 million settlement)

- *In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156 (1st Cir. 2009) (AstraZeneca illegally published inflated average wholesale drug prices, thereby giving windfall to physicians and injuring patients who paid inflated prices)

We set ourselves apart not only by getting results but by litigating every case through to finish – to trial and appeal, if necessary. This tenacious drive has led our firm to generate groundbreaking precedents in consumer law.

Hagens Berman has also been active in state courts nationwide. Notable examples of our victories include:

- <u>*Franklin v. CSAA Gen. Ins. Co.*</u>, 532 P.3d 1145, 1146 (Ariz. 2023) (injured drivers may "stack" or combine UIM coverages where multiple vehicles are insured under a single insurance policy)

- *In re Funko, Inc. Sec. Litig.*, 19 Wash. App. 2d 1045 (2021) (complaint adequately alleged violations of the Securities Act of 1933)

- *Hernandez v. Restoration Hardware, Inc.*, 409 P.3d 281 (Cal. 2018) (successfully arguing on behalf of amicus curiae that class action objectors must intervene to appeal)

- *Purdue Pharma L.P. v. State*, 256 So. 3d 1 (Miss. 2018) (refusing to transfer venue in litigation against leading opioid manufacturers)

- *Garza v. Gama*, 379 P.3d 1004 (Ariz. Ct. App. 2016) (reinstating certified class in wage-and-hour action prosecuted by Hagens Berman since 2005)

- *In re Farm Raised Salmon Cases*, 42 Cal. 4th 1077 (Cal. 2008) (Federal Food, Drug and Cosmetic Act did not preempt state claims for deceptive marketing of food products)

- *Pickett v. Holland Am. Line-Westours, Inc.*, 35 P.3d 351 (Wash. 2001) (reversing state court of appeals and upholding class action settlement with cruise line)

HAGENS BERMAN SOBOL SHAPIRO LLP

# U.S. LEGAL TEAM



**steve@hbsslaw.com**

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**YEARS OF EXPERIENCE**

41

**PRACTICE AREAS**

Anti-Terrorism
Automotive Litigation
Civil & Human Rights
Class Action
Consumer Rights
Emissions Litigation
Environmental Litigation
Governmental Representation
High Tech Litigation
Intellectual Property
Investor Fraud
Patent Litigation
Qui Tam
Securities
Sexual Abuse & Harassment
Sports Litigation
Whistleblower

**BAR ADMISSIONS**

- Illinois
- Washington
- Foreign Registered Attorney in
  England and Wales

**COURT ADMISSIONS**

- Supreme Court of the United
  States
- U.S. Court of Appeals for the
  First Circuit
- U.S. Court of Appeals for the
  Second Circuit

MANAGING PARTNER

# Steve W. Berman

Served as co-lead counsel against Big Tobacco, resulting in the largest settlement in world history, and at the time the largest automotive, antitrust, ERISA and securities settlements in U.S. history

## INTRODUCTION

Steve Berman has dedicated this career as a class-action plaintiffs' lawyer to improving the lives of those most in need. He represents large classes of consumers, investors and employees in large-scale, complex litigation held in state and federal courts. Steve's trial experience has earned him significant recognition and led The National Law Journal to name him one of the 100 most powerful lawyers in the nation, and to repeatedly name Hagens Berman one of the top 10 plaintiffs' firms in the country. Steve's class-action lawsuits have led to record-breaking settlements, historic changes to industries and made real change possible for millions of individuals.

Steve co-founded Hagens Berman in 1993 after his prior firm refused to represent several young children who consumed fast food contaminated with E. coli — Steve knew he had to help. In that case, Steve alleged that the poisoning was the result of Jack in the Box's cost cutting measures and negligence. He was further inspired to build a firm that vociferously fought for the rights of those most in need. Berman's innovative approach, tenacious conviction and impeccable track record have earned him an excellent reputation and numerous historic legal victories. He is considered one of the nation's most successful class-action attorneys and has been praised for securing tangible benefits for class members, as well as outstanding monetary relief. Steve is particularly known for his tenacity in forging settlements that return a high percentage of recovery or meaningful industry change to class members.

Print & Online Feature Interviews »

## CURRENT ROLE

- Managing Partner of Hagens Berman Sobol Shapiro LLP and Hagens Berman EMEA LLP (UK)

## CURRENT CASES

Steve leads the firm's efforts in the areas of antitrust, consumer protection and more, maintaining a leading edge amid shifting trends and technology. His active cases concern billions of dollars in damages and affect hundreds of millions of individuals. Steve's caseload spans several industries, including technology, college sports, agriculture and wages and include the following highlights.

ANTITRUST LITIGATION

The antitrust lawsuits that Steve Berman has led have secured settlements valued at more than $27 billion, spotlighting anticompetitive practices that have harmed consumers across various industries. Steve's outstanding work in this field has earned the firm accolades and awards, and his current caseload speaks to the breadth of the firm's impact.

HAGENS BERMAN SOBOL SHAPIRO LLP

- U.S. Court of Appeals for the Third Circuit
- U.S. Court of Appeals for the Fifth Circuit
- U.S. Court of Appeals for the Sixth Circuit
- U.S. Court of Appeals for the Seventh Circuit
- U.S. Court of Appeals for the Eighth Circuit
- U.S. Court of Appeals for the Ninth Circuit
- U.S. Court of Appeals for the Tenth Circuit
- U.S. Court of Appeals for the Eleventh Circuit
- U.S. Court of Appeals for the D.C. Circuit
- U.S. Court of Appeals for the Federal Circuit
- U.S. Court of Federal Claims
- U.S. District Court for the District of Colorado
- U.S. District Court for the Northern District of Illinois
- U.S. District Court for the Central District of Illinois
- U.S. District Court for the Eastern District of Michigan
- U.S. District Court for the Eastern District of Washington
- U.S. District Court for the Western District of Washington
- Supreme Court of Illinois
- Supreme Court of Washington

**EDUCATION**



University of Chicago Law School, J.D., 1980



University of Michigan, B.A., 1976

| CASE | DESCRIPTION |
|------|-------------|
| **Amazon Buy Box** | Class action against Amazon for violating state consumer protection laws through the alleged use of a biased algorithm<br>**Status:** Complaint filed |
| **Amazon E-Books Price-Fixing**<br>Co-Lead Counsel | Class action accusing Amazon of establishing an illegal monopoly of the e-books market and charging artificially inflated prices<br>**Status:** Court denies Amazon's motion to dismiss monopoly claims |
| **Amazon Online Retailer Consumer Antitrust (Frame-Wilson)**<br>Interim Co-Lead Counsel | Class action accusing Amazon of increasing prices for online purchases made via other retailers<br>**Status:** Amazon's motion to dismiss claims denied |
| **Amazon.com Antitrust (De Coster)**<br>Co-Lead Counsel | Class action accusing Amazon of violating federal antitrust laws, causing customers to pay artificially high prices for products purchased via Amazon<br>**Status:** Motion to dismiss denied |
| **Apple iCloud Antitrust** | Class action accusing Apple of violating antitrust laws and establishing a monopoly through its iOS cloud-based storage policies<br>**Status:** Complaint filed |
| **Apple Pay Payment Card Issuer Antitrust** | Class action accusing Apple of intentionally monopolizing the billion-dollar mobile wallet market on iOS platforms, forcing payment card issuers to pay supracompetitive fees and stifling innovation<br>**Status:** Motion to dismiss denied in part |
| **Real Estate Commissions Antitrust**<br>Co-Lead Counsel | Class action against four national broker franchises alleging parties illegally inflated commissions associated with home sales<br>**Status:** Settlements reached totaling $693.2 million |
| **RealPage Rent Price-Fixing – State of Arizona**<br>Retained Counsel | Retained by Arizona Attorney General Kris Mayes in a consumer-protection lawsuit on behalf of the state of Arizona alleging leasing companies colluded to artificially increase the price of rent<br>**Status:** Complaint filed |
| **NCAA Student-Athlete Name, Image and Likeness**<br>Co-Lead Counsel | Class action representing current and former NCAA college athletes accusing the NCAA and its conferences of illegally limiting the compensation athletes may receive for the use of their names, images and likenesses<br>**Status:** Settlement reached |
| **Visa Mastercard ATM**<br>Co-Lead Counsel | Class action alleging that Visa and MasterCard, with BofA, JP Morgan Chase and Wells Fargo, established uniform agreements with U.S. banks, preventing ATM operators from setting access fees below the level of fees charged on Visa's and MasterCard's networks<br>$197.5 million settlement with Visa and Mastercard receives preliminary approval, bringing total settlements to $264.2 million if approved |

## AGRICULTURE ANTITRUST LITIGATION

The firm's total settlements in this area of litigation is valued at more than $636.32 million and have affected the lives of U.S. consumers and employees in the meat-processing industry. As inflation continues to rise, combatting anticompetitive schemes raising the cost of food is an issue pertinent to families across the nation.

HAGENS BERMAN SOBOL SHAPIRO LLP

**AWARDS**





| CASE | DESCRIPTION |
|------|-------------|
| Poultry Processing Wage-Fixing Antitrust<br>Interim Co-Lead Counsel | Class action alleging wage-fixing agreement between the nation's biggest poultry companies<br>**Status:** Settlements reached totaling $217.2 million |
| Red Meat Processing Wage-Fixing Antitrust | Class action against the nation's largest meat processing companies alleging a yearslong wage-fixing agreement, causing employees to receive far less than legally owed<br>**Status:** Settlements reached pending approval totaling $138.5 million |
| Beef Antitrust<br>Interim Co-Lead Counsel | Class action alleging major food corporations engaged in illegal conduct regarding the marketing and sales of beef products<br>**Status:** Motion to dismiss denied |
| Broiler Chicken Antitrust<br>Co-Lead Counsel | Class action accusing major food corporations of increasing the price of chicken in violation of antitrust laws<br>**Status:** Settlements totaling $181 million are pending court approval, class certification granted |
| Pork Antitrust<br>Co-Lead Counsel | Class action alleging pork producers colluded to reduce pork production to artificially inflate prices<br>**Status:** Settlements reached totaling $95 million |
| Turkey Antitrust<br>Interim Co-Lead Counsel | Class action alleging antitrust scheme by food corporations<br>**Status:** Settlement reached with Tyson for $4.62 million, seven remaining defendants |

## AUTO DEFECT & EMISSIONS LITIGATION

Hagens Berman's settlements in automotive defect and emissions lawsuits are collectively valued at more than $21.4 billion and have led to significant safety protocols and changes in the auto industry. Steve's expertise leading complex litigation has led him to be hand-selected to champion the rights of vehicle owners. He remains dedicated to unearthing new instances of defect coverups, emissions cheating and safety concerns, utilizing the firm's resources to lead the charge against negligence.

| CASE | DESCRIPTION |
|------|-------------|
| Daimler Mercedes BlueTEC Emissions – Australia<br>Advisory Role | Following Hagens Berman's $700 million settlement with Mercedes for alleged emissions cheating in the U.S., the firm has taken an advisory role in comparable litigation against Daimler filed in Australia.<br>**Status:** Pending and active |
| FCA Dodge RAM 2500/3500 Emissions – 2007-2012 & 2013-2023 | Class action alleging Fiat Chrysler/Stellantis and Cummins placed emissions-cheating defeat devices in affected RAM trucks<br>**Status:** 2007-2012 models: motion to dismiss denied in part; 2013-2023 models: complaint filed |
| FCA Chrysler Pacifica Hybrid Minivan Fire Hazard<br>Co-lead Counsel | Class action against Fiat Chrysler/Stellantis alleging a defect in the design of Chrysler Pacifica hybrid minivans results in spontaneous fires while vehicle is parked and off<br>**Status:** Motion to dismiss denied |
| General Motors CP4 Fuel Pump Defect<br>Class Counsel | Class action alleging Chevy Silverado and GMC Sierra trucks with a Duramax diesel 6.6 V8 engine are equipped with a defective high-pressure fuel injection pump.<br>**Status:** Class certification granted |

## SECURITIES LITIGATION

Hagens Berman's total settlements in securities litigation valued at more than $2.9 billion, and Steve's efforts in this area have helped to recover losses for millions of individuals who have been blindsided by instances of fraud and disinformation orchestrated by publicly traded companies.

| CASE | DESCRIPTION |
| --- | --- |
| Plantronics, Inc. (NYSE: PLT) Co-Lead Counsel | Class action representing Plantronics investors seeking to recover damages caused by violations of the Securities Exchange Act of 1934 **Status:** Motion to dismiss denied |
| Vaxart, Inc. (NASDAQ: VXRT) Lead Counsel | Class action against Vaxart and controlling shareholder, Armistice, alleging claims under federal securities laws **Status:**$12.015 million partial settlement reached |
| Zillow Group, Inc. (NASDAQ: Z, ZG) Lead Counsel | Class action alleging defendants falsely touted the durability and acceleration of Zillow Offers and improvements to pricing models **Status:** Motion to dismiss denied |

## RECENT SUCCESS

Steve Berman has achieved monumental settlements within the last two years, bringing hundreds of millions of dollars of relief to classes of everyday individuals affected by pricing schemes, automotive defects and other instances of wrongdoing. Through his recent case work, Steve maintains Hagens Berman's edge and excellence in class-action litigation.

| CASE NAME | DATE | RECENT SUCCESS |
| --- | --- | --- |
| NCAA Student-Athlete Name, Image and Likeness Co-Lead Counsel | 07/26/24 | Motion filed seeking preliminary approval of settlement |
| Visa MasterCard ATM Co-Lead Counsel | 07/26/23 | $197.5 million settlement with Visa and Mastercard receives preliminary approval |
| Real Estate Commissions Antitrust Co-lead Counsel | 04/23/24 | $418 million settlement with NAR receives preliminary approval |
| Hyundai / Kia Engine Fire Hazard Co-lead Counsel | 04/09/24 | Settlement receives final approval |
| NCAA/EA Video Games Likeness Co-lead Counsel | 03/04/24 | 10,000 athletes revive EA College Football Videogame following NIL litigation |
| Hyundai / Kia Car Theft Defect Co-Lead Counsel | 10/31/23 | Settlement receives preliminary approval |
| University of Washington College Tuition Payback | 06/29/23 | Class certification granted |
| Hyundai / Kia Hydraulic Electronic Control Unit (HECU) Fire Hazard | 05/05/23 | Settlement receives final approval |

| CP4 Fuel Pump Defect – GM/Ford/FCA | 03/31/23 | Motion to dismiss denied |
| Pork Antitrust Co-Lead Counsel | 09/27/22 | Settlement agreements reached |
| Amazon.com Consumer Fraud | 09/14/22 | California AG files similar case, echoing Hagens Berman's claims |
| Poultry Processing Wage-Fixing Antitrust Interim Co-Lead Counsel | 07/19/22 | Motions to dismiss denied |

## CAREER HIGHLIGHTS

Steve's career highlights encompass the top cases in world history both in their historical significance and in their monetary relief. Steve's total settlements are valued at more than $316 billion, including the infamous Big Tobacco litigation of the 90s, and have had major national impact. Steve's career highlights include Enron pension protection, justice for victims of Harvey Weinstein, restitution for those affected by Volkswagen's Dieselgate scandal, the complete remaking of college sports compensation and more.

His career focus remains clear: steadfast representation for those most in need across the nation. Steve's cases have brought widespread benefit to classes of individuals spanning industries and decades. Lawsuits he has settled have reunited Hungarian Holocaust survivors with priceless family heirlooms, and also enacted major changes in youth soccer and NCAA sports to promote safety and minimize the risk of concussions. Below are Steve's outstanding career highlights.

| CASE/ROLE | SETTLEMENT VALUE | NATIONAL IMPACT |
|---|---|---|
| State Tobacco Litigation Special Assistant Attorney General Representing 13 States | $260 billion | **Largest civil settlement in history** The multi-state agreement required tobacco companies to pay the states $260 billion and submit to broad advertising and marketing restrictions, leaving a lasting and widespread impact. |
| Visa Check/MasterMoney Antitrust Litigation Co-lead Counsel | $25 billion | **Largest antitrust settlement in U.S. history at the time** Agreements with Visa and Mastercard secured relief valued at as much as $25-87 billion, and injunctive relief reducing interchange rates, among other benefits. |
| Volkswagen/Porsche/Audi Emissions Scandal Plaintiffs' Steering Committee and Settlement Negotiating Team | $14.7 billion | **Largest ever brought against any automaker** Hagens Berman's automotive legal team was the first to file in this historic lawsuit against Volkswagen for its emissions cheating and masking of harmful pollutants, culminating in a historic settlement. |
| Volkswagen Franchise Dealerships Lead Counsel | $1.67 billion | The firm achieved a monumental settlement on behalf of Volkswagen dealerships across the U.S. blindsided by the automaker's emissions cheating, returning an average payment to each Dealer Settlement Class Member of approximately $1.85 million. |

HAGENS BERMAN SOBOL SHAPIRO LLP

| | | |
|---|---|---|
| **Toyota Sudden, Unintended Acceleration**<br>Co-lead Counsel | $1.6 billion | **Largest automotive settlement in history at the time**<br>The firm did not initially seek to lead this litigation but was sought out by the judge for its wealth of experience in managing very complex class-action MDLs. |
| **Hyundai / Kia Theta II GDI Engine Fire Hazard Settlement**<br>Co-lead Counsel | $1.3 billion | The firm achieved a settlement in response to a defect in 4.1 million Hyundai and Kia vehicles equipped with Theta II GDI engines putting owners at risk for spontaneous, non-collision engine fires or premature engine failure. |
| **Mercedes BlueTEC**<br>Co-lead Counsel | $700 million | Spurred by the firm's success in the Volkswagen Dieselgate case, Steve independently tested diesel vehicles across manufacturers, uncovering additional instances of emissions-cheating, masked via illegal defeat devices. |
| **Apple E-Books Antitrust**<br>Co-lead Counsel | $568 million | This antitrust lawsuit alleged Apple and five of the nation's top publishers colluded to raise the price of e-books for U.S. consumers. Steve's litigation resulted in an unheard of recovery equal to twice consumers' actual damages. Apple took the case to the U.S. Supreme Court, where it denied Apple's request to review the case. |
| **McKesson Drug Class Litigation**<br>Co-lead Counsel | $350 million | Steve was named co-lead counsel in this action that led to a rollback of benchmark prices of hundreds of brand name drugs, and relief for third-party payers and insurers. His discovery of the McKesson scheme led to follow up lawsuits by governmental entities and recovery in total of over $600 million. |
| **Average Wholesale Price Litigation** | $338 million | Drug prices charged to consumers and payers across the nation are significantly more than the cost to produce them. In many cases, Big Pharma conspires with other companies to create these false profits. Hagens Berman has helped several classes of plaintiffs obtain multimillion-dollar judgments. |
| **Enron Pension Protection Litigation**<br>Co-lead Counsel | $250 million | Attorneys represented 24,000 Enron employees claiming the company recklessly endangered retirement funds, causing some employees to lose hundreds of thousands of dollars almost overnight, in a major economic milestone in U.S. history. |
| **BoA Homeloans** | $250 million | Following the historic market crash in 2008, Hagens Berman filed this class action against Bank of America, Countrywide and LandSafe, alleging their collusion was in direct violation of the RICO Act and other laws. |
| **McKesson Governmental Entity Class Litigation**<br>Lead Counsel | $82 million | Steve was lead counsel for a nationwide class of local governments that resulted in a settlement for drug price-fixing claims. |

| | | |
|---|---|---|
| **JPMorgan Madoff Lawsuit** | $218 million | This historic settlement against JPMorgan involved three simultaneous, separately negotiated settlements totaling more than $2.2 billion, in which Hagens Berman returned hundreds of millions of dollars on behalf of Bernard L. Madoff investors. |
| **NCAA Athletic Grant-in-Aid Cap Antitrust**<br>Co-lead Counsel | $208 million | Steve pioneered this historic case which forever changed NCAA sports and the lives of 53,748 class members. The case culminated in a $208 million settlement regarding damages and injunctive relief secured through a unanimous U.S. Supreme Court decision in favor of plaintiffs. According to the Court, the NCAA "permanently restrained and enjoined from agreeing to fix or limit compensation or benefits related to education" that conferences or schools may make available. Schools are now allowed to provide benefits tethered to education up to $6,000 annually |
| **Apple iOS App Developers**<br>Class Counsel | $100 million | Hagens Berman represented developers of iOS apps sold via Apple's App Store or featuring in-app sales, alleging the tech giant engaged in anticompetitive practices that harmed developers. The settlement brings important changes to App Store policies and practices. U.S. iOS app developers with less than $1 million per year in proceeds from App Store sales through all associated developer accounts across the nation can receive hundreds to tens of thousands of dollars from the fund. |
| **Google Play Store App Developers**<br>Co-lead Counsel | $90 million | This antitrust class action accused Google of monopolizing its Play Store through anticompetitive policies, affecting small businesses across the nation. Attorneys for the class of roughly 43,000 Android app developers say some class members will likely see payments in the hundreds of thousands of dollar |
| **Zuora Investor Fraud**<br>Lead Counsel | $75.5 million | In a showcase of Steve's securities litigation expertise, this settlement achieved in 2023 provides significant relief to purchasers of the securities of Zuora across the U.S. |
| **NCAA Concussions**<br>Lead Counsel | $75 million | Hagens Berman served as lead counsel in this multidistrict litigation against the NCAA, achieving medical monitoring and injunctive relief in the form of changes to concussion management and return-to-play guidelines. The lawsuit alleged the institutions neglected to protect college athletes from concussions and their aftermath at schools across the country. |

HAGENS BERMAN SOBOL SHAPIRO LLP

| | | |
|---|---|---|
| NCAA/Electronic Arts Name and Likeness<br>Co-lead Counsel | $60 million | This first-of-its-kind lawsuit ushered in the first time that hardworking college athletes saw some of the profits from the use of their likeness in video games. More than 24,000 individuals were eligible to receive payment, and checks were issued for up to $7,600, with a median around $1,100. |
| Harvey Weinstein Sexual Harassment | $17.1 million | As the #MeToo movement hit a fever pitch moment, Hagens Berman's Steve Berman represented a class of those harmed by Harvey Weinstein, a kingpin of sexual harassment in Hollywood. The firm litigated the case through to bankruptcy proceedings in 2020. |
| Youth Soccer Concussions | | Steve pioneered this first-of-its-kind lawsuit that ended heading for US Soccer's youngest players to diminish risk of concussions and traumatic brain injuries, changing the game for youth players across the U.S. |

## ACTIVITIES

- In April of 2021, the University of Michigan School for Environment and Sustainability (SEAS) launched the Kathy and Steve Berman Western Forest and Fire Initiative with a philanthropic gift from Steve (BS '76) and his wife, Kathy. The program will improve society's ability to manage western forests to mitigate the risks of large wildfires, revitalize human communities and adapt to climate change. Steve studied at the School of Natural Resources (now SEAS) and volunteered as a firefighter due to his focus on environmental stewardship. *Read more »*

- In 2003, the University of Washington announced the establishment of the Kathy and Steve Berman Environmental Law Clinic. The Berman Environmental Law Clinic draws on UW's environmental law faculty and extensive cross-campus expertise in fields such as Zoology, Aquatic and Fishery Sciences, Forest Resources, Environmental Health and more. In addition to representing clients in court, the clinic has become a definitive information resource on contemporary environmental law and policy, with special focus on the Pacific Northwest.

## RECOGNITION

- 500 Global Plaintiff Lawyers, Lawdragon, 2024

- 500 Leading Lawyers in America, Plaintiff Financial Lawyers, Lawdragon, 2023-2024

- 500 Leading Lawyers in America, Plaintiff Consumer Lawyers, Lawdragon, 2024

- Lawyer of the Year, Litigation, Securities Litigation, Best Lawyers, 2024

- The Best Lawyers in America, Antitrust Litigation, Best Lawyers, 2024

- The Best Lawyers in America, Securities Litigation, Best Lawyers, 2024

- The Best Lawyers in America, Plaintiffs Mass Tort Litigation/Class Actions, Best Lawyers, 2024

- The Best Lawyers in America, Plaintiffs Product Liability Litigation, Best Lawyers, 2024

- Legal Lion of the Week as part of the litigation team that achieved class certification in NCAA Student-Athlete Name, Image and Likeness, Law360, 2023

- Best Lawyers in America in Litigation, Securities and Product Liability Litigation, Plaintiffs and Other Areas of Note, 2023

- Washington Super Lawyers, 1999-2023

- Titan of the Plaintiffs Bar, Law360, 2018, 2020, 2022

- Leading Commercial Litigators, The Daily Journal, 2022

- Hall of Fame, Lawdragon, 2022

- Plaintiffs' Attorneys Trailblazer, The National Law Journal, 2017, 2022

- Sports & Entertainment Law Trailblazer, The National Law Journal, 2021

- Honoree for Outstanding Antitrust Litigation Achievement in Private Law Practice, American Antitrust Institute, 2021, 2019, 2018

- Class Action MVP of the Year, Law360, 2016-2020

- Elite Trial Lawyers, The National Law Journal, 2014-2016, 2018-2019

- 500 Leading Lawyers in America, Lawdragon, 2014-2019

- State Executive Committee member, The National Trial Lawyers, 2018

- Class Actions (Plaintiff) Law Firm of the Year in California, Global Law Experts, 2017

- Finalist for Trial Lawyer of the Year, Public Justice, 2014

- One of the 100 most influential attorneys in America, The National Law Journal, 2013

- Most powerful lawyer in the state of Washington, The National Law Journal, 2000

- One of the top 10 plaintiffs' firms in the country, The National Law Journal

## PRESENTATIONS

- Steve is a frequent public speaker and has been a guest lecturer at Stanford University, University of Washington, University of Michigan and Seattle University Law School.

## PERSONAL INSIGHT

Steve was a high school and college soccer player and coach. Now that his daughter's soccer skills exceed his, he is relegated to being a certified soccer referee and spends weekends being yelled at by parents, players and coaches (as opposed to being yelled at by judges during the week). Steve is also an avid cyclist and is heavily involved in working with young riders on the international Hagens Berman Axeon cycling team.

HAGENS BERMAN SOBOL SHAPIRO LLP



tom@hbsslaw.com

T 617-475-1950
F 617-482-3003

1 Faneuil Hall Square
5th Floor
Boston, MA 02109

**YEARS OF EXPERIENCE**

39

**PRACTICE AREAS**

Antitrust Litigation
Class Action
Consumer Rights
Pharmaceutical Fraud

**BAR ADMISSIONS**

- Supreme Judicial Court of the
  Commonwealth of
  Massachusetts
- Numerous admissions
  *pro hac vice*

**COURT ADMISSIONS**

- Supreme Court of the United
  States
- First Circuit Court of Appeals
- Second Circuit Court of Appeals
- Third Circuit Court of Appeals
- Eleventh Circuit Court of
  Appeals

**EDUCATION**



Boston University School of Law,
J.D., cum laude, 1983

**PARTNER, EXECUTIVE COMMITTEE MEMBER**

# Thomas M. Sobol

Voted Massachusetts Ten Leading Litigators — *The National Law Journal*

## CURRENT ROLE

- Partner & Executive Committee Member, Hagens Berman Sobol Shapiro LLP

- Leads Boston office

- Lead negotiator in court-approved settlements totaling more than $2 billion

- Court-appointed lead or co-lead in ten active antitrust cases alleging injury to businesses and/or consumers caused by the delayed availability of generic drug, including:

  o *In re Glumetza Antitrust Litigation*, No. 19-cv-05822-WHA (N.D. Cal.) (Hon. William Alsup)

  o *FWK Holdings LLC v. Shire (Intuniv)*, No. 16-cv-12653 (D. Mass.) (Hon. Allison D. Burroughs)

  o *In re Zetia (Ezetimibe) Antitrust Litigation*, No. 18-md-2836 (E.D. Va.) (Hon. Rebecca Beach Smith)

## CAREER HIGHLIGHTS

- $453.85 million: largest U.S. antitrust settlement in 2022, *In re Glumetza Antitrust Litigation*, No. 1:19-md-05822-WHA (N.D.C) (Hon. William Alsup)

- $340 million: second largest antitrust settlement in 2022, *In re Ranbaxy Generic Drug Application Antitrust Litigation*, No. 1:19-md-02878, (D. Mass.) (Gorton, J., Kelley, J.)

- $325 million: third party payer class settlement, *In re Neurontin Marketing, Sales Practices, and Products Liability Litigation*, No. 04-md-1629 (D. Mass) (Hon. Patti B. Saris)

- Approximately $200 million: tort victim recoveries via bankruptcy plan, *In re New England Compounding Pharmacy, Inc. Products Liability Litigation*, MDL No. 2419 (D. Mass.) (Hon. Rya W. Zobel)

- $150 million: direct purchaser class settlement, *In re Flonase Antitrust Litigation*, No. 08-cv-03149 (E.D. Pa.) (Hon. Anita B. Brody)

- 4% price reduction of most retail drugs: *New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, No. 05-cv-11148 (D. Mass.) (Hon. Patti B. Saris)

- $350 million: consumers and third party payers, *San Francisco Health Plan v. McKesson Corp.*, No. 08-cv-10843 (D. Mass.) (Hon. Patti B. Saris)

- $25 million: State of Connecticut, *In re Zyprexa Products Liability Litigation*, MDL No. 1596 (E.D.N.Y.) (Hon. Jack B. Weinstein)

HAGENS BERMAN SOBOL SHAPIRO LLP



Clark University, B.A., summa
cum laude, Phi Beta Kappa, 1980

**AWARDS**



### RECENT SUCCESS

- $120 million: direct purchaser class settlement, *In re Loestrin 24 Fe Antitrust Litigation*, No. 13-md-02472 (D.R.I.) (Hon. William E. Smith)

- $51.25 million: direct purchaser class settlement, *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*, No. 18-md-02819 (E.D.N.Y.) (Hon. Nina Gershon)

- $166 million: direct purchaser class settlement, *In re Lidoderm Antitrust Litigation*, MDL No. 2521 (N.D. Cal.) (Hon. William Orrick)

- $72.5 million: direct purchaser class settlement, *In re Solodyn (Minocycline Hydrochloride) Antitrust Litigation*, No. 14-md-02503 (D. Mass.) (Hon. Denise J. Casper)

- $94 million: direct purchaser class settlement, *In re Celebrex (Celecoxib) Antitrust Litigation*, No. 14-cv-00361 (E.D. Va.) (Hon. Arenda L. Wright Allen, Hon. Douglas E. Miller)

- $146 million: direct purchaser class settlement, *In re Aggrenox Antitrust Litigation*, MDL No. 2516 (D. Conn.) (Hon. Stefan Underhill)

### EXPERIENCE

- Has led almost 20 generic delay cases, involving various theories, on behalf of both direct and end payers to settlement and distributions to classes (or aggregated groups)

- Helped develop the econometric model used to show the relationship between marketing and the opioid epidemic in the opioids MDL. *In re National Prescription Opiate Litigation*, No. 17-md-02804 (N.D. Ohio) (Hon. Dan Aaron Polster)

- Originated the Ranbaxy fraudulent ANDA litigation, alleging novel theory that a generic company's fraudulent statements to FDA in order to obtain exclusivities violated federal RICO and antitrust laws, *Meijer, Inc. v. Ranbaxy Inc.*, No. 15-cv-11828 (D. Mass.) (Hon. Nathaniel M. Gorton)

- Served as Lead counsel in the New England Compounding MDL and a member of the creditors' committee in the related bankruptcy, representing more than 700 victims who contracted fungal meningitis or other serious health problems as a result of receiving contaminated products produced, resulting in about a $200 million settlement, *In re New England Compounding Pharmacy, Inc. Products Liability Litigation*, MDL No. 2419 (D. Mass.) (Hon. F. Dennis Saylor, IV; Hon. Rya W. Zobel)

- *In the Vioxx MDL*, developed a win-win lien resolution program for consumers and health plans that dispensed with the inefficiencies of resolving insurance liens piecemeal that is now a routine part of mass tort MDLs, *In re Vioxx Products Liability Litigation*, MDL No. 1657 (E.D. La.) (Hon. Eldon E. Fallon)

- Obtained a $142 million RICO jury verdict against Pfizer for fraudulently marketing its drug Neurontin; negotiated a separate $325 million settlement on behalf of a class of health plans, *In re Neurontin Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 1629 (D. Mass) (Hon. Patti B. Saris)

- Brought ground-breaking suit alleging widespread fraudulent marketing and sales practices for the prostate cancer drug Lupron, *In re Lupron Marketing and Sales Practices Litigation*, No. 01-md-1430 (D. Mass.) (Hon. Richard Stearns), which uncovered pricing theories later litigated in the *Average Wholesale Price litigation*

HAGENS BERMAN SOBOL SHAPIRO LLP

(*In re Pharmaceutical Industries Average Wholesale Price Litigation*, No. 02-md-1456 (D. Mass) (Hon. Patti B. Saris), over $250 million in settlements) and related litigation against First Databank, (*New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, No. 05-cv-11148 (D. Mass.) (Hon. Patti B. Saris), major price rollback on hundreds of drugs)

- Worked closely with consumer groups trying to bring down the prices of prescription drugs, including serving as lead counsel to the former *Prescription Access Litigation* (PAL) project, a large coalition of health care advocacy groups that fought illegal, loophole-based overpricing by pharmaceutical companies.

- Since 2002, has represented consumers, consumer groups, health plans, governments and institutions in complex class actions involving waste, fraud, and abuse in the pharmaceutical industry.

- Special Assistant Attorney General for the Commonwealth of Massachusetts and the states of New Hampshire and Rhode Island, including in ground-breaking litigation against tobacco industry (injunctive relief and recovery of more than $10 billion).

- Spent seventeen years at a large Boston firm handling large complex civil and criminal litigation.

### PRO BONO
- Chairman of the board, New England Shelter for Homeless Veterans, 1995-2002

### LEGAL ACTIVITIES
- Board President, Public Justice, 2022-present

### RECOGNITION
- 500 Leading Lawyers in America, Plaintiff Financial Lawyers, Lawdragon, 2023

- Massachusetts Super Lawyer, 2008-2024

- Trial Lawyer of the Year Nominee for verdict in *In re Neurontin Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 1629 (D. Mass.), Public Justice, 2011

- Massachusetts Ten Leading Litigators, *The National Law Journal,* 2000

HAGENS BERMAN SOBOL SHAPIRO LLP



**PARTNER, EXECUTIVE COMMITTEE MEMBER**

# Robert B. Carey

Rob added to HB's office a built-in mock courtroom, complete with jury box, audio-visual equipment to record witnesses and lawyers, and separate deliberation rooms for two juries.

rob@hbsslaw.com

T 602-840-5900
F 602-840-3012

11 West Jefferson Street
Suite 1000
Phoenix, AZ 85003

**YEARS OF EXPERIENCE**
34

**PRACTICE AREAS**
Breach of Contract Claims
Class Action
High Tech Litigation
Insurance Bad Faith
Personal Injury

**BAR ADMISSIONS**
▪ Arizona
▪ Colorado

**COURT ADMISSIONS**
▪ Supreme Court of the United States
▪ Federal Circuit Court of Appeals
▪ Seventh Circuit Court of Appeals
▪ Ninth Circuit Court of Appeals
▪ Tenth Circuit Court of Appeals
▪ Various Federal District Courts

**EDUCATION**



Harvard University, John F. Kennedy School of Government, State & Local Government Program, 1992

## INTRODUCTION

Mr. Carey handles various types of injury and consumer claims. Mr. Carey was lead counsel on a jury trial that produced the largest medical-malpractice verdict in 2018, secured class certification in class actions on behalf of consumers and workers where damages are almost $2 billion, and investigated the dialysis industry's role in deaths caused by central venous catheter infections and misuse of dialysis solutions.

## CURRENT ROLE

- Partner & Executive Committee Member, Hagens Berman Sobol Shapiro LLP

- Leads Phoenix office

- Practice focuses on class-action lawsuits, including auto defect, insurance, right of publicity and fraud cases. Mr. Carey's work also extends to bad-faith insurance, personal injury and medical malpractice, with several trials involving verdicts in the hundreds of millions.

- Frequently asked to handle jury trials for high-value cases

## RECENT SUCCESS

- In June 2018, a Denver jury awarded a monumental $383.5 million jury verdict against GranuFlo dialysis provider, DaVita Inc. culminating lawsuits brought by families of three patients who suffered cardiac arrests and died after receiving dialysis treatments at DaVita clinics. Each of the three parties was awarded $125 million in punitive damages from the jury, with compensatory damages ranging from $1.5 million to $5 million.

- Over the summer of 2012, Rob was lead counsel in Robin Antonick's case against Electronic Arts, where a jury heard evidence that Electronic Arts failed to pay Antonick for over 20 years for his work in coding and developing the legendary Madden NFL Football video game. This trial, held in the Northern District of California, resulted in two verdicts for Antonick and was dubbed a "Top Trial Verdict of 2013" by *The Daily Journal*, a leading legal publication.

- Prevailed at the Arizona Court of Appeals for the second time, keeping intact class certification for tens of thousands of truck drivers suing to recover underpayments caused by misuse of Rand McNally's HHG software by Swift Transportation.

- Helped originate the Toyota Sudden Unintended Acceleration case, filing the initial Hagens Berman complaints for a case that eventually settled for $1.6 billion.

- Led Hagens Berman's efforts on the $97 million settlement with Hyundai and Kia corporations over misrepresentations about MPG ratings.

HAGENS BERMAN SOBOL SHAPIRO LLP



University of Denver, M.B.A., J.D., 1986



Arizona State University, B.S., 1983

**AWARDS**

THE NATIONAL
LAW JOURNAL
**2018 TOP VERDICTS**
MEDICAL MALPRACTICE
**$383,500,000**

- Helped secure a first-ever ($60 million) settlement for collegiate student-athletes (Keller, consolidated with O'Bannon) from Electronic Arts (EA) and the NCAA for the misappropriation of the student-athletes' likenesses and images for the EA college football video game series. This groundbreaking suit went up to the U.S. Supreme Court before a settlement was reached, providing student-athletes — even current ones — with cash recoveries for the use of their likenesses without permission.

- Represented Donnovan Hill against Pop Warner after he was paralyzed at 13. With Rachel Freeman, Rob secured a settlement that "forever changed youth football" (*OC Weekly*) and was "unprecedented" and owed a debt of gratitude by those who care about the safety of kids playing football (*Washington Post*). Donnovan died tragically during a 2016 surgery.

- Rob secured a record verdict for a mother suing her deceased son's estate for negligence in starting a home fire. He then took an assignment of the estate's claim and pursued a bad faith claim against the insurer, resulting in lifetime financial security for the badly burned mother.

- After successfully reforming an insurance policy to cover a client – a student-athlete injured in a roll-over accident that caused incomplete tetraplegia and traumatic brain injury – Rob went to the jury, which awarded damages for all harms and losses requested and for insurance bad faith, with a verdict exceeding over 15 times policy limits.

- Rob sued the leading auto carrier for refusal to fully cover a pedestrian struck by the carrier's driver. The verdict was valued over seven figures, and included a finding of willful and wanton conduct, trebling the damages.

- After Rob cross-examined the CEO and CFO of a pharmacy benefits company, the jury entered a verdict for his client in the liability phase of a $75 million dispute.

- During his representation of a driver paralyzed by a car's roof collapse, the insurance company ignored that the agent did not understand or offer required high-end coverages. The jury returned a verdict with a value over seven figures, including a finding for treble damages.

- Rob represented passengers of drunk driver, and persuaded the jury to award future earning capacity, essential services, medical bills and to find willful and wanton conduct against the insurer (treble damages). After a successful trip to the state supreme court, the verdict was maintained and had a value in excess of 15 times the policy limits.

## EXPERIENCE

- While serving as Arizona Chief Deputy Attorney General Mr. Carey helped secure a $4 billion divestiture and a landmark $165 million antitrust settlement. He also was a principal drafter of the first major overhaul of Arizona's criminal code and authored the section of the federal Prisoner Litigation Reform Act of 1995 for Senators Dole and Kyl that virtually eliminated frivolous prisoner lawsuits. Mr. Carey oversaw all major legal, policy, legislative and political issues for the Arizona attorney general's office. He developed and spearheaded passage of Arizona's law requiring the DNA testing of all sex offenders and the law requiring that criminals pay the cost of victims' rights.

- Campaign staffer, intern, and staff member for U.S. Senator John McCain, during and after Senator McCain's first run for public office.

- Adjunct Professor, Sandra Day O'Connor College of Law, teaching class actions. Has taught law and policy courses at other universities.

- Judge Pro Tempore, Maricopa County Superior Court, presiding over contract and tort jury trials.

- In the 90s, he served as trial counsel on claims by counties for damages stemming from tobacco-related illnesses (and acted as special counsel for Hagens Berman in seeking to recover damages in the landmark tobacco litigation), and since then has led dozens of consumer and insurance class actions in various states.

## LEGAL ACTIVITIES
- Member and Former Chairman, Arizona State Bar Class Action and Derivative Suits Committee

## RECOGNITION
- 500 Leading Lawyers in America, Plaintiff Consumer Lawyers, Lawdragon, 2019-2024

- 500 Leading Lawyers in America, Plaintiff Financial Lawyers, Lawdragon, 2020-2024

- Top 100 Trial Lawyer, Arizona's Finest Lawyers and National Trial Lawyers, 2008-present

- Member of Hagens Berman's Toyota team selected as a Finalist for Trial Lawyer of the Year, Public Justice, 2014

- Recognized by the judges of the Superior Court of Arizona in Maricopa County for outstanding contributions to the justice system

- Selected as a Leading Plaintiff Financial Lawyer in America and a Leading Plaintiff Consumers Lawyer in America

- Recognized for victims' rights efforts, U.S. Department of Justice

## NOTABLE CASES
- *Propane Exchange Tank Litigation*

- *Hyundai/Kia MPG Litigation*

- *Swift Truckers Litigation*

- *Toyota Unintended Acceleration Litigation*

- *NCAA Student-Athlete Name and Likeness Licensing Litigation*

- *Hyundai Subframe Defect Litigation*

- *Hyundai Occupant Classification System / Airbag Litigation*

- *Hyundai Horsepower Litigation*

- *Arizona v. McKesson False Claims and Consumer Protection Litigation* (representing State of Arizona)

- *Apple Refurbished iPhone/iPad Litigation*

- *Jim Brown v. Electronic Arts*

- *LifeLock Sales and Marketing Litigation*

- *Rexall Sundown Cellasene Litigation*

HAGENS  BERMAN  SOBOL  SHAPIRO LLP

## PUBLICATIONS

- Co-author, "7 Punitive Damages Strategies," *Trial Magazine*, April 2019

- Co-author, Arizona chapter of the ABA's "*A Practitioner's Guide to Class Actions*"

- Co-author, Arizona and Colorado chapters of the ABA's "*A Practitioner's Guide to Class Actions*," 2nd edition

HAGENS BERMAN SOBOL SHAPIRO LLP



**PARTNER**

# Leonard W. Aragon

Before attending college, Mr. Aragon fulfilled his dream as a scout for the 2/68 Armored Tank Battalion.

leonard@hbsslaw.com

T 602-840-5900
F 602-840-3012

11 West Jefferson Street
Suite 1000
Phoenix, AZ 85003

**YEARS OF EXPERIENCE**
20

**PRACTICE AREAS**
Appellate Advocacy
Class Action
Commercial Litigation
High Tech Litigation
Mass Torts
Personal Injury

**INDUSTRY EXPERIENCE**
▪ Consumer Fraud
▪ Software
▪ Sports Law
▪ Health Care
▪ Pharmaceuticals
▪ Election Law
▪ Gambling
▪ Administrative Procedures Act

**COURT ADMISSIONS**
▪ U.S. District Court for the District of Arizona
▪ U.S. District Court for the District of Colorado

**EDUCATION**



Stanford Law School, J.D., 2001

## CURRENT ROLE
- Partner, Hagens Berman Sobol Shapiro LLP
- Practice focuses on nationwide class actions and other complex litigation
- Currently counsel for plaintiffs in the highly publicized cases *Keller v. Electronic Arts and In re NCAA Student-Athlete Name and Likeness Licensing Litigation* which alleges that video game manufacturer Electronic Arts, the National Collegiate Athletic Association and the Collegiate Licensing Company used the names, images and likenesses of student athletes in violation of state right of publicity laws and the NCAA's contractual agreements with the student-athletes. The plaintiffs reached a settlement with EA and the CLC in May for $40 million and reached a settlement in June with the NCAA for $20 million. The parties are in the process of seeking approval from the Court for the two settlements.

## RECENT SUCCESS
- Multimillion dollar jury verdict believed to be the largest in Columbiana County, Ohio history
- Multimillion dollar class-action settlement on behalf of a nationwide class of student-athletes whose images were used on a website affiliated with CBS Interactive without their permission or compensation
- Obtained two jury verdicts in favor of the original developer of the Madden Football video game franchise in phased trial over unpaid royalties

## LEGAL ACTIVITIES
- Adjunct Professor, Sandra Day O'Connor College of Law, Arizona State University
- State Bar of Arizona Bar Leadership Institute Class I
- Pro bono work in insurance, immigration, family and contract law

## RECOGNITION
- 500 Leading Plaintiff Consumer Lawyers, Lawdragon, 2024
- Rising Star, Super Lawyers, 2012-2014

## NOTABLE CASES
- *In re NCAA Student-Athlete Name and Likeness Licensing Litigation*
- *Keller v. Electronic Arts Inc.*
- *Antonick v. Electronic Arts Inc.*
- *In re Swift Transportation Co., Inc.*

HAGENS BERMAN SOBOL SHAPIRO LLP



Arizona State University, B.A.,
History and Political Science,
summa cum laude, 1998

**AWARDS**



- *Hunter v. Hyundai Motor America*
- *Jim Brown v. NCAA*
- *Liebich v. Maricopa County Community Colleges District*

## PERSONAL INSIGHT

Before entering the practice of law, Mr. Aragon was a scout for the 2/68 Armored Tank Battalion, communications director for a successful congressional campaign, and waited on season tickets holders at America West Arena so that he could secretly watch the Phoenix Suns.

HAGENS BERMAN SOBOL SHAPIRO LLP



grega@hbsslaw.com

T 617-482-3700
F 617-482-3003

1 Faneuil Hall Square
5th Floor
Boston, MA 02109

**YEARS OF EXPERIENCE**

25

**PRACTICE AREAS**

Antitrust Litigation
Personal Injury

**BAR ADMISSIONS**

- Supreme Judicial Court of the Commonwealth of Massachusetts

**COURT ADMISSIONS**

- U.S. Court of Appeals for the Second Circuit
- U.S. District Court for the District of Massachusetts

**EDUCATION**

**VILLANOVA**
UNIVERSITY
Villanova University School of Law, J.D., 1996, served on Law Review


**Fairfield**
UNIVERSITY
Fairfield University, B.S., Marketing, 1991

PARTNER
# Gregory T. Arnold

Greg devotes his practice to pursuing remedies for those injured by antitrust violations, particularly within the pharmaceutical industry.

## CURRENT ROLE

- Partner, Hagens Berman Sobol Shapiro LLP

- Practice focuses on prosecution of large-scale, nationwide class actions, primarily against the pharmaceutical industry

- Works on behalf of large health care providers, seeking recoveries from tortfeasors associated with payments the providers make as a result of the harm they have caused

- Directs Hagens Berman's work on numerous pending Direct Purchaser Class Action cases, including *In re Ranbaxy Generic Drug Application Antitrust Litigation*, *In re Actos Direct Purchaser Antitrust Litigation*, *In re Lipitor Antitrust Litigation*, and *In re Effexor XR Antitrust Litigation*, as well as multiple actions brought on behalf of end payors, including *Staley, et al. v. Gilead Sciences, Inc. et al.*

## RECENT CASES

- Represented a certified class of direct purchasers in obtaining a settlement from a generic pharmaceutical company whose actions are alleged to have caused significant delay in the market entry of multiple generic drugs

- Representing a proposed class of direct purchasers in an action against a Japanese drug manufacturer, seeking to recover damages flowing from alleged misrepresentations made to the Food & Drug Administration

## RECENT SUCCESS

- Arnold helped direct the firm's work on *In re Ranbaxy Generic Drug Application Antitrust Litigation*, which resulted in the second largest U.S. antitrust settlement in 2022 ($340 million).

- Mr. Arnold was part of a team that secured substantial recoveries on behalf of a class of direct purchasers in connection with wrongfully-delayed entry of generic versions of various pharmaceutical drugs.

- He defeated summary judgment in case alleging misconduct on the part of a large Indian generic pharmaceutical manufacturer which caused delays in generic competition on multiple drugs with billions of dollars of annual sales.

- Mr. Arnold obtained a substantial settlement for three classes of direct purchasers of drugs as to which generic competition was delayed due to alleged misconduct on behalf of a generic manufacturer.

- He successfully opposed a 1292(b) petition to the Second Circuit Court of Appeals, which affirmed the vitality of the allegations brought by a proposed class of direct purchasers against a branded pharmaceutical manufacturer.

## EXPERIENCE

- Income Partner, Litigation Department for a large Boston-based law firm

## NOTABLE CASES

**Bankruptcy-related litigation**

- Lead efforts on behalf of three law firms protecting the interests of more than 25,000 claimants suffering from asbestos-related diseases, to block a proposed plan of reorganization. During more than 5 years of litigation, succeeded in forcing numerous changes to the proposed plan, including the voting methodology, amount of contribution and distributions. Pursued several interlocutory appeals throughout the case. Oversaw and managed all aspects of this complex litigation, culminating in a successful 20-day bench trial conducted in the Bankruptcy Court for the Southern District of New York, after which the Court rejected the proposed bankruptcy plan, thereby securing a substantial benefit for the clients.

- One of a team of lawyers representing the interests of The Ad Hoc Committee of Trade Creditors in the *In re WorldCom* matter, resulting in increasing our clients' recoveries by nearly 50%.

**Mass Torts/Class Actions**

- Played pivotal role in representing the Commonwealth of Massachusetts in landmark litigation against the Tobacco Industry, including establishing personal jurisdiction in Massachusetts over the United Kingdom-based parent company to Brown & Williamson. This work product, as well as the resulting Court decision, was relied upon by Attorneys General throughout the country in their cases against the Tobacco Industry.

- Following the Commonwealth of Massachusetts' action, lead efforts in pursuing a nationwide class action on behalf of all persons injured as a result of the tobacco industry's misconduct.

- Successfully defended a class action case brought against a major credit card issuer, obtaining a denial of class certification and dismissal of individual's claims.

**Complex Financial Litigation**

- Successfully represented a group of more than 65 investors in offshore hedge funds, pursuing recoveries for over $600 million of invested capital lost due to fraudulent practices of hedge fund manager.

**General Commercial Litigation**

- Represented former attorney whose malpractice insurer had refused defense and indemnity after an office worker embezzled millions of dollars in client funds. Following a five-week Superior Court trial, secured a verdict in favor of the client, holding the insurance company responsible for more than $2 million in liability to the insured's former client. Successfully defended insurer's appeal of the trial court decision in the Appeals Court. Subsequently brought a case against the insurance company under Chapter 93a, resulting in a multi-million dollar recovery for the client.

- Obtained a substantial recovery for a client whose intellectual property was wrongfully assigned to a third-party. Achieved a pre-trial settlement with the assigning party while pursuing a bench trial in Middlesex Superior Court against the party using the software.

- Served as "first chair" in a complex, multi-week bench trial in federal court over breach of multi-million dollar commercial contract concerning sale of radiology equipment, including prevailing on counter-claim seeking to impose multi-million dollar liability.

**Patent Litigation**

- Represented national and international clients on a full range of patent litigation issues, including trials.

- Successful litigator before the United States International Trade Commission, including obtaining favorable outcome for a client protecting their intellectual property rights against an infringer based in Sweden.

**Labor and Employment Litigation**

- Defended client interests in a variety of matters, including those involving non-competition agreements, wrongful terminations, and harassment claims.

- Successfully represented companies enforcing non-compete agreements against former employees, as well as new employers/former employees in avoiding the terms of non-compete agreements.

- Handled trials before administrative bodies, including the U.S. Department of Labor, including defending a client against claims made under the Surface Transportation Assistance Act ("STAA") following the termination of an employee/truck driver.

**Other Litigation**

- Represented client in an eminent domain trial, resulting in a jury award more than 10 times the Commonwealth's pro tanto offer.

## PERSONAL INSIGHT

Greg is married with three children and lives in Mansfield, MA. Greg played varsity ice hockey in college.



lauren@hbsslaw.com

T 617-482-3700
F 617-482-3003

1 Faneuil Hall Square
5th Floor
Boston, MA 02109

**YEARS OF EXPERIENCE**

17

**PRACTICE AREAS**

Antitrust Litigation
Class Action
Consumer Rights
Health Care Fraud
Mass Torts
Medical Devices
Pharmaceutical Fraud
RICO

**INDUSTRY EXPERIENCE**

▪ Pharmaceuticals/Health Care
▪ Medical Devices

**BAR ADMISSIONS**

▪ Supreme Judicial Court of the
  Commonwealth of
  Massachusetts

**COURT ADMISSIONS**

▪ Supreme Court of the United
  States
▪ Second Circuit Court of Appeals
▪ Seventh Circuit Court of
  Appeals
▪ U.S. District Court for the
  District of Massachusetts

PARTNER

# Lauren Guth Barnes

Ms. Barnes was honored with the American Association for Justice's Marie Lambert Award in 2018, given to a female attorney in recognition of her exemplary leadership to the profession, to her community, to AAJ and to the Women Trial Lawyers Caucus.

## CURRENT ROLE

- Partner, Hagens Berman Sobol Shapiro LLP

- Practice focuses on antitrust, consumer protection and RICO litigation against drug and medical device manufacturers in complex class actions and personal injury cases for consumers, large and small health plans, direct purchasers and state governments

- Co-lead interim class counsel for end payors in *In re Vascepa Antitrust Litigation* (D.N.J.)

- Co-lead class counsel for direct purchasers in *In re Intuniv Antitrust Litigation* (D. Mass.)

## EXPERIENCE

- As co-lead class counsel, helped secure $453.85 million class settlement for direct purchaser class members shortly before trial in *In re Glumetza Antitrust Litigation, the largest U.S. antitrust settlement in 2022*

- Serves as counsel to Blue Cross Blue Shield Association in its roles as members of the Unsecured Creditors Committee in the Purdue bankruptcy and the Opioid Creditors Committee in the Mallinckrodt and Endo bankruptcies

- As co-lead class counsel, helped secure $72.5 million class settlement for direct purchaser class members three days before trial in MDL 2503: *In re Solodyn Antitrust Litigation*

- Helped reach a $73 million class settlement for direct purchasers in MDL No. 2343: *In re Skelaxin Antitrust Litigation*

- Represented the state of Connecticut and helped secure a $25M settlement in its' action against Eli Lilly over unlawful promotion of and misrepresentations about Zyprexa

- Represented health benefit providers in the firm's Ketek and copay subsidies class litigation, and individuals harmed by pharmaceuticals such as Yaz, Actos and Granuflo and medical devices including pelvic mesh

- Served as pro bono counsel in a successful constitutional challenge to the Commonwealth of Massachusetts' exclusion of legal immigrants from the state's universal healthcare program

HAGENS BERMAN SOBOL SHAPIRO LLP

**EDUCATION**



Boston College Law School, J.D.,
cum laude, 2005, Articles Editor,
Boston College Law Review



Williams College, B.A.,
International Relations,
cum laude, 1998

- Served as liaison counsel for *In re Fresenius Granuflo/Naturalyte Dialysate Products Liability Litigation*

- Active in the fights against forced arbitration and federal preemption of consumer rights, working to ensure the public maintains access to the civil justice system and the ability to seek remedies when companies violate the law

- Co-authored an amicus brief to the Supreme Court in *Pliva v. Mensing* on behalf of practitioners and professors who teach and write on various aspects of pharmaceutical regulation and the delivery of healthcare

- Worked at Conflict Management Group where she worked with members of the United Nations High Commissioner for Refugees on a pilot project in Bosnia-Herzegovina designed to ease tensions and encourage reconciliation in post-conflict societies, and contributed to Imagine Coexistence, a book developed out of the collaboration

## LEGAL ACTIVITIES

- Executive Committee Member, Public Justice, 2023-present

- Board of Directors Member, Public Justice, 2018-present

- Chair, American Association for Justice (AAJ), Law Schools Committee, 2010-present

- Board of Governors Member, Massachusetts Academy of Trial Attorneys, 2011-present

- Member, American Association for Justice (AAJ), Board of Governors, 2012-present

- Member, American Association for Justice (AAJ), AAJ Trial Lawyers Care Task Force, 2012-present

- Chair, American Association for Justice (AAJ), Committee on the Judiciary, 2018-present

- Executive Committee Member, Massachusetts Academy of Trial Attorneys, 2012-2014; 2017-present

- Executive Committee Member, American Association for Justice (AAJ), 2014-2015, 2019-present

- Fellow, American Bar Foundation, 2022-present

- Member, Massachusetts IOLTA Committee, appointed by Massachusetts Supreme Judicial Court, 2022

- Chair, Public Justice, Class Action Preservation Project, 2020-2021

- Vice Chair, Public Justice, Class Action Preservation Project, 2019-2020

- Former Chair, American Association for Justice (AAJ), Antitrust Litigation Group, 2016-2018

- Co-Chair, Boston Bar Association, Class Action Committee, 2014-2018

- Emerging Leaders Board of Advisors, Institute for Complex Litigation and Mass Claims at Emory Law, 2015-2017

- Board of Governors, American Association for Justice (AAJ), New Lawyers Division, 2009-2014

HAGENS BERMAN SOBOL SHAPIRO LLP

- Former Chair, American Association for Justice (AAJ), Women Trial Lawyers Caucus, 2012-2013

- Former Co-Chair, American Association for Justice (AAJ), Class Action Litigation Group, 2011-2012

- Member, American Association for Justice (AAJ), Various committees

## RECOGNITION

- 500 Leading Lawyers in America, Plaintiff Consumer Lawyers, Lawdragon, 2019-2024

- 500 Leading Lawyers in America, Plaintiff Financial Lawyers, Lawdragon, 2019-2024

- Certificate of Recognition, AAJ, 2022-2023

- Massachusetts Super Lawyer, 2018-2023

- Distinguished Service Award, American Association for Justice, 2015, 2017, 2018, 2021

- Women's Caucus Excellence in Leadership Award, American Association for Justice, 2017, 2019

- Marie Lambert Award, American Association for Justice, 2018

- Emerging Leaders Board of Advisors, inaugural class, Institute for Complex Litigation and Mass Claims at Emory Law, 2015-2017

- Above and Beyond Award, American Association for Justice, 2016

- Massachusetts Rising Star, Super Lawyers, 2014-2015

- Boston Rising Star Award, The National Law Journal, 2014

- President's Award, Massachusetts Academy of Trial Attorneys, 2014

- New Lawyers Division Excellence Award, American Association for Justice, 2010, 2011, 2013, 2014

- Up & Coming Lawyer Award, Massachusetts Bar Association, 2013

- Wiedemann & Wysocki Award, American Association for Justice, 2012, 2013

- New Lawyers Division Above and Beyond Award, American Association for Justice, 2012

## NOTABLE CASES

- **$453.85 Million Recovery in Glumetza Antitrust Action, the Largest U.S. Antitrust Settlement of 2022**
  In February 2022, the Honorable William Alsup of the Northern District of California granted final approval to a $453.85 million class settlement for direct purchasers of brand and generic Glumetza. HBSS was co-lead class counsel in this case alleging Bausch, through its predecessors, and Assertio entered into a reverse payment agreement with Lupin to delay entry of generic Glumetza and, in the intervening period of delay, hiked the price of this diabetes drug grotesquely, all resulting in substantial overcharges by direct purchasers. The case settled shortly before trial. *In re Glumetza Antitrust Litigation*, N.D. CA., No. 19-cv-05822-WHA

HAGENS BERMAN SOBOL SHAPIRO LLP

- **$72.5 Million Recovery in Solodyn Antitrust Action**
  In July 2018, the Honorable Denise J. Casper of the District of Massachusetts granted final approval to a $72.5 million class settlement for direct purchasers of brand and generic Solodyn. HBSS was co-lead class counsel in this case alleging Medicis entered into a series of reverse payment deals to delay entry of generic Solodyn and used the period of delay to effectuate a product hop, all resulting in overcharges by direct purchasers. The case settled three days before trial. *In re Solodyn Antitrust Litigation*, D. Mass., MDL No. 2503

- **$73 Million Recovery for Direct Purchasers of Skelaxin**
  On Sept. 24, 2014, Judge Curtis Collier of the Eastern District of Tennessee approved a $73 million settlement for direct purchasers of Skelaxin in litigation alleging Skelaxin's manufacturer colluded with would-be generic competitors, fraudulently delaying generic competition and leading to higher prices. Metaxalone was sold under the brand name Skelaxin since 1962, but the original patent expired in 1979. Manufacturers applied to market generic metaxalone in 2002, and generic competitors remained foreclosed from marketing generic metaxalone until 2010. Hagens Berman served as lead counsel for direct purchasers. *In re Skelaxin (Metaxalone) Antitrust Litigation*, E.D.TN., Civil Action No. 1:12-md-2343.

- **Health care coverage for 40,000 legal immigrants in Massachusetts**
  On Jan. 5, 2012, the Massachusetts Supreme Judicial Court ruled unanimously that a state law barring 40,000 low-income legal immigrants from the state's universal health care program unconstitutionally violates those immigrants' rights to equal protection under the law and must be struck down. Hagens Berman served as pro bono counsel. *Finch v. Commonwealth Health Insurance Connector Authority*, Mass., Civil Action No. SJC-11025.

- **$25 million for the state of Connecticut for Zyprexa fraud**
  On Oct. 5, 2009, U.S. District Court Judge Jack B. Weinstein approved a $25 million settlement reached by the parties to conclude the state's Zyprexa litigation that alleged Lilly engaged in unlawful off-label promotion and misrepresented Zyprexa's safety and efficacy, resulting in millions of dollars in excess pharmaceutical costs. Hagens Berman served as outside counsel to Attorney General Richard Blumenthal. *State of Connecticut v. Eli Lilly & Co.*, E.D.N.Y., Civil Action No. 08-cv-955-JBW.

## PUBLICATIONS

- "How Mandatory Arbitration Agreements and Class Action Waivers Undermine Consumer Rights and Why We Need Congress to Act," Harvard Law and Policy Review, August 2015

## PERSONAL INSIGHT

Unlike many of her colleagues at HBSS, Lauren does not run marathons – unless chasing after her three children counts. Lauren did wrestle in college but refused to don the wrestling singlet. Whenever she can, Lauren rock climbs with her in-laws, breathes deeply at yoga, and hosts dinner parties to, despite usual advice, try totally new recipes. She also keeps the pizza delivery guy on speed dial as back-up for such occasions.

HAGENS  BERMAN  SOBOL  SHAPIRO LLP



**PARTNER**

# Hannah Brennan

Hannah is committed to improving access to medicines – both domestically and abroad – and has experience in drug pricing, patent and international right to health litigation.

hannahb@hbsslaw.com

T 617-475-3700
F 617-482-3003

1 Faneuil Hall Square
5th Floor
Boston, MA 02109

**YEARS OF EXPERIENCE**
10

**PRACTICE AREAS**
Antitrust Litigation
Civil & Human Rights
Class Action
Consumer Rights
Medical Devices
Pharmaceutical Fraud
RICO

**INDUSTRY EXPERIENCE**
▪ Drug Pricing
▪ Patent
▪ International Right to Health
  Litigation
▪ International Trade
  Agreements

**BAR ADMISSIONS**
▪ Supreme Judicial Court of the
  Commonwealth of
  Massachusetts

**COURT ADMISSIONS**
▪ Third Circuit Court of Appeals
▪ U.S. District Court for the
  District of Massachusetts

**CLERKSHIPS**
▪ Honorable Timothy B. Dyk of
  the United States Court of
  Appeals for the Federal Circuit

## CURRENT ROLE

- Partner, Hagens Berman Sobol Shapiro LLP

- Practice focuses on drug pricing, consumer access to medications, healthcare fraud, antitrust and patent fraud

- Member of HBSS team representing a proposed class of direct purchasers of Copaxone, a medication that treats multiple sclerosis; the proposed class alleges Teva entities suppressed generic competition for Copaxone by entering into exclusionary contracts with pharmacy benefits managers (PBMs) and specialty pharmacies that barred generic Copaxone

- Member of the HBSS team representing a proposed class of insulin consumers in their claims against Eli Lilly, Novo Nordisk and Sanofi for unfairly and unconscionably increasing the cost of live-saving insulin medications. HBSS has been named lead counsel in this case and the plaintiffs have moved for class certification

- Member of the HBSS team litigating claims against GSK for its fraudulent marketing of the diabetes medication, Avandia, a case in which HBSS has been named lead counsel

- Member of the firm's legal team representing the Center for American Progress (CAP), the NAACP and a group of over four dozen law scholars on their various amicus submissions in the Inflation Reduction Act Medicare Drug Pricing Negotiation cases. These amicus briefs explain the constitutionality of government price negotiations and price regulations and argue that Congress should be permitted to regulate drug prices not just for the Medicare program but across the industry. They additionally show that the federal government has long used patents and such use does not violate the Fifth Amendment. CAP and NAACP's briefs demonstrate that affordable access to prescription medications is a key health equity issue for communities of color, the LGBTQ+ community, women and people living with disabilities. The IRA's Medicare drug price negotiation will help to alleviate that unfairness, bringing the United States closer to the goal of achieving health equity.

## RECENT SUCCESS

- In the Endangered Species Act (ESA) lawsuit against the Massachusetts, the team procured a 60-page Indicative Ruling as to Liability and Remedies finding that the state's continued licensing of vertical buoy lines to catch lobsters violates the ESA. The opinion relies heavily on the expert testimony of plaintiff's two key witnesses and explains that lobster fishing poses an untenable threat to the survival of the North Atlantic right whale.

- Successful Third Circuit appeal of sealing orders in *In re Avandia Marketing, Sales Practices and Products Liability Litigation*. Hannah briefed and argued the class

HAGENS BERMAN SOBOL SHAPIRO LLP

- Honorable Theodore McKee, Former Chief Judge of United States Court of Appeals for the Third Circuit

**EDUCATION**

*Yale Law School*

Yale Law School, J.D., 2013

 **BROWN UNIVERSITY**

Brown University, B.A., 2009

plaintiffs' appeal of two district court orders sealing the entire summary judgment record. The Third Circuit issued a precedential opinion adopting the standard the plaintiffs urged for the public's common law right of access and vacated the district courts' orders. The Third Circuit also instructed the district court to consider the First Amendment argument the plaintiffs advanced. *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 924 F.3d 662 (3d Cir. 2019). Hannah also successfully briefed the issue on remand to the United States District Court for the Eastern District of Pennsylvania: the Court unsealed all of the summary judgment records at issue. *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, No. 07-MD-01871, 2020 WL 5358287 (E.D. Pa. Sept. 3, 2020).

- Successful Third Circuit appeal of summary judgment ruling in *In re Avandia Marketing, Sales Practices and Products Liability Litigation*. Hannah lead the team that briefed the class plaintiffs' appeal of the district court's grant of summary judgment in favor of the defendant. The Third Circuit issued a precedential opinion siding with the plaintiffs on all three issues presented in the appeal. The Third Circuit remanded the case to the district court and ordered further discovery for the plaintiffs.

- $51.25 million class recovery in *In re Restasis Antitrust Litigation*. Assisted in the litigation of claims against Allergan for engaging in an anticompetitive scheme to keep generic versions of the eye medication, Restasis, off the market. The alleged scheme included fraud on the U.S. Patent and Trademark Office, sham litigation against generic manufacturers, meritless citizen petitions to the Food and Drug Administration and sham transfer of patents to a Native American Tribe in an attempt to avoid invalidation. *In re Restasis Antitrust Litigation*, 18-md-2819, E.D.N.Y., ECF No. 50.

- $94 million class recovery in *In re Celebrex Antitrust Litigation*. Hannah was member of the HBSS team that litigated claims against Pfizer for fraudulently obtaining patents from the U.S. Patent and Trademark Office and then asserted these patents to delay generics competition in violation of federal antitrust law. The case settled mere weeks before trial. *In re Celebrex (Celecoxib) Antitrust Litigation*, 2:13-cv-361, E.D. Va., ECF Nos. 64, 455.

## EXPERIENCE

- Prior to joining Hagens Berman, Ms. Brennan clerked for the Honorable Timothy B. Dyk of the United States Court of Appeals for the Federal Circuit and the Honorable Theodore McKee, Chief Judge of United States Court of Appeals for the Third Circuit.

- She was awarded a Yale Gruber Fellowship in Global Justice and Women's Rights to work for Public Citizen's Global Access to Medicines Program. At Public Citizen, she worked on a broad range of healthcare issues, including: negotiation of the intellectual property provisions of the Trans-Pacific Partnership Agreement, compulsory licensing of HIV medications in Peru, and policies for improving access to Hepatitis C medications for veterans, Native Americans and prisoners.

- In law school, Ms. Brennan worked in the Global Health and Justice Clinic, where she helped develop a human rights approach to intellectual property law. She also served in the Workers and Immigrants' Rights Advocacy Clinic, where she obtained a substantial settlement for a group of Latino construction workers with unpaid wage claims. She further represented Connecticut DREAMers in their legislative and regulatory campaigns to secure financial aid for undocumented students at Connecticut state universities.

HAGENS BERMAN SOBOL SHAPIRO LLP

- Prior to law school, Ms. Brennan served as Fulbright Scholar in Lima, Peru, where she researched labor rights abuses in the domestic housework industry and advocated for greater government regulation of this area.

## LEGAL ACTIVITIES

- Member, Federal Bar Association

- Member, Boston Bar Association

- Member, American Association for Justice

## RECOGNITION

- Ones to Watch, Plaintiffs Mass Tort Litigation/Class Actions, Best Lawyers, 2024

- 500 Leading Lawyers in America, Plaintiff Financial Lawyers, Lawdragon, 2023-2024

- Charles G. Albom Prize for Excellency in Appellate Advocacy

## PUBLICATIONS

- "*Unsealing Court Records: Key Learnings from the Third Circuit's Avandia Jurisprudence*," American Association for Justice Trial Magazine (July 2021)

- Hannah Brennan, Christine Monahan, Zain Rizvi, and Amy Kapczynski, "Government Patent Use: How a Little Known Statute Can Bring Down Drug Prices and Transform Health," 18 *Yale Journal of Law & Technology* 275 (2016)

- "*The Cost of Confusion: The Paradox of Trademarked Pharmaceuticals*," 22 *Michigan Telecommunications & Technology Law Review* 1, 2016

- Hannah Brennan and Burcu Kilic, "*Freeing Trade at the Expense of Local Crop Markets?: A Look at the Trans-Pacific Partnership's New Plant Related Intellectual Property Rights From Human Rights Perspective*," Harvard Human Rights Journal Online (2015)

- Burcu Kilic, Hannah Brennan, & Peter Maybarduk, "What Is Patentable Under the Trans-Pacific Trade Partnership?," 40 *Yale Journal of International Law* Online 1 (2015)

- "Inside Views: The TPP's New Plant-Related Intellectual Property Provisions," *Intellectual Property Watch*, Oct. 17, 2014

- Co-author, "A Human Rights Approach to Intellectual Property and Access to Medicines," *Yale Global Health and Justice Partnership*

- "Trabajo en servicio doméstico: capacitación laboral y agencias de empleo [Domestic House Work: Labor Training and Employment Agencies],"Asociación Grupo de Trabajo Redes eds., 2010

## LANGUAGES

- Spanish

## PERSONAL INSIGHT

Hannah's favorite city is Lima, her favorite state is Vermont, and her favorite 90s action movie is *The Fugitive*.



erinb@hbsslaw.com

T 617-482-3700
F 617-482-3003

1 Faneuil Hall Square
5th Floor
Boston, MA 02109

**YEARS OF EXPERIENCE**

20

**PRACTICE AREAS**

Antitrust Litigation
Class Action

**INDUSTRY EXPERIENCE**

- Pharmaceuticals
- Insurance
- Automotive

**BAR ADMISSIONS**

- Pennsylvania

**COURT ADMISSIONS**

- D.C. Circuit Court of Appeals
- Third Circuit Court of Appeals
- U.S. District Court for the
  Eastern District of Michigan
- U.S. District Court for the
  Eastern District of Pennsylvania

**CLERKSHIPS**

- Lancaster County Court of
  Common Pleas, Pennsylvania
  (Hon. Louis J. Farina)

**EDUCATION**



Villanova University School of
Law, J.D., 2002

PARTNER

# Erin C. Burns

Ms. Burns devotes her practice to serving those who have been injured by antitrust violations in a variety of industries.

## CURRENT ROLE

- Of Counsel, Hagens Berman Sobol Shapiro LLP

## RECENT SUCCESS

- *In re Zetia (Ezetimibe) Antitrust Litigation*, MDL No. 2836 (E.D. Va.)

- *In re Avandia Marketing, Sales Practices and Products Liability Litigation*, MDL No. 1871 (E.D. Pa.)

- *In re Ranbaxy Generic Drug Application Antitrust Litigation*, MDL No. 2878 (D. Mass.)

- *Government Employees Health Association v. Actelion Pharmaceuticals Ltd., et al.*, Case No. 18-cv-3560 (D. Md.) (Tracleer)

- *In re Amitiza Direct Purchaser Antitrust Litigation*, Case No. 23-cv-11254 (D. Mass.)

## EXPERIENCE

- Prior to joining Hagens Berman, Ms. Burns founded ECB Law LLC, and previously worked as an associate attorney at NastLaw LLC and RodaNast P.C.

- She served a lead role in *In re Zetia Antitrust Litigation*, which settled confidentially in 2024, and continues litigation in *In re Avandia Marketing, Sales Practices and Products Liability Litigation*, and the *Tracleer* case. She was heavily involved in defending the Magistrate Judge's Report and Recommendation as to the relevant market in *In re Zetia Antitrust Litigation*, which the District Court upheld in all respects on February 24, 2022.

- Erin was a member of the Law & Briefing Committee for *In re Zoloft (Sertraline Hydrochloride) Products Liability Litigation*, MDL No. 2342 (E.D. Pa.) and also served as a member of the deposition team for *Shane Group, Inc., et al. v. Blue Cross/Blue Shield of Michigan*, Case No. 2:10-cv-14360-DPH-MKM (E.D. Mich.). She was also mediation counsel for *In re Skelaxin (Metaxalone) Antitrust Litigation*, MDL No. 2343 (E.D. Tenn.).

## LEGAL ACTIVITIES

- Member of the American Bar Association, the Pennsylvania Bar Association

- Featured panelist for the Legal Intelligencer's first annual Litigation Summit, speaking about taxation of costs under 28 U.S.C. § 1920 for e-discovery expenses, 2012

- Chairperson of the Young Lawyers' Division and member of the Board of Directors of the Lancaster Bar Association, 2005

- Vice-Chairperson of the Young Lawyers' Division, 2004

HAGENS  BERMAN  SOBOL  SHAPIRO LLP



University of Delaware, B.A.
Psychology, 1999

- Leader for the Law Explorers Post, 2004 – 2006; Erin taught monthly class for high school-aged children interested in careers in law. Her work included mock trial activities, sample law school and bar exam questions and guest speakers

## RECOGNITION

- Lancaster Bar Association President's Award for organizing the Young Lawyers' Division's annual community service day through Habitat for Humanity (2005).

## PERSONAL INSIGHT

When not practicing law, Erin spends as much time as possible with her husband and four children. She has spent nearly as much time patching up scraped knees and elbows as she has writing briefs. Erin also has a soft spot for orange cats.

HAGENS BERMAN SOBOL SHAPIRO LLP



PARTNER
# Elaine T. Byszewski

Part of the team that was recognized for Outstanding Antitrust Litigation Achievement by American Antitrust Institute in 2018

elaine@hbsslaw.com

T 213-330-7150
F 213-330-7152

301 North Lake Avenue
Suite 920
Pasadena, CA 91101

**YEARS OF EXPERIENCE**
21

**PRACTICE AREAS**
Antitrust Litigation
Appellate Litigation
Class Action
Consumer Rights
Qui Tam

**BAR ADMISSIONS**
- California

**COURT ADMISSIONS**
- Seventh Circuit Court of Appeals
- Ninth Circuit Court of Appeals
- U.S. District Court for the Northern District of California
- U.S. District Court for the Central District of California
- U.S. District Court for the Eastern District of California
- U.S. District Court for the Southern District of California

**EDUCATION**
**HARVARD LAW SCHOOL**
Harvard Law School, J.D., cum laude, 2002

## CURRENT ROLE
- Partner and Management Committee Member, Hagens Berman Sobol Shapiro LLP
- Ms. Byszewski has represented direct and indirect purchasers in complex antitrust and consumer class actions resulting in billions of dollars of settlements, including cases against major protein producers, car manufacturers and drug manufacturers, among others
- Currently, Ms. Byszewski focuses her practice on brief writing for a wide variety of firm cases, including:
  - Antitrust cases involving collusion by major meat processors and other antitrust cases on behalf of indirect and direct purchasers
  - Auto defect cases and other product defect cases on behalf of consumers
  - College refund cases seeking return of tuition paid for promised in-person and on-campus education not received during the pandemic

## RECENT SUCCESS
- Drafted petition for en banc review in *Hyundai & Kia Fuel Economy Litig.*, which was granted and resulted in affirmance of the nationwide class action settlement in 2019.
- Litigated *Milk Antitrust* from complaint filing to settlement of $52 million and received the American Antitrust Institute's 2018 award for *Outstanding Antitrust Litigation Achievement in Private Law Practice.*
- Member of litigation team that settled *Toyota Unintended Acceleration Litigation* for $1.6 billion and was a finalist for Public Justice's 2014 *Trial Lawyer of the Year* award.

## EXPERIENCE
- Prior to joining Hagens Berman, Ms. Byszewski focused her practice on labor and employment litigation and counseling. During law school she worked in the trial division of the office of the Attorney General of Massachusetts.

## RECOGNITION
- 500 Global Plaintiff Lawyers, Lawdragon, 2024
- 500 Leading Plaintiff Financial Lawyers, Lawdragon, 2020, 2022-2024

## NOTABLE CASES
- *Broiler Chicken Antitrust*
- *Pork Antitrust*

HAGENS BERMAN SOBOL SHAPIRO LLP



Connecticut College, B.A., 1999

**AWARDS**

- Lawdragon 500 Leading Plaintiff Financial Lawyers, 2020, 2022

- *Poultry Processing Wage Fixing Antitrust*

- *Turkey Antitrust*

- *Dairy Cooperatives Antitrust Litigation*

- *Toyota Unintended Acceleration*

- *Hyundai/Kia*

- *Ford Spark Plugs*

- *AstraZeneca Pharmaceuticals (Nexium) Litigation*

- Merck (Vioxx) Litigation

- Berkeley Nutraceuticals (Enzyte) Litigation

- Solvay Pharmaceuticals (Estratest) Litigation

- Costco Wage and Hour Litigation

## PUBLICATIONS

- "Valuing Companion Animals in Wrongful Death Cases: A Survey of Current Court and Legislative Action and A Suggestion for Valuing Loss of Companionship," *Animal Law Review*, 2003, Winner of the Animal Law Review's 5th Annual Student Writing Competition

- "What's in the Wine? A History of FDA's Role," *Food and Drug Law Journal*, 2002

- "ERISA and RICO: New Tools for HMO Litigators," *Journal of Law, Medicine & Ethics*, 2000

## PERSONAL INSIGHT

Ms. Byszewski enjoys spending time with her husband and their two sons.

HAGENS BERMAN SOBOL SHAPIRO LLP



johnd@hbsslaw.com

T 602-840-5900
F 602-840-3012

11 West Jefferson Street
Suite 1000
Phoenix, AZ 85003

**PRACTICE AREAS**

Appellate Advocacy
Class Action
Commercial Litigation
Consumer Rights
Insurance Law

**COURT ADMISSIONS**

- United States Supreme Court
- Third Circuit Court of Appeals
- Seventh Circuit Court of Appeals
- Eighth Circuit Court of Appeals
- Ninth Circuit Court of Appeals
- Tenth Circuit Court of Appeals
- U.S. District Court for the District of Arizona
- U.S. District Court for the District of Colorado
- Supreme Court of Arizona

**EDUCATION**



University of Arizona Law School, J.D.



Harvard University, B.A., Classics

PARTNER

# John DeStefano

Mr. DeStefano takes special pride in helping to protect consumers against fraud and the corruption of honest enterprise.

## CURRENT ROLE

- Partner, Hagens Berman Sobol Shapiro LLP
- Practice focuses on consumer, insurance, and antitrust class actions as well as appellate representation

## EXPERIENCE

- Snell & Wilmer LLP 2009-2013
- American Inns of Court Pegasus Scholar 2012: study of commercial, media, and privacy law with barristers and judges in the U.K.
- U.S. District Court for the District of Arizona, Law Clerk to the Hon. Neil V. Wake 2008-2009
- U.S. Court of Appeals for the Ninth Circuit, Law Clerk to the Hon. William C. Canby, Jr. 2007-2008

## LEGAL ACTIVITIES

- Adjunct Professor, Sandra Day O'Connor College of Law, Arizona State University
- Program Chair, Lorna Lockwood American Inn of Court
- Former Treasurer and Member of the Board of Trustees, American Inns of Court
- American Association for Justice

## RECOGNITION

- 500 Leading Plaintiff Consumer Lawyers, Lawdragon, 2024
- Rising Star, Class Action/Mass Tort, Super Lawyers, 2015-2017
- Top Pro Bono Attorneys in Arizona Award, Arizona Foundation for Legal Services & Education, 2013

## NOTABLE CASES

- Gunn v. Continental Casualty Co.
- Sieving v. Continental Casualty Co.
- Cheslow v. Continental Casualty Co.
- Brown v. Continental Casualty Co.
- Kronenberg v. Allstate Insurance Co.
- Lewis v. GEICO

- In re Hyundai & Kia Fuel Economy Litigation

- Jim Brown v. Electronic Arts Inc.

## CLERKSHIPS

- Hon. Neil V. Wake, U.S. District Court for the District of Arizona, 2008-2009

- Hon. William C. Canby, Jr., U.S. Court of Appeals for the Ninth Circuit, 2007-2008

## PUBLICATIONS

- Co-author of the Arizona and Colorado chapters of the ABA's "A Practitioner's Guide to Class Actions," 2nd edition

## PERSONAL INSIGHT

When John's great-grandfather came from Italy to Boston, he lost his life savings to a man he met named Charles Ponzi. A century later, John takes special pride in protecting the public against broad-based frauds and swindles and the corruption of honest enterprise.



jeannie@hbsslaw.com

T 708-628-4966
F 708-628-4950

455 N. Cityfront Plaza Drive
Suite 2410
Chicago, IL 60611

**YEARS OF EXPERIENCE**

25

**PRACTICE AREAS**

Antitrust Litigation
Class Action
Consumer Rights
Data Breach
Investor Fraud
Securities

**BAR ADMISSIONS**

- Illinois
- California

**COURT ADMISSIONS**

- U.S. District Court for the Northern District of Illinois
- U.S. District Court for the Northern District of California
- U.S. District Court for the Eastern District of California
- U.S. District Court for the Southern District of California

**EDUCATION**

## HARVARD
### LAW SCHOOL

Harvard Law School, J.D.
cum laude, 1997

Executive Editor, *Harvard Journal of Law and Public Policy*;
Federalist Society;
Asia Law Society

PARTNER
# Jeannie Y. Evans

Jeannie has achieved hundreds of millions of dollars in recovery for clients and has been named an Illinois Super Lawyer.

## CURRENT ROLE

- Partner, Hagens Berman Sobol Shapiro LLP
- Jeannie is a trial lawyer specializing in high-stakes, complex litigation and taking on the nation's most powerful corporations in lawsuits challenging anticompetitive activity, fraud and other wrongful conduct. She has obtained sizable settlements for plaintiffs, as well as meaningful policy changes and other injunctive relief benefiting her clients into the future.
- She has extensive experience and facility working with experts in economics and accounting regarding financial fraud and damages issues.
- Her areas of practice include:
  - Antitrust litigation: price-fixing, monopolization, tying, unfair competition, collusion among competitors to stifle competition and other restraints on free and fair markets
  - Deceptive business practices, fraud and consumer rights
  - Data privacy violations
  - Securities fraud and financial fraud: shareholder derivative suits, insider trading, breach of fiduciary duty, breach of contract and violations of federal securities laws and SEC, CFTC, NFA and CEA rules and regulations
  - Whistleblower investigations: representation of anonymous whistleblowers with the SEC and CFTC
  - Class-action litigation

## CURRENT CASES

- Temu Shopping App
- CapCut User Rights
- Broiler Chicken Antitrust
- Real Estate Commissions Antitrust

## EXPERIENCE

- Prior to joining Hagens Berman, Jeannie gained significant litigation experience representing both plaintiffs and defendants in various roles:
  - Co-founder and managing partner of Agrawal Evans LLP, a commercial litigation boutique firm based in Chicago. Achieved successful results representing both plaintiffs and defendants
  - Trial attorney at Kirkland & Ellis LLP (Chicago), defended antitrust and securities fraud class actions on behalf of corporate clients

HAGENS BERMAN SOBOL SHAPIRO LLP



**Brigham Young University, B.A.,**
**Political Science, summa cum**
**laude, Ezra Taft Benson Scholar;**
**University Honors, 1994**

Editor-in-Chief, *Journal of*
*International and Area Studies*

**AWARDS**

Super Lawyers

- o Trial attorney at Wilson Sonsini Goodrich & Rosati, defended securities fraud class actions on behalf of corporate clients
- o Law Clerk, Ninth Circuit Court of Appeals, Judge Alex Kozinski
- o Law Clerk, U.S. District Court for the Northern District of California, Judge Susan Illston

## PRO BONO

- Jeannie engages in pro bono legal work on behalf of refugees and others in her community who lack access to legal services.

## CLERKSHIPS

- Judge Susan Illston, U.S. District Court for the Northern District of California, 2003
- Judge Alex Kozinski, U.S. Court of Appeals for the Ninth Circuit, 1997

## RECOGNITION

- 500 Leading Plaintiff Financial Lawyers, Lawdragon, 2024
- President, Board Member, Harvard Law Society of Illinois, 2016-present
- Chicago Chapter Chair, Board Member, J. Reuben Clark Law Society, 2016-present
- BYU Law School Board of Advisors, 2017-2020
- Illinois Super Lawyer, 2016-2018
- Women of Influence Nominee, Best Lawyers, 2017

## NOTABLE CASES

- *Real-Estate Commissions Antitrust Litigation (Moehrl et al v. National Association of Realtors et al),* Jeannie works with the Hagens Berman team and their co-counsel to prosecute this class action against the largest US real estate brokerage firms and the National Association of Realtors for colluding to perpetuate rules that operate to reduce competition and artificially inflate the price of commissions paid to real estate agents.

- *In re Broiler Chicken Antitrust Litigation,* assisted Hagens Berman team prosecuting class action against the largest U.S. producers of chicken, for conspiracy to reduce the supply and increase the price of chicken. The firm has achieved $181 million in recovery to date.

- *Fiat Chrysler (FCA) Franchise Dealerships Litigation (Napleton's Arlington Heights, et al. v. FCA),* served as lead attorney prosecuting claims on behalf of seven auto dealerships against Fiat Chrysler for fraudulent and anticompetitive sales practices. Ms. Evans helped clients achieve a favorable settlement.

- *Hotel Room Overpricing Litigation* (*Tichy et al. v. Hyatt Corp. et al.*), Jeannie was a part of the team prosecuting a class action against the five largest U.S. hotel chains for rigging the market for online advertising of hotel rooms.

- *City of Sycamore Water Contamination Litigation (Jennifer Campbell, et al. v. City of Sycamore),* In this matter, she served on the team prosecuting claims by residents against their city for creating a water crisis through decades of failure to replace or maintain the city's deteriorating water infrastructure, leaving many residents without consistent access to clean and safe water. Secured agreement from the City to set aside funds to replace water system and engage in annual testing and disclosure of results.

HAGENS BERMAN SOBOL SHAPIRO LLP

- *Containerboard Antitrust Litigation (Kleen Products LLC et al. v. Internat'l Paper Co. et al.),* Jeannie defended containerboard producers in this multibillion-dollar horizontal price-fixing case.

- *Department of Justice (DOJ) Antitrust Investigation,* She represented a corporate client in a DOJ investigation regarding a potential merger.

- *Securities Fraud Class Action,* Jeannie defended a company and its officers and directors in claims arising out of a financial restatement, obtaining a favorable settlement.

- *Shareholder Derivative Litigation,* She obtained pre-discovery dismissal with prejudice for defendant General Motors in this shareholder derivative suit seeking to unwind GM's $3 billion acquisition.

- *Breach of Fiduciary Duty and Breach of Contract,* Ms. Evans represented global alternative asset management firm, hedge fund, owner of asset management firm and foreign investor in claim against Chicago-based hedge fund manager for violations of federal securities laws and SEC, CFTC, NFA and CEA rules and regulations, and for failure to pay out investor clients at the fund's reported NAV. She achieved successful recovery for clients.

- *Trade Secret / Non-Compete / Misappropriation of Corporate Opportunity Litigation,* Jeannie represented a private equity company and portfolio hospital company in a $300 million dispute.

## PRESENTATIONS

- "Parallel Proceedings in Antitrust Litigation," American Bar Association, 2024

- "Plaintiffs' Law" Panel Discussion, University of Chicago Law School, 2023

- "Basics of Accounting for Lawyers," Practicing Law Institute, 2015

- "Basics of Accounting for Lawyers," Practicing Law Institute, 2014

- "Preparing the Expert Witness for Deposition," Pincus Professional Education

## LANGUAGES

- Cantonese

- Mandarin

- Spanish

## PERSONAL INSIGHT

Jeannie loves sports and the outdoors. In particular, she enjoys body surfing, hiking, swimming in Lake Michigan, running along Chicago's Lakefront Trail, and playing tennis with friends and family.

HAGENS BERMAN SOBOL SHAPIRO LLP



**PARTNER**

# Rachel E. Fitzpatrick

Ms. Fitzpatrick was a member of the trial team responsible for a $5.25 million dollar jury verdict on behalf of an Ohio plaintiff who was badly burned while trying to rescue her paraplegic son.

rachelf@hbsslaw.com

T 602-840-5900
F 602-840-3012

11 West Jefferson Street
Suite 1000
Phoenix, AZ 85003

**YEARS OF EXPERIENCE**

10

**PRACTICE AREAS**

Class Action
Complex Civil Litigation
Consumer Rights
Mass Torts

**BAR ADMISSIONS**

▪ Arizona

**COURT ADMISSIONS**

▪ Ninth Circuit Court of Appeals
▪ U.S. District Court for the District of Arizona
▪ U.S. District Court for the District of Colorado

**EDUCATION**



Arizona State University Sandra Day O'Connor College of Law, J.D.



University of Arizona, B.A., Journalism & English Literature

## CURRENT ROLE

- Of Counsel, Hagens Berman Sobol Shapiro LLP

- Practice focuses on complex civil litigation and nationwide class actions, including consumer fraud and mass tort

- Ms. Fitzpatrick worked on behalf of student-athlete plaintiffs in the highly publicized cases *Keller v. Electronic Arts* and *In re NCAA Student-Athlete Name and Likeness Licensing Litigation*. The cases allege that video game manufacturer Electronic Arts, the National Collegiate Athletic Association and the Collegiate Licensing Company violated state right of publicity laws and the NCAA's contractual agreements with student-athletes by using the names, images and likenesses of the student athletes in EA's NCAA-themed football and basketball video games.

## RECENT CASES

- In March 2012, Ms. Fitzpatrick was a member of the trial team responsible for a $5.25 million dollar jury verdict on behalf of an Ohio plaintiff who was badly burned while trying to rescue her paraplegic son from his burning home. The verdict is believed to be the largest in Columbiana County, Ohio history.

## NOTABLE CASES

- *Keller v. Electronic Arts Inc.*, U.S. Court of Appeals, Ninth Circuit, Case No. 10-15387

- *In re NCAA Student-Athlete Name and Likeness Licensing Litigation*, U.S. District Court, ND Cal., Case No. 3:09-CV-01967-CW

- *Antonick v. Electronic Arts Inc.*, U.S. District Court, ND Cal., Case No. 3:11-CV-01543-CRB

## PERSONAL INSIGHT

Ms. Fitzpatrick spent three years as a professional NFL cheerleader for the Arizona Cardinals and traveled with the squad to Iraq, Kuwait and the United Arab Emirates to perform for troops stationed overseas.

HAGENS BERMAN SOBOL SHAPIRO LLP



**PARTNER**

# Catherine Y.N. Gannon

Ms. Gannon has applied her expertise in antitrust, securities and consumer protection law to recover tens of millions of dollars on behalf of consumers across the country.

catherineg@hbsslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**YEARS OF EXPERIENCE**
13

**PRACTICE AREAS**
Antitrust Litigation
Class Action
Consumer Rights
Securities

**BAR ADMISSIONS**
- Washington
- New York
- Ontario (Canada)

**COURT ADMISSIONS**
- Eleventh Circuit Court of Appeals
- U.S. District Court for the Eastern District of New York
- U.S. District Court for the Southern District of New York
- U.S. District Court for the Western District of Washington
- Law Society of Upper Canada (Ontario)

**EDUCATION**



York University, Osgoode Hall Law School, J.D., 2008, Senior Editor, *Osgoode Hall Law Journal*

## CURRENT ROLE
- Partner, Hagens Berman Sobol Shapiro LLP
- Lead partner for associate training and development at Hagens Berman
- Practice focuses on securities and antitrust matters, as well as nationwide consumer protection cases involving large corporations
- Extensive experience working with expert witnesses, often in economic and other highly technical areas

## EXPERIENCE
- Litigation Associate at Am Law 10 Law Firm, New York, New York
- Articling Student at "Seven Sister" Law Firm, Toronto, Canada

## LEGAL ACTIVITIES
- Former President, Board of Directors, Eastside Legal Assistance Program (ELAP)
- Supervising attorney in Hagens Berman partnership with Seattle's Sexual Violence Law Center
- Member, Mother Attorneys Mentoring Association of Seattle ("MAMAs")
- Graduate, Ladder Down, a year-long business development and leadership training program for female leaders in law

## RECOGNITION
- The Best Lawyers in America, Consumer Protection Law, Best Lawyers, 2024
- The Best Lawyers in America, Plaintiffs Mass Tort Litigation/Class Actions, Best Lawyers, 2024
- Rising Star, Washington Super Lawyers, 2016-2023
- National Trial Lawyers Top 40 Under 40 in Washington State, Civil Plaintiff, 2022

## NOTABLE CASES
- *Zillow Group, Inc. (NASDAQ: Z, SG)*
- *C3.ai, Inc. (NYSE: AI)*
- *Volkswagen/Audi/Porsche Diesel Emissions Scandal*
- *Aequitas Capital Management Securities Litigation*
- *Insulin Overpricing*

HAGENS BERMAN SOBOL SHAPIRO LLP



Carleton University, B.A., Public
Affairs and Policy Management,
summa cum laude, 2005

**AWARDS**



- *In re MyFord Touch Consumer Litigation*
- *NCAA Grant-In-Aid Cap Antitrust Litigation*

### PUBLICATIONS

- Co-author, the American Bar Association's "A Practitioner's Guide to Class Action — Vermont Chapter", 2021

- Co-author, the American Bar Association's "A Practitioner's Guide to Class Actions — Vermont Chapter," 2017

- "Designing a New Playbook for the New Paradigm: Global Securities Litigation and Regulation," Harvard Law School Forum on Corporate Governance and Financial Regulation, 2011

- "Legal Vulnerability of Bioethicists in Canada: Is a New Era Upon Us?" 30 *Health Law in Canada* 132, 2010

- Co-author, "The Threat of the Oppression Remedy to Reorganizing Insolvent Corporations," *Annual Review of Insolvency Law* 429 2009

### PERSONAL INSIGHT

Ms. Gannon is fluent in French and active within the pro bono community, having recently served as Board President of the Eastside Legal Assistance Program. Outside of work, Ms. Gannon enjoys hiking with her family and honing her nascent hockey skills on the ice.

HAGENS BERMAN SOBOL SHAPIRO LLP



[lucasg@hbsslaw.com](mailto:lucasg@hbsslaw.com)

T 510-725-3000
F 510-725-3001

715 Hearst Avenue
Suite 300
Berkeley, CA 94710

**YEARS OF EXPERIENCE**
14

**PRACTICE AREAS**
Class Action
Investor Fraud
Securities

**BAR ADMISSIONS**
- California

**COURT ADMISSIONS**
- First Circuit Court of Appeals
- Second Circuit Court of Appeals
- Ninth Circuit Court of Appeals
- U.S. District Court for the Northern District of California
- U.S. District Court for the Northern District of California (Bankruptcy Court)
- U.S. District Court for the Central District of California
- U.S. District Court for the Southern District of California

**EDUCATION**

**UC HASTINGS**
COLLEGE OF THE LAW
University of California Hastings
College of the Law, JD, 2007


Vanderbilt University, BA,
cum laude, 2002

PARTNER
# Lucas E. Gilmore

Investigates, analyzes and prosecutes complex securities matters.

## CURRENT ROLE
- Partner, Hagens Berman Sobol Shapiro LLP
- Advises institutional, government and individual investors on issues related to corporate governance, shareholder rights and securities litigation
- Key member of the firm's investor fraud team in which he, along with a group of attorneys, financial analysts, and investigators, counsels the firm's investor clients on their legal claims and prosecutes financial fraud cases

## EXPERIENCE
- Litigated dozens of securities class actions against the largest companies and banks, including BNY Mellon, BP, Citibank, Deutsche Bank, HSBC, Quality Systems, Symantec, U.S. Bank and Wells Fargo
- Prosecuted a number of cases related to the financial crisis, including several actions arising out of the issuance of residential mortgage-backed securities and other complex financial products
- Represented litigants in all phases of litigation, at both the trial court and appellate levels

## LEGAL ACTIVITIES
- Member, National Association of Public Pension Attorneys (NAPPA)
- Member, State Association of County Retirement Systems (SACRS)

## RECOGNITION
- Rising Star: Securities, Super Lawyers, 2014-2017

## PUBLICATIONS
- "The Fraud-on-the-Market Presumption Is Alive and Well," Association of Business Trial Lawyers, San Diego, ABTL Report, Fall 2014

## PRESENTATIONS
- Moderator, "Corporate Heroism — The Whistleblower," Bernstein Litowitz Berger & Grossman LLP, Real-Time Speaker Series, November 17, 2016
- Moderator, "Corporate Disclosure of Climate Change and Sustainability Risks and Practices," Bernstein Litowitz Berger & Grossmann LLP, Real-Time Speaker Series, March 17, 2016

## PERSONAL INSIGHT
Outside of the office, Mr. Gilmore enjoys boxing and serving as Defensive Coordinator of his sons' flag football teams.

HAGENS BERMAN SOBOL SHAPIRO LLP



benh@hbsslaw.com

T 510-725-3000
F 510-725-3001

715 Hearst Avenue
Suite 300
Berkeley, CA 94710

**YEARS OF EXPERIENCE**
14

**PRACTICE AREAS**
Antitrust Litigation
Class Action
Consumer Rights
Pharmaceutical Fraud

**BAR ADMISSIONS**
▪ California
▪ New York

**COURT ADMISSIONS**
▪ U.S. District Court for the
  Southern District of New York
▪ U.S. District Court for the
  Eastern District of New York

**EDUCATION**



University of California, Hastings
College of the Law, J.D.,
summa cum laude, 2008



The Evergreen State College, B.A.,
2001

**AWARDS**

Super Lawyers
RISING STARS

---

PARTNER

# Ben Harrington

---

Ben focuses on challenging fraudulent business practices and enforcing antitrust laws, drawing from his extensive experience representing both plaintiffs and defendants at all stages of litigation.

---

## CURRENT ROLE
- Partner, Hagens Berman Sobol Shapiro LLP

## EXPERIENCE
- Prior to joining Hagens Berman, Ben worked as a litigation associate in the New York office of Quinn Emanuel Urquhart & Sullivan LLP.

## CLERKSHIPS
- Honorable Nina Gershon, U.S. District Court for the Eastern District of New York, 2014-2016

- Honorable Harris Hartz, U.S. Court of Appeals, Tenth Circuit, 2008-2009

## RECOGNITION
- California Rising Star, Super Lawyers, 2020

## PERSONAL INSIGHT
If Ben is not working you will probably find him chasing after his young daughter, noodling on a guitar or tending to his ever-growing stable of bicycles.

HAGENS BERMAN SOBOL SHAPIRO LLP



annej@hbsslaw.com

T 206-623-7292
F 206-623-0594

594 Dean Street
Suite 24
Brooklyn, NY 11238

**YEARS OF EXPERIENCE**

20

**PRACTICE AREAS**

Antitrust Litigation
Pharmaceutical
Consumer Rights
Personal Injury

**INDUSTRY EXPERIENCE**

▪ Pharmaceuticals
▪ Automotive
▪ E-Commerce

**BAR ADMISSIONS**

▪ New York
▪ Texas

**COURT ADMISSIONS**

▪ U.S. District Court for the
  Eastern District of New York
▪ U.S. District Court for the
  Southern District of New York

**EDUCATION**



Brooklyn Law School, J.D.,
cum laude, 2002

**JAMES MADISON**
U N I V E R S I T Y®
James Madison University, B.A. in
Sociology, magna cum laude,
1996

PARTNER
# Anne F. Johnson

Ms. Johnson specializes in high-stakes, complex litigation challenging Big Pharma's schemes to block consumer access to less expensive generic drugs, as well as mass actions fighting corporate indifference and greed.

## CURRENT ROLE

- Partner, Hagens Berman Sobol Shapiro LLP

## RECENT CASES

- Represents thousands of plaintiffs in *Holley et al. v. Gilead Sciences, Inc.*, No. 4:18-cv-6872-JST (N.D. Cal.), in which plaintiffs allege that Gilead repeatedly designed its HIV medications to contain toxic TDF and delayed its safer TAF-based design until the expiration of TDF patent exclusivity so that Gilead could make millions more in product sales.

- Represents proposed classes of consumers in antitrust class actions against Amazon, including:

  o *Frame-Wilson et al. v. Amazon.com, Inc.*, No. 2:20-cv-00424-RAJ (W.D. Wash.), which was the first antitrust lawsuit filed against Amazon based on its policy of prohibiting third-party sellers from lowering the price of their goods on platforms that compete with Amazon; and

  o *De Coster v. Amazon.com, Inc.*, No. 2:21-cv-00693-RSM (W.D. Wash.), where Hagens Berman was appointed interim co-lead counsel, representing a class of Amazon customers, who allege that Amazon's agreements with its third-party sellers caused them to overpay for their purchases on Amazon Marketplace.

## EXPERIENCE

- Represented the States of Ohio and Arkansas in their suits against opioid manufacturers for creating and profiting off the opioid epidemic.

- Led the discovery, briefing and trial preparation teams on behalf of court-appointed co-lead counsel for the wrongful death and personal injury plaintiffs in General Motors LLC Ignition Switch Litigation, one of the largest product liability litigations in U.S. history. Ms. Johnson was instrumental in achieving a $200+ million aggregate settlement for her clients in General Motors LLC Ignition Switch Litigation.

- Member of the trial team in the first pay-for-delay pharmaceutical antitrust case to go to trial after the U.S. Supreme Court's watershed decision in *FTC v. Actavis*.

- Developed and filed multiple pharmaceutical antitrust cases challenging drug companies' schemes to prevent less expensive generic versions of brand name drugs from entering the market, including by using sham litigation, sham citizen petitions, pay-for-delay settlements and "product hopping."

- Prior to joining Hagens Berman, Ms. Johnson was a partner at a Texas litigation firm and an associate at two New York City plaintiffs' class-action firms.

HAGENS BERMAN SOBOL SHAPIRO LLP

## ACTIVITIES

- Former fundraising volunteer for Annie's List, which helps to elect progressive women to office in Texas

- Organized the American Constitution Society's Constitution in the Classroom program for New York City schools

## RECOGNITION

- Brooklyn Law Review

## NOTABLE CASES

- *Gilead HIV TDF Tenofovir Injuries*

- *Amazon.com Antitrust (De Coster)*

- *Amazon.com Online Retailer Consumer Antitrust (Frame-Wilson)*

- *General Motors LLC Ignition Switch Litigation*

- *Solodyn Antitrust Litigation*

- *Suboxone Antitrust Litigation*

- Provigil Antitrust Litigation

- *Tricor Antitrust Litigation*

## PERSONAL INSIGHT

Ms. Johnson recently moved back to Brooklyn after 10 years in Austin, TX. An avid record collector, Ms. Johnson is happy to be back in New York even though her apartment is too small to fit the jukebox.

HAGENS BERMAN SOBOL SHAPIRO LLP



**PARTNER**

# Kristen A. Johnson

Ms. Johnson was integral to Hagens Berman achieving the two largest U.S. antitrust recoveries in 2022, totaling nearly $800 million.

kristenj@hbsslaw.com

T 617-482-3700
F 617-482-3003

1 Faneuil Hall Square
5th Floor
Boston, MA 02109

**YEARS OF EXPERIENCE**
15

**PRACTICE AREAS**
Antitrust Litigation
Class Action
Consumer Rights
Pharmaceutical Fraud
RICO

**INDUSTRY EXPERIENCE**
Pharmaceuticals
Medical devices
Health care fraud

**BAR ADMISSIONS**
- Supreme Judicial Court of the Commonwealth of Massachusetts

**COURT ADMISSIONS**
- First Circuit Court of Appeals
- Second Circuit Court of Appeals
- Third Circuit Court of Appeals
- U.S. District Court for the District of Massachusetts

**EDUCATION**



Boston College School of Law, J.D.

## CURRENT ROLE

- Partner & management committee member, Hagens Berman Sobol Shapiro LLP

- Ms. Johnson excels in leading multidistrict and complex civil litigation involving multiple defendants, complex regulatory regimes, cross-discipline expert work and highly technical fact patterns.

- Her work at the firm focuses on rigorously combating waste, fraud and pricing abuse in the pharmaceutical industry.

## CAREER HIGHLIGHTS

- In *In re New England Compounding Pharmacy Litigation Multidistrict Litigation*, 12-md-2419, D. Mass. (Saylor, J., Zobel, J.), In this sprawling 100 plus defendant litigation, the Honorable Judge Rya W. Zobel initially appointed Ms. Johnson as liaison counsel to speak for the hundreds of victims who contracted fungal meningitis or suffered other serious health problems as a result of receiving contaminated products made and sold by NECC. Ms. Johnson was later appointed lead counsel (alternate) alongside her partner Thomas M. Sobol. The case resulted in settlement of about $200 million settlement on behalf of tort victims.

- In *In re Neurontin Marketing, Sales Practices, and Products Liability Litigation*, 04-md-1629, D. Mass. (Saris, J.), Ms. Johnson was a member of the trial team that achieved a $142 million civil RICO jury verdict against Pfizer for suppressing and manipulating results of scientific studies concerning the drug Neurontin. Post-trial, the third-party payer class settled with Pfizer for an additional $325 million.

- Has served as court-appointed lead or co-lead counsel in seven MDLs and similarly complex litigations, including:

  o *In re Celebrex (Celecoxib) Antitrust Litigation*

  o *In re New England Compounding Pharmacy Litigation Multidistrict Litigation*

  o *In re Loestrin 24 Fe Antitrust Litigation*

  o *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*

  o *In re Ranbaxy Generic Drug Application Antitrust Litigation*

  o *In re Zetia (Ezetimibe) Antitrust Litigation*

  o *In re Lipitor Antitrust Litigation*

## CURRENT CASES

- In *In re Lantus Direct Purchaser Antitrust Litigation,* 18-cv-2086, D. Mass. (Dein, J., Sorokin, J.), Ms. Johnson is involved in the firm's work combating criminally high insulin prices. The First Circuit Court of Appeals reversed a district court's dismissal of

HAGENS BERMAN SOBOL SHAPIRO LLP



**DARTMOUTH**

Dartmouth College, B.A.,
cum laude

antitrust litigation premised on wrongfully listing patents covering insulin injector pens in the FDA's Orange Book. Ms. Johnson directs day-to-day litigation efforts among plaintiffs on all pretrial and litigation strategy matters.

- In *In re Revlimid & Thalomid Purchaser Antitrust Litigation,* 2:19-cv-07532, D.N.J. (Salas, J.)*,* Ms. Johnson — as counsel for a large health plan — directs discovery and pretrial matters among health plans, retailer plaintiffs and a proposed class of end payers. She recently argued pay-for-delay aspects of the pending motion to dismiss.

- Ms. Johnson serves as court-appointed Liaison and Coordinating Counsel in what is believed to be the largest data breach MDL in history. The litigation team is pursuing claims against Progress Software and over 100 other defendants for the 2023 MOVEit data breach which compromised the sensitive personal information of an estimated 65 million people.

### RECENT SUCCESS

- In *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 23-md-2445, E.D. Pa. (Goldberg, J.), Ms. Johnson's role as a key part of the trial team helped secure a settlement valued at $385 million on behalf of direct purchasers in this decade-long product switch antitrust litigation. The settlement is pending final approval from the court.

- In *In re Zetia Antitrust Litigation*, 2:18-md-2836, E.D. Va. (Smith, J., Miller, J.), Ms. Johnson served as court-appointed co-lead counsel for direct purchasers. She conducted the examination of a key expert during a pre-trial evidentiary hearing. The court ruled in the plaintiffs' favor, and the defendants settled on the courthouse steps minutes before jury empanelment was to begin.

- In *In re Ranbaxy Generic Drug Application Antitrust Litigation*, 1:19-md-02878, D. Mass. (Gorton, J., Kelley, J.), Ms. Johnson served as court-appointed co-lead counsel in RICO and antitrust litigation against generic manufacturers Ranbaxy and Sun. She successfully argued against summary judgment and helped negotiate a proposed global $485 million settlement on the eve of trial ($340 million for the direct purchaser classes), the second largest U.S. antitrust settlement of 2022, per a 2022 Antitrust Annual Report. The litigation alleged Ranbaxy fraudulently obtained a series of 180-day exclusivities that blocked generic versions of Diovan, Nexium and Valcyte from coming to market for years.

- In *In re Glumetza Antitrust Litigation*, 3:19-cv-05822, N.D. Cal. (Alsup, J.), Ms. Johnson was an important part of the Hagens Berman team that litigated antitrust claims on behalf of a proposed class of direct purchasers of brand and generic Glumetza. The litigation resulted in settlements totaling $453.85 million for the direct purchaser class, the largest U.S. antitrust settlement of 2022, per a 2022 Antitrust Annual Report. The litigation alleged that generic company Lupin agreed to delay its launch of a generic form of Valeant's extended-release metformin product in exchange for Valeant's promise not to launch a competing generic product.

- In *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litigation*, 18-md-2819, E.D.N.Y (Gershon J.), Ms. Johnson served as court-appointed interim co-lead/liaison class counsel for the proposed direct purchaser class and helped negotiate a $51.25 million settlement with defendant Allergan. This multidistrict litigation alleged Allergan engaged in an anticompetitive scheme including abuse of the FDA's petitioning process to delay generic versions of Restasis from coming to market.

- In *In re Loestrin 24 Fe Antitrust Litigation*, 1:13-md-02472, D.R.I. (Smith, J., Sullivan, J.), Ms. Johnson served as co-lead counsel for the certified class of direct purchasers.

HAGENS BERMAN SOBOL SHAPIRO LLP

She directed Hagens Berman's litigation efforts and ran the patent team up to trial. The parties reached a proposed $120 million settlement shortly before trial.

## LEGAL ACTIVITIES

- Public Justice, Class Action Preservation Committee

## RECOGNITION

- 500 Leading Lawyers in America, Plaintiff Financial Lawyers, Lawdragon, 2024

- 500 Leading Lawyers in America, Plaintiff Consumer Lawyers, Lawdragon, 2023-2024

- Boston's Rising Stars 40 outstanding lawyers under 40, The National Law Journal, 2014-2015

- Trial Lawyer of the Year, nominated with the *Neurontin* trial team for securing a $142 million verdict against Pfizer for suppressing and manipulating the results of scientific studies that showed Neurontin did not work to treat the off-label indications Pfizer was heavily promoting, Public Justice, 2011

## NOTABLE CASES

- In *In re Flonase Antitrust Litigation*,*08-cv-3149, E.D. Pa. (Brody, J.), Ms. Johnson's contributions helped achieve $150 million settlement for the direct purchaser class in an antitrust case alleging GSK submitted a baseless petition to the FDA to delay the FDA's approvals of generic versions of Flonase.

- In *In re Prograf Antitrust Litigation*, MDL No. 2242, D. Mass. (Zobel, J.), Ms. Johnson helped reach a $98 million settlement for the class of direct purchasers in an antitrust case alleging Astellas delayed generic entry of transplant antirejection drug Prograf by abusing the FDA's petitioning process.

- In *In re Celebrex (Celecoxib) Antitrust Litigation*, 2:13-cv-361, E.D. Va (Wright, J., Miller, J.), Ms. Johnson served as court-appointed co-lead counsel and helped achieve a $94 million settlement for the certified class of direct purchasers in this antitrust case alleging Pfizer obtained reissuance of a follow-on patent by defrauding the Patent and Trademark Office.

## PERSONAL INSIGHT

Ms. Johnson grew up in a family law practice in Canfield, Ohio. Her grandfather, uncles and father practiced together, and her mother ran the office. Her brother and sister later joined the family firm. Ms. Johnson's career choice was perhaps inevitable, though she hopes her daughters will at least consider another profession.

HAGENS  BERMAN  SOBOL  SHAPIRO LLP



**PARTNER**

# Reed R. Kathrein

Mr. Kathrein represents institutional, government and individual investors in securities fraud and corporate governance cases.

reed@hbsslaw.com

T 510-725-3000
F 510-725-3001

715 Hearst Avenue
Suite 300
Berkeley, CA 94710

**YEARS OF EXPERIENCE**

45

**PRACTICE AREAS**

Class Action
Investor Fraud
Securities

**BAR ADMISSIONS**

- California
- Illinois
- Florida

**COURT ADMISSIONS**

- Ninth Circuit Court of Appeals
- U.S. District Court for the District of Colorado
- U.S. District Court for the Northern District of California
- U.S. District Court for the Northern District of Illinois
- Supreme Court of California
- Supreme Court of Florida
- Supreme Court of Illinois

**EDUCATION**

UNIVERSITY OF MIAMI
SCHOOL of LAW
University of Miami School of Law, J.D., 1977

UNIVERSITY OF MIAMI
University of Miami, B.A., 1974

## CURRENT ROLE

- Partner, Hagens Berman Sobol Shapiro LLP
- Regular public speaker on securities, class action and consumer law issues

## EXPERIENCE

- Litigated over 100 securities fraud class actions
- Worked behind the scenes in shaping the Private Securities Litigation Reform Act, the Securities Litigation Uniform Standards Act and the Sarbanes-Oxley Act
- Lawyer Representative, Ninth Circuit Court of Appeals
- Lawyer Representative, U.S. District Court for the Northern District of California, 2008-2011
- Chaired the Magistrate Judge Merit Selection Panel, U.S. District Court, Northern District of California, 2006-2008
- Co-chaired the Securities Rules Advisory Committee, U.S. District Court, Northern District of California, 2004-2006

## LEGAL ACTIVITIES

- Member, National Association of Public Pension Attorneys (NAPPA)
- Member and Speaker, National Conference on Public Employee Retirement Systems (NCPERS)
- Member, Council of Institutional Investors (CII)
- Member, State Association of County Retirement Systems (SACRS)
- Member, National Council on Teacher Retirement (NCTR)
- Member, California Association of Public Retirement Systems (CALAPRS)
- Member, Michigan Association of Public Employee Retirement Systems (MAPERS)
- Member, Illinois Public Pension Fund (IPPFA)
- Member, Standing Committee on Professional Conduct, U.S. District Court, Northern District of California (Term expires 2017)
- Expedited Trial Rules Committee, U.S. District Court, Northern District of California, 2010-2012
- Lawyer Representative to the Ninth Circuit Court of Appeals, U.S. District Court, Northern District of California, 2008-2011

- Chair/ Member, Magistrate Judge Merit Selection Panel, U.S. District Court, Northern District of California, 2006-2008

## RECOGNITION

- Super Lawyer, Super Lawyers Magazine, 2007-2019

## NOTABLE CASES

- Litigated over 100 securities fraud class actions including cases against 3Com, Adaptive Broadband, Abbott Laboratories, Bank of America, Capital Consultants, CBT, Ceridian, Commtouch, Covad, CVXT, ESS, Harmonics, Intel, Leasing Solutions, Nash Finch, Northpoint, Oppenheimer, Oracle, Pemstar, Retek, Schwab Yield Plus Fund, Secure Computing, Sun Microsystems, Tremont (Bernard Madoff), Titan, Verifone, Whitehall, and Xoma

- Litigated many consumer, employment and privacy law cases including AT&T Wiretapping Litigation, Costco Employment, Solvay Consumer, Google/Yahoo Internet Gambling, Vonage Spam, Apple Nano Consumer, Ebay Consumer, LA Cellular Consumer, AOL Consumer, Tenet Consumer and Napster Consumer

## MEDIA INTERVIEWS & COMMENTARY

- "Billionaire Tom Siebel faces tumult at C3.ai as investor lawsuit, short sellers question metrics," CNBC, June 2, 2023

- "Grilling Musk: use CEO's tweets, thin skin against him, trial experts say," Reuters, Jan. 18, 2023

## PRESENTATIONS

- "Incoming! How the New Administration's Approach to Securities Laws and Regulations Affect Investors and Markets," MAPERS, Spring Conference, May 2017

- "Occupy Wall Street through Reform of the Securities Law," NCPERS, Legislative Conference, February 2012

- "Legal Issues Facing Public Pensions," Opal, Public Funds Summit, January 2012

- "Protection vs. Interference – What the New Federal Regulations Mean to Institutional Investors," NCPERS, Annual Conference, May 2011" The Immediate Need for Congress to Act on Investor Friendly Legislation," NCPERS, Annual Conference, May 2010

- "Investor Friendly Legislation in Congress," NCPERS, Legislative Conference, February 2010

## PERSONAL INSIGHT

Reed is a recovering rock-and-roll drummer and banjo ukulele player. His rock band, the Stowaways, was voted 4th best in the State of Illinois out of 300 bands in the Jaycees Battle of the Bands. Reed's mother made his band costume of blue jean bell bottoms, sailor shirts and hats. The next year everyone wore blue jean bell bottoms to Woodstock. His prized possession is a 30lb Jeff Ocheltree snare drum made by Led Zeppelin John Bonham's drum technician. The rest of his kit is patterned after Dave Matthews Band's drummer, Carter Beauford. In his spare time, Reed works on playing Stairway to Heaven (drums) in his garage or Somewhere Over the Rainbow (banjo ukulele) in the High Sierra mountains.



**PARTNER**

# Michella A. Kras

State Bar of Arizona President's Volunteer Service Award, 2010

michellak@hbsslaw.com

T 602-840-5900
F 602-840-3012

11 West Jefferson Street
Suite 1000
Phoenix, AZ 85003

**YEARS OF EXPERIENCE**
19

**PRACTICE AREAS**
Class Action
Commercial Litigation
Complex Civil Litigation
High Tech Litigation

**BAR ADMISSIONS**
▪ Arizona

**COURT ADMISSIONS**
▪ U.S. District Court for the District of Arizona

**EDUCATION**


Arizona State University College of Law, J.D., magna cum laude, 2003


Arizona State University, B.A., 1997

## CURRENT ROLE

- Partner, Hagens Berman Sobol Shapiro LLP

- Practice focuses on class-action lawsuits and complex litigation, including consumer rights. Ms. Kras' practice also focuses on personal injury, medical malpractice, wrongful death and bad-faith insurance claims.

- Ms. Kras has extensive expertise in complex litigation in a variety of commercial contexts, including actions involving various contractual breaches, RICO violations, securities fraud, negligent and intentional torts and federal and state employment law.

## RECENT SUCCESS

- Michella was part of a litigation team that secured a $95 million class action settlement with Apple for Apple's failure to honor its AppleCare warranties. Apple promised consumers who purchased AppleCare warranties that they would receive "equivalent to new" replacement iPhones and iPads. But consumers had no way of knowing that the replacement devices they received were not equivalent to new devices. The litigation team uncovered evidence that these replacement devices were inferior, which was concealed from consumers. The litigation team hired world-class experts to show that these replacement devices had a shorter lifespan and were more likely to fail than a new iPhone or iPad. The $95 million settlement provides direct payments to all class members who received these inferior devices. In 2022, Judge Orrick granted final approval, noting that a $95 million settlement "on an untested theory" was an "excellent settlement" for the class.

- In 2014, Michella was part of a litigation team that settled a data breach case against Maricopa County Community Colleges. In 2013, a data hack exposed the PII of about 2.4 million students, graduates, employees, and vendors. The litigation team secured credit monitoring for all 2.4 million class members.

## EXPERIENCE

- Michella worked as an associate at another firm, where she was a member of the commercial and securities litigation group. Ms. Kras worked on complex litigation matters involving private securities offerings, private lending, asset purchase agreements, shareholder and member disputes, and federal and state wage and hour disputes.

- As an associate at a different law firm, her work included civil litigation, employment law, election law, health care law, and estate planning.

- Michella served as a judicial law clerk for the Arizona Supreme Court, where her work consisted of a variety of appeals, including civil cases, criminal actions, and attorney discipline.

HAGENS  BERMAN  SOBOL  SHAPIRO LLP

### LEGAL ACTIVITIES

- Consistent commitment to pro bono work; Michella has worked on several pro bono matters, including obtaining Special Juvenile Immigrant Status for a teenager that was brought to the United States as a toddler and later abandoned by her parent.

- Former volunteer and member of the steering committee for Wills for Heroes, an organization that provides free estate planning for Arizona's first responders.

### RECOGNITION

- State Bar of Arizona President's Volunteer Service Award, 2010

- Rising Star, Southwest Super Lawyers, 2014-2015

### NOTABLE CASES

- *Maldonado v. Apple, Inc.*

- *In re Swift Transportation Co., Inc.*

- *Liebich v. Maricopa County Community Colleges District*

### PUBLICATIONS

- Co-author, "A Practitioner's Guide to Class Actions," West Virginia chapter of the American Bar Association, 2nd edition

- Co-author, "A Practitioner's Guide to Class Actions" West Virginia chapter of the American Bar Association, 3rd edition

HAGENS BERMAN SOBOL SHAPIRO LLP



dank@hbsslaw.com

T 708-628-4949
F 708-628-4950

455 N. Cityfront Plaza Drive
Suite 2410
Chicago, IL 60611

**YEARS OF EXPERIENCE**

20

**PRACTICE AREAS**

Antitrust Litigation
Class Action
Consumer Rights
Pharmaceutical Fraud
Sports Litigation

**BAR ADMISSIONS**

- Illinois

**COURT ADMISSIONS**

- U.S. Court of Appeals for the First Circuit
- U.S. Court of Appeals for the Second Circuit
- U.S. Court of Appeals for the Seventh Circuit
- U.S. Court of Appeals for the Eleventh Circuit
- U.S. Court of Appeals for the D.C. Circuit
- U.S. District Court for the Northern District of Illinois
- U.S. District Court for the Central District of Illinois
- U.S. District Court for the Southern District of Illinois

**CLERKSHIPS**

- Hon. Paul E. Plunkett, Northern District of Illinois

PARTNER

# Daniel J. Kurowski

## 2020 "Rising Star" in Illinois, Super Lawyers

### CURRENT ROLE

- Partner, Hagens Berman Sobol Shapiro LLP.

- Since 2006, Mr. Kurowski has focused his practice on protecting the interests of individuals and small companies prejudiced by large corporations and organizations. Based in Chicago, with cases located throughout the country, his work with the firm covers a diverse variety of complex cases including:

- Representing individuals economically affected by COVID-19, such as students/payors of tuition and fees in litigation against U.S. colleges and universities that closed and only offered online only courses due to the outbreak of COVID-19 but continued to charge full tuition and fees.

- Representing athletes in individual personal injury and class-action litigation arising out of concussions/traumatic brain injuries suffered during sporting activities, including in *In re National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation (N.D. Ill.) and In re NFL Players' Concussion Injury Litig.* (E.D. Pa.).

- Representing consumers of electricity in certified class action alleging claims against nearly two dozen defendants for perpetuating an extensive fuel oil fraud, resulting in users of electricity in Puerto Rico being overcharged by more than $1 billion dollars for electricity since 2002.

- Representing purchasers with antitrust, consumer fraud and/or unjust enrichment claims against sellers and manufacturers of retail products.

### RECENT SUCCESS

- *Shaffer v. George Washington University* (D.C. Circuit), $5.4 million settlement

- *Rocchio et al v. Rutgers, the State University of New Jersey* (Superior Court N.J.), $5.0 million settlement

- *Metzner v. Quinnipiac University* (D. Conn.), $2.5 million settlement

- *Choi et al. v. Brown University* (D.R.I.), $1.4 million settlement

- *In re Pre-Filled Propane Sales & Marketing Practices Litigation* (W.D. Mo.) ($35 million in settlements involving multiple defendants)

- In re Bayer Combination Aspirin Sales & Marketing Practices Litigation (E.D.N.Y.) ($15 million settlement)

- In re Aurora Dairy Organic Milk Marketing & Sales Practices Litigation (E.D. Mo.) ($7.5 million settlement)

- *Silk v. Bowling Green State University* (Ohio Court of Claims) ($712,500 individual settlement for student-athlete injured as a result of alleged failures to properly manage athlete's concussions)

HAGENS BERMAN SOBOL SHAPIRO LLP

- Hon. Maria Valdez, Northern District of Illinois

**EDUCATION**



The John Marshall Law School, J.D., cum laude, 2005



Loyola University Chicago, B.B.A., with Honors, 2002

**AWARDS**



- *In re NFL Players' Concussion Injury Litigation* (E.D. Pa.) (over $6.1 million in approved claims for former NFL players)

- *In re National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation* (N.D. Ill.) (creating a $70 million 50-year medical monitoring program for former student-athletes to screen for and track head injuries, a $5 million fund for concussion research, and implementing changes to NCAA concussion rules to protect current student-athletes)

## EXPERIENCE

- Federal judicial law clerk, Hon. Paul E. Plunkett and Hon. Maria Valdez

- Intern, U.S. Department of Housing and Urban Development's Office of Fair Housing and Equal Opportunity, the U.S. Attorney's Office for the Northern District of Illinois and with Hon. Ronald A. Guzman and his staff

- During law school, Mr. Kurowski received multiple academic scholarships, served as a staff member and Lead Articles Editor for The John Marshall Law Review, and received an award for an appellate brief submitted in a national moot court competition

## RECOGNITION

- Illinois Class Action/Mass Torts Rising Star, Super Lawyers Magazine, 2020

- Illinois Rising Star, Super Lawyers Magazine, 2015-2020

## NOTABLE CASES

- Aurora Dairy Corporation Organic Milk Marketing & Sales Practices Litigation (E.D. Mo.)

- Bayer Corp. Combination Aspirin Product Marketing & Sales Practices Litigation (E.D.N.Y.)

- Pre-Filled Propane Tank Marketing & Sales Practices Litigation (W.D. Mo.)

- RC2 Corp. Toy Lead Paint Products Liability Litigation (N.D. Ill.)

- *In re National Collegiate Athletic Association Student-Athlete Concussion Injury Litigation* (N.D. Ill.)

## PERSONAL INSIGHT

An avid cyclist, Dan enjoys staying active by competing in cyclocross and other cycling races. Dan is also a board member for the DuPage Cycling Foundation, a 501(c)(3) non-profit corporation that raises fund for community non-profits through the hosting and promotion of cycling events.



robl@hbsslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**PRACTICE AREAS**

Antitrust Litigation
Class Action
Complex Commercial Health Care
Fraud
High Tech Litigation
Intellectual Property
Pharmaceutical Fraud
Privacy Rights
Qui Tam
Securities
Whistleblower

**BAR ADMISSIONS**

- Washington

**COURT ADMISSIONS**

- Ninth Circuit Court of Appeals
- U.S. District Court for the
  Eastern District of Washington
- U.S. District Court for the
  Western District of Washington

**EDUCATION**

SCHOOL OF LAW
UNIVERSITY *of* WASHINGTON
University of Washington School
of Law, J.D.



Gonzaga University, B.A., English
Literature, Arnold Scholar

**PARTNER**

# Robert F. Lopez

---

Mr. Lopez continues practice on qui tam matters at the firm, representing whistleblowers in cases involving violations of federal and state laws that prohibit the making of false claims for government payments.

---

## CURRENT ROLE

- Partner, Hagens Berman Sobol Shapiro LLP

- Offers a broad range of legal experience in the fields of:

  o Complex commercial litigation

  o Health care and pharmaceuticals litigation

  o Product defect litigation

  o False Claims Act litigation

  o Intellectual property litigation

  o Privacy litigation

  o Securities litigation

  o Antitrust litigation

  o Creditor-debtor litigation

- Member of the firm's *In re Carrier IQ, Inc. Consumer Privacy Litigation* team

- Member of the firm's team representing the plaintiffs and proposed class in *Free Range Content Inc. v. Google Inc.*, a class-action case based on allegations that Google unlawfully denies payments to thousands of website owners and operators who place ads on their sites sold through Google AdWords

- Continues practice on qui tam matters at the firm, representing whistleblowers in cases involving violations of federal and state laws that prohibit the making of false claims for government payments

## EXPERIENCE

- Experienced in prosecuting and defending appeals in the federal and state courts of appeal; representing institutions and consumers in nationwide class-action lawsuits, including in the federal multidistrict litigation setting; advising clients in non-litigation settings with respect to trademark, trade-name, copyright and Internet-communications law

- Member of firm's team representing one of the relators in the 2012 settlement with Amgen Inc., in which the company agreed to pay $612 million to the U.S. and various state governments in order to resolve claims that it caused false claims to be submitted to Medicare, Medicaid and other government insurance programs

- Member of the firm's team that prosecuted *In re Charles Schwab Corp. Securities Litigation*

- Experienced in class-action litigation against DaimlerChrysler Corporation relating to product defects in its Neon automobiles, nationwide class-action cases against Trex Company, Inc. and Fiber Composites, Inc.

- Founding Member and Partner, Socius Law Group PLLC

- Partner, Betts, Patterson & Mines, P.S.

## NOTABLE CASES

- *In re Pharmaceutical Industry Average Wholesale Price Litigation*

- *Amgen Inc. Qui Tam Litigation*

- *In re Metropolitan Securities Litigation*

- *In re Charles Schwab Corp. Securities Litigation*

- *In re Carrier IQ, Inc. Consumer Privacy Litigation*

HAGENS BERMAN SOBOL SHAPIRO LLP



jessicam@hbsslaw.com

T 617-475-3700
F 617-482-3003

1 Faneuil Hall Square
5th Floor
Boston, MA 02109

**YEARS OF EXPERIENCE**

9

**PRACTICE AREAS**

Antitrust Litigation
Consumer Rights
Pharmaceutical Fraud

**BAR ADMISSIONS**

- Supreme Judicial Court of the
  Commonwealth of
  Massachusetts

**COURT ADMISSIONS**

- First Circuit Court of Appeals
- Second Circuit Court of Appeals
- U.S. District Court for the
  District of Massachusetts

**EDUCATION**



The Pennsylvania State
University, Dickinson School of
Law, J.D., 2012

Northeastern
University

Northeastern University, B.A.,
cum laude, 2005

**AWARDS**



PARTNER

# Jessica R. MacAuley

Ms. MacAuley was a fundamental part of the *In re Glumetza Antitrust Litigation* trial team, which resulted in a $453.85 million settlement, the largest U.S. antitrust settlement in 2022.

## CURRENT ROLE

- Partner, Hagens Berman Sobol Shapiro LLP

- Ms. MacAuley's practice focuses on nationwide antitrust class actions and consumer fraud

- Appointed to the Plaintiffs' Steering Committee in *In re Xyrem (Sodium Oxybate) Antitrust Litigation* pending in the Northern District of California.

- Member of the HBSS team of attorneys litigating on behalf of direct purchasers in *In re Restasis Antitrust Litigation*. Ms. MacAuley directed day-to-day efforts for HBSS and was the leader of a team of attorneys investigating allegations related to the defendant's (Allergan) filing of sham citizen petition. Ms. MacAuley successfully argued the motion for final approval of the proposed $51.25 million settlement class settlement, which the Court approved.

- Led a team of attorneys investigating privilege claims made by defendants in the *In re Glumetza Antitrust Litigation* which led to thousands of documents being disclosed. Ms. MacAuley was also a member of the trial team that secured a $453.85 million settlement on behalf of direct purchasers, the largest U.S. antitrust settlement of 2022.

- Integral part of a trial team for class of direct purchasers in the *In re Celebrex Antitrust Litigation*, which settled before trial for $94 million.

- Counsel in the *In re Niaspan Antitrust Litigation*. Tasked with overseeing the litigation for the HBSS office.

- Instrumental in reaching a $98 million settlement for direct purchasers of the immunosuppressant, Prograf.

- Oversaw discovery efforts, including managing meet and confers with defendants and directing factual issues for depositions, on behalf of direct purchasers *In re Solodyn Antitrust Litigation*, a multi-district litigation challenging anticompetitive conduct by pharmaceutical drug makers that settled pre-trial with four defendants totaling over $76 million.

## EXPERIENCE

- During law school Ms. MacAuley was a certified legal intern for the Rural Economic Development Clinic, advising clients on Marcellus shale exploration land rights, FDA regulations for artisanal cheese makers and formation of corporate entities for dairy farmers.

HAGENS  BERMAN  SOBOL  SHAPIRO LLP

### RECOGNITION

- Rising Star, Massachusetts Super Lawyers Magazine, 2015-2019

### NOTABLE CASES

- *In re Prograf Antitrust Litigation*
- *In re Solodyn Antitrust Litigation*
- *In re Celebrex Antitrust Litigation*
- *In re Restasis Antitrust Litigation*
- *In re Glumetza Antitrust Litigation*

### PERSONAL INSIGHT

Jessica has long been active in social justice movements, starting in kindergarten when she led an unsuccessful boycott of Columbus Day.

HAGENS BERMAN SOBOL SHAPIRO LLP



sean@hbsslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**YEARS OF EXPERIENCE**

31

**PRACTICE AREAS**

Antitrust Litigation
Class Action
Consumer Rights
Emissions Litigation
Insurance
Investor Fraud
Products Liability
Securities

**INDUSTRY EXPERIENCE**

▪ Complex Financial Instruments
▪ Investments
▪ Pharmaceuticals
▪ Automotive

**COURT ADMISSIONS**

▪ Ninth Circuit Court of Appeals
▪ U.S. District Court for the District of Colorado
▪ U.S. District Court for the Western District of Washington
▪ Supreme Court of Washington

**EDUCATION**



University of Oregon School of Law, J.D., Order of the Coif (top 10%), 1992, Associate Editor of the Law Review

## PARTNER

# Sean R. Matt

Leads the firm's innovation in organizing and prosecuting individual class cases across many states involving the same defendants and similar factual and legal issues, an approach that continues to be a key factor in the firm's success.

## CURRENT ROLE

- Partner & Management Committee Member, Hagens Berman Sobol Shapiro LLP

- Practice focuses on multi-state and nationwide class actions and complex commercial litigation encompassing securities and finance, consumer, antitrust, insurance and products

- Diverse experience in most of the firm's practice areas, involving appearances in state and federal courts across the country at both the trial and appellate levels

- Key member of the firm's automobile defect litigation team

- Key member of the firm's securities litigation team, co-leading the prosecution and settlement of the *In re Charles Schwab Corp. Securities Litigation*, the *In re Oppenheimer Champion Income Fund Securities Class Actions* and the *Oppenheimer Core Bond Fund Class Action Litigation*

- Key member of the firm's pharmaceutical litigation team that confronts unfair and deceptive pricing and marketing practices in the drug and dietary supplement industries including *Average Wholesale Price Litigation*, the *First Databank/McKesson Pricing Fraud Litigation* and the *Enzyte Litigation*

## RECOGNITION

- 500 Leading Lawyers in America, Plaintiff Consumer Lawyers, Lawdragon, 2021-2024

- 500 Leading Lawyers in America, Plaintiff Financial Lawyers, Lawdragon, 2020-2024

- The Best Lawyers in America, Plaintiffs Product Liability Litigation, Best Lawyers, 2024

- Nominated as part of the team in *In re Toyota Motor Corp. Sudden, Unintended Acceleration* for Trial Lawyer of the Year Award, Public Justice, 2014

## NOTABLE CASES

- *Mercedes Emissions*, $763 settlement

- *In re Charles Schwab Corp. Securities Litigation*, $235 million settlement

- *In re Oppenheimer Champion Income Fund Securities Fraud Class Actions*, $52.5 million proposed settlement

- *Oppenheimer Core Bond Fund Class Action Litigation*, $47.5 million settlement

- *Morrison Knudsen and Costco Wholesale Corp. Securities Litigation*

HAGENS BERMAN SOBOL SHAPIRO LLP



Indiana University, B.S., Finance,
Highest Distinction, 1988



Boston University, Term at
Imperial College London

- *In re Pharmaceutical Industry Average Wholesale Price Litigation*, $338 million settlement

- *In re Toyota Motor Corp. Unintended Acceleration Marketing*, Sales Practices, and Products Liability Litigation

- *In re Checking Account Overdraft* cases pending against many of the country's largest banks

- *Washington State Ferry Litigation*, which resulted in one of the most favorable settlements in class litigation in the history of the state of Washington

- *Microsoft Consumer Antitrust* cases

- *State Attorneys General Tobacco Litigation*, assisted with client liaison responsibilities, working closely with assistant attorneys general in Oregon, Ohio, Arizona, Alaska and New York, as well as assisting in all litigation matters

## PUBLICATIONS

- "Providing a Model Responsive to the Needs of Small Businesses at Formation: A Focus on Ex Ante Flexibility and Predictability," 71 Oregon Law Review 631, 1992

## PERSONAL INSIGHT

Sean, whose four-man team won cycling's prestigious Race Across America with a time of six days and three hours, still occasionally rides a bike.

HAGENS BERMAN SOBOL SHAPIRO LLP



martym@hbsslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**YEARS OF EXPERIENCE**

18

**PRACTICE AREAS**

Civil & Human Rights
Insurance Bad Faith
Personal Injury
Public Records Act

**BAR ADMISSIONS**

- Washington

**COURT ADMISSIONS**

- Ninth Circuit Court of Appeals
- U.S. District Court for the Eastern District of Washington
- U.S. District Court for the Western District of Washington
- Supreme Court of Washington

**EDUCATION**



Seattle University School of Law, J.D., cum laude, 2002

PARTNER

# Martin D. McLean

Mr. McLean is a true trial attorney having tried 30 cases to verdict in various state and federal courts.

## CURRENT ROLE

- Partner, Hagens Berman Sobol Shapiro LLP
- Represents individuals who have suffered catastrophic personal injury or loss.
- Clientele includes a wide range of individuals, including children who have suffered harm while in state care, elderly adults who have experienced abuse or neglect in nursing homes and individuals harmed by medical negligence.
- Mr. McLean has been at the forefront of litigation involving the Washington Public Records Act.

## RECENT SUCCESS

- During his tenure with Hagens Berman's personal injury team, Mr. McLean has contributed to numerous lawsuits resulting in multi-million dollar recoveries on behalf of the firm's clients.

## EXPERIENCE

- Mr. McLean is a seasoned trial attorney, with extensive experience in all phases of litigation.

## RECOGNITION

- 500 Leading Lawyers in America, Plaintiff Consumer Lawyers, Lawdragon, 2024

## NOTABLE CASES

- *Marx v. DSHS*, $3 million judgment on behalf of developmentally-disabled patient sexually abused at state-run hospital
- *Tamas v. State of Washington*, $525,000 judgment on behalf of three children seeking public records from state agency
- *Wright v. DSHS*, $2,850,000 judgment against the state of Washington for negligent child abuse investigation
- *Rudolph v. DSHS*, $900,000 judgment on behalf of family of a vulnerable adult severely neglected in state-licensed adult family home

## PERSONAL INSIGHT

Mr. McLean spent a year living in Italy studying art, history, Italian and wine-drinking. When not practicing law, Mr. McLean enjoys his new favorite hobby: raising his young son with his wife.

HAGENS BERMAN SOBOL SHAPIRO LLP



**PARTNER**

# Abbye Klamann Ognibene

Ms. Ognibene believes in taking on corporations in the fight for plaintiffs' rights, including the right to online privacy and to fair pricing in medical care and consumer goods.

abbyeo@hbsslaw.com

T 617-475-3700
F 617-482-3003

1 Faneuil Hall Square
5th Floor
Boston, MA 02109

**YEARS OF EXPERIENCE**
7

**PRACTICE AREAS**
Antitrust Litigation
Class Action
Consumer Rights

**BAR ADMISSIONS**
- California
- Massachusetts
- New York

**COURT ADMISSIONS**
- Ninth Circuit Court of Appeals
- U.S. District Court for the Northern District of California
- U.S. District Court for the Central District of California
- U.S. District Court for the District of Massachusetts

**EDUCATION**


University of Michigan, J.D., cum laude, 2016


University of Missouri Columbia, B.J., cum laude, 2011

## CURRENT ROLE

- Partner, Hagens Berman Sobol Shapiro LLP

- Practice focuses on fair pricing for pharmaceuticals, catastrophic personal injury and product recalls, high tech privacy issues, healthcare fraud, and antitrust enforcement

- Second chair in six-week federal antitrust trial, *In re HIV Antitrust Litigation*, concerning anticompetitive pricing for HIV medication

- Helped launch Boston office Pro Bono Program

- Member of HBSS team representing purchasers in *In re Actos Antitrust Litigation*, *In re Vascepa Antitrust Litigation*, and *In re Intuniv Antitrust Litigation*

- Represents parents in personal injury and wrongful death cases concerning Fisher-Price's recalled Rock 'n Play sleepers

- Secured a successful Second Circuit order upholding the trial court's denial of defendants' motion to dismiss in *In re Actos*

## EXPERIENCE

- Prior to joining Hagens Berman, Ms. Ognibene was an associate at a start-up litigation boutique, where she helped launch a plaintiffs' class-action practice group focused on privacy and human rights litigation.

- She also worked on cutting-edge class-action litigation at Lieff Cabraser Heimann & Bernstein, focusing on digital privacy and antitrust cases.

- While in law school, Abbye worked for more than two years as a law clerk to the legal team of *DeBoer v. Snyder*, consolidated sub nom. *Obergefell v. Hodges*, which guaranteed the nationwide right to marry for same-sex couples.

## RECOGNITION

- Ones to Watch, Plaintiffs Mass Tort Litigation/Class Actions, Best Lawyers, 2024

- Massachusetts Chapter Member, National Lawyers Guild

## PERSONAL INSIGHT

Before attending law school, Abbye worked in radio journalism in her home state of Missouri. She spends her time outside of the office with her family and two large rescue dogs, preferably in Vermont with a glass of whiskey in one hand and a good book in the other.

HAGENS BERMAN SOBOL SHAPIRO LLP



**PARTNER**

# Christopher A. O'Hara

Mr. O'Hara plays a key role in working with notice and claims administrators on all the firm's class settlements and class notice programs.

chriso@hbsslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**YEARS OF EXPERIENCE**
34

**PRACTICE AREAS**
Antitrust Litigation
Class Action
Consumer Rights
Investor Fraud
Pharmaceutical Fraud
Securities
Tax Law

**INDUSTRY EXPERIENCE**
▪ Tobacco
▪ Online Travel Companies

**BAR ADMISSIONS**
▪ Arizona
▪ Washington

**COURT ADMISSIONS**
▪ Ninth Circuit Court of Appeals

**EDUCATION**



Seattle University School of Law,
J.D., cum laude, 1993

**UNIVERSITY of WASHINGTON**
University of Washington, B.A.,
Political Science, French Language
and Literature, 1987

## CURRENT ROLE
- Partner, Hagens Berman Sobol Shapiro LLP
- Practice focuses on antitrust, consumer, tax and securities class actions
- Serves as plaintiffs' counsel in Hotel Occupancy Tax litigation against major online travel companies in various jurisdictions across the country
- Key role in working with claims administrators on all class settlements and class notice programs

## NOTABLE CASES
- *Tobacco Litigation* ($260 billion multi-state settlement)
- *Microsoft Antitrust Litigation* (20 individual state settlements totaling over $2.7 billion)
- *Toyota Unintended Acceleration Litigation* ($1.6 billion settlement)
- *In re Electronic Books Antitrust Litigation* ($568 million in settlements)
- *In re Stericycle, Inc., Steri-Safe Contract Litigation* ($295 million settlement)
- *Charles Schwab Yieldplus Funds Securities Litigation* ($235 million settlement)
- *In re NCAA Athletic Grant-in-Aid Cap Antitrust Litigation* ($208 million settlement)
- *In re Optical Disk Drive Antitrust Litigation* ($180 million in settlements)
- *In re Animation Workers Antitrust Litigation* ($168.95 million in settlements)
- *Expedia Hotel Taxes and Fees Litigation* ($134 million settlement)
- *In re NCAA Student-Athlete Concussion Litigation* ($75 million settlement and 50-year medical monitoring program)
- *In re Lithium Ion Batteries Antitrust Litigation* ($65 million in settlements)
- *NCAA/Electronic Arts Name and Likeness Litigation* ($60 million in settlements)

## EXPERIENCE
- Cozen & O'Connor, Associate, 1993-1997
- Crowell & Moring, Paralegal, 1988-1990

## RECOGNITION
- Rising Star, Washington Law and Politics, 2003

HAGENS BERMAN SOBOL SHAPIRO LLP

**AWARDS**



**LANGUAGES**

- French

HAGENS BERMAN SOBOL SHAPIRO LLP



**PARTNER**

# Jerrod C. Patterson

Mr. Patterson served as a federal prosecutor for more than nine years, prosecuting tax cases, fraud and other financial crimes. He has extensive experience trying complex cases to verdict.

jerrodp@hbslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**YEARS OF EXPERIENCE**
20

**PRACTICE AREAS**
Civil & Human Rights
Antitrust Litigation
Automotive Litigation
Class Action
Racketeering

**BAR ADMISSIONS**
▪ District of Columbia
▪ New York
▪ Washington

**CLERKSHIPS**
▪ The Honorable Louis F. Oberdorfer, U.S. District Court for D.C.
▪ U.S. Senate Judiciary Committee, Senator Leahy, Washington, D.C.

**EDUCATION**



University of California, Berkeley School of Law, J.D., top 15% of graduating class, 2002

## CURRENT ROLE

- Partner, Hagens Berman Sobol Shapiro LLP
- Practice focuses on antitrust and other fraud and RICO cases, including *Generic Pharmaceuticals Pricing Antitrust, Dodge RAM 2500 and 3500 Emissions,* and *Ford/GM/FCA CP4 Injection Pump Defect*
- Extensive experience in handling complex multidistrict cases
- Mr. Patterson brings to the firm extensive trial experience and a history of prosecuting complex fraud cases, including tax fraud, bank fraud, wire fraud, money laundering and prescription fraud

## EXPERIENCE

- Prior to joining Hagens Berman, Mr. Patterson served as an Assistant United States Attorney at the U.S. Attorney's Office in Seattle, WA.
  - Prosecuted complex fraud cases, including tax fraud, bank fraud, wire fraud, money laundering, and prescription fraud
  - Served as Project Safe Childhood Coordinator; led efforts to investigate and prosecute child pornography and child exploitation cases
  - Led prosecution of large-scale drug trafficking organizations, including cartels and street gangs, to interdict drug smuggling and investigate money laundering
- Trial Attorney, U.S. Department of Justice Washington, D.C., Tax Division, Northern Criminal Enforcement Section
  - Co-chaired prosecution of two defendants, in separate trials, for scheme to defraud the Cleveland Catholic Diocese
- Special Assistant U.S. Attorney, U.S. Attorney's Office for D.C. Nov. 2006 – May 2007
  - Prosecuted 22 bench trials in Sex Offense/Domestic Violence Section
- Associate, Wilmer Cutler Pickering (WilmerHale)

## RECOGNITION

- Outstanding Performance as a Special Assistant U.S. Attorney, U.S. Attorney General, 2010
- Outstanding Tax Division Attorney, Assistant Attorney General, 2009
- Outstanding Tax Division Attorney, Assistant Attorney General, 2008

**JOHNS HOPKINS**
SCHOOL *of* ADVANCED
INTERNATIONAL STUDIES

Johns Hopkins University, School
of Advanced International
Studies, M.A., International
Economics and International
Relations, Graduated *with
distinction* (top 10%), 1997



**BROWN
UNIVERSITY**

Brown University A.B.,
International Relations, magna
cum laude, 1995

- Best Financial Investigation in the Nation, Organized Crime and Drug Enforcement Task Force, 2012

## NOTABLE CASES

- CP4 High-Pressure Fuel Pump Litigation, A series of class action cases against GM, Ford, FCA and Nissan for their use of a defective high pressure fuel pump that generates metallic shavings and can lead to catastrophic failure of the engine

- *In re Animation Workers Antitrust Litig.*, 14-cv-4062 LHK (N.D. Cal.): Class-action antitrust case against major animation studios for conspiring to fix wages of their animators. The parties settled the case for $169 million

- *In re Generic Pharmaceuticals Pricing Antitrust Litig.* (E.D. Pa.): Class-action antitrust case against over two dozen generic pharmaceutical manufacturers for conspiring to fix the price of generic drugs

- *In re Lithium Ion Batteries Antitrust Litig.*, 12-cv-5129 YGR (N.D. Cal.): Class-action antitrust case against large battery producers for conspiring to fix prices. The parties settled the case for a total of $113 million

- As a federal prosecutor, led or co-chaired 11 federal jury trials, and 22 bench trials

## PERSONAL INSIGHT

Although not a Washington state native, Mr. Patterson has quickly adopted Seattle as his hometown. In his spare time, he and his family enjoy the local wineries, lakes and hiking trails.

HAGENS BERMAN SOBOL SHAPIRO LLP



PARTNER

# Rio S. Pierce

Rio focuses his practice on enforcing antitrust laws and ensuring fair and free markets for the benefit of consumers.

riop@hbsslaw.com

T 510-725-3000
F 510-725-3001

715 Hearst Avenue
Suite 300
Berkeley, CA 94710

**YEARS OF EXPERIENCE**

8

**PRACTICE AREAS**

Antitrust Litigation

Class Action

Consumer Rights

High Tech Litigation

**INDUSTRY EXPERIENCE**

- Film Development

**BAR ADMISSIONS**

- California

**COURT ADMISSIONS**

- U.S. District Court for the Northern District of California
- U.S. District Court for the Central District of California
- U.S. District Court for the Southern District of California

**CLERKSHIPS**

- Honorable Jerome Farris of the U.S. Court of Appeals for the Ninth Circuit, 2013-2014

**EDUCATION**

## HARVARD
### LAW SCHOOL

Harvard Law School, magna cum laude, 2013

## CURRENT ROLE

- Partner, Hagens Berman Sobol Shapiro LLP

## RECENT SUCCESS

- *In re Broiler Chicken Antitrust Litig.*, No. 16-CV-08637 (N.D. Ill.), part of team at Hagens Berman for indirect purchaser class; recovery to date of $106 million

- *In re Pork Antitrust Litig.*, No. 18-CV-01776 (D. Minn.), part of team at Hagens Berman serving as co-lead counsel for indirect purchaser class; recovery to date of $20 million

- *Qualcomm Antitrust Litigation*, No. 5:17-md-02773 (N.D. Cal.), part of team at Hagens Berman acting as counsel for indirect purchaser class that resulted in certified class of hundreds of millions of consumers

- *In re Optical Disk Drive Antitrust Litig.*, No. 10-md-02143 (N.D. Cal.), team at Hagens Berman acting as lead counsel for indirect purchaser class; recovery of $205 million

## EXPERIENCE

- Prior to joining Hagens Berman, Mr. Pierce worked as an associate for two years at Munger, Tolles & Olson, where he gained significant experience in class action and complex commercial litigation. Mr. Pierce also did extensive pro bono work on immigration matters.

- Law Clerk, U.S. Court of Appeals for the Ninth Circuit, Judge Jerome Farris, 2013-2014

- Associate, Munger Tolles & Olson, 2014-2016

## ACTIVITIES

- Serves on the executive committee of the Antitrust Section of the Bar Association of San Francisco

## LEGAL ACTIVITIES

- American Association for Justice

## RECOGNITION

- 500 Leading Lawyers in America, Plaintiff Financial Lawyers, Lawdragon, 2024

- Top 40 Under 40 Civil Plaintiff Trial Lawyers in California, The National Trial Lawyers, 2021

- Chayes Fellow, National Prosecuting Authority in Cape Town, South Africa

- Teaching Fellow, Copyright EdX

HAGENS BERMAN SOBOL SHAPIRO LLP



Duke University, magna cum
laude, 2005

## PUBLICATIONS

- "A Heavy Hand or A Light Touch: What Force Will California's Anti-SLAPP Statute Have After Baral v. Schnitt?" *California Litigation Review*, 2015

## PERSONAL INSIGHT

A proud California native, Rio loves exploring the whole state, especially Big Sur. Prior to law school, Rio worked at Miramax for several years and still loves a good indie film. In his free time, Rio enjoys making pies.

HAGENS BERMAN SOBOL SHAPIRO LLP



PARTNER
# Christopher R. Pitoun

Christopher R. Pitoun has focused on consumer litigation since graduating from law school and has gained broad experience representing individuals, municipalities and small businesses in all forms of complex litigation.

christopherp@hbsslaw.com

T 213-330-7150
F 213-330-7152

301 North Lake Avenue
Suite 920
Pasadena, CA 91101

**YEARS OF EXPERIENCE**

11

**PRACTICE AREAS**

Automotive Litigation
Civil & Human Rights
Class Action
Consumer Rights
Intellectual Property

**BAR ADMISSIONS**

▪ California

**COURT ADMISSIONS**

▪ Ninth Circuit Court of Appeals
▪ U.S. District Court for the Northern District of California
▪ U.S. District Court for the Eastern District of California
▪ U.S. District Court for the Central District of California
▪ U.S. District Court for the Southern District of California
▪ U.S. District Court for the Eastern District of Michigan

**EDUCATION**



Loyola Law School, Los Angeles, J.D., 2011, Note and Comment Editor, Loyola of Los Angeles Entertainment Law Review

## CURRENT ROLE

- Partner, Hagens Berman Sobol Shapiro LLP
- Practice focuses on class actions and other complex litigation

## RECENT SUCCESS

- *Fiat Chrysler (FCA) Low Oil Pressure Shut Off*, No. 2:20-cv-11054-JEL-APP (E.D. Mich.), part of team that secured settlement valued at $108,000,000 in cash and warranty benefits on behalf of nationwide class of car owners against manufacturer

- *BofA Countrywide Appraisal RICO*, No. 2:16-cv-04166 (C.D. Cal.), part of team that secured $250,000,000 settlement on behalf of nationwide class of borrowers against appraiser

- *Sake House Restaurants Racial Discrimination Litigation*, Case No. BC7087544 (Cal.Super.), certified for settlement purposes first of its kind hostile work environment class of Hispanic/Latino restaurant workers against employer

- *USC, Dr. Tyndall Sexual Harassment*, No. 2:18-cv-04258-SVW-GJS (C.D. Cal., part of team that secured $215,000,000 settlement on behalf of class of sexual assault survivors against university and OB-GYN

## EXPERIENCE

- Prior to joining Hagens Berman, Chris worked as an associate at a large plaintiff's firm gaining extensive experience representing plaintiffs in business litigation involving copyright and trademark disputes, breach of contract claims and breach of fiduciary duty claims. He also worked on a number of nationwide class actions involving products liability matters in the pharmaceutical and construction industries.

- While in law school, Mr. Pitoun externed for the Office of the Attorney General of California's Business and Tax Division where he worked on tax appeals on behalf of the Franchise Tax Board. Mr. Pitoun also served as an editor on the Loyola of Los Angeles Entertainment Law Review.

## LEGAL ACTIVITIES

- Federal Bar Association

- American Association for Justice (AAJ)

- Consumer Attorneys of California (CAOC)

HAGENS BERMAN SOBOL SHAPIRO LLP



University of Chicago, M.A., 2005



University of Michigan, B.A., with
High Honors, 2004



London School of Economics,
General Course, 2003

**AWARDS**



### RECOGNITION

- 500 Leading Plaintiff Consumer Lawyers, Lawdragon, 2024

- Rising Star, Super Lawyers, 2021-2023

### NOTABLE CASES

- *CVS Generic Drug RICO Litigation*

- *Fiat Chrysler Low Oil Pressure Shut Off*

- *Fiat Chrysler Gear Shifter Rollaway*

- *Gilead HIV TDF Tenofovir Mass Tort*

- *Mattel/Fisher Price Rock 'N Play Wrongful Death Cases*

### LANGUAGES

- French

### PERSONAL INSIGHT

Prior to attending law school, Chris taught English and French to high school students in China. Chris later decided to become a lawyer while marketing the film "Michael Clayton." In his spare time, Chris works as a volunteer for the American Friends of the Israel Museum, a non-profit which helps raise funds for the Israel Museum in Jerusalem.

HAGENS  BERMAN  SOBOL  SHAPIRO LLP



**PARTNER**

# Shana E. Scarlett

Shana has achieved hundreds of millions of dollars in recovery for classes in antitrust matters, and has been named a Northern California Super Lawyer and top California antitrust attorney.

shanas@hbsslaw.com

T 510-725-3000
F 510-725-3001

715 Hearst Avenue
Suite 300
Berkeley, CA 94710

**YEARS OF EXPERIENCE**

21

**PRACTICE AREAS**

Antitrust Litigation
Class Action
Consumer Rights
High Tech Litigation

**INDUSTRY EXPERIENCE**

- Technology Companies
- Internet Companies
- Agricultural Companies

**BAR ADMISSIONS**

- California

**COURT ADMISSIONS**

- Second Circuit Court of Appeals
- Seventh Circuit Court of Appeals
- Ninth Circuit Court of Appeals
- U.S. Court of Appeals for the Federal Circuit
- U.S. District Court for the Northern District of California
- U.S. District Court for the Central District of California
- U.S. District Court for the Southern District of California
- U.S. District Court for the Eastern District of California

## CURRENT ROLE

- Partner, Hagens Berman Sobol Shapiro LLP
- Managing Partner of Hagens Berman's Berkeley office
- Practice is devoted entirely to representing plaintiffs in complex litigation, and primarily in the areas of antitrust and unfair competition

## RECENT SUCCESS

Ms. Scarlett has played a leading role in obtaining sizable settlements for antitrust plaintiffs in the following cases:

- *In re Broiler Chicken Antitrust Litig.*, No. 16-CV-08637 (N.D. Ill.), co-lead counsel for indirect purchaser class; recovery to date of $181 million

- *In re Animation Workers Antitrust Litig.*, No. 14-cv-4062 (N.D. Cal.), team at Hagens Berman acting as co-lead counsel for class of workers; recovery of nearly $169 million

- *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420 (N.D. Cal.), team at Hagens Berman acting as co-lead counsel for indirect purchaser class; recovery of $113.45 million

- *In re Electronic Books Antitrust Litig.*, No. 11-md-02293 (S.D.N.Y.), team at Hagens Berman acting as co-lead counsel for indirect purchaser class; recovery of $568 million

- *In re Optical Disk Drive Antitrust Litig.*, No. 10-md-02143 (N.D. Cal.), team at Hagens Berman acting as lead counsel for indirect purchaser class; recovery of $205 million

- *In re Railway Industry Employee No-Poach Antitrust Litigation*, MDL No. 2850 (W.D. Pa.), team at Hagens Berman on executive committee; recovery of $48.95 million

## EXPERIENCE

- Associate, Coughlin Stoia Geller Rudman & Robbins LLP, 2004-2007

- Associate, Milberg Weiss Bershad Hynes & Lerach LLP, 2002-2004

- Associate, Lieff Cabraser Heimann & Bernstein LLP, 2001-2002

## LEGAL ACTIVITIES

- Panelist, Class Actions: What You Need to Know Now Recent Developments in Class Action Litigation, Federal Bar Association, Northern District of California Chapter, November 2023

HAGENS BERMAN SOBOL SHAPIRO LLP

**EDUCATION**



Stanford Law School, J.D.



University of British Columbia, B.A.

**AWARDS**

THE NATIONAL
LAW JOURNAL
**2018 TOP VERDICTS**
MEDICAL MALPRACTICE
**$383,500,000**

- Panelist, Complex Litigation Ethics Conference: UC Law San Francisco, The Ethics of Court-Appointed Neutrals, October 2023

- Panelist, Antitrust and Unfair Competition Law, California Lawyers Association, Views from the Top, November 2021

- Panelist, American Antitrust Institute, Taken and Defending Depositions of Economists in Panelist, American Antitrust Institute, Taken and Defending Depositions of Economists in Private Class Actions, November 2019

- Panelist, American Bar Association, Key Considerations for Working with Expert Witnesses in Class Actions, September 2019

- Panelist, American Antitrust Institute, The Consumer and Food Sovereignty: Concentration and its Effects on Food Prices, Choice, and Quality, December 2018

- Panelist, Complex Litigation E-Discovery Forum: Tar and Validation Protocols, September 2018

- Panelist, spoke at the request of Judge Gonzalez Rogers on distribution of settlements and best practices of notice, Civil Law Symposium: Class Actions for the Northern District Practice Program, September 2018

- Panelist, The Impact Fund, Advanced Class Notice Issues, August 2018

- Panelist, American Bar Association Meeting: Procedural Steps and Pitfalls in Antitrust Class Actions, May 2018

- Panelist, Northern District Judicial Conference: Class Actions, April 2018

- Panelist, Class Certification — Making Sense of Class Certification Doctrine, Economics and Econometrics, American Antitrust Institute, Nov. 2017

## RECOGNITION

- 500 Leading Plaintiff Financial Lawyers, Lawdragon, 2020-2024

- 500 Leading Plaintiff Consumer Lawyers, Lawdragon, 2022-2024

- Thought Leaders, Competition, Who's Who Legal, 2024

- The Best Lawyers in America, Plaintiffs Mass Tort Litigation/Class Actions, Best Lawyers, 2024

- Top 100, National Trial Lawyers, 2023-2024

- Thought Leaders, Global Elite, Who's Who Legal, 2022, 2024

- Northern California Super Lawyer, 2013-2024

- Chambers and Partners, Band 1 Ranking, Antitrust, 2022-2024

- Top Women Attorneys In Northern California, *San Francisco Magazine*, 2022

- Top Plaintiff Lawyers, *The Daily Journal of California*, 2022

- Top Antitrust Attorney, *The Daily Journal of California*, 2021-2022

- Top 100 Civil Plaintiff Trial Lawyers in California, The National Trial Lawyers, 2021-2022

- Top 50 Women, Northern California Super Lawyers, 2020-2021

- Rising Star, Super Lawyers, 2009-2011

HAGENS BERMAN SOBOL SHAPIRO LLP

## NOTABLE CASES

Ms. Scarlett is also serving as lead or co-lead class counsel in the following cases currently being litigated:

- *Klein v. Meta Platforms*, No. 20-cv-08570 (N.D. Cal.), co-lead counsel for a consumer class against Facebook for gaining a monopoly through deceptive data use and collection practices

- *In re Pork Antitrust Litig.*, No. 18-CV-01776 (D. Minn.), co-lead counsel for indirect purchaser class

- *In re Beef Purchasers Antitrust Litig. (Peterson v. JBS USA Food Co. Holdings et al.)*, No. 0:19-cv-01129 (D. Minn.), co-lead counsel for indirect purchaser class

- *In re Turkey Antitrust Litig.*, No. 1:19-cv-08318 (N.D. Ill.), co-lead counsel for direct purchaser class

- *Jien v. Perdue Farms, Inc.*, No. 19-cv-2521 (D. Md.), co-lead counsel for class of hourly and salaried workers

## PERSONAL INSIGHT

Shana is Canadian and the daughter of the noted Canadian jurist, the Hon. Edward D. Scarlett. When not in the Berkeley office of Hagens Berman, Shana usually can be found in Canada with her four sisters, nine nieces and nephews.

HAGENS BERMAN SOBOL SHAPIRO LLP



**craigs@hbsslaw.com**

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**YEARS OF EXPERIENCE**
42

**PRACTICE AREAS**
Consumer Rights
High Tech Litigation

**INDUSTRY EXPERIENCE**
▪ Pharmaceuticals

**BAR ADMISSIONS**
▪ California
▪ Illinois
▪ Washington

**EDUCATION**

**HARVARD**
**LAW SCHOOL**
Harvard Law School, J.D.,
cum laude, 1979

**ST. OLAF COLLEGE**
St. Olaf College, B.A., summa cum
laude, 1975

PARTNER
# Craig R. Spiegel

After helping obtain recent substantial settlements in cases against drug companies for deceptive marketing, Mr. Spiegel now helps in the firm's litigation efforts against auto manufacturers and others for illegal emissions of pollutants.

## CURRENT ROLE

- Partner, Hagens Berman Sobol Shapiro LLP

- Practice primarily focuses on class actions concerning unfair pricing of pharmaceutical drugs and deceptive marketing of automobiles and other vehicles. Recent cases include actions against Eli Lilly, Novo Norisk, and Sanofi-Aventis for alleged unfair pricing of prescription insulin and against the National Association of Realtors and others for allegedly conspiring to keep realtor commissions artificially high

## RECOGNITION

- Honoree for Outstanding Antitrust Litigation Achievement in Private Law Practice, American Antitrust Institute, 2019, 2021

## NOTABLE CASES

- Involved in the firm's antitrust class-action lawsuit against the NCAA accusing the sports-governing body of engaging in anti-competitive practices in regards to its scholarships or Grants in Aid (GIAs) program. In March of 2017, U.S. District Judge Claudia Wilken approved a sweeping $209 million settlement for student-athletes, and in March of 2019, a trial on the injunctive aspect of the case resulted in a change of NCAA rules limiting the financial treatment of athletes.

- Helped obtain a substantial settlement for the state of New York and New York City in their litigation against Merck for losses suffered from deceptive marketing of the prescription drug Vioxx.

- Instrumental in obtaining a settlement for a class of Massachusetts consumers and third-party payors in their litigation against AstraZeneca, in which the class claimed that AstraZeneca deceptively marketed the prescription drug Nexium as superior to Prilosec.

- Deeply involved in the firm's lawsuits on behalf of thalidomide victims, who suffered severe personal injuries when their mothers ingested thalidomide during their pregnancies in the late 1950s and early 1960s, without knowing that thalidomide had not been approved by the FDA.



shaynes@hbsslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**YEARS OF EXPERIENCE**

24

**PRACTICE AREAS**

Appellate Litigation

Civil & Human Rights

Class Action

Securities

Whistleblower (Head of Practice)

   Anti-Money Laundering Act

   CFTC

   False Claims Act

   IRS

   SEC

**BAR ADMISSIONS**

- Washington

**CLERKSHIPS**

- Honorable Betty B. Fletcher,
  Ninth Circuit Court of Appeals,
  2001-2002
- Honorable Charles S. Haight,
  Jr., Southern District of New
  York, 2000-2001

**EDUCATION**

## Yale Law School

Yale Law School, J.D. (2000)

PARTNER

# Shayne C. Stevenson

Since fighting against sweatshops and the exploitation of undocumented workers with the workers' rights organization he founded at the Yale Law School, Shayne has focused his legal career on prosecuting cases against individuals and businesses who victimize others by violence, deception and fraud.

## OVERVIEW

- Partner, Hagens Berman Sobol Shapiro LLP

- Leads the firm's whistleblower practice and litigates select class-action cases

- Litigates and argues both False Claims Act and a variety of class action cases in federal district courts and on appeal at the courts of appeal nationwide on behalf of whistleblowers, veterans, consumers, workers and investors

- Experienced in successfully handling False Claims Act, SEC, CFTC, and IRS whistleblower cases for whistleblowers worldwide against the world's largest financial companies, securities exchanges, accounting firms, medical device and pharmaceutical companies, medical providers, mortgage companies and other Fortune 500 corporations

- One of the nation's leading Dodd-Frank Whistleblower attorneys since the programs were adopted in 2010, representing several successful, record-breaking whistleblowers under the whistleblower programs of the Securities and Exchange Commission (SEC) and the Commodity Futures Trading Commission (CFTC) — including the two most notable whistleblowers under these programs

- Litigates select human rights and other public interest matters, including previous litigation against the Rio Tinto mining conglomerate for war crimes against the indigenous population of Bougainville in Papua New Guinea, a case that reached the U.S. Supreme Court

- Previously a felony prosecutor who successfully tried several multi-week jury trials and argued several cases in trial and appellate courts

## EXPERIENCE

- King County Prosecuting Attorney's Office, Felony Prosecutor

- Law Clerk, Honorable Betty B. Fletcher, Ninth Circuit Court of Appeals, 2001-2002

- Law Clerk, Honorable Charles S. Haight, Jr., Southern District of New York, 2000-2001

- U.S. Attorney's Office, District of Connecticut, Intern

## NOTABLE CASES

- *CFTC v. Nav Sarao Futures Ltd. and U.S. v. Sarao* (Northern District of Illinois) (CFTC whistleblower) Successfully represented the highly-publicized anonymous Dodd-

HAGENS BERMAN SOBOL SHAPIRO LLP

**GONZAGA**
U N I V E R S I T Y
Gonzaga University, B.A.,
Philosophy and Political Science
(double major), graduated
summa cum laude (first-in-class);
Truman Scholar; Jesuit Honor
Society (1996)

Frank CFTC whistleblower who single-handedly identified an international market manipulator, who was extradited and convicted. The case is the subject of the best-selling book "Flash Crash" by Bloomberg reporter Liam Vaughn.

- *In the Matter of EDGA Exchange, Inc., et al.* (SEC whistleblower) Successfully represented another high-profile Dodd-Frank SEC whistleblower, the algorithmic trader and market structure expert Haim Bodek, who single-handedly identified securities law violations by a major U.S. securities exchange. Mr. Bodek was twice featured on the front page of the Wall Street Journal for his efforts, which led to the largest SEC fine in history against a financial exchange.

- *U.S. ex rel. Lagow v. Countrywide Financial Corp., et al. and U.S. ex rel. Mackler v. Bank of America, et al.* (Eastern District of New York) Successfully handled both False Claims Act whistleblower cases representing relators in two separate lawsuits against Bank of America that culminated in the historic $1 billion settlement between the Department of Justice and Bank of America addressing mortgage origination and servicing fraud.

- *In the Matter of New York Stock Exchange LLC, et al.* (SEC whistleblower) Successfully represented Mr. Bodek in a second record-tying SEC whistleblower action against the NYSE, and affiliated national securities exchanges, for unlawful and undisclosed use of order types.

- *In the Matter of Grant Thornton, LLP* (SEC whistleblower) Successfully represented the Dodd-Frank SEC Whistleblower who brought the allegations of auditing fraud by this top-10 U.S. accounting and audit firm.

- *Childress v. Bank of America Corp., et al.* (Eastern District of North Carolina.) Successfully represented and settled this class action case on behalf of over 126,000 military servicemembers challenging Bank of America's violations of the Servicemember Civil Relief Act, resulting in tens of millions of dollars paid to veterans and their families.

- *In the Matter of Cargill, Inc.* (CFTC whistleblower) Successfully represented CFTC whistleblower in action against the largest private company in the United States.

- *U.S. ex rel. Doe v. US WorldMeds LLC* (Western District of Washington) Successfully represented False Claims Act relator who challenged off-label marketing and Anti-Kickback Statute violations.

- *Securities and Exchange Commission v. Moddha Interactive, et al.* (District of Hawaii) (SEC whistleblower) Successfully represented SEC whistleblower who investigated and reported on fraudulent investment scheme shut down by the SEC.

- *U.S. ex rel. Nowak v. Medtronic, Inc.,* (District of Massachusetts) Successfully represented False Claims Act relator in declined and settled FCA litigation challenging off-label promotion of medical devices.

- *U.S. ex rel. Kite v. Besler Consulting, et al.* (District of New Jersey) Successfully represented False Claims Act relator in several declined and settled FCA cases against area hospitals for Medicare fraud.

- *Sarei v. Rio Tinto Plc* (Central District of California) Litigated international human rights class action case under Alien Tort Statute to the Supreme Court.

- *Hutchinson v. British Airways PLC,* (Eastern District of New York) Successfully represented a class of consumers under Montreal Convention.

HAGENS BERMAN SOBOL SHAPIRO LLP

## MEDIA INTERVIEWS AND COMMENTARY

- "CFTC Makes History With $200M Whistleblower Award," Law360, Oct. 21, 2021

- "FCA Overhaul Bill May Miss Mark on Reining in Fraudsters," Law360, July 28, 2021

- "Escobar Five Years Later: How FCA Earthquake is Reverberating," Law360, June 17, 2021

- "Latest CFTC Bounty Stirs Calls for More Whistleblower Funds," Law360, Apr. 23, 2021

- "SEC Redefines Blockbuster with $114M Whistleblower Award," Law360, Oct. 22, 2020

- "CFTC Takes Extra Care to Cover Whistleblower Tracks," Law360, Sept. 10, 2020

- "Robbins Geller, Hagens Berman to Lead Pot Investors' Row," Law360, July 24, 2020

- "CFTC Awards Whistleblower $6m, Slams 'Baseless' Objection," Law360, June 9, 2020

- "SEC Ramps Up Whistleblower Awards," Wall St. Journal, May 4, 2020

- "CFTC Calls for Whistleblower Tips as Enforcement Evolves," Law360, Sept. 19, 2019

- "Pharma Co. Inks $17.5m Deal to End FCA Kickback Suit," Law360, April 30, 2019

- "Attorneys Reflect on Escobar's FCA Impact 2 Years Later," Law360, June 15, 2018

- "SeaWorld Visitors Ask 9th Cir. to Flip Whale Abuse Suit," Law360, Mar. 12, 2018

- "Dodd-Frank Whistleblowers Help Clean Up Our Markets," (Guest Column) ValueWalk, Feb. 6, 2018

- "Attorneys React to DOJ's New Memo on FCA Dismissals," Law360, Jan. 26, 2018

- "Limiting Whistleblower Rewards Weakens Program," Bloomberg Law, Nov. 2, 2017

- "BofA's $42m Military Member Fee Settlement Wins Initial OK," Law360, Sept. 13, 2017

- "Sarao Flash Crash Manipulation Case Benchmarks Point in History," ValueWalk, Nov. 15, 2016

- "What SEC Whistleblowers Should Know About Insider Trading," (Guest Column) ValueWalk, Oct. 20, 2016

- "SeaWorld Patrons Ask 9th Cir. to Restore Orca Abuse Suit," Law360, Sept. 20, 2016

- "SEC cracks down on severance agreements that deter whistleblowing," Reuters, Aug. 16, 2016

- "Tax Court Interprets 'Collected Proceeds' Expansively for Whistleblowers," Standard Fed. Tax Reports, Aug. 11, 2016

- "Whistleblower Persuades Tax Court to Grant Discovery Motion," Standard Fed. Tax Reports, Aug. 4, 2016

- "Health Fraud Defense Attys Riding High As Wins Pile Up," Law360, Apr. 8, 2016

- "CFTC Whistleblower Office Comes of Age with Record Bounty," Law360, Apr. 4, 2016

- "Why Wash.'s Medicaid False Claims Act Must be Renewed," Law360, Mar. 24, 2016

HAGENS BERMAN SOBOL SHAPIRO LLP

- "Renew Tool That Fights Fraud," (Guest Column), The Daily Herald, Feb. 21, 2016

- "CFTC Can't Give Whistleblower Money Away," Wall St. Journal, Feb. 8, 2016

- "9th Circuit's FCA Ruling to Spark More Whistleblower Fights," Law360, July 9, 2015

- "Flash Crash' Case Gets Scrutinized," Automated Trader, May 4, 2015

- "Flash Crash Whistleblower May Get Millions of Dollars," Reuters, Apr. 23, 2015

- "'Flash Crash' Arrest Shakes Investors' Confidence," USA Today, Apr. 23, 2015

- "Alleged 'Flash Crash' Trader Told UK Watchdog to Ban HFT," Law360, Apr. 23, 2015

- "UK Trader Arrested Over 2010 Flash Crash," Financial Times, Apr. 22, 2015

- "Flash Crash Whistleblower May See Multi-Million Dollar Pay Day," Reuters, Apr. 22, 2015

- "'Flash Crash' Charges Filed," The Wall Street Journal (front-page), Apr. 21, 2015

- "UK Speed Trader Arrested," Reuters, Apr. 21, 2015

- "How a Mystery Trader May Have Caused the Flash Crash," Bloomberg, Apr. 21, 2015

- "CFTC, Feds Accuse UK HFT Trader of Role in Flash Crash," Law360, Apr. 21, 2015

- "BATS to Pay $14 Million to Settle Direct Edge Order-Type Case: A Record Amount," The Wall Street Journal, Jan. 12, 2015

- "BATS Exchange to Pay Record $14 Million SEC Fine," Reuters, Jan. 12, 2015

- "BATS to Pay $14m SEC Fine in Wake of Order-Type Scandal," Automated Trader, Jan. 12, 2015

- "SEC Issues Largest Fine Ever to Exchange Over High-Frequency Trading Infractions," ValueWalk, Jan. 12, 2015

- "IRS Releases Comprehensive Whistleblower Final Regs.," Standard Fed. Tax Reports, Aug. 14, 2014

- "Bank of America Whistleblower's Payday Lead to Calls for Reform," Law360, Aug. 6, 2014

- "UBS Whistleblower Ruling Reignites Arbitration Debate," Law360, Jan. 30, 2014

- "With $2B J&J Deal, FCA Proves It's Still The Anti-Fraud King," Law360, Nov. 4, 2013

- "Bank of America Fraud Trial Spotlights Whistleblower Awards," Reuters, Sept. 27, 2013

- "FCPA Whistleblower Bounty May Turn Tide For SEC Program," Law360, Aug. 20, 2013

- "Whistleblower Attorneys Eye DOJ Fraud Theory for New Bounties," Law360, Aug. 7, 2013

- "SEC's Second Whistleblower Award is Tip of the Iceberg," Law360, June 14, 2013

- "UBS Ruling Allays Fear Factor for SEC Whistleblowers," Law360, May 22, 2013

- "Five Tips for Building Bridges with Whistleblowers," Law360, Mar. 20, 2013

- "Analysis: Complaints Rise Over Complex U.S. Stock Orders," Reuters, Oct. 19, 2012

- "For Superfast Stock Traders, a Way to Jump Ahead in Line," Wall St. Journal (front-page) Sept. 19, 2012

- "UBS Whistleblower Nets $104 Million Award," CNN Money, Sept. 12, 2012"

- "Bank of America/Countrywide Whistleblower Kept 3-Year Secret," ABCNews, July 14, 2012

- "Whistleblowers Win $46.5m in Foreclosure Settlement," CNN, July 2, 2012

- "Whistleblowers Beware: Most Claims End in Disappointment," Huffington Post, June 4, 2012

- "Whistleblower Takes Home $14.5M in BofA Mortgage Deal," Law360, May 29, 2012

- "Bank of Amer. Whistleblower Receives $14.5m in Mortgage Case," Reuters, May 29, 2012

- "BofA Denied Homeowners Access to HAMP: Whistleblower," Law360, Mar. 7, 2012

- "Countrywide Inflated Home Values: Whistleblower Suit," Law360, Feb. 24, 2012

- "Killers of Somali Cabbie Get Longest Sentences Allowed," Seattle P-I, Mar. 24, 2006

## PRESENTATIONS

- *Speaker*: "Whistleblowers & Financial Fraud," National Whistleblower Conference, San Francisco, CA, Jan. 22-23, 2018

- *Speaker*: "Financial Fraud," National Qui Tam Conference. Los Angeles, CA, Nov. 3-4, 2016

- *Speaker*: "Representing Dodd-Frank Whistleblowers," Taxpayers Against Fraud Education Fund, Annual Conference. Washington, D.C., Nov. 16, 2015

- *Speaker*: "Secrets from the Plaintiff's Bar," Hospital and Health Care Law Conference: University of Washington, Seattle, WA, Apr. 24, 2015

- *Speaker*: "False Claims in the Financial Sector," False Claims and Qui Tam Enforcement Conference, New York, New York, Jan. 21-22, 2015

- *Lecture*: "Access to Civil Remedy," Business, Social Responsibility, & Human Rights, University of Washington School of Law, Seattle, Washington. Nov. 4, 2014

- *Speaker*: "Enforcement of Financial Fraud," False Claims Act: National Qui Tam Conference, San Francisco, California, Oct. 27-28, 2014

- *Lecture*: "Human Rights Law After *Kiobel*," University of Washington School of Law, Seattle, Washington, Nov. 12, 2013

- *Speaker*: "Financial Fraud Enforcement," False Claims Act: All Points of View, National Conference, San Francisco, California, Apr. 18-19, 2013

- *Lecture*: "Strategy after *Kiobel* and *Bauman*," International Human Rights Seminar, University of Washington School of Law, Seattle, Washington, Apr. 17, 2013

- *Lecture*: "Alien Tort Statute and Human Rights Litigation," University of Washington School of Law, Seattle, Washington, Nov. 13, 2012

- *Speaker*: "Protecting Whistleblowers, Protecting the Public," Whistleblowing: Law, Compliance, and the Public Interest, Government Accountability Project, Seattle University School of Law, Seattle, Washington, Mar. 23, 2012

HAGENS BERMAN SOBOL SHAPIRO LLP



whitneyst@hbsslaw.com

T 510-725-3000
F 510-725-3001

1 Faneuil Hall Square
5th Floor
Boston, MA 02109

**YEARS OF EXPERIENCE**

19

**PRACTICE AREAS**

Antitrust Litigation
Pharmaceutical Fraud

**BAR ADMISSIONS**

- California
- Massachusetts
- New York
- Texas

**COURT ADMISSIONS**

- U.S. District Court for the Northern District of California
- U.S. District Court for the Central District of California
- U.S. District Court for the Eastern District of California
- U.S. District Court for the Southern District of California
- U.S. District Court for the District of Massachusetts
- U.S. District Court for the Eastern District of New York
- U.S. District Court for the Southern District of New York

**EDUCATION**



University of Virginia School of
Law, J.D., 2002

## PARTNER
# Whitney Street

Ms. Street has been appointed to leadership positions in large antitrust class actions across the country, most recently recovering $34 million as co-lead counsel on behalf of a proposed class of cancer patients and other end payors.

### CURRENT ROLE

- Of Counsel, Hagens Berman Sobol Shapiro LLP

### EXPERIENCE

- Whitney served as co-lead counsel and represented the city of Providence, Rhode Island and a putative class of indirect purchasers in an antitrust class action against Celgene Corp. for unlawfully excluding generic competition for vital cancer treatment drugs. The matter was *In re Thalomid & Revlimid Antitrust Litig.*, 14-cv-6997 (D.N.J.), and resulted in a $34 million settlement on behalf of the class.

- Ms. Street was appointed co-lead counsel on behalf of a class of indirect purchasers in *In re Domestic Drywall Antitrust Litig.*, 13-md-02437 (E.D. Pa.), which involved allegations of price-fixing and other forms of concerted conduct in violation of antitrust laws, resulting in a $17 million settlement on behalf of the class.

- She was also appointed to the plaintiffs' steering committee in *In re Liquid Aluminum Sulfate Antitrust Litig.*, 16-md-02687 (D.N.J.) alleging bid-rigging, market allocation and price-fixing in the aluminum sulfate market. Settlements totaled at least $111 million in that matter.

- She also served on the steering committee in *In re Packaged Seafood Antitrust Litig.*, 15-md-02670 (S.D. Cal.), an ongoing case alleging price-fixing in the market for shelf-stable seafood products.

- Whitney served as a member of the litigation team representing direct purchasers in *In re Broiler Chicken Antitrust Litig.*, 16-cv-08637 (N.D. Ill.), a class action alleging broiler chicken producers engaged in a price-fixing conspiracy, and in *In re Pork Antitrust Litig.*, 18-cv-01776 (D. Minn.), a class action alleging that pork producers engaged in a price-fixing conspiracy. To date, approximately $200 million has been obtained on behalf of direct purchasers in the *Broilers* matter, and $107.5 million has been obtained on behalf of direct purchasers in the *Pork* matter. Both cases are ongoing against remaining defendants.

- Whitney served as a member of the litigation teams in the following antitrust class actions: *Air Cargo Shipping Services Antitrust Litigation*, 06-md-1775 (E.D.N.Y.) (settlements totaling more than $270 million); *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation*, 3:03-md-1542 (D. Conn.) (partial settlements totaling $87 million); *In re Methyl Methacrylate (MMA) Antitrust Litigation*, 06-md-01768 (E.D. Pa.) (settled for $15.0 million); and *In re Hydrogen Peroxide Antitrust Litigation*, 05-civ-666 (E.D. Pa.) (partial settlements of more than $4.0 million).

HAGENS BERMAN SOBOL SHAPIRO LLP



University of Virginia, B.A.,
Economics and Literature, 1999

- Whitney received her training at prominent litigation firms in New York and Boston where she represented clients in antitrust and securities class actions. She began her career at Pillsbury Winthrop Shaw Pittman, one of the largest law firms in California.

## LEGAL ACTIVITIES

- Contributor, Complex Litigation E-Discovery Forum, 2016-2021

- Member, American Bar Association, 2016-2019

- Editorial Advisory Board Member, Law360 Competition Law, 2014-2018

- Co-Founder and former co-chair, American Association for Justice Antitrust Litigation Group, 2014 – 2016

## PUBLICATIONS

- Co-Author, "What Lies Ahead in High Stakes Pay-For-Delay Antitrust Litigation," *American Association of Justice Business Torts Newsletter*, May 2015

- "Technology Assisted Review: The Disclosure of Training Sets and Related Transparency Issues," *Georgetown Law Advanced eDiscovery Institute*, November 2014

- Co-Author, "Decision Re-Affirms Critical Role of Shareholders," *Benefits and Pensions Monitor*, October 2014

## PRESENTATIONS

- Speaker, "The New Normal: Producing and Obtaining Phone Record Data," Complex Litigation e-Discovery Forum, November 2020

- Panelist, "Big Data & Storylines," Complex Litigation E-Discovery Forum, September 2016

- Moderator, "Introduction to the Use of Regression Analysis in Antitrust Class Action Litigation," American Association for Justice Webinar, August 2016

- Panelist, Georgetown Law Advanced eDiscovery Institute, November 2014

- Panelist, American Association for Justice Class Certification Seminar, 2013

## PERSONAL INSIGHT

Whitney — a novice marathoner, ambivalent Tottenham fan and avid seeker of book recommendations — joined Hagens Berman in November 2021. Originally from the Lowcountry, she now calls California home and can often be found on the trails of Mount Diablo.

HAGENS BERMAN SOBOL SHAPIRO LLP



jessicat@hbsslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**YEARS OF EXPERIENCE**

12

**PRACTICE AREAS**

Class Action
Consumer Rights
Emissions Litigation
Employment Litigation

**BAR ADMISSIONS**

▪ District of Columbia
▪ Maryland
▪ Washington

**EDUCATION**



University of Baltimore School of
Law, J.D., magna cum laude,
with Honors, 2010

Highest Grade in the Class Award,
Evidence; University of Baltimore
Law Review, Staff Editor



University of Baltimore,
Baltimore, Maryland, B.A.,
Community Studies and Civic
Engagement, cum laude, 2005

PARTNER

# Jessica Thompson

Jessica began her legal career at an AMLaw 100 firm representing Fortune-ranked corporations in antitrust, intellectual property and financial services industries. Though grateful for the intense training that those matters provided, Jessica is proud to now be working for the good guys.

## CURRENT ROLE

- Partner, Hagens Berman Sobol Shapiro LLP
- Practice focuses on complex consumer protection cases, primarily within the realms of automotive and emissions litigation.
- Ms. Thompson is currently involved in many of the firm's high-profile auto cases, including litigation against General Motors for faulty ignition switches that are linked to more than 120 fatalities, and emissions-cheating cases brought against Mercedes, Fiat Chrysler and GM. She worked on the Volkswagen CleanDiesel emissions lawsuits brought on behalf of consumers and of franchise dealers.

## RECENT SUCCESS

- Litigating and reaching favorable settlements in diesel emissions lawsuits against vehicle manufacturers and suppliers
- Defeating multiple motions to dismiss in diesel emissions lawsuits on RICO and Clean Air Act preemption grounds
- Litigating and reaching favorable settlements in discrimination matter against an insurance company

## EXPERIENCE

- Crowell & Moring LLP, Washington, D.C., Associate, 2011-2014
- Cadwalader, Wickersham & Taft LLP, Washington, D.C., Associate, 2011
- Howrey LLP, Washington, D.C., Litigation Associate, 2010-2011
- Howrey LLP, Washington, D.C., Summer Associate, 2009
- Montgomery County State's Attorney's Office, Rockville, MD, Student Attorney, 2010

## ACTIVITIES

- Webinar: "Garden Leaves and Other Strategies to Protect Trade Secrets When Losing Employees," Crowell & Moring, March 28, 2013 – Present
- Workshop: "Don't Sign that Yet!," Crowell & Moring, Washington, D.C., March 5, 2013-Present

## PUBLICATIONS

- "The ITC Can Play a Critical Role in Combating International Trade Secret Theft," *Intellectual Property Today*, Jan. 20, 2012

**Client Alerts & Newsletters:**

- "Consensus Grows as Congress Continues to Refine Its Efforts to Create a Federal Civil Cause of Action For Certain Trade Secret Theft," Regulatory Alert, May 12, 2014

- "Federal Trade Secret Reform Continues With Two New Attempts to Improve Protection," Regulatory Alert, July 22, 2013

- "Supreme Court Rejects Attempt by Class Action Plaintiff to Plead Around Federal Court Jurisdiction," Mar. 22, 2013

## PERSONAL INSIGHT

Jessica comes from a working-class Baltimore family. Though she has dutifully relearned the pronunciation of words like water (not "wooder") and wash (not "warsh"), she continues to inquire about "dem O's" and refuses to participate in the singing of "Shout" at the seventh-inning stretch. It's an abomination.



**PARTNER**

# Breanna Van Engelen

Breanna advocates on behalf of consumers in complex litigation, including in antitrust cases and cases involving unfair competition.

breannav@hbsslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**YEARS OF EXPERIENCE**

7

**PRACTICE AREAS**

Antitrust Litigation
Class Action
Consumer Rights

**BAR ADMISSIONS**

▪ Washington

**EDUCATION**



University of Michigan
Law School, J.D.



Washington State University,
B.A., magna cum laude

## CURRENT ROLE

- Partner, Hagens Berman Sobol Shapiro LLP

## EXPERIENCE

Prior to joining Hagens Berman, Breanna was an associate at K&L Gates LLP in Seattle, where she focused on Internet and technology law. Breanna took one of the first electronic impersonation cases in Washington state to trial. At trial, she secured an $8.9 million dollar verdict for her clients – the largest verdict ever awarded to a non-celebrity in an electronic impersonation/invasion of privacy case.

## RECOGNITION

- 2018-2019 Public Service & Leadership Award recipient

## MEDIA INTERVIEWS AND COMMENTARY

- Brooke Jarvis, "How One Woman's Digital Life Was Weaponized Against Her," WIRED, Nov. 11, 2017

## PRESENTATIONS

- "Taking the Distribution of Intimate Images to Trial," Presentation at 9th Annual Domestic Violence Symposium (Seattle, WA September 2017)

## PERSONAL INSIGHT

Breanna grew up in Idaho, where she learned to ski in the winter and race horses on mountain trails in the summer. Before becoming an attorney, Breanna taught at a pre-school in eastern Washington. When she's not working, you can find Breanna on her parents' ranch in Texas, taking care of the land and snuggling animals.

HAGENS BERMAN SOBOL SHAPIRO LLP



markv@hbsslaw.com

T 708-628-4966
F 708-628-4950

455 N. Cityfront Plaza Drive
Suite 2410
Chicago, IL 60611

**YEARS OF EXPERIENCE**
9

**PRACTICE AREAS**
Class Action

**BAR ADMISSIONS**
▪ Illinois

**COURT ADMISSIONS**
▪ U.S. District Court for the
  Northern District of Illinois
▪ Supreme Court of Illinois

**CLERKSHIPS**
▪ Honorable John Z. Lee,
  Northern District of Illinois
▪ Honorable Jesse G. Reyes,
  Illinois Appellate Court, First
  District

**EDUCATION**



DePaul University College of Law,
J.D., summa cum laude, Editor,
DePaul Law Review



University of Chicago, B.A., 2006

**PARTNER**

# Mark Vazquez

During law school, Mark served as an editor for the DePaul
Law Review, graduated at the top of his class and earned the
CALI Excellence for the Future Award in all five of his legal
writing and trial advocacy courses.

## CURRENT ROLE
- Partner, Hagens Berman Sobol Shapiro LLP

## EXPERIENCE
- Mark comes to Hagens Berman with a variety of clerkship experience, having clerked
  for both Judge John Z. Lee at the federal trial level and Justice Jesse G. Reyes at the
  state appellate level.

- During law school, Mark served as an editor for the DePaul Law Review, graduated
  from the top of his class, and earned the CALI Excellence for the Future Award in all
  five of his legal writing and trial advocacy courses.

## PUBLICATIONS
- *People v. Kladis and the Illinois Courts' Treatment of Evidence Spoliation by Law
  Enforcement*, Illinois State Bar Association Criminal Justice Newsletter, Vol. 56, No. 1,
  August 2012

## PERSONAL INSIGHT
An avid musician, Mark has been playing bass and guitar for various rock, blues, jazz,
and country acts since he was in grade school. You can frequently hear him alongside
his father at bar association events throughout Chicago — that is, should you be able to
hear anything in a crowded room full of lawyers.

HAGENS  BERMAN  SOBOL  SHAPIRO LLP



tedw@hbsslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**YEARS OF EXPERIENCE**

6

**PRACTICE AREAS**

Class Action
Environmental Litigation

**BAR ADMISSIONS**

▪ Georgia
▪ Washington

**CLERKSHIPS**

▪ Judge Mark H. Cohen, U.S.
District Court for the Northern
District of Georgia, Atlanta, GA,
2016-2018
▪ Judge Marjorie Allard, Alaska
Court of Appeals, Anchorage,
AK, 2015-2016

**EDUCATION**

## Yale Law School
Yale Law School, J.D., 2015

## DARTMOUTH
Dartmouth College, A.B., magna
cum laude, 2011

**PARTNER**

# Ted Wojcik

Ted is devoted to working on behalf of those harmed by
corporate misconduct, and has experience advocating for
individuals in several contexts.

### CURRENT ROLE

- Partner, Hagens Berman Sobol Shapiro LLP

### EXPERIENCE

- Before joining Hagens Berman, Ted served as a clerk to U.S. District Judge Mark H.
Cohen, and prior to that, to Judge Marjorie Allard of the Alaska Court of Appeals.

- During law school, Ted interned for the Alaska Public Defender Agency in Palmer,
Alaska, and the New Orleans City Attorney's Office. He also worked as a student
attorney in the landlord/tenant and immigration legal services clinics, and was an
editor for the Yale Law Journal.

- Before law school, Ted worked for a year as a high school teacher in the Marshall
Islands.

### PERSONAL INSIGHT

A Maine native and recent Seattle transplant, Ted is working hard to master the
intricacies of composting and to remember that the ocean lies to the west now, not the
east.

HAGENS BERMAN SOBOL SHAPIRO LLP



**PARTNER**

# Garth Wojtanowicz

Named a "Rising Star" by Super Lawyers Magazine in 2006, 2007, 2010

garthw@hbsslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**YEARS OF EXPERIENCE**

21

**PRACTICE AREAS**

Class Action
Consumer Rights
Investor Fraud
Securities
Unfair Competition

**BAR ADMISSIONS**

- Washington
- California

**EDUCATION**

SCHOOL OF LAW
UNIVERSITY *of* WASHINGTON
University of Washington School
of Law, J.D., 2000

UNIVERSITY *of*
WASHINGTON
University of Washington, B.A.,
English, 1997

**AWARDS**



## CURRENT ROLE

- Partner, Hagens Berman Sobol Shapiro LLP

- Practice focuses on consumer protection cases

- Currently working on the Hagens Berman team pursuing a nationwide class action against medical waste disposal company Stericycle, Inc., challenging that company's hundreds of millions of dollars in over-charges to doctors' offices, dentist offices, hospitals and similar businesses

- Also working on cases against Fresenius Medical Care, N.A. and DaVita, Inc., the first and second largest dialysis companies in the United States, relating to those companies' use of GranuFlo

## EXPERIENCE

- Member, Cornerstone Law Group, PLLC

- Associate, Danielson Harrigan Leyh & Tollefson, LLP

- Assistant City Attorney, Seattle City Attorney's Office, Civil Division

## RECOGNITION

- Rising Star, Super Lawyers Magazine, 2006, 2007, 2010

## NOTABLE CASES

- *In re Stericycle, Inc., Steri-Safe Contract Litigation*: ongoing litigation resulting in a February 2017 order certifying a nationwide class for breach of contract and consumer fraud with damages estimated between $600 million and $1 billion

- *Toyota Sudden, Unintended Acceleration (SUA)* class-action lawsuit on behalf of Toyota owners and lessees, which resulted in an historic settlement recovery valued at $1.6 billion

## PERSONAL INSIGHT

Mr. Wojtanowicz volunteers his time as a non-profit director for Girls Giving Back and Blossoming Hill Montessori School, and volunteers with the American Immigration Representation Project. In the past, he volunteered with Northwest Immigrant Rights Project.

HAGENS BERMAN SOBOL SHAPIRO LLP



keving@hbsslaw.com

T 619-929-3340

533 F Street
Suite 207
San Diego, CA 92101

**YEARS OF EXPERIENCE**

26

**PRACTICE AREAS**

Appellate
Consumer Rights
Employment Litigation
Investor Fraud
Securities

**BAR ADMISSIONS**

- California

**COURT ADMISSIONS**

- Supreme Court of the United States
- First Circuit Court of Appeals
- Second Circuit Court of Appeals
- Third Circuit Court of Appeals
- Seventh Circuit Court of Appeals
- Eighth Circuit Court of Appeals
- Ninth Circuit Court of Appeals
- Tenth Circuit Court of Appeals
- D.C. Circuit Court of Appeals
- Federal Circuit Court of Appeals
- U.S. District Court for the Northern District of California
- U.S. District Court for the Central District of California
- U.S. District Court for the Eastern District of California
- U.S. District Court for the Southern District of California

**SENIOR COUNSEL**

# Kevin K. Green

Mr. Green is a career appellate lawyer. He has argued in multiple federal circuits, 10 different states and seven state supreme courts.

## CURRENT ROLE

- Senior Counsel, Hagens Berman Sobol Shapiro LLP
- Concentrates on appeals involving consumer rights, investor fraud and antitrust litigation
- Certified Appellate Specialist, State Bar of California Board of Legal Specialization, 2006-Present

## LEGAL ACTIVITIES

- Committee on Appellate Courts, California Lawyers Association, 2019-present
- Co-Chair, Amicus Curiae Committee, Consumer Attorneys of California, 2011-present
- Appellate Advisory Committee, Judicial Council of California, 2013-2023
- Magistrate Judge Merit Selection Panel, Southern District of California, 2013-2017
- Working group, Access to Appellate Justice Program, San Diego County Bar Association, launched 2019
- Working group, San Diego Appellate Inn of Court, launched 2016
- Regular presenter, Civil Appellate Self-Help Workshop, launched 2014
- Chair, Appellate Court Committee, San Diego County Bar Association, 2010

## RECOGNITION

- Super Lawyer, 2008-2024
- Legal Aid Society of San Diego, Outstanding Service Award, 2015

## NOTABLE DECISIONS

- *In re Lithium Ion Batteries Antitrust Litigation*, rejecting objections to fee award
- *Colbert v. Rio Tinto PLC*, vacating dismissal of securities fraud complaint
- *Hernandez v. Restoration Hardware*, unnamed class members must intervene for standing to appeal
- *Friedman v. AARP, Inc.*, UCL claim alleged where AARP unlawfully transacted insurance without license
- *George v. Urban Settlement Serv.*, reinstating RICO complaint against Bank of America
- *Wong v. Accretive Health*, upholding $14 million securities settlement

HAGENS BERMAN SOBOL SHAPIRO LLP

**CLERKSHIPS**

▪ Honorable Theodore R. Boehm, Associate Justice, Supreme Court of Indiana
▪ Honorable Barry T. Moskowitz, U.S. District Court for the Southern District of California

**EDUCATION**



**The Law School**

Notre Dame Law School, J.D., 1995



University of California, Berkeley, B.A., with honors and distinction, 1989

**AWARDS**

Super Lawyers

- *Lynch v. Rawls*, first Ninth Circuit reversal on presuit demand requirement

- *Kwikset Corp. v. Superior Court*, elaborating UCL standing prerequisites

- *Luther v. Countrywide Fin. Corp.*, allowing Securities Act class action to proceed in state court, later approved in *Cyan, Inc. v. Beaver County Employees Retirement Fund*

- *In re F5 Networks, Inc. Derivative Litigation,* Washington follows demand futility standard, not universal demand rule

- *Alaska Elec. Pension Fund v. Brown*, intervening shareholders who show corporate benefit may seek attorney fees

- *Lavie v. Procter & Gamble Co.*, seminal precedent on California's reasonable consumer standard

## PUBLICATIONS

- "The Commission on Judicial Performance Speaks on the 3rd District Court of Appeal," *Los Angeles Daily Journal,* June 14, 2022

- "Appellate Pro Bono? It's Come to San Diego," *San Diego Lawyer,* 2021

- Co-author, "The Need to Correct the 9th Circuit's 'Nutty' Rule barring Expert Testimony in Software Copyright Cases," 2017

- "Forfeiture at the Pleading Stage," *California Litigation,* 2015

- "Closing the Appellate Justice Gap," *Los Angeles Daily Journal,* Feb. 10, 2015

- "Appellate Self-Help Workshops Begin," *San Diego Lawyer,* 2014

- "Appellate Review in California Class Actions," *California Litigation,* 2011

- Co-author "A Tool for Mischief: Preemptive Defense Motions Under *BCBG Overtime Cases* to Reject Class Certification," *Forum,* 2009

- "The Unfair Competition Law After Proposition 64: The California Supreme Court Speaks," *Competition,* 2006

## PRESENTATIONS

- "Behind the Scenes Look at the Appellate Process," San Diego Appellate Inn of Court, 2023

- "A Conversation with California Supreme Court and Court of Appeal Justices," California Lawyers Association Annual Meeting, 2022

- "Expanding Access to Justice in Appellate Courts," Judicial Council CJER Webinar, 2020

- "Appellate Review of Issues in Class Actions," Bridgeport Class Action Conference, 2020

- "Evidence at Class Certification: The Evolving Appellate Landscape," CAOC Webinar, 2019

- "New Mandatory Disclosures Before Mediation," California Lawyers Association Webinar, 2018

- "Consumer Protection Cases Predicated on Omissions," Bridgeport Class Action Conference, 2018

- "Ninth Circuit Practice: Everything but the Brief," CAOC Webinar, 2016

- "Objectors," Bridgeport Class Action Litigation Conference, 2016

- "Class Action Update", CAOC Annual Convention, 2014

- "Pleasing the Court: Making Your Oral Argument Count," San Diego County Bar Association, 2014

- "Forfeiture: A Four-Letter Word in the Court of Appeal," State Bar of California Annual Meeting, 2014

- "California Supreme Court Panel," State Bar of California Golden State Institute, 2012

## PERSONAL INSIGHT

Kevin ran with the bulls at Pamplona before easing into a monastic life of appellate practice. Concerned about excessive distraction, he has never had a social media account.

HAGENS BERMAN SOBOL SHAPIRO LLP



**SENIOR COUNSEL**

# Barbara Mahoney

Ms. Mahoney received her doctorate in philosophy from the Universität Freiburg (Germany), where she graduated magna cum laude.

barbaram@hbsslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**YEARS OF EXPERIENCE**

20

**PRACTICE AREAS**

Civil RICO
Class Action
Consumer Rights
Environmental Litigation
Intellectual Property
State False Claims

**INDUSTRY EXPERIENCE**

▪ Pharmaceutical Industry
▪ Class Action Litigation

**BAR ADMISSIONS**

▪ Washington

**COURT ADMISSIONS**

▪ Ninth Circuit Court of Appeals
▪ U.S. District Court for the Eastern District of Washington
▪ U.S. District Court for the Western District of Washington

**EDUCATION**

**SCHOOL OF LAW**

**UNIVERSITY *of* WASHINGTON**

University of Washington, J.D., 2001

## CURRENT ROLE

- Senior Counsel, Hagens Berman Sobol Shapiro LLP

- Focuses primarily on national and state class actions and environmental litigation

- Currently part of the firm's legal team representing 2014-16 BMW i3 REx owners in a class action regarding a defect in the range extender that causes the cars to suddenly reduce speed and power without warning when transitioning from pure battery mode to the range extender.

- Represents consumers in a nationwide class action against Dometic Corporation seeking compensation for RV and boat owners who experienced extensive loss of property due to fires and explosions caused by defective refrigerators sold by Dometic.

- Extensively involved in several lawsuits against McKesson Corporation relating to allegations that the company engaged in a scheme that raised the prices of more than 400 brand-name prescription drugs. That litigation has resulted in two separate national class-action settlements for $350 million and $82 million. In related litigation, Ms. Mahoney represented the commonwealth of Virginia, and the states of Connecticut, Arizona, Oregon, Utah and Montana in their individual cases against McKesson.

- Extensively involved in *In re Generic Pharmaceuticals Pricing Antitrust Litigation* on behalf of putative class of direct purchasers in multidistrict litigation alleging that generic drug manufacturers engaged in price fixing.

- Represents Kentucky homeowners in a putative class action against Louisville Gas & Electricity to recover the cost of removing coal ash and dust from their homes.

- Previously, she was involved in pioneering litigation against oil and energy companies on behalf of the village and tribe of Kivalina (Alaska) to recover the cost of extensive damage to the village caused by global warming.

## EXPERIENCE

- Worked in several areas of commercial litigation, including unlawful competition, antitrust, securities, trademark, CERCLA, RICO, FLSA as well as federal aviation and maritime law

- Associate, Calfo Harrigan Leyh & Eakes LLP (formerly Danielson Harrigan Leyh & Tollefson)

- Law Clerk, Justice Sanders, Washington Supreme Court

- Law Clerk, Judge Saundra Brown Armstrong, U.S. District Court, N.D. California

HAGENS BERMAN SOBOL SHAPIRO LLP



Universität Freiburg, Ph.D.,
Philosophy, magna cum laude,
1993

## LEGAL ACTIVITIES

- Downtown Neighborhood Legal Clinic
- Q Law
- Cooperating Attorney with American Civil Liberties Union of Washington

## RECOGNITION

- Rising Star, Washington Law & Politics, 2005

## NOTABLE CASES

- *New England Carpenters v. First DataBank* ($350 million class-action settlement)
- *Douglas County v. McKesson* ($82 million class-action settlement)

## LANGUAGES

- Fluent in German
- Reads Swedish and French

## PERSONAL INSIGHT

Ms. Mahoney, a former Seattleite, now lives in Sweden. She enjoys reading, running, soccer and studying foreign languages.

HAGENS BERMAN SOBOL SHAPIRO LLP



**SENIOR COUNSEL**

# David P. Moody

Mr. Moody has successfully secured many multimillion-dollar recoveries on behalf of vulnerable citizens who have been abused, neglected or exploited.

davidm@hbslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**YEARS OF EXPERIENCE**
28

**PRACTICE AREAS**
Civil & Human Rights
Personal Injury

**INDUSTRY EXPERIENCE**
- Children, Elderly and Incapacitated Citizens Who are Victims of Neglect or Abuse

**BAR ADMISSIONS**
- Washington

**COURT ADMISSIONS**
- Supreme Court of the United States
- Ninth Circuit Court of Appeals
- Various Federal District Courts

**EDUCATION**



George Washington University
School of Law, J.D., 1993

UNIVERSITY of
WASHINGTON
University of Washington, B.A., 1990

## CURRENT ROLE
- Senior Counsel, Hagens Berman Sobol Shapiro LLP
- A trial attorney with a passion for representing children, the disabled, elderly and incapacitated citizens

## RECOGNITION
- Top 25 Personal Injury Settlement Awards Nationwide, *Vernon Gray v. State of Washington*, $9 million, 2019
- Top 25 Personal Injury Settlement Awards Nationwide, *Vernon Gray v. State of Washington*, $9 million, 2019
- Top 100 Personal Injury Settlement Awards Nationwide, *Portia Plaskon v. State of Washington*, $3 million, 2019
- Top 50 Personal Injury Settlement Awards Nationwide, *Jacob Gilligan v. State of Washington*, $5.5 million, 2018
- Top 100 Personal Injury Settlement Awards Nationwide, *Toby Plaskon v. State of Washington*, $4 million, 2018
- Top 50 Personal Injury Settlement Awards Nationwide, *Heather Curtis v. State of Washington*, Crosby, $5.52 million, 2017

## NOTABLE CASES
Mr. Moody has secured many multi-million dollar recoveries on behalf of vulnerable citizens who have been abused, neglected or exploited, including:

- Largest jury verdict ever upheld against the State of Washington, DSHS, $17.8 million
- Largest single-plaintiff settlement against the State of Washington, DSHS, $8.8 million
- Largest recovery on behalf of three foster children, $7.3 million
- Largest single-plaintiff settlement on behalf of a child in Snohomish County, Washington, $5 million
- Largest judgment on behalf of an incapacitated child in Spokane County, Washington, $4 million
- Judgment for a disabled woman in Santa Clara County, California, $4 million
- Largest judgment ever obtained against Eastern State Hospital, $3 million

HAGENS BERMAN SOBOL SHAPIRO LLP

**AWARDS**



TOP 100 **PERSONAL INJURY SETTLEMENT AWARD**

- Largest judgment ever obtained against the State of Washington, Child Study and Treatment Center, $3 million

- Judgment for a boy neglected and abused in Snohomish County, Washington, $2.85 million

- Judgment for a girl neglected and abused in Pierce County, Washington, $2.85 million

- Settlement on behalf of brain-injured infant abused in day care setting, $2.84 million

- Largest single-plaintiff jury verdict on behalf of an incapacitated adult in Kitsap County, Washington, $2.6 million

- Judgment in the amount of $2.5 million for a client abused at Eastern State Hospital

- Largest single-plaintiff settlement on behalf of a developmentally disabled male in eastern Washington, $2.25 million

- Several additional settlements in excess of $1 million

## PERSONAL INSIGHT

David is proud to be a native Washingtonian and enjoys strong ties to the eastern side of the state. David's grandfather Jack Edward Moody was born and raised in Dayton, Washington, and David's great-grandfather Edward Maple Moody was the Sheriff of Columbia County, Washington. David's maternal grandmother, Eva Armstrong, was one of the first female graduates of Whitman College in Walla Walla, Washington.



**OF COUNSEL**

# Karl Barth

Key member on firm's securities fraud cases against companies such as Boeing, Einstein Noah Bagel Corp., Pepsi Puerto Rico Bottling Co., PriceCostco, Templeton Vietnam Opportunities Fund and Wall Data

karlb@hbsslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**YEARS OF EXPERIENCE**

26

**PRACTICE AREAS**

Class Action
Investor Fraud
Securities

**INDUSTRY EXPERIENCE**

- Accounting (CPA)

**EDUCATION**



Georgetown University Law
Center, J.D.



University of Virginia, B.S.,
Accounting

## CURRENT ROLE

- Of Counsel, Hagens Berman Sobol Shapiro LLP
- Previously with the firm from 1994 through 2004 before he rejoined in 2010
- Key member on firm's securities fraud cases against companies such as Boeing, Einstein Noah Bagel Corp., Identix, Midcom Communications, MidiSoft, Oppenheimer Delta Partners, Pepsi Puerto Rico Bottling Co., PriceCostco, Templeton Vietnam Opportunities Fund and Wall Data
- Represents investors seeking to protect assets and recover investment losses from companies engaged in securities and accounting wrongdoing

## EXPERIENCE

- Certified Public Accountant
- Certified Fraud Examiner
- Certified in Financial Forensics
- Consultant at a national financial consulting firm specializing in expert witness testimony on accounting and financial issues
- Graduated from Georgetown University Law Center, and from the University of Virginia with a B.S. in Accounting

HAGENS BERMAN SOBOL SHAPIRO LLP



markc@hbsslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**YEARS OF EXPERIENCE**

34

**PRACTICE AREAS**

Complex Litigation
High Tech Litigation
Intellectual Property
Misappropriation
Patent Litigation
Trademark and Trade Dress
Infringement
Trade Secret

**INDUSTRY EXPERIENCE**

- Wireless Handsets and Networks
- Telematics and Wireless Services
- Electronics
- Network Switches
- Software Databases, Data Mining and Middleware
- Internet Search Engines
- Games Cellular Biology
- Medical Devices
- Mechanical Exercise Equipment

**BAR ADMISSIONS**

- Washington

**COURT ADMISSIONS**

- Federal Circuit Court of Appeals
- U.S. District Court for the Western District of Washington

**OF COUNSEL**

# Mark S. Carlson

Mr. Carlson is an active member of the legal community frequently making presentations to legal forums and industry groups on intellectual property law.

### CURRENT ROLE

- Of Counsel, Hagens Berman Sobol Shapiro LLP
- Working in intellectual property since 1987, handling a full range of intellectual property litigation focused primarily on patent infringement disputes
- Currently representing FlatWorld Interactives in patent infringement litigation against Apple, Samsung and LG involving touch screen gesture recognition technology in the iOS and Android operating systems, and Thought Inc. against Oracle involving software application data persistence technology
- Active member of the legal community making presentations in legal forums and industry groups on intellectual property law
- Active participant in the Seattle Intellectual Property Inn of Court and Washington State Patent Law Association

### RECENT CASES

- Twice litigated against AT&T on wireless handset, network and telematics patents
- Twice litigated on behalf of The Nautilus Group in patent, trademark, false advertising and unfair competition cases involving the BowFlex exercise machine and other exercise equipment
- Represented the owner of tradedress rights to the Stanley Classic vacuum bottle in trade dress litigation against Thermos
- Represented a software patent licensor in litigation against Microsoft over the scope of a license for relational database technology

### EXPERIENCE

- Dorsey & Whitney, Patent Litigation Group
- Bogle & Gates, Intellectual Property Litigation Group

### LEGAL ACTIVITIES

- Seattle Intellectual Property Inn of Court
- Washington State Patent Law Association
- American Intellectual Property Law Association

### NOTABLE CASES

- *Thought v. Oracle*

HAGENS BERMAN SOBOL SHAPIRO LLP

- Numerous other jurisdictions
  *pro hac vice*

**EDUCATION**



University of Puget Sound School
of Law, J.D., cum laude



University of Washington, B.A.,
History

- *FlatWorld v. Apple; v. Samsung; v. LG*

- *Airbiquity v. AT&T, et al.*

- *Timeline v. Microsoft; v. Oracle; v. Sagent*

- *The Nautilus Group v. Icon Health and Fitness*

**PUBLICATIONS**

- "The European Privacy Directive for Personal Data," American Electronics Association Newsline for the Washington State Council

- "Recovery of Pure Economic Loss in Product Liability Actions: An Economic Comparison of Three Legal Rules," University of Puget Sound Law Review

- "Patent Litigation and the Non-Practicing Entity," ITRI IP Executives Conference, University of Washington Foster School of Business, 2012

- "Vernor v. Autodesk, the Future, or Demise, of the First Sale and Essential Step Defenses in Copyright," Seattle Intellectual Property Inn of Court, 2011

- "What Are My Odds? A Disciplined Approach to Assessing Case Value and Litigation Risk," Seattle Intellectual Property Inn of Court, 2010

- "Medimmune v. Genentech: Consequences for Patent Licenses, Litigation and Settlements," 2009

- "E-Discovery and the New Federal Rules," 2008

- "Recent Developments in Pharmaceutical Patents," 2008

HAGENS BERMAN SOBOL SHAPIRO LLP



lhayes@hbsslaw.com

T 617-482-3700
F 617-482-3003

1 Faneuil Hall Square
5th Floor
Boston, MA 02109

**YEARS OF EXPERIENCE**

15

**PRACTICE AREAS**

Antitrust Litigation
Pharmaceutical Fraud

**BAR ADMISSIONS**

- Supreme Judicial Court of the Commonwealth of Massachusetts

**COURT ADMISSIONS**

- U.S. District Court for the District of Massachusetts

**EDUCATION**



Boston University School of Law, J.D., 2007



Middlebury College
School of Arabic



Boston University, B.S., magna cum laude

**OF COUNSEL**

# Laura Hayes

Ms. Hayes is involved in class-action lawsuits against pharmaceutical companies and is committed to the vigorous prosecution of antitrust cases.

## CURRENT ROLE

- Of Counsel, Hagens Berman Sobol Shapiro LLP
- Current and recent cases:
  - *In re Xyrem Antitrust*
  - *Gilead Antitrust*
  - *In re Intuniv Antitrust Litigation*
  - *In re Effexor XR Antitrust Litigation*
  - *In re Loestrin 24 Fe Antitrust Litigation*
  - *In re Celebrex (Celecoxib) Antitrust Litigation*

## EXPERIENCE

- Member of the team responsible for $94 million settlement on behalf of direct purchaser class in *In re Celebrex (Celecoxib) Antitrust Litigation*, 2:13-cv-361, E.D. Va., ECF Nos. 64, 455, and the $120 million settlement (motion for preliminary approval pending) in *In re Loestrin 24 Fe Antitrust Litigation*, 1:13-md-02472, D.R.I., ECF Nos. 10, 1050.

- Prior to joining Hagens Berman, Laura was an associate at Gargiulo Rudnick LLP, where she litigated Medicaid and Medicare fraud cases. She also has years of work experience doing contract work on a variety of complex litigations.

- Following law school, Laura was a clerk for the Connecticut Judicial Branch. In that role, she addressed novel pre-emption and spoliation of evidence questions.

- She is a graduate of Boston University School of Law, where she acted as articles editor for the Journal of Science and Technology Law.

- She received her Bachelor of Science degree from Boston University with a concentration in journalism.

## CLERKSHIPS

- Connecticut Judicial Branch
- Appellate Division of the Rhode Island Office of the Public Defender

## PERSONAL INSIGHT

Laura spends her free time in a variety of quixotic endeavors including dog sledding, trying to learn languages (currently Icelandic), proselytizing on the virtues of a certain sci-fi show, and trying to explain to non-lawyers why antitrust law is so important.



**OF COUNSEL**

# John D. Jenkins

John has extensive experience in the government and private sector as a trial attorney and manager of complex investigations and prosecutions.

johnj@hbsslaw.com

T 714-222-2333
F 213-330-7152

301 North Lake Avenue
Suite 920
Pasadena, CA 91101

**PRACTICE AREAS**

Securities

**EDUCATION**



University of Southern California, J.D.



University of Southern California, B.A.

## CURRENT ROLE

- Of Counsel, Hagens Berman Sobol Shapiro LLP

- John Jenkins has considerable experience as a trial lawyer, corporate advisor, president of an internationally recognized investigative and security firm and expert in complex investigations and prosecutions.

## EXPERIENCE

- Former Deputy District Attorney in Orange County, California

- Prior to joining Hagens Berman, Mr. Jenkins was a lawyer at Hill, Wynne, Troop & Meisinger. He also has more than 20 years of experience managing domestic and international investigations. He was previously the president of CoreFacts, before and after the sale of CoreFacts as the investigative consulting platform to what became CoreLogic, Inc. (NYSE: CLGX), a leading global risk mitigation and business solutions provider. Prior to CoreFacts, he was an executive at two leading global investigative consulting firms.

## ACTIVITIES

- Member, Board of Governors at the University of Southern California

- Member, Board of Directors of Lear Capital

## PERSONAL INSIGHT

In his spare time, John enjoys fishing with his son and watching his twin daughters compete as saber fencers.

HAGENS BERMAN SOBOL SHAPIRO LLP



**OF COUNSEL**

# Robert A. Jigarjian

Rob brings a combination of securities industry and complex litigation experience to the firm and its clients.

robertj@hbsslaw.com

T 510-725-3000
F 510-725-3001

715 Hearst Avenue
Suite 300
Berkeley, CA 94710

**YEARS OF EXPERIENCE**

28

**PRACTICE AREAS**

Class Action
Investor Fraud
Securities

**BAR ADMISSIONS**

▪ California

**COURT ADMISSIONS**

▪ Second Circuit Court of Appeals
▪ Ninth Circuit Court of Appeals
▪ All California District and State Courts

**EDUCATION**


Golden Gate University, JD, 1993


Tulane University, MBA, 1985

## Hamilton
Hamilton College, AB, 1981

## CURRENT ROLE

- Of counsel, Hagens Berman Sobol Shapiro LLP
- Practice primarily focuses on identifying and developing securities and derivative actions

## EXPERIENCE

- Prior to joining Hagens Berman, he worked as a partner at law firms practicing primarily in securities and derivative litigation. Rob also owned his own firm within the same practice areas.
- While in law school, Rob interned with the United States Securities and Exchange Commission and worked for two prominent securities class action firms.
- Before attending law school, Rob worked for several years as an institutional sales trader for a boutique Wall Street investment bank where he specialized in analyzing and trading bank-issued securities with the firm's institutional investor clients.

## LEGAL ACTIVITIES

- Rob served as a voluntary discovery referee for the California Superior Court for the county of Marin to help minimize judicial resources during discovery disputes.

## NOTABLE CASES

Matters on which Rob has worked and helped investors, corporations and a bankruptcy trustee to obtain significant recoveries include the following:

- *In re Equitec Rollup Litigation*, No. C-90-2064 (N.D. Cal.)
- *In re Prison Realty Securities Litigation*, No. 3:99-0452 (M.D. Tenn.)
- *In re Digex, Inc. Shareholders Litigation*, C.A. No. 18336 (Del. Ch.)
- *Isco v. Kraemer*, No. CV 95-08941 (Super. Ct., Maricopa Co., Ariz.)
- *Saito v. McKesson HBOC, Inc.*, No. 376, 2001 (Del.)
- *Saito v. McCall (Del. Ch.) Scheonfeld, et al. v. XO Communications, Inc.*, No. 01-018358 (N.Y. Sup. Ct., Nassau County)
- *In re Salomon Analyst Litigation (S.D.N.Y.) Hermerding v. Tripathi, et al.*, Adv. No. 09-5004 (Bankr. N.D. Cal.)

## PERSONAL INSIGHT

Rob's interests include motorcycling, hiking, his wife-imposed sous chef duties (she wasn't wild about Rob's fried avocados) and frequent visits to family in northern Germany.



**OF COUNSEL**

# James J. Nicklaus

During his legal career, Mr. Nicklaus has represented clients in antitrust, securities fraud, product liability and patent litigation.

jamesn@hbsslaw.com

T 617-482-3700
F 617-482-3003

1 Faneuil Hall Square
5th Floor
Boston, MA 02109

**BAR ADMISSIONS**

- Massachusetts

**COURT ADMISSIONS**

- U.S. District Court for the District of Massachusetts

**EDUCATION**

HARVARD
LAW SCHOOL

Harvard Law School, J.D.,
magna cum laude, 1993

Harvard Legal Aid Bureau,
Student Representative on
Committee on Clinical Education


HARVARD
UNIVERSITY

Harvard College, B.A., East Asian
Languages and Civilizations,
cum laude, Phi Beta Kappa, 1990

## CURRENT ROLE

- Of Counsel, Hagens Berman Sobol Shapiro LLP

## EXPERIENCE

Prior to joining Hagens Berman, Mr. Nicklaus worked for other firms in the Boston area, including representing clients in insurance coverage, product liability and lender liability litigation at Michienzie & Sawin LLC and representing clients in insurance coverage, patent, product liability, antitrust and securities fraud litigation at Willcox, Pirozzolo & McCarthy, P.C. Mr. Nicklaus began his legal career as an associate and junior partner at Hale and Dorr LLP (now WilmerHale).



**OF COUNSEL**

# Hannah Schwarzschild

Hannah has litigated cases involving employee and consumer rights, and now focuses on antitrust claims in the pharmaceutical industry.

hannas@hbsslaw.com

T 617-482-3700
F 617-482-3003

1 Faneuil Hall Square
5th Floor
Boston, MA 02109

**YEARS OF EXPERIENCE**

33

**PRACTICE AREAS**

Antitrust Litigation
Consumer Rights

**BAR ADMISSIONS**

- California (inactive)
- Pennsylvania

**COURT ADMISSIONS**

- Third Circuit Court of Appeals
- Ninth Circuit Court of Appeals
- U.S. District Court for the Northern District of California
- U.S. District Court for the Eastern District of Pennsylvania

**EDUCATION**

BerkeleyLaw
UNIVERSITY OF CALIFORNIA

University of California, Berkeley, Boalt Hall School of Law, J.D., 1989

AmJur Award, 1988; Best Brief Award, Moot Court Competition, 1987

Berkeley
UNIVERSITY OF CALIFORNIA

University of California, Berkeley, A.B., History, Phi Beta Kappa, 1986

## CURRENT ROLE

- Of Counsel, Hagens Berman Sobol Shapiro LLP
- Practice focuses on consumer and antitrust cases
- Involved in multi-district antitrust litigation involving brand pharmaceutical products, including Niaspan and others

## EXPERIENCE

Prior to joining Hagens Berman, Ms. Schwarzschild coordinated large-scale litigation projects in Boston and Philadelphia. Over the past 25 years, she has litigated employment and consumer rights cases in federal and state courts and administrative agencies, including jury and bench trials and appeals.

## PUBLICATIONS

- Same-Sex Marriage and Constitutional Privacy, Berkeley Women's Law Journal, 1989

## PERSONAL INSIGHT

Hannah grew up in and around New York City. Before law school, she helped build a community arts facility in San Francisco's Mission District in the 1980s and worked on nuclear arms control at the Ploughshares Fund. Hannah has been working for LGBT rights and Middle East peace and justice for more than 20 years. She loves noodling around cities and beach towns in search of interesting food, art, wildlife and humans.

HAGENS  BERMAN  SOBOL  SHAPIRO LLP



bens@hbsslaw.com

T 510-725-3000
F 510-725-3001

715 Hearst Avenue
Suite 300
Berkeley, CA 94710

**YEARS OF EXPERIENCE**

14

**PRACTICE AREAS**

Antitrust Litigation
Class Action
High Tech Litigation
Sports Litigation

**BAR ADMISSIONS**

- California

**COURT ADMISSIONS**

- Ninth Circuit Court of Appeals
- U.S. District Court for the
  Northern District of California
- U.S. District Court for the
  Eastern District of California

**CLERKSHIPS**

- Honorable Thomas M. Reavley,
  Fifth Circuit Court of Appeals

**EDUCATION**

**TEXASLAW**

The University of Texas School of
Law, The University of Texas LBJ
School of Public Affairs, J.D.,
M.P.A., Order of the Coif, High
Honors, 2007 Articles Editor,
Texas Law Review; Texas Law
Review Best Litigation Note,
Volume 85; Texas Law Public
Interest Fellowship; LBJ
Foundation Award, First in Class

OF COUNSEL

# Benjamin J. Siegel

Mr. Siegel is an experienced litigator with a focus on antitrust
law who has represented clients in state and federal courts, on
appeals, as well as before arbitrators and governmental
agencies, and has achieved significant settlements for clients.

**CURRENT ROLE**

- Of Counsel, Hagens Berman Sobol Shapiro LLP

**RECENT CASES**

- *In re College Athlete NIL Litigation*, No. 4:20-cv-03919 (N.D. Cal.)

- *Carter v. NCAA et al.*, No. 3:23-cv-06325 (N.D. Cal.)

- *In re Optical Disk Drive Prods. Antitrust Litigation*, No. 3:10-md-2143-RS (N.D. Cal.)

- *Bartron et al. v. Visa Inc. et al.*, 1:11-cv-01831 (D.D.C.)

- *In re NCAA Grant-In-Aid Antitrust Litigation*, 4:14-md-02541-CW (N.D. Cal.)

- *In re Resistors Antitrust Litigation*, 5:15-cv-03820-JD (N.D. Cal.)

**EXPERIENCE**

- Following his work at Boies, Schiller & Flexner LLP in 2008-2009, Mr. Siegel has
  litigated cases on behalf of plaintiffs for the past 14 years.

**LEGAL ACTIVITIES**

- Alameda County Bar Association

**RECOGNITION**

- Northern California Super Lawyers, 2024

- Legal Lion of the Week as part of the litigation team that achieved class certification
  in NCAA Student-Athlete Name, Image and Likeness, Law360, 2023

- Honoree for Outstanding Antitrust Litigation Achievement in Private Law Practice,
  American Antitrust Institute, 2021

- Rising Stars, Super Lawyers, 2018

**PUBLICATIONS**

- Constitutional Rights and the Counter-Majoritarian Dilemma, May 15, 2007
  (unpublished Master's thesis, University of Texas at Austin)

- Benjamin Siegel, Note, "Applying a 'Maturity Factor' Without Compromising the
  Goals of the Class Action," 85 Texas Law Review 74, 2007

HAGENS BERMAN SOBOL SHAPIRO LLP



**Yale University**

Yale University, B.A. Political
Science, cum laude, Phi Beta
Kappa, 2000

**AWARDS**

Super Lawyers
RISING STARS

- Benjamin Siegel et al., "Beyond the Numbers: Improving Postsecondary Success through a Central Texas High School Data Center," LBJ School of Public Affairs, Policy Research Report No. 148, 2005

- Benjamin Siegel, "California Must Protect Health Care for Medi-Cal Children," 15 Youth Law News 1, 2004

- Jenny Brodsky, Jack Habib and Benjamin Siegel, "Lessons for Long-Term Care Policy, World Health Organization," Publication No. WHO/NMH7CCL/02.1, 2002

- Jenny Brodsky, Jack Habib, Miriam Hirschfeld and Benjamin Siegel, "Care of the Frail Elderly in Developed and Developing Countries: the Experience and the Challenges," 14 Aging Clinical & Experimental Research 279, 2002

**PERSONAL INSIGHT**

When not working to enforce the nation's antitrust laws, Mr. Siegel enjoys spending time with his wife and three young children in his hometown of Oakland, California. He also likes playing softball and pick-up basketball with his friends.

HAGENS BERMAN SOBOL SHAPIRO LLP



**OF COUNSEL**

# Shelby R. Smith

Shelby has dedicated her career to serving vulnerable victims of violent crimes.

shelby@hbsslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**YEARS OF EXPERIENCE**

20

**PRACTICE AREAS**

Civil & Human Rights
Class Action
Consumer Rights
Daycare/School Negligence
Nursing Home/Adult Family
Home Negligence
Personal Injury
Privacy Rights
Social Work Negligence
Sports Litigation

**BAR ADMISSIONS**

- Washington

**COURT ADMISSIONS**

- U.S. District Court for the
  Western District of Washington
- U.S. District Court for the
  Eastern District of Michigan
- Supreme Court of Washington

**EDUCATION**



Seattle University, J.D., 2000,
Member, Public Interest Law
Society

### CURRENT ROLE

- Of Counsel, Hagens Berman Sobol Shapiro LLP

- Prosecutes personal injury cases and class-action cases on behalf of consumers

- Currently represents victims against The Weinstein Company, Harvey Weinstein and related companies for racketeering and sexual assault

- Currently represents current and former students of the University of Southern California in a class-action lawsuit against the university and Dr. George Tyndall for his alleged decades-long sexual abuse of patients

- Continues to represent victims of domestic violence and sexual assault to obtain protection orders so that their abusers cannot have any contact with them

- Also represents crime victims who wish to keep their counseling records private during criminal proceedings

### EXPERIENCE

- Litigation associate, Williams Kastner, where she planned and executed a civil caseload involving defense of physicians, hospitals, dentists and other healthcare providers. While at Williams Kastner, Ms. Smith developed successful litigation strategies, handled case discoveries, secured depositions, managed trial preparation, drafted and argued legal motions, and conducted voir dire and jury trials.

- Prior to working at Hagens Berman, Ms. Smith worked for 10 years at the King County Prosecuting Attorney's Office, working on cases in a diverse set of areas, including the sexual assault, violent crime, district court, domestic violence, felony filing and special drug units. During her 10 years as a prosecutor, Ms. Smith tried over 100 felony jury trials. She spent five years in the Domestic Violence Unit and Special Assault Unit where she handled hundreds of cases involving physical and sexual abuse of children and adults.

### LEGAL ACTIVITIES

- Consistent commitment to pro bono work and services for victims of domestic violence and sexual assault.

### RECOGNITION

- 500 Leading Lawyers in America, Plaintiff Consumer Lawyers, Lawdragon, 2024

### NOTABLE CASES

- Volkswagen Emissions Defect Litigation

- Mercedes BlueTEC Emissions Litigation

UNIVERSITY *of*

**WASHINGTON**

University of Washington, B.A.,
Sociology, cum laude, 1996

- GM Ignition Switch Recall

- Corvette Overheating

- Harvey Weinstein Sexual Harassment RICO

- USC and Dr. George Tyndall Sexual Abuse

## PERSONAL INSIGHT

Shelby Smith was born and raised in Seattle, and graduated from Garfield High School — which also boasts Quincy Jones and Jimi Hendrix as alums. She has a passion for live music and fashion, and has never met a sport she did not enjoy competing in: while raising her three children and practicing law, Shelby plays on competitive indoor and outdoor soccer teams, and runs at least one marathon and two half-marathons every year.

HAGENS BERMAN SOBOL SHAPIRO LLP



**OF COUNSEL**

# Nathaniel A. Tarnor

Mr. Tarnor has litigated a wide variety of international legal matters and recovered millions of dollars on behalf of clients.

nathant@hbsslaw.com

T 212-752-5455
F 917-210-3980

594 Dean Street
Suite 24
Brooklyn, NY 11238

**YEARS OF EXPERIENCE**

19

**PRACTICE AREAS**

Anti-Terrorism
Antitrust Litigation
Civil & Human Rights
Consumer Rights
Investor Fraud
Whistleblower

**BAR ADMISSIONS**

- State of Illinois
- State of New York
- District of Columbia

**COURT ADMISSIONS**

- U.S. Supreme Court
- Second Circuit Court of Appeals
- Seventh Circuit Court of Appeals
- Eleventh Circuit Court of Appeals
- D.C. Circuit Court of Appeals
- U.S. District Court for the District of Columbia
- U.S. District Court for the Northern District of Illinois
- U.S. District Court for the Central District of Illinois
- U.S. District Court for the Northern District of New York
- U.S. District Court for the Eastern District of New York

## CURRENT ROLE

- Of Counsel, Hagens Berman Sobol Shapiro LLP

- Concentrates on complex federal litigation including anti-terrorism, antitrust, civil & human rights, class actions, consumer protection, securities and whistleblower representation in conjunction with the U.S. Department of Justice and the U.S. Securities & Exchange Commission

## EXPERIENCE

- Milberg LLP, New York, NY, 2009-2016

- Previously provided legal assistance to human rights victims from around the world in conjunction with other prominent law firms

- Represented families of American terrorism and torture victims before the U.S. Supreme Court and other federal courts

- Significant international litigation experience involving national security and foreign intelligence matters

- Successfully settled a case on behalf of American terrorism victims against a large multinational corporation for violations of U.S. anti-terrorism laws in Colombia

## RECOGNITION

- Chicago-Kent International Law Moot Court Honor Society, 2002-2004

- Captain, Chicago-Kent International Law Moot Court Team, 2002-2004

- Highest Oralist Score 2003 Philip C. Jessup International Law Moot Court Regional Competition Chicago-Kent Moot Court Team

- CALI Award Commercial Payment Systems Law

## PERSONAL INSIGHT

Mr. Tarnor enjoys competing in endurance sports and hiking with his family.

- U.S. District Court for the
  Southern District of New York
- U.S. District Court for the
  Western District of New York

**EDUCATION**



Chicago-Kent College of Law, J.D.,
CALI Award, 2004



University of Illinois, B.A., summa
cum laude, Phi Beta Kappa,
Milton Ravoke Award, 2000

HAGENS BERMAN SOBOL SHAPIRO LLP



toryb@hbsslaw.com

T 602-840-5900
F 602-840-3012

11 West Jefferson Street
Suite 1000
Phoenix, AZ 85003

**YEARS OF EXPERIENCE**

10

**PRACTICE AREAS**

Consumer Rights

High Tech Litigation

**INDUSTRY EXPERIENCE**

▪ Consumer Fraud
▪ Medical Negligence

**BAR ADMISSIONS**

▪ Arizona

**COURT ADMISSIONS**

▪ U.S. District Court for the
  District of Arizona
▪ U.S. District Court for the
  District of Colorado

**EDUCATION**



Arizona State University Sandra
Day O'Connor College of Law, J.D.



University of Arizona, B.A.,
Journalism & English Literature

ASSOCIATE

# Tory Beardsley

Ms. Beardsley has experience in prosecuting a variety of cases, including wrongful death, medical malpractice, negligence, fraud, consumer protection, data breach and bad faith insurance cases.

## CURRENT ROLE

- Associate, Hagens Berman Sobol Shapiro LLP

- Ms. Beardsley has experience prosecuting wrongful death, medical malpractice, negligence, negligence per se, intentional and negligent infliction of emotional distress, unjust enrichment, fraud, consumer protection, data breach and bad faith insurance cases.

## RECENT CASES

- Member of the trial team representing the families of three patients who died after receiving dialysis at DaVita clinics. The case culminated with a $383.5 million jury verdict.

- Ms. Beardsley has also aided in prosecuting data breach cases litigated by the firm in Arizona.

- Ms. Beardsley has been active in litigation challenging insurers' deliberate underpayments of total loss auto claims — unfair practices that short consumers after serious car accidents when they are often injured and at their most vulnerable. In early 2022, the U.S. District Court for the District of New Jersey granted plaintiffs' motion to certify a class of New Jersey consumers challenging GEICO's use of improper adjustments to lower payments and its failure to pay substantial taxes and fees owed.

- Ms. Beardsley is also a part of the Hagens Berman litigation team challenging several auto insurers' failure to pay stacked coverages for accidents involving uninsured or underinsured motorists. In 2023, Hagens Berman obtained a unanimous decision from the Arizona Supreme Court that people injured by underinsured motorists in Arizona have the right to add together (or "stack") insurance coverages for multiple vehicles under a single insurance policy.

## RECENT SUCCESS

- In June 2018, Ms. Beardsley was on the trial team where a Denver jury awarded a monumental $383.5 million jury verdict against GranuFlo dialysis provider, DaVita Inc. culminating lawsuits brought by families of three patients who suffered cardiac arrests and died after receiving dialysis treatments at DaVita clinics. Each of the three parties was awarded $125 million in punitive damages from the jury, with compensatory damages ranging from $1.5 million to $5 million.

## EXPERIENCE

- Prior to beginning her litigation career at Hagens Berman, Ms. Beardsley specialized in land use and development with other firms in the Phoenix area, working closely

HAGENS BERMAN SOBOL SHAPIRO LLP

with the local municipalities and politicians to gain approval on proposed developments and ensure developments compliance with city code and zoning ordinance.

## ACTIVITIES

- Chair and member, Herberger Young Leadership Board

## RECOGNITION

- Rising Star, Super Lawyers, 2024

## PERSONAL INSIGHT

In her free time, Tory is usually outside and on the move. A native Phoenician, Tory enjoys exploring all that Arizona has to offer with her dog, Bruce, whether it be via off-roading, hiking, swimming or trail running.

HAGENS  BERMAN  SOBOL  SHAPIRO LLP



ASSOCIATE

# Jacob Berman

Whether in his legal practice or volunteer work, Jake dedicates his time to helping those who need it most.

jakeb@hbsslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**YEARS OF EXPERIENCE**
4

**PRACTICE AREAS**
Class Action
Personal Injury

**BAR ADMISSIONS**
- California
- Washington

**COURT ADMISSIONS**
- U.S. District Court for the Northern District of California
- U.S. District Court for the Central District of California
- U.S. District Court for the Eastern District of California
- U.S. District Court for the Eastern District of Washington

**EDUCATION**



Loyola Law School, J.D., May 2018, Hobbs/Poehls District Attorney Practicum, Consumer Law Society, Member, Fall 2014–2018

UNIVERSITY of DENVER

University of Denver, Denver, CO, B.A., Political Science, June 2013

## CURRENT ROLE
- Associate, Hagens Berman Sobol Shapiro LLP

## EXPERIENCE
- Prior to joining Hagens Berman, Jake worked on personal injury matters at Robinson Calcagnie Inc. where he represented plaintiffs in numerous catastrophic injury cases and managed all aspects of the case from client onboarding to settlement. Jake conducted and defended depositions in personal injury cases and mass torts and planned and implemented a strategy to retain stronger personal injury cases for the firm. He also drafted complaints, discovery motions, pre-trial motions and assisted in trial preparation.

- Previously, he worked as a law clerk for the Los Angeles District Attorney, Victim Impact and Juvenile Unit where he conducted juvenile adjudication hearings, including direct and cross examination, presenting evidence, and arguing motions to dismiss and suppress. He also conducted felony preliminary hearings, including direct and cross examination, and presenting evidence.

- Jake was also a summer associate at prominent plaintiffs firms where he drafted arguments for opposition to motion for summary judgment in a consumer auto-defect class-action case, reviewed exhibits and organized deposition questions to depose opposing counsel's defense experts and composed jury instructions in an auto-defect class-action case and product defect class-action case. Jake also has experience writing research memoranda on topics such as appeals bonds, class certification and summary judgment.

## RECOGNITION
- Published OCTLA Magazine, Volunteer Outreach in Communities Everywhere, Most Valuable Worker Award, 2008

## PERSONAL INSIGHT
Jake Berman was born and raised in the Seattle area. He has a passion for coaching sports and being active in the outdoors. As a former collegiate cyclist, Jake is constantly competing in new sports or exploring a new trail run.

HAGENS BERMAN SOBOL SHAPIRO LLP



jamesc@hbsslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**YEARS OF EXPERIENCE**

6

**PRACTICE AREAS**

Personal Injury

**BAR ADMISSIONS**

▪ Arizona
▪ Washington

**COURT ADMISSIONS**

▪ Ninth Circuit Court of Appeals
▪ U.S. District Court for the
  District of Arizona
▪ U.S. District Court for the
  Eastern District of Washington
▪ U.S. District Court for the
  Western District of Washington

**EDUCATION**



Sandra Day O'Connor College of
Law, Arizona State University,
J.D., 2016



University of California,
Los Angeles, B.A., 2008

**ASSOCIATE**

# James M. Chong

Mr. Chong has experience in litigating a variety of cases including wrongful death, medical malpractice, negligence, fraud, consumer protection, intellectual property and bad faith insurance cases.

**CURRENT ROLE**

- Associate, Hagens Berman Sobol Shapiro LLP

**EXPERIENCE**

- After law school, Mr. Chong worked at prominent defense firms in Arizona and Washington where he litigated cases related to wrongful death, intellectual property, commercial disputes, legal-malpractice, medical-malpractice, premises liability and automobile accidents.

- Prior to law school, Mr. Chong worked at an intellectual property law firm in Seoul, South Korea, where he edited patent specifications in the areas of mechanical, electrical and chemical engineering. Mr. Chong returned to the same firm as a summer associate after his first year of law school.

**LANGUAGES**

- Korean (conversational)

**PERSONAL INSIGHT**

Mr. Chong enjoys spending time with his wife and twin boys, traveling abroad and cooking.

HAGENS BERMAN SOBOL SHAPIRO LLP



racheld@hbsslaw.com

T 617-475-1963
F 617-482-3003

1 Faneuil Hall Square
5th Floor
Boston, MA 0210

**PRACTICE AREAS**
Antitrust Litigation
Class Action
Consumer Rights
Pharmaceutical Fraud

**BAR ADMISSIONS**
▪ Massachusetts

**COURT ADMISSIONS**
▪ First Circuit Court of Appeals
▪ U.S. District Court for the
   District of Massachusetts

**EDUCATION**



Boston University School of Law,
J.D.



Boston University, B.A.

ASSOCIATE

# Rachel Downey

Ms. Downey is committed to preventing fraud and abuse in the pharmaceutical industry to ensure access to affordable prescription drugs.

## CURRENT ROLE

- Associate, Hagens Berman Sobol Shapiro LLP

- Rachel's practice focuses on pharmaceutical antitrust class-action litigation.

- She is a core member of the team litigating *In re Zetia (Ezetimibe) Antitrust Litigation*, MDL No. 2836 (E.D. Va.), a federal antitrust lawsuit against Merck and Glenmark alleging the two unlawfully agreed to delay access to generic ezetimibe for years, resulting in billions in overcharges to purchasers.

- Ms. Downey has also been instrumental in preparing settlement-related filings for and administering large class-action settlements. Most recently, she was part of the team securing a $483.85M settlement on behalf of the direct purchaser class in *In re Glumetza Antitrust Litigation*, the largest U.S. antitrust settlement in 2022.

## RECENT CASES

- *In re Zetia (Ezetimibe) Antitrust Litigation*

- *Staley v. Gilead Sciences, Inc. (Gilead)*

- *Government Employees Health Association v. Actelion Pharmaceuticals, Ltd.* (Tracleer)

- *In re Glumetza Antitrust Litigation*

## PRO BONO

- Volunteer Lawyers Project of the Boston Bar Association (VLP)

## PRO BONO

- Member, American Association for Justice

## PERSONAL INSIGHT

For a month during her college years, Rachel lived in the Amazon.

HAGENS BERMAN SOBOL SHAPIRO LLP



ASSOCIATE

# Nathan Emmons

Nathan is dedicated to advocating for his clients in class actions and other complex litigation against powerful corporations.

nathane@hbsslaw.com

T 708-628-4957
F 708-628-4950

455 N. Cityfront Plaza Drive
Suite 2410
Chicago, IL 60611

**BAR ADMISSIONS**
- Illinois
- Missouri

**COURT ADMISSIONS**
- U.S. District Court for the Southern District of Illinois
- U.S. District Court for the Eastern District of Missouri
- U.S. District Court for the Western District of Missouri

**CLERKSHIPS**
- Judge Sarah E. Pitlyk, U.S. District Court for the Eastern District of Missouri, 2020

**EDUCATION**



University of Pennsylvania Law School, J.D., 2017



University of Pennsylvania, B.A., 2013, summa cum laude

## CURRENT ROLE
- Associate, Hagens Berman Sobol Shapiro LLP

## EXPERIENCE
- Prior to Hagens Berman, Nathan worked as an associate at another plaintiff-side firm focusing on prosecuting class actions and other complex litigation in district and appellate courts, including ERISA and other fiduciary breaches, biometric privacy and False Claims Act violations.
- As a law clerk to the Honorable Sarah E. Pitlyk in the U.S. District Court for the Eastern District of Missouri, Nathan drafted memoranda and orders in various actions related to business contract disputes, anti-trust, intellectual property, insurance, employment, civil rights and class actions.

## PRO BONO
- Nathan has secured criminal expungements on behalf of clients seeking new employment, professional certifications, and the removal of the stigma associated with a criminal conviction.

## ACTIVITIES
- From 2019 to 2021, Nathan was the Board President of The SoulFisher Ministries, a non-profit organization that responds to the needs of youth with incarcerated parents and promotes restorative justice for currently and formerly incarcerated women.

## LANGUAGES
- Spanish
- German

## PERSONAL INSIGHT
Outside of his law practice, Nathan enjoys traveling, exercise, board games and rooting for the St. Louis Cardinals.



**ASSOCIATE**

# Kelly Fan

Kelly is dedicated to promoting fair and free markets and advocating for consumers in diverse commercial litigation contexts.

kellyf@hbsslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**BAR ADMISSIONS**

- California
- Washington

**CLERKSHIPS**

- Honorable Anna M. Joyce, Oregon Court of Appeals, 2022-2023
- Honorable Bronson D. James, Oregon Court of Appeals, 2021-2022

**EDUCATION**

**SCHOOL OF LAW**

**UNIVERSITY *of* WASHINGTON**

University of Washington School of Law, J.D., 2020, Order of the Coif

### CURRENT ROLE

- Associate, Hagens Berman Sobol Shapiro LLP

### EXPERIENCE

- Before joining Hagens Berman, Kelly clerked for the Oregon Court of Appeals, and prior to that, she worked as an associate at a litigation boutique in Seattle, where she gained experience in complex commercial litigation and international arbitration.

- During law school, Kelly served as a law student ambassador for the ABA antitrust law section. She also worked as a summer clerk at the Arizona Attorney General's Office civil rights division and as a student attorney in the entrepreneurial law clinic.

- Before law school, Kelly interned with the marking department at Sony Pictures Entertainment in Beijing and worked as a marking associate at a nonprofit organization in Maryland.

### LANGUAGES

- Mandarin Chinese

### PERSONAL INSIGHT

Outside of her law practice, Kelly enjoys downhill skiing, kayaking and hiking with her dog, Friday.

HAGENS BERMAN SOBOL SHAPIRO LLP



rebekahgs@hbsslaw.com

T 617-475-1950
F 617-482-3003

1 Faneuil Hall Square
5th Floor
Boston, MA 02109

**PRACTICE AREAS**
Class Action
Pharmaceutical Fraud

**BAR ADMISSIONS**
- Massachusetts
- District of Columbia

**CLERKSHIPS**
- Associate Justice David A. Lowy, Massachusetts Appeals Court, 2018-2019
- Associate Justice Vickie L. Henry, Massachusetts Appeals Court, 2018-2019

**EDUCATION**



Northeastern University School of Law, J.D., 2017



Tufts University School of Medicine, M.A., Public Health, 2018



Boston University College of Arts and Sciences, B.A., cum laude, International Relations, 2013

ASSOCIATE
# Rebekah Glickman-Simon

---

Rebekah believes that the legal system should protect and champion the rights of the most vulnerable. She has experience in all stages of litigation.

---

## CURRENT ROLE
- Associate, Hagens Berman Sobol Shapiro LLP
- Counsel for a group of over four dozen law scholars on their amicus submission in the Inflation Reduction Act Medicare Drug Pricing Negotiation cases. This amicus brief explains the constitutionality of government price negotiations and price regulations and argues that Congress should be permitted to regulate drug prices not just for the Medicare program but across the industry. The brief shows that the federal government has long used patents and such use does not violate the Fifth Amendment.

## EXPERIENCE
- Prior to beginning her litigation career at Hagens Berman, Ms. Glickman-Simon worked on land use, tort, business, trust and family law cases at another firm in Boston
- Before that, she served as a law clerk for Associate Justice David A. Lowy of the Massachusetts Supreme Court and Associate Justice Vickie L. Henry of the Massachusetts Appeals Court
- While completing her law studies at Northeastern University, Ms. Glickman-Simon worked at a Boston domestic violence clinic consulting with clients and preparing direct examinations for restraining order hearings in Dorchester District Court
- She also completed a legal research project at Boston Center for Refugee Health & Human Rights. Ms. Glickman-Simon has been admitted to the Massachusetts state bar and the Washington, D.C. bar

## PUBLICATIONS
- Co-author, "Women in Islamic Armed Groups," *Journal on Terrorism and Security Analysis*, 2016

## PERSONAL INSIGHT
Rebekah grew up west of Boston. When not at work, Rebekah enjoys being outside, including mountain biking (at least attempting it) and running while listening to British mystery audiobooks.

HAGENS BERMAN SOBOL SHAPIRO LLP



joeyk@hbsslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**PRACTICE AREAS**
Antitrust Litigation

**BAR ADMISSIONS**
- Washington

**EDUCATION**



University of California, Berkeley
School of Law, J.D., 2022, Order of
the Barristers



Clemson University, B.S., Political
Science, magna cum laude, 2012

**ASSOCIATE**

# Joseph M. Kingerski

Joey is committed to challenging corporate wrongdoing and ensuring that plaintiffs have greater economic security.

## CURRENT ROLE

- Associate, Hagens Berman Sobol Shapiro LLP

## EXPERIENCE

- Prior to joining Hagens Berman, Joey attended U.C. Berkeley where he earned a certificate in Law and Technology and served as a technical editor for the Berkeley Technology Law Journal.

- Mr. Kingerski also worked as a summer associate at a firm where he supported its antitrust, intellectual property, and privacy litigation practices.

- During law school, he worked as a veteran law clerk in the Washington State Attorney General's office where he researched and wrote policy memoranda on behalf of veterans throughout the state.

- Prior to law school, Joey served as a nuclear electronics technician on a submarine in the U.S. Navy. He also worked as a mechanic on the Tacoma Link light rail system.

## LANGUAGES

- Russian (intermediate)

## CLERKSHIPS

- Judge Deborah L. Boardman, U.S. District Court for the District of Maryland, 2020-2022

## PERSONAL INSIGHT

Joey is from Sugar Land, Texas but is now happy to call Seattle home. Outside of work, he enjoys trying new restaurants, live music, and skiing at Snoqualmie Pass.

HAGENS BERMAN SOBOL SHAPIRO LLP



**ASSOCIATE**

# Raffi Melanson

raffim@hbsslaw.com

T 617-482-3700
F 617-482-3003

1 Faneuil Hall Square
5th Floor
Boston, MA 02109

**YEARS OF EXPERIENCE**

8

**PRACTICE AREAS**

Antitrust Litigation
Investor Fraud
Securities

**BAR ADMISSIONS**

- Massachusetts
- New York
- District of Columbia

**COURT ADMISSIONS**

- Fourth Circuit Court of Appeals
- U.S. District Court for the District of Massachusetts
- U.S. District Court for the Western District of New York

**EDUCATION**



Georgetown University
Law Center, J.D., 2013



Boston University, B.A., cum laude, International Relations, Economics, & Mathematics, 2010

As a former government trial attorney, Raffi focuses his legal practice on litigating strategic class-action cases against corporate entities and other bad actors engaged in fraud and deceptive business practices.

**CURRENT ROLE**

- Associate, Hagens Berman Sobol Shapiro LLP
- Core member of firm's team of attorneys and investigators who prosecute financial fraud cases

**EXPERIENCE**

- Raffi litigates financial fraud cases against publicly traded companies and associated financial institutions.
- Prior to joining Hagens Berman, Raffi worked as a law clerk in the District of New Hampshire, drafting judicial orders for judges in complex cases and assisting them with the resolution of novel litigation and trial issues.
- After graduating from law school, Raffi served as a trial attorney at the Office of the Attorney General for the District of Columbia, where he investigated and civilly prosecuted corporations engaged in sophisticated financial fraud perpetrated against DC residents.
- He also worked on large price-fixing, market domination and deceptive advertising litigation at a top 100 law firm while maintaining an active criminal defense and immigration pro bono docket.

**INDUSTRY EXPERIENCE**

- Pharmaceuticals
- Telecommunications and Media
- Aviation
- Energy

**PUBLIC SERVICE**

- Volunteer, Northern New England Chapter of the Cystic Fibrosis Foundation

**PERSONAL INSIGHT**

Raffi grew up near Cape Cod and has since preferred to live near the coast of a large body of water. Outside of work, he enjoys biking around the city, hiking, listening to comedy and political podcasts, and competing in amateur boxing. During the winter, Raffi shifts to activities best done indoors, such as board games and cooking, but will occasionally venture outside to go snowboarding, if it's not too cold.

HAGENS BERMAN SOBOL SHAPIRO LLP



claudiam@hbsslaw.com

T 617-475-1953
F 617-482-3003

1 Faneuil Hall Square
5th Floor
Boston, MA 02109

**BAR ADMISSIONS**

▪ Massachusetts

**COURT ADMISSIONS**

▪ U.S. District Court for the
District of Massachusetts

**EDUCATION**



Northeastern University School of
Law, J.D., 2021



Boston University, B.A., 2015

ASSOCIATE

# Claudia Morera

Ms. Morera is passionate about defending vulnerable populations, such as workers in low-wage jobs, from abuse and exploitation.

### CURRENT ROLE

- Associate, Hagens Berman Sobol Shapiro LLP

- Member of HBSS team representing a group of over four dozen law scholars on their amicus submission in the Inflation Reduction Act Medicare Drug Pricing Negotiation cases. This amicus brief explains the constitutionality of government price negotiations and price regulations and argues that Congress should be permitted to regulate drug prices not just for the Medicare program but across the industry. The brief shows that the federal government has long used patents and such use does not violate the Fifth Amendment.

### EXPERIENCE

- Prior to joining Hagens Berman, Lauren was an associate at a well-respected plaintiffs' firm in Birmingham, Alabama where she focused on representing individuals harmed by defective pharmaceutical drugs and medical devices. In addition to this work, Lauren also represented clients in consumer fraud and personal injury litigation and advocated on behalf of survivors of sexual assault.

- Lauren was part of a national team that favorably resolved over 500 cases against a well-known medical device manufacturer for individuals injured by the company's defective device.

- She served on the discovery, expert, and Daubert committees for personal injury plaintiffs in *In re Viagra (Sildenafil Citrate) and Cialis (Tadalafil) Products Liability Litigation*.

### LEGAL ACTIVITIES

- Hispanic National Bar Association

### LANGUAGES

- Spanish (Native)

- French (Fluent)

### PERSONAL INSIGHT

Claudia was born and raised in Caracas, Venezuela and moved to Brookline, Massachusetts at the age of twelve. Claudia is a podcast afficionado, red wine drinker and lover of languages. She spends her time outside of the office sharing meals with her family, cooking with her partner and complaining about New England weather.



ASSOCIATE

# Chris O'Brien

Chris became an attorney to fight injustice for those who have been harmed. He has experience in both trial and appellate litigation.

chrisob@hbsslaw.com

T 617-482-3700
F 617-482-3003

1 Faneuil Hall Square
5th Floor
Boston, MA 02109

**YEARS OF EXPERIENCE**
4

**PRACTICE AREAS**
Class Action

**BAR ADMISSIONS**
- Massachusetts

**COURT ADMISSIONS**
- Massachusetts Supreme Judicial Court

**CLERKSHIPS**
- Honorable Mark V. Green, Chief Justice of the Massachusetts Appeals Court, 2021-2022
- Honorable Andrew M. D'Angelo, Associate Justice of the Massachusetts Appeals Court, 2022

**EDUCATION**



The University of Pennsylvania Carey Law School, J.D., 2018



Harvard University, A.L.B. in Extension Studies, 2015

## CURRENT ROLE
- Associate, Hagens Berman Sobol Shapiro LLP

## EXPERIENCE
- Prior to joining Hagens Berman Chris was an associate at multiple Boston law firms where he managed discovery, document review, and drafted and filed motions in state and federal court. Most recently, he served as a judicial law clerk to the Honorable Mark V. Green, Chief Justice of the Massachusetts Appeals Court and the Honorable Andrew M. D'Angelo, Associate Justice of the Massachusetts Appeals Court, where he gained experience in both civil and criminal appeals.

## PRO BONO
- Chris has extensive pro bono experience representing employees in matters related to unemployment compensation. He served as vice president of the Employment Advocacy Project while in law school.

- As a first-year associate, Chris was awarded the recognition of Pro Bono Star for his work with the Innocence Project of California and with undocumented immigrants in ICE custody.

## ACTIVITIES
- Mr. O'Brien is passionate about access to legal services and is a board member of Nurses for Social Justice, a non-profit organization dedicated to providing medical expert document review and analysis to public defenders and their clients.

## PERSONAL INSIGHT
Chris grew up in Amherst, MA where he developed an early love for baseball and acoustic music. After graduating from high school Chris became a professional singer and songwriter, and in 2007 he performed live on Garrison Keillor's radio show, A Prairie Home Companion, which caused his album to jump to the fifth spot on iTunes in the singer/songwriter category. His music has been streamed on Spotify nearly 25 million times in more than 120 countries.



ASSOCIATE

# Laura K. Pedersen

Laura is a team player with expertise in legal research and discovery management.

laurap@hbsslaw.com

T 510-725-3000
F 510-725-3001

715 Hearst Avenue
Suite 300
Berkeley, CA 94710

**PRACTICE AREAS**
Antitrust Litigation
Consumer Rights

**BAR ADMISSIONS**
- California

**COURT ADMISSIONS**
- Ninth Circuit Court of Appeals
- Tenth Circuit Court of Appeals
- U.S. District Court for the Northern District of California
- U.S. District Court for the Eastern District of California

**CLERKSHIPS**
- Judge Mary Beck Briscoe, Tenth Circuit Court of Appeals, 2016-2017

**EDUCATION**



University of California, Davis School of Law, J.D., 2016

**PRINCETON UNIVERSITY**
Princeton University, A.B., Intellectual History summa cum laude, 2012

## CURRENT ROLE
- Associate, Hagens Berman Sobol Shapiro LLP
- Laura supports the firm's antitrust practice by conducting legal research, supporting discovery projects and assisting with brief writing.

## EXPERIENCE
- Prior to joining Hagens Berman, Laura worked on intellectual property and business matters as an associate attorney, conducting legal research and drafting discovery responses and research memoranda in patent litigation.
- They also have experience in probate litigation, securities and has worked extensively in drafting and filing dispositive motions and appellate briefs; leading discovery strategy; managing document production and supervising paralegal teams in patent, real estate, contract and other cases.

## PRO BONO
- Laura led a team in an extensive six-month Constitutional law research project for the Transgender Law Center.

## PUBLICATIONS
- "Biting the Hand That Feeds You: Interpreting Tesla's Good Faith Patent Pledge," UC Davis Business Law Journal, 2016

## LANGUAGES
- Spanish

## PERSONAL INSIGHT
When they're not working on the firm's cutting-edge antitrust matters, Laura runs Solarium Art Studio, which specializes in hand-painted nail art. Laura also enjoys welding, comedy improv and traveling.

HAGENS BERMAN SOBOL SHAPIRO LLP



ASSOCIATE
# Abigail D. Pershing

Abigail is committed to advancing human and civil rights, both in the U.S. and abroad.

abigailp@hbsslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**PRACTICE AREAS**
Civil & Human Rights
Environmental Litigation

**BAR ADMISSIONS**
▪ Connecticut
▪ California

**CLERKSHIPS**
▪ Judge Darian Pavli, European Court of Human Rights, 2020-2021
▪ Judge Hellen Keller, European Court of Human Rights, 2020

**EDUCATION**

Yale Law School
Yale Law School, J.D., 2020


THE UNIVERSITY OF CHICAGO

The University of Chicago, B.A., Sociology and Public Policy, 2014

**LANGUAGES**
▪ French
▪ Pulaar
▪ Spanish (intermediate)
▪ Wolof (beginner)
▪ Mandarin Chinese (beginner)

## CURRENT ROLE
- Associate, Hagens Berman Sobol Shapiro LLP

## EXPERIENCE
- Prior to joining Hagens Berman, Abigail clerked at the European Court of Human Rights in Strasbourg, France and served as a fellow in the court's Research Division.

- During law school, Abigail worked as a summer associate with Accountability Counsel, Blue Ocean Law, Médecins Sans Frontières and the Mississippi Center for Justice. She was a student director for the Lowenstein International Human Rights Clinic and for the HAVEN Medical-Legal Partnership. She was also an editor for the Yale Law Journal.

- Before law school, Abigail served with the Peace Corps in Kolda, Senegal, as a health volunteer. Her primary focus was reducing malaria mortality rates.

## PUBLICATIONS
- Zachary D. Liscow & Abigail D. Pershing, "Why Is So Much Redistribution In-Kind and Not in Cash? Evidence from a Survey Experiment," *Nat'l Tax J.,* forthcoming

- Hellen Keller & Abigail D. Pershing, "Climate Change in Court: Overcoming Procedural Hurdles in Transboundary Environmental Cases," *Eur. Convention on Human Rights L. Rev.,* forthcoming

- Zachary Liscow & Abigail Pershing, "A New Way to Increase Economic Opportunity for More Americans", *The Hill,* Jan. 21, 2021

- Abigail D. Pershing, "Interpreting the Outer Space Treaty's Non-Appropriation Principle: Customary International Law from 1967 to Today," *44 Yale J. Int'l L. 149,* 2019

- Abigail D. Pershing, "Empty Schoolyards: The Impact of Elementary School Closures on Chicago Communities," *1 Chi. J. Soc. 99,* 2014

## PRESENTATIONS
- Abigail D. Pershing, "Increasing Malaria Detection with Community Health Workers: A Case Study from Southern Senegal," Global Health and Innovation Conference at Yale University, Apr. 15, 2018.

## PERSONAL INSIGHT
Abigail enjoys traveling, bike trips, playing the piano and meeting new people. Once or twice a year, she attempts to bake fancy cakes that are way beyond her pastry-making skill level.



ryanp@hbsslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**YEARS OF EXPERIENCE**

7

**PRACTICE AREAS**

Personal Injury

**BAR ADMISSIONS**

- Arizona
- Washington

**COURT ADMISSIONS**

- U.S. District Court for the Eastern District of Washington
- U.S. District Court for the Western District of Washington

**EDUCATION**



Sandra Day O'Connor College of Law, J.D., 2015



Claremont McKenna College, B.A.

**ASSOCIATE**

# Ryan T. Pittman

Mr. Pittman has experience in a wide variety of cases and practices, including personal injury, wrongful death, legal and professional malpractice, intellectual property, and venture capital and corporate law.

## CURRENT ROLE

- Associate, Hagens Berman Sobol Shapiro LLP

## EXPERIENCE

- Prior to joining Hagens Berman, Mr. Pittman practiced at various Seattle and Phoenix law firms where he most recently handled matters related to professional and legal malpractice claims, personal injury claims, intellectual property disputes and wrongful death claims.

- Mr. Pittman also served as legal counsel at an international venture capital firm in Ireland, and was involved in investment contracts with early stage companies. He helped establish the first wholly foreign-owned investment fund able to directly invest into Chinese companies.

## PUBLICATIONS

- "Speaking in Tweets and Other Social Media: Should Some Written Communication Be Considered Oral Communication?" *Sports and Entertainment Law Journal*, 2013

## PERSONAL INSIGHT

Mr. Pittman enjoys traveling and has been fortunate to have had extensive international travel experience, including living and working abroad in China and Ireland. Mr. Pittman grew up in Ashland, Oregon and is happy to be able to call Seattle home. As a former collegiate track athlete, Mr. Pittman enjoys staying active by running and lifting and staying active.

HAGENS  BERMAN  SOBOL  SHAPIRO LLP



ASSOCIATE

# Daniel Polonsky

Daniel is determined to deter corporate abuses of power and effect systemic change through litigation.

danielp@hbsslaw.com

T 617-475-1951
F 617-482-3003

1 Faneuil Hall Square
5th Floor
Boston, MA 02109

**BAR ADMISSIONS**

- Massachusetts

**CLERKSHIPS**

- Justice Dalila Argaez Wendlandt, Massachusetts Supreme Judicial Court, 2022-2023
- Judge Patti B. Saris, U.S. District Court for the District of Massachusetts, 2021-2022

**EDUCATION**

## HARVARD
### LAW SCHOOL
Harvard Law School, J.D., 2021



Vassar College, B.A., 2015

## CURRENT ROLE

- Associate, Hagens Berman Sobol Shapiro LLP

## EXPERIENCE

- Prior to joining Hagens Berman, Mr. Polonsky served as a law clerk for Justice Dalila Argaez Wendlandt of the Massachusetts Supreme Judicial Court and Judge Patti B. Saris of the U.S. District Court for the District of Massachusetts.

- While completing his legal studies, Mr. Polonsky represented clients at various stages of disability benefits appeals as a clinical student in the Safety Net Project of the Legal Services Center of Harvard Law School. One of his clients received a fully favorable decision on the record.

- Mr. Polonsky worked as a summer law intern for the American Civil Liberties Union of Massachusetts, conducting legal research for ongoing litigation regarding mass incarceration and immigration.

- As a clinical intern for the Civil Rights Division of the Office of the Attorney General for the Commonwealth of Massachusetts, Mr. Polonsky worked on housing discrimination litigation and researched case law on administrative exhaustion.

- At the Constitutional Accountability Center, Mr. Polonsky worked as a summer law intern, researching and writing on litigation topics including statutory interpretation and legislative intent in civil rights suits, along with standing and jurisdiction issues.

- Prior to law school, Mr. Polonsky worked at a non-profit college-prep program, helping high school students from underserved communities using a law-based curriculum.

## PUBLICATIONS

- "Equal Protection Through State Constitutional Amendment," 56 Harvard Civil Rights-Civil Liberties Law Review 413, 2021

## PERSONAL INSIGHT

Outside of work, he goes to the theater whenever he can, and spends the rest of his time reading science fiction, cooking new gluten-free recipes with his wife and rewarding their cat's requests for playtime.

**ASSOCIATE**



# Peter A. Schaeffer

Mr. Shaeffer has represented clients in class action and complex commercial litigation in areas of securities fraud, consumer protection, product liability and contractual disputes.

petersh@hbsslaw.com

T 708-628-4966
F 708-628-4950

455 N. Cityfront Plaza Drive
Suite 2410
Chicago, IL 60611

**YEARS OF EXPERIENCE**

8

**BAR ADMISSIONS**

▪ Illinois

**COURT ADMISSIONS**

▪ U.S. District Court for the Northern District of Illinois

**EDUCATION**



Vanderbilt University Law School, J.D., 2013



Tufts University, B.A., magna cum laude, 2008

## CURRENT ROLE

- Associate, Hagens Berman Sobol Shapiro LLP

## EXPERIENCE

- Prior to joining Hagens Berman, Peter was an associate at Latham & Watkins LLP, where he represented clients in class action and complex commercial litigation in areas of securities fraud, consumer protection, product liability and contractual disputes.

- Previously, Mr. Shaeffer was a judicial intern for the Hon. Jeffrey Cole of the United States District Court for the Northern District of Illinois, and also served as a paralegal specialist for the U.S. Department of Justice's antitrust division.

## PERSONAL INSIGHT

Originally from the Chicagoland area, Mr. Shaeffer enjoys jogging along the 606 trail, partaking in the city's brewery scene, and spending time with his wife and young dog, Wolfie.



alisas@hbsslaw.com

T 602-224-2621
F 602-840-3012

11 West Jefferson Street
Suite 1000
Phoenix, AZ 85003

**YEARS OF EXPERIENCE**
5

**PRACTICE AREAS**
Class Action

**BAR ADMISSIONS**
- Arizona
- New York
- Texas

**COURT ADMISSIONS**
- U.S. District Court for the District of Arizona
- U.S. District Court for the Northern District of Texas
- U.S. District Court for the Eastern District of Texas

**EDUCATION**



University of Michigan Law School, J.D., 2018



University of Arizona, B.S.B.A., Finance, summa cum laude with honors, 2013

**ASSOCIATE**

# Alisa V. Sherbow

Ms. Sherbow brings her deep knowledge of commercial, employment, insurance subrogation and tax law to the fight for consumer rights via fraud, consumer protection and mass tort litigation.

## CURRENT ROLE
- Associate, Hagens Berman Sobol Shapiro LLP

## EXPERIENCE
- Ms. Sherbow worked in the field of insurance subrogation as part of a national multi-firm team handling large high-profile catastrophic loss mass tort cases in California, Washington, Oregon, Colorado and Maui. Many of these high-profile cases were recognizable wildfires litigated against power companies.

- Prior to subrogation, Ms. Sherbow worked as a labor and employment attorney in Scottsdale, Arizona, where she gained experience as a generalist as well, handling transactional cases as well as trusts and estates, breach of contract, and Indian law.

- Ms. Sherbow worked as a Labor and Employment associate at a firm in New York City, where she represented large, high-profile corporate clients in all types of labor and employment matters.

- Ms. Sherbow's deep experience in labor and employment and consumer rights began at a firm in Dallas, Texas, where she worked with the leading attorneys in labor and employment law and learned from the best expert attorneys in the industry on subjects like arbitration, non-competes and trade secrets, discrimination, data privacy, and more.

- Ms. Sherbow started her post-law school legal career in the International Tax group at Deloitte Tax, LLP in Dallas, Texas. At Deloitte, she learned valuable lessons about the impact of taxation on all aspects of business operations – knowledge which she still uses today.

- During law school, Ms. Sherbow spent a summer as a student attorney at the U.S. Securities and Exchange Commission in Washington D.C. Her post was in the Office of Capital Market Trends within the Division of Corporation Finance, where her role was analyzing and assessing new and novel products on the market for purposes of evaluating whether such products fall under the SEC's regulatory oversight.

## ACTIVITIES
- American Bar

- Association Arizona State Bar

- Ballet Arizona Young Professionals

- Dallas Bar Association Mentorship

HAGENS  BERMAN  SOBOL  SHAPIRO LLP

### LANGUAGES

- Russian (written and verbal fluency)
- Russian sign language

### PERSONAL INSIGHT

Alisa loves University of Michigan football.



whitneys@hbsslaw.com

T 708-628-4966
F 708-628-4950

455 N. Cityfront Plaza Drive
Suite 2410
Chicago, IL 60611

**YEARS OF EXPERIENCE**
9

**PRACTICE AREAS**
Civil & Human Rights
Class Action
Employment Litigation
Personal Injury
Sexual Abuse & Harassment

**BAR ADMISSIONS**
▪ Illinois

**COURT ADMISSIONS**
▪ Supreme Court of the United
States
▪ Seventh Circuit Court of
Appeals
▪ U.S. District Court for the
Northern District of Illinois

**CLERKSHIPS**
▪ Extern for Judge George C.
Smith on the Southern District
of Ohio

**EDUCATION**



THE OHIO STATE UNIVERSITY
MORITZ COLLEGE OF LAW

The Ohio State University
Moritz College of Law, J.D.,
cum laude, 2013

ASSOCIATE

# Whitney K. Siehl

Ms. Siehl works tirelessly and has achieved millions of dollars in settlements for her clients. Her passion and empathy are unmatched.

### CURRENT ROLE

- Associate, Hagens Berman Sobol Shapiro LLP

- Ms. Siehl's Plaintiffs' litigation practice focuses on complex class-action and individual cases in the areas of sexual abuse, sexual harassment, and sports law

- Represents an actress and entertainment industry class against The Weinstein Company, Harvey Weinstein and related companies for racketeering and sexual assault

- Represents students and alumnae of the University of Southern California in a class-action lawsuit against the university and Dr. George Tyndall for his alleged decades-long sexual abuse of patients

### RECENT SUCCESS

- Played a significant role in a $4 million settlement for a child who suffered severe and permanent brain damage due to the medical providers' delay in recognizing a placental abruption

- Assisted in a $3.5 million settlement for a child with a hypoxic-ischemic brain injury that resulted from too much Pitocin and a physician's failure to recognize fetal distress

### EXPERIENCE

- Prior to joining Hagens Berman, worked as an associate in the Chicago office of a well-respected Plaintiffs' firm representing families and children in birth injury and birth trauma litigation nationwide

- Worked previously at another Chicago firm where she gained experience in all aspects of civil litigation with a focus on medical malpractice and professional liability matters

### PRO BONO

- In 2017, received an Award for Excellence in Pro Bono Service from the United States District Court for the Northern District of Illinois and the Chicago Chapter of the Federal Bar Association for her dedication to representing underserved individuals in employment discrimination matters

### ACTIVITIES

- Board Member, PAWS Chicago — the Midwest's largest no-kill animal shelter, 2015-2020

  o TEAM PAWS Marathon Team 2015-present

HAGENS BERMAN SOBOL SHAPIRO LLP

Northwestern
University

Northwestern University, B.A.,
2009

**AWARDS**



Super Lawyers
RISING STARS

## LEGAL ACTIVITIES

- Women's Bar Association of Illinois
  - ○ Officer Positions:
    - ▪ President, 2023
    - ▪ First Vice President, 2022-2023
    - ▪ Financial Secretary, 2020-2021
    - ▪ Recording Secretary, 2019-2020
    - ▪ Board of Directors, 2017-2023
- Member, American Association for Justice
- Member, Chicago Bar Association
- Member, Illinois State Bar Association
- Member, Illinois Trial Lawyers Association
  - ○ Member, ITLA Women's Caucus

## RECOGNITION

- 500 X — The Next Generation, Lawdragon, 2023
- Maurice Weigle Exceptional Young Lawyer Award, Chicago Bar Foundation, 2023
- Service Award, Women's Bar Association of Illinois, 2022-2023
- Rising Star, Super Lawyers, 2019-2023
- Excellence in Pro Bono Service, U.S. District Court for the Northern District of Illinois and the Federal Bar Association Chicago Chapter, 2017
- National Champion Team Member, Sutherland Cup National Constitutional Law Moot Court Competition, 2013
- CALI Award for Highest Grade in Legislation Clinic, Dispute Systems Design, and Comparative Legal Professions
- Public Service Fellow with Dean's Special Recognition, The Ohio State University Moritz College of Law, 2013

## PUBLICATIONS

- "#Us Too: Gender Inequality in the Legal Profession," American Association for Justice, Birth Trauma Litigation Group Newsletter, February 2018

## PERSONAL INSIGHT

Whitney is an avid golfer and chairs the annual golf outing for the Women's Bar Association of Illinois. At Northwestern, she was a member of the women's golf team. She was previously a member of the Miami University cross country and track teams, where the cross country team was selected as NCAA Academic All-Americans. As a four-sport athlete, Whitney was recently inducted into the Port Clinton High School Athletic Hall of Fame.

She enjoys epic feats of endurance, and was selected to the 2021 Chicago Athlete Magazine Ambassador Team to help inspire busy professionals to live healthier and balanced lives through endurance sports. She also serves as a pace group leader for

HAGENS BERMAN SOBOL SHAPIRO LLP

Chicago Marathon training. To date, she has completed 11 marathons, a half Iron distance triathlon, and numerous short course triathlons including the 2019 Escape from Alcatraz Triathlon in San Francisco.

HAGENS BERMAN SOBOL SHAPIRO LLP



**ASSOCIATE**

# Meredith S. Simons

Meredith uses her experience in antitrust law to advocate for consumers who have been overcharged by powerful corporations.

mereidths@hbsslaw.com

T 206-268-9342
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**YEARS OF EXPERIENCE**

6

**BAR ADMISSIONS**

▪ California

**COURT ADMISSIONS**

▪ Ninth Circuit Court of Appeals
▪ U.S. District Court for the
  Central District of California

**CLERKSHIPS**

▪ Honorable Richard C. Tallman,
  Ninth Circuit Court of Appeals,
  2017-2018

**EDUCATION**



Duke University School of Law,
J.D., summa cum laude, 2017



University of Oklahoma, B.A. in
Philosophy and International
Studies, summa cum laude, 2009

## CURRENT ROLE

- Associate, Hagens Berman Sobol Shapiro LLP

## EXPERIENCE

- Before joining Hagens Berman, Meredith was an associate at a law firm where she represented clients ranging from startups to Fortune 100 companies in nationwide class actions and high-stakes intellectual property matters. In the course of those litigations, Meredith argued in state and federal court, took depositions, conducted discovery and drafted complaints and motions.

- Meredith served as a law clerk to the Hon. Richard C. Tallman of the Ninth Circuit Court of Appeals.

- Prior to law school, Meredith taught fourth grade in New Orleans as part of Teach for America. She also worked as a journalist; her work has appeared in publications including Slate, the Atlantic and the Washington Post.

## PRO BONO

- At her previous firm, Meredith maintained an active and varied pro bono practice. She secured a permanent restraining order on behalf of a domestic violence victim, obtained a favorable result for an immigrant family in deportation proceedings, and advised a non-profit dance company on intellectual property issues.

- During law school, Meredith served as a court-appointed advocate for children in the Durham, North Carolina foster care system.

## PERSONAL INSIGHT

Meredith was raised in Texas, which gives her a real appreciation for Seattle's beautiful summers. When she's not working, Meredith is enjoying Seattle's parks and beaches with her family.

HAGENS BERMAN SOBOL SHAPIRO LLP



**ASSOCIATE**

# Emilee Sisco

Ms. Sisco is an associate at Hagens Berman and practices in the areas of sports litigation, antitrust and consumer protection. As a former Division I athlete, she has worked on the firm's cases against the NCAA, furthering the rights of college-athletes across the nation.

emilees@hbsslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**YEARS OF EXPERIENCE**
6

**PRACTICE AREAS**
Antitrust Litigation
Class Action
Consumer Rights
Sports Litigation

**BAR ADMISSIONS**
- Washington

**COURT ADMISSIONS**
- U.S. District Court for the Western District of Washington

**EDUCATION**



Seattle University School of Law, J.D.



University of Oregon, B.A.

## CURRENT ROLE
- Associate, Hagens Berman Sobol Shapiro LLP

## RECENT SUCCESS
- *Namoff v. Fleishman & Shapiro, P.C. et al.*
- *In re National Prescription Opiate Litigation*
- *In re NCAA Athletic Grant-In-Aid Cap Antitrust Litigation*
- *In re General Motors LLC Ignition Switch Litigation*

## EXPERIENCE
- Law Clerk for Washington State Office of the Attorney General – Antitrust Division

## LEGAL ACTIVITIES
- During 2L and 3L years in law school, Ms. Sisco was a fulltime volunteer intern for the WSBA Moderate Means Program. She volunteered more than 250 hours of pro bono service during law school.

## RECOGNITION
- Legal Lion of the Week as part of the litigation team that achieved class certification in *NCAA Student-Athlete Name, Image and Likeness*, Law360, 2023
- 2021, 2019 Honoree for Outstanding Antitrust Litigation Achievement in Private Law Practice, American Antitrust Institute

## LANGUAGES
- Latin

## PERSONAL INSIGHT
Ms. Sisco was a Division I volleyball athlete for the University of Oregon and University of Colorado. She was a member of the U.S. Women's Volleyball A3 team and was also a three-sport varsity athlete throughout high school, earning top 10 state finishes in two events at the WIAA Track & Field Championship.

HAGENS BERMAN SOBOL SHAPIRO LLP



stephaniev@hbsslaw.com

T 206-623-7292
F 206-623-0594

1301 Second Avenue
Suite 2000
Seattle, WA 98101

**PRACTICE AREAS**
Sports Litigation

**INDUSTRY EXPERIENCE**
▪ Sports Governance
▪ Sports Policy and Protocols

**EDUCATION**

SCHOOL OF LAW
UNIVERSITY *of* WASHINGTON

University of Washington School
of Law, J.D., 2021, Order of
Barristers



Seattle University, B.A. Political
Science and Legal Studies,
summa cum laude, 2015

ASSOCIATE
# Stephanie A. Verdoia

Stephanie brings to the firm a deep knowledge of professional
sports policies, protocols and governance to enrich Hagens
Berman's robust sports law practice.

## CURRENT ROLE
- Associate, Hagens Berman Sobol Shapiro LLP
- Ms. Verdoia's practice at the firm's Seattle office focuses primarily on sports litigation, where she applies her deep knowledge of sports governance, policies and protocols to bolster the firm's expansive work in this area of law.

## EXPERIENCE
- Prior to joining Hagens Berman, Ms. Verdoia interned at Seattle's Legal Voice, where she researched legal issues regarding gender equality by analyzing the interplay between constitutional principles, recently enacted state statutes and prevailing precedent.
- Ms. Verdoia also interned with the legal department at Seattle Sounders FC, where she provided legal research and solutions responding to the evolving developments of the COVID-19 pandemic.

## RECOGNITION
- Legal Lion of the Week as part of the litigation team that achieved class certification in NCAA Student-Athlete Name, Image and Likeness, Law360, 2023

## ACTIVITIES
- Her additional experience in professional sports lends itself to the firm's sports litigation practice area. Ms. Verdoia has years of experience in the realm of professional soccer as a midfielder in Norway's Toppserien top division soccer and with the National Women's Soccer League (NWSL) both for the Boston Breakers and most recently the OL Reign (formerly known as Seattle Reign FC).
- During her time in these roles, she trained with the top NWSL team to enhance squad development with the Reign; led Norway's Vålerenga Fotbal Damer to the national championship game; and was one of only 36 women nationally drafted into the professional female league when she began her professional sports career in 2015 with the Boston Breakers.
- Ms. Verdoia has also served as a league representative, helping to take a leadership role in the sport by conducting conversation with key league figures to further players' interests and advance gender equity in sport. She also implemented working standards to create a safer environment and established a framework for a future players association.

HAGENS BERMAN SOBOL SHAPIRO LLP

## PERSONAL INSIGHT

As a lifelong soccer player, Stephanie spends her free time coaching youth soccer teams at the OL Reign Academy. She also enjoys camping anywhere in the Pacific Northwest with her fiancé, Shane, and her dog, Stevie.

HAGENS  BERMAN  SOBOL  SHAPIRO LLP



**ASSOCIATE**

# Sophia Weaver

Sophia brings her diverse experience to fight for access to medical care and access to the justice system.

sophiaw@hbsslaw.com

T 617-475-1973
F 617-482-3003

1 Faneuil Hall Square
5th Floor
Boston, MA 02109

**PRACTICE AREAS**

▪ Antitrust Litigation
▪ Class Action

**EDUCATION**



University of Michigan Law
School, J.D. cum laude, 2023



University of Chicago, B.A. with
honors, 2018

## CURRENT ROLE

- Associate, Hagens Berman Sobol Shapiro LLP

- Counsel for the Center for American Progress and the NAACP on their amicus submission in the Inflation Reduction Act Medicare Drug Pricing Negotiation cases. This amicus brief demonstrates that affordable access to prescription medications is key health equity issue for community of color, the LGBTQ+ community, women and people living with disabilities. The IRA's Medicare drug price negotiation will help to alleviate that unfairness, bringing the United States closer to the goal of achieving health equity.

## EXPERIENCE

- At Michigan Law, Ms. Weaver worked in criminal defense with the Michigan State Appellate Defenders Office, preparing filings for an appeal regarding the criminalization of speech. She also was a student attorney with the Michigan Innocence Clinic, where she worked with wrongfully convicted clients to reverse their convictions.

- Ms. Weaver worked on issues of LGBTQ+ rights as an intern for Lambda Legal and as the co-director of Michigan Law's OutReach name change clinic, which helped transgender clients change their names in Michigan.

## PERSONAL INSIGHT

Sophia grew up in Chicago and recently moved to Boston. In her free time, she enjoys exploring Boston, ballroom dancing and painting.

HAGENS BERMAN SOBOL SHAPIRO LLP



laurianew@hbsslaw.com

T 617-475-1972
F 617-482-3003

1 Faneuil Hall Square
5th Floor
Boston, MA 02109

**CLERKSHIPS**

▪ Honorable William G. Young,
U.S. District Court for the
District of Massachusetts, 2022-
2023

**EDUCATION**



Boston University School of Law,
M.A., Master of Laws, 2022



Université Paris Nanterre, LL.B.,
and M.A., French Civil Law and
Common Law, 2021



University of Essex, LL.B., French
and English Laws, 2021

**ASSOCIATE**

# Lauriane Williams

Lauriane has a dual background in civil and common law and is dedicated to fighting corporate wrongdoing.

**CURRENT ROLE**

- Associate, Hagens Berman Sobol Shapiro LLP

**EXPERIENCE**

- Served as a law clerk to the Hon. William G. Young of the U.S. District Court for the District of Massachusetts

- Worked in the software industry as a legal analyst

**PERSONAL INSIGHT**

Lauriane was born in England and raised in France. An avid film watcher, series consumer and investigative journalism reader, she also enjoys long walks and sitting in the sun at Boston's numerous terraces.

HAGENS  BERMAN  SOBOL  SHAPIRO LLP



ASSOCIATE

# Abby Wolf

Abby cares deeply about justice and fairness. Through class actions, she is focused on exposing the truth, holding the powerful accountable and helping consumers fight back against corporate wrongdoing.

abbyw@hbsslaw.com

T 510-725-3000
F 510-725-3001

715 Hearst Avenue
Suite 300
Berkeley, CA 94710

**PRACTICE AREAS**
Antitrust Litigation
Class Action
Consumer Rights

**BAR ADMISSIONS**
▪ California

**COURT ADMISSIONS**
▪ U.S. Court of Appeals for the Fourth Circuit
▪ U.S. District Court for the Northern District of California
▪ U.S. District Court for the Central District of California

**CLERKSHIPS**
▪ U.S. District Court for the Eastern District of California, Judge Dale A. Drozd 2020-2021
▪ U.S. District Court for the Southern District of West Virginia, Judge Joseph R. Goodwin 2016-2017

**EDUCATION**

University of California, Berkeley, B.A., 2011

## CURRENT ROLE
- Associate, Hagens Berman Sobol Shapiro LLP

## EXPERIENCE
- Prior to joining Hagens Berman, Abby was an associate at Lieff Cabraser Heimann & Bernstein LLP, where she worked on behalf of cities, counties and Native American tribes in the nationwide opioid litigation. She also represented survivors of the 2017 and 2018 wildfires in California sparked by the negligence of local utility companies.

## RECOGNITION
- Lawyer to Watch, California Lawyer Association, Antitrust and Unfair Competition Law Section, 2023
- Northern California Rising Star, Super Lawyers, 2023-2024

## PUBLICATIONS
- "*The World Still Looks to California: The CalECPA as a Model Step for Privacy Reform in the Digital Age,*" The Journal of Law and Technology at Texas, Aug. 1, 2017

## PRESENTATIONS
- Panelist, "Public Nuisance Law and Its Impact on the Opioid Litigation and Future Mass Torts," Mass Torts Committee Breakout, Jan. 31, 2020

## PERSONAL INSIGHT
When not practicing law, Abby enjoys yoga, baking and spending time with her dog, Hector.

HAGENS  BERMAN  SOBOL  SHAPIRO LLP



University of California, Davis
School of Law, King Hall, J.D.,
2016